# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

------------------------------------------------------------------------x
|  |  |  |
|---|---|---|
| **In re** | : | **Chapter 11** |
|  | : |  |
| **ELECTRICAL COMPONENTS** | : | **Case No. _____ (____)** |
| **INTERNATIONAL, INC.** *et al.,*[1] | : |  |
|  | : |  |
| **Debtors.** | : | **Joint Administration Requested** |
|  | : |  |

------------------------------------------------------------------------x

## DEBTORS' MOTION PURSUANT TO SECTIONS 105(a) AND 366 OF THE BANKRUPTCY CODE FOR AN INTERIM AND FINAL ORDER (I) PROHIBITING UTILITIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICE; (II) APPROVING THE DEBTORS' PROPOSED ADEQUATE ASSURANCE; AND (III) APPROVING PROCEDURES FOR RESOLVING REQUESTS FOR ADDITIONAL ADEQUATE ASSURANCE

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Electrical Components International, Inc. ("**ECI**"), and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), submit this motion (the "**Motion**") pursuant to sections 105(a) and 366 of title 11 of the United States Code (the "**Bankruptcy Code**") for an interim order substantially in the form annexed hereto as Exhibit A (the "**Interim Order**") and a final order substantially in the form annexed hereto as Exhibit B (the "**Final Order**") (i) prohibiting utility companies from altering, refusing, or discontinuing services to, or discriminating against, the Debtors on account of prepetition amounts outstanding or on account of any perceived inadequacy of the Debtors' proposed adequate assurance; (ii) approving the Debtors' proposed adequate assurance; and (iii) approving the Debtors' proposed procedures for resolving any requests for additional

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each debtor's federal tax identification number, are: Electrical Components International, Inc. (4361); FP-ECI Holdings Company (4246) ("**Holdings**"); ECM Holding Company (7759) ("**ECM Holding**"); Noma O.P., Inc. (5495) ("**Noma**"). The address for each of the Debtors is 1 City Place Drive, Suite 450, St. Louis, Missouri, 63141.

assurance (the "**Motion**"). In support of the Motion, the Debtors submit the *Declaration of David J. Webster in Support of the Debtors' Chapter 11 Petitions and Request for First Day Relief* (the "**Webster Declaration**") filed contemporaneously herewith, and respectfully represent as follows:

## Background

1.      On the date hereof (the "**Commencement Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Further, a motion pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") for joint administration of the Debtors' chapter 11 cases is pending before this Court.

2.      Prior to the Commencement Date, the Debtors solicited votes on the Joint Prepackaged Plans of Reorganization of Electrical Components International, Inc., *et al.* Under Chapter 11 of the Bankruptcy Code (the "**Prepackaged Plan**") through a disclosure statement distributed in accordance with sections 1125 and 1126(b) of the Bankruptcy Code (the "**Disclosure Statement**").

## ECI's Business

3.      The Debtors and their wholly-owned non-Debtor subsidiaries (the "**Companies**") are leading designers, manufacturers and marketers of wire harnesses and providers of value-added assembly services to North American, European, and Asian "white goods" appliance manufacturers. The Companies also produce specialty wire harnesses for an expanding customer base in diverse markets including transportation; heating, ventilation and air conditioning ("**HVAC**"); construction and agriculture; vending and industrial. Wire harnesses

are configurations of wires, cables, connectors, terminals and plugs that can be found in many electronic products, including home appliances; transportation vehicles, automotive components and HVAC systems; construction and agricultural equipment; and vending and industrial machines.

4.    The Companies are suppliers to over 90 original equipment manufacturers in numerous end markets, including industry leaders Bosch, Chrysler, Case, Delphi, Electrolux, EZ GO, General Electric, General Motors, Haier, Mabe, Nissan, Whirlpool and Xerox. The Companies are the largest supplier of wire harnesses to the white goods appliance market in North America.

5.    The Companies have a low-cost global footprint with eleven facilities strategically located in five countries. Approximately 98% of their 8,750 employees are located in low-cost regions, with six facilities in Mexico, two facilities in China and one facility in Poland. The Companies also have one facility in Canada and one in Germany, which serve those specific local customer bases. The Companies' manufacturing facilities are strategically located to take advantage of low-cost manufacturing environments and to better serve their customers.

6.    As of the Commencement Date, the Debtors' outstanding indebtedness consisted of (i) approximately $261.4 million outstanding principal amount, plus all accrued and unpaid interest thereon, under the Amended and Restated First Lien Credit Agreement, dated as of September 23, 2008 (the "**First Lien Credit Agreement**"), secured by a first priority lien on substantially all of the Debtors' assets and (ii) $60.0 million outstanding principal amount, plus all accrued and unpaid interest thereon, under the Amended and Restated Second Lien Credit Agreement, dated as of September 23, 2008 (the "**Second Lien Credit Agreement**"), secured by a second priority lien on substantially all of the Debtors' assets. There is no established public

trading market for the Debtors' capital stock. Francisco Partners, L.P. and certain of its affiliates own approximately 98% of the shares of each of the preferred stock and common stock of Holdings.

7. Holdings is the parent corporation of ECI and is a holding company. ECM Holding is a wholly-owned subsidiary of ECI and is the holding company for a number of international operating subsidiaries. Noma is a wholly-owned subsidiary of ECI that does not hold any operating assets, but is a contract party to certain royalty agreements and other intellectual property arrangements. All business operations are carried out by ECI and its non-Debtor subsidiaries. ECI's principal executive offices are located at 1 City Place Drive, Suite 450, St. Louis, Missouri 63141.

8. As of the Commencement Date, the Debtors had approximately 122 employees in the United States and the Debtors' and their non-debtor subsidiaries' unaudited consolidated financial statements reflected approximately $460,000,000 of net sales for the 12-month period ended December 31, 2009. As of January 31, 2010, the Debtors and their non-debtor subsidiaries had total assets of approximately $363,646,000 and total liabilities of approximately $435,699,000.

<u>**The ECI Prepackaged Plan**</u>

9. As described in more detail in the Webster Declaration, prior to the Commencement Date, the Debtors engaged in negotiations over the terms of a financial restructuring with its core creditor and equity holder groups. These negotiations culminated in the agreement of (i) certain holders (the "**Consenting First Lien Lenders**") of more than 66 2/3% of the outstanding principal amount of indebtedness (the "**First Lien Lender Loans**") under First Lien Credit Agreement; (ii) UBS AG, Stamford Branch, solely in its capacity as

Administrative Agent and Collateral Agent (the **"First Lien Agent"**); (iii) certain holders (the "Consenting Second Lien Lenders") of more than 66 2/3% of the outstanding principal amount of indebtedness (the **"Second Lien Lender Loans"**) under the Second Lien Credit Agreement; (iv) NexBank, SSB, solely in its capacity as Administrative Agent and Collateral Agent (the "Second Lien Agent"); (v) BlackRock Kelso Capital Corporation, Sankaty Credit Opportunities II, L.P., Sankaty Credit Opportunities III, L.P., Sankaty Credit Opportunities IV, L.P. and Sankaty Credit Opportunities (Offshore Master) IV, L.P. (collectively, the **"Equity Investors"**); and (vi) certain holders (the **"Consenting Equity Holders"** and, together with the Consenting First Lien Lenders, the Consenting Second Lien Lenders and the Equity Investors, the "Consenting Parties") of more than 98% of the aggregate outstanding shares of each class of capital stock of Holdings to enter into the Plan Support Agreement, dated as of February 12, 2010 (the **"Plan Support Agreement"**) with the Debtors, pursuant to which the Consenting Parties agreed to vote in favor of the Prepackaged Plan provided that certain conditions and milestones were satisfied.

10.     Concurrently with the execution of the Plan Support Agreement, (i) the Debtors, the Consenting First Lien Lenders and the First Lien Agent entered into the Forbearance Agreement, dated as of February 12, 2010, with respect to certain specified defaults and events of default under the First Lien Credit Agreement (the **"First Lien Forbearance Agreement"**) and (ii) the Debtors, the Consenting Second Lien Lenders and the Second Lien Agent entered into the Forbearance Agreement, dated as of February 12, 2010, with respect to certain specified defaults and events of default under the Second Lien Credit Agreement (the **"Second Lien Forbearance Agreement"**).

11.     In addition, the Debtors, UBS Loan Finance LLC, UBS Securities LLC, General Electric Capital Corporation, GE Capital Markets, Inc. and the lenders party thereto (the "**DIP Lenders**") executed a DIP Facility Commitment Letter dated as of February 12, 2010 (the "**DIP Facility Commitment Letter**") pursuant to which the DIP Lenders committed to fund the debtor-in-possession facility of the Debtors in an aggregate principal amount up to $25,000,000 (the "**DIP Facility**").

12.     The Plan Support Agreement also provided that (i) the Equity Investors committed to purchase (x) 22,500,000 shares of the equity of the Reorganized Debtors (the "**New Common Stock**") at $1.00 per share and (y) between 10,000,000 and 15,000,000 shares of New Common Stock at $1.00 per share for which the holders of First Lien Lender Loans exercised the Cash Election (as described below), and (ii) certain of the Consenting First Lien Lenders committed to fund the tranche A term loan facility in an aggregate principal amount of $32,500,000 (the "**Tranche A Term Loan Facility**").

13.     In accordance with the terms of the Plan Support Agreement, on March 6, 2010, the Debtors commenced a solicitation of votes from all classes entitled to vote under the Bankruptcy Code. The Prepackaged Plan has been accepted in excess of the statutory thresholds specified in sections 1126(c) and 1126(d) of the Bankruptcy Code by all of the impaired classed of claims against the Debtors.

14.     Under the terms of the Prepackaged Plan, each holder of a claim pursuant to the First Lien Credit Agreement (a "**First Lien Lender Claim**") will be entitled to receive its *pro rata* share of: (i) 50,000,000 shares of New Common Stock unless such holder makes a Cash Election (as described below) and (ii) the tranche B term loans to be issued by certain of the Reorganized Debtors in the aggregate principal amount of $145,000,000. Pursuant to Section

4.2(b)(ii) of the Prepackaged Plan, each holder of the First Lien Lender Loans could elect to receive cash on account of all or a portion of its distribution of New Common Stock in an amount equal to $1.00 per share of New Common Stock (the "**Cash Election**"); <u>provided</u>, that such holders of First Lien Lender Loans could not elect to receive cash in an amount in excess of $15,000,000 in the aggregate. In connection with the solicitation of votes, the holders of First Lien Lender Claims made their Cash Election and have elected to receive $10,359,764 in cash for a portion of their shares of New Common Stock. As a result, the holders of the First Lien Lender Claims will receive an aggregate of 39,640,236 shares, or 54.68%, of New Common Stock. The Equity Investors will purchase the remaining shares and will receive an aggregate of 32,859,764 shares, or 45.32%, of New Common Stock (exclusive of shares of New Common Stock they will receive on account of their First Lien Lender Claims, if any).

15.     In addition, the Prepackaged Plan provides that each holder of a claim pursuant to the Second Lien Credit Agreement (a "**Second Lien Lender Claim**") will be entitled to receive its *pro rata* share of $10,000,000 in cash.

16.     The Prepackaged Plan also provides for the payment in full of (i) allowed administrative expense claims, (ii) federal, state, and local tax claims, (iii) other priority non-tax claims and (iv) claims related to the DIP Facility. Other secured claims are unimpaired under the Prepackaged Plan and holders of the other secured claims will either (i) be reinstated; (ii) receive cash in an amount equal to such allowed claims; or (iii) receive the collateral securing the other secured claim. Trade creditors and other holders of general unsecured claims against the Debtors are unimpaired under the Prepackaged Plan and will receive (i) if such claim is due and owing on the Effective Date, payment in full in cash (x) on the later of the Effective Date and the date such claim becomes allowed or (y) otherwise paid in accordance with the terms of the applicable

agreement; (ii) if such claim is not due and owing on the Effective Date, payment in full in cash when and as such claim becomes due and owing in the ordinary course of business; or (iii) treatment that leaves unaltered such holder's legal, equitable, and contractual rights.

17.     Under the Prepackaged Plan, each holder of preferred equity interests in Holdings will receive its *pro rata* share of the Rights (as defined in the Prepackaged Plan) to share in the equity value of the Reorganized Debtors if specified thresholds are achieved. Holders of common equity interests in Holdings will not receive a distribution.

18.     The Prepackaged Plan contemplates a comprehensive financial restructuring of the Debtors' capital structure that will allow the Debtors to deleverage their balance sheet by reducing the amount of the Debtors' outstanding debt by approximately 50% through a short and consensual chapter 11 case. After distributions under the Prepackaged Plan, the Reorganized Debtors will emerge from chapter 11 with up to $45,000,000 in new cash from the Equity Investors and Exit Facility and be poised for future growth and stability.

## Jurisdiction and Venue

19.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

20.     By this Motion, the Debtors request entry of (A) the Interim Order (i) prohibiting utility companies from altering, refusing, or discontinuing services to, or discriminating against, the Debtors on account of prepetition amounts outstanding, or on account of any perceived inadequacy of the Debtors' proposed adequate assurance pending entry of the Final Order, (ii) approving the Debtors' Proposed Adequate Assurance (as defined below), (iii) approving the Debtors' proposed procedures for resolving any Additional Assurance Requests

(as defined below), and (iv) scheduling a hearing on the Motion to consider granting the relief requested herein on a final basis (the "**Final Hearing**"); and after the Final Hearing, (B) the Final Order granting the relief requested herein on a final basis.

## The Utility Companies

21.     In connection with the operation of their businesses and management of their properties, the Debtors obtain electricity, natural gas, telephone services, and/or other similar services (collectively, the "**Utility Services**") from a number of utility companies or their brokers (collectively, the "**Utility Companies**"). Annexed hereto as Exhibit C is a non-exclusive list of Utility Companies that provide Utility Services to the Debtors (the "**Utility Services List**").[2]

22.     On average, the Debtors collectively pay approximately $104,000 each month for Utility Services, calculated as an historical average over a twelve-month period. None of the Utility Companies hold deposits, and Debtors have no existing prepayments.

## The Proposed Adequate Assurance

23.     The Debtors propose to place a cash deposit equal to two weeks of Utility Services, calculated as a historical average over the past twelve (12) months (the "**Adequate Assurance Deposit**") into a newly-created, interest-bearing segregated account (the "**Utility Deposit Account**"), maintained at Wells Fargo Bank N.A. ("**Wells Fargo**") for the benefit of any Utility Company on a *pro rata* basis, unless such Utility Company agrees to a lesser amount. Accordingly, the Debtors estimate that the Adequate Assurance Deposit will be approximately $52,000.

---

[2] Exhibit "C" lists only those Debtors that are operating companies and, therefore, obtain Utility Services. The inclusion of any entity on, or omission of any entity from, Exhibit C is not an admission by the Debtors that such entity is or is not a utility within the meaning of section 366 of the Bankruptcy Code, and the Debtors reserve all rights with respect thereto.

24.     The Debtors propose the Adequate Assurance Deposit be maintained until the earlier of (i) entry of an order of the Court authorizing the return of the Adequate Assurance Deposit to the Debtors and (ii) the effective date of a plan of reorganization for the Debtors, at which time the Adequate Assurance Deposit shall automatically, without further order of the Court, be returned to the reorganized Debtors.

25.     In addition, the Debtors seek authority to reduce the Adequate Assurance Deposit to the extent that it includes an amount on account of a Utility Company that the Debtors subsequently determine, in their sole discretion, should be removed from the Utility Services List.

26.     The Debtors submit that the Adequate Assurance Deposit and their ability to pay for future Utility Services in the ordinary course of business with the cash generated from their operations and/or their postpetition financing (collectively, the "**Proposed Adequate Assurance**") constitutes sufficient adequate assurance to the Utility Companies.  This is especially true in light of the nature and short duration of these prepackaged chapter 11 cases where the Debtors expect to be able to pay the prepetition claims of certain creditors, such as the Utility Companies, postpetition in the ordinary course of business.[3]

27.     Accordingly, the Debtors believe that no other or further adequate assurance is necessary.  If, however, a Utility Company believes adequate assurance beyond that proposed is necessary, the Debtors submit that the Utility Company must request additional adequate assurance (an "**Additional Assurance Request**") pursuant to the procedures described below (the "**Adequate Assurance Procedures**").

---

[3] Contemporaneously herewith, the Debtors filed their Motion Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code for Authorization to Pay Prepetition Claims of Certain Creditors in the Ordinary Course of Business.

## Adequate Assurance Procedures

28.     Recognizing the right of each Utility Company to evaluate the Proposed Adequate Assurance on a case-by-case basis but also the severe consequences to the Debtors of any interruption in services by the Utility Companies, the Debtors propose the following Adequate Assurance Procedures to resolve Additional Assurance Requests in an orderly and fair manner:

(a)     Within three (3) business days after the date of entry of the Interim Order, the Debtors will mail a copy of the Interim Order to the Utility Companies on the Utility Services List.

(b)     If a Utility Company is not satisfied with the proposed Adequate Assurance and seeks additional adequate assurance of payment, it must serve an Additional Assurance Request upon (i) ECI, Inc., 1 City Place, Suite 450, St. Louis, Missouri 63141(Attn: Jason Cattoor); (ii) Weil, Gotshal & Manges LLP, 200 Crescent Court, Suite 300, Dallas, Texas 75201 (Attn: Charles M. Persons, Esq.); and (iii) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn: Mark D. Collins, Esq.) (collectively, the "**Adequate Assurance Notice Parties**") within fourteen (14) days of service of the Interim Order on the Utility Company.

(c)     Each Additional Assurance Request must (i) be in writing; (ii) set forth the type of Utility Services provided to the Debtors and to which of the Debtors' locations; (iii) include a summary of the Debtors' payment history relevant to the affected account(s); (iv) include whether the Utility Company holds a deposit or other security, and, if so, in what amount; and (v) set forth why the Utility Company believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

(d)     Upon the Debtors' receipt of an Additional Assurance Request, the Debtors will have the greater of (i) fourteen (14) days from the receipt of such Additional Assurance Request and (ii) thirty (30) days from the Commencement Date (collectively, the "**Resolution Period**") to negotiate with the requesting Utility Company and resolve its Additional Assurance Request.

(e)     The Debtors may, in their sole discretion and without further order of this Court, resolve any Additional Assurance Request and/or Determination Motion (as defined below) by mutual agreement with the requesting Utility Company. In connection with any such agreement, the Debtors may, without further order of this Court, provide a Utility Company with additional

adequate assurance of future payment, including, but not limited to, cash deposits, prepayments, and/or other forms of security; provided, however, that the Debtors shall maintain a summary record of such agreements and their respective terms, and such summary record and the agreements themselves shall be available to any official committee appointed in the cases and/or the Office of the United States Trustee upon demand.

(f)     If the Debtors are unable to reach a resolution with the Utility Company during the Resolution Period, the Debtors will file a motion with the Court seeking a hearing to determine the adequacy of assurance of payment with respect to a particular Utility Company (the "**Determination Motion**") pursuant to section 366(c)(3) of the Bankruptcy Code.

29.     The Debtors respectfully request that any Utility Company that fails to make an Additional Assurance Request be deemed to have been provided with adequate assurance of payment as required by section 366 of the Bankruptcy Code and should be prohibited from discontinuing, altering, or refusing to provide Utility Services to the Debtors.

### Objection Deadline and Final Hearing Date

30.     Section 366 of the Bankruptcy Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("**BAPCPA**"), arguably places the burden to provide adequate assurance that is satisfactory to the Utility Companies on the Debtors. Similarly, if a Utility Company does not accept the Proposed Adequate Assurance, section 366 arguably places the burden to seek court review of the adequacy of the proposed adequate assurance on the Debtors.

31.     Such an interpretation of section 366 is subject to potential abuse by a Utility Company. For example, on the 29th day following the Commencement Date, a Utility Company could announce that the Debtors' Proposed Adequate Assurance is not acceptable, demand an unreasonably large deposit alleging payment risk from the Debtors, and threaten to terminate Utility Service the next day unless the Debtors comply with its demand. This would effectively leave the Debtors confronted with two equally oppressive and potentially costly

choices: succumb to a Utility Company's last-minute demands for an unreasonably large deposit or face the cessation of essential services at the risk of irreparable disruption to their businesses.

32. To avoid this untenable outcome, the Debtors propose that any Utility Company that objects to this Motion must file a written objection (an "**Objection**") and serve such objection on the Adequate Assurance Notice Parties so that it is actually received by the date that is the earlier of (i) fifteen (15) days after the entry of the Interim Order and (ii) five (5) business days before the date of the Final Hearing.

33. To resolve any Objection within thirty (30) days following the Commencement Date, the Debtors request that the Court schedule the Final Hearing on any unresolved Objections approximately twenty-five (25) days after the Commencement Date.

34. The Debtors respectfully request that absent compliance with the procedures to request an Additional Assurance Deposit or filing a timely Objection, the Utility Companies be forbidden from altering, refusing, or discontinuing service on account of any prepetition charges, or requiring additional adequate assurance of payment other than the Proposed Adequate Assurance.

## Subsequent Modifications of the Utility Services List

35. Although the Debtors have made extensive and good-faith efforts to identify all Utility Companies, certain companies that currently provide Utility Services to the Debtors may have been omitted inadvertently from the Utility Services List. To the extent that the Debtors identify additional Utility Companies, the Debtors seek authority, in their sole discretion, to amend or supplement the Utility Services List. The Debtors will file any such amendments and serve copies of the Motion, the Interim Order, and the Final Order (if and when entered) on such newly identified Utility Companies.

36.     The Debtors further request the Interim Order and Final Order be binding on all Utility Companies providing services to the Debtors, regardless of when each Utility Company was added to the Utility Services List, provided that if additional parties are added, the Debtors may increase the amount of the Adequate Assurance Deposit by an amount equal to the cost of two (2) weeks of Utility Services provided by such additional Utility Company to the Debtors, calculated as an historical average over the past twelve (12) months.

37.     Any Utility Company added to the Utility Services List following the date of this Motion (an "**Additional Utility Company**") shall have the right to make an Additional Assurance Request or to serve an Objection on the Adequate Assurance Notice Parties in compliance with the proposed Adequate Assurance Procedures. Any such request must actually be received by the Adequate Assurance Notice Parties. Should any Additional Utility Company object to the Proposed Adequate Assurance or Adequate Assurance Procedures, the Debtors request that such Additional Utility Company be prohibited from discontinuing, altering, or refusing service to the Debtors, including as a result of unpaid charges for prepetition services, pending resolution of the Objection.

### Basis For Relief Requested

38.     The Debtors submit that the relief requested is essential to avoid Utility Service interruptions that may jeopardize the Debtors' ongoing operations and the success of these chapter 11 cases. The Debtors' core businesses are the manufacture and distribution of products used in primarily commercial white goods. Should any Utility Company refuse or discontinue service, even for a brief period, the Debtors' business operations would be severely disrupted, irreparably damaging the Debtors' production supply, vendor relationships, and revenue stream to the detriment of all parties in interest, and potentially delaying the Debtors' successful reorganization.

A.    The Court Should Approve the Debtors' Proposed Adequate
      Assurance Because it Adequately Protects the Utility Companies
      from the Risk of Nonpayment

39.    Section 366 of the Bankruptcy Code protects a debtor against the

immediate termination or alteration of utility services after commencing its case.[4]  If during the

30-day period after the commencement date, the debtor does not provide "adequate assurance" of

payment for postpetition services in a form "satisfactory" to the utility company, the company

may alter, refuse, or discontinue service.  11 U.S.C. § 366(c)(2).

---

[4] Section 366 of the Bankruptcy Code provides, in relevant part, as follows:

(a)    Except as provided in subsections (b) and (c) of this section, a utility
may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the
debtor solely on the basis of the commencement of a case under this title or that a debt
owed by the debtor to such utility for service rendered before the order for relief was not
paid when due.

(b)    Such utility may alter, refuse, or discontinue service if neither the
trustee nor the debtor, within 20 days after the date of the order for relief, furnishes
adequate assurance of payment, in the form of a deposit or other security, for service after
such date.  On request of a party in interest and after notice and a hearing, the court may
order reasonable modification of the amount of the deposit or other security necessary to
provide adequate assurance of payment.

*        *        *

(c)(2) Subject to paragraphs (3) and (4), with respect to a case filed under
chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility
service, if during the 30-day period beginning on the date of the filing of the petition, the
utility does not receive from the debtor or the trustee adequate assurance of payment for
utility service that is satisfactory to the utility.

(c)(3)(A) On request of a party in interest and after notice and a hearing, the
court may order modification of the amount of an assurance of payment under paragraph
(2).

(c)(3)(B) In making a determination under this paragraph whether an assurance
of payment is adequate, the court may not consider –

(i) the absence of security before the date of the filing of the petition;

(ii) the payment by the debtor of charges for utility service in a timely manner
before the date of the filing of the petition; or

(iii) the availability of an administrative expense priority.

11 U.S.C. § 366(a), (b), (c).

40. Section 366(c) of the Bankruptcy Code also provides what does and does not constitute "adequate assurance" of payment and what factors can be considered in determining whether such assurance is adequate. But section 366(c), like section 366(b) pre-BAPCPA, requires that an assurance of payment be only "adequate." Accordingly, it does not require an absolute guarantee of the debtor's ability to pay. *See, e.g., In re Caldor, Inc. – N.Y.,* 199 B.R. 1, 3 (S.D.N.Y. 1996) (Section 366(b) "does not require an 'absolute guarantee of payment.'") (citation omitted), *aff'd sub nom. Va. Elec. & Power Co. v. Caldor, Inc. – N.Y.,* 117 F.3d 646 (2d Cir. 1997); *In re Adelphia Bus. Solutions, Inc.,* 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002).

41. Rather, like section 366(b) pre-BAPCPA, the focus is "upon the need of the utility for assurance, and to require that the debtor supply *no more than that*, since the debtor almost perforce has a conflicting need to conserve scarce financial resources.'" *Va. Elec. & Power Co.,* 117 F.3d at 650 (*quoting In re Penn Jersey Corp.,* 72 B.R. 981, 985 (Bankr. E.D. Pa. 1987) (emphasis by Second Circuit)); *see also In re Magnesium Corp. of Am.,* 278 B.R. 698, 714 (Bankr. S.D.N.Y. 2002).

42. In determining whether a given assurance of payment is in fact "adequate," this Court must examine the totality of the circumstances to make an informed judgment as to whether the Utility Companies will be subject to an unreasonable risk of nonpayment. *See Adelphia,* 280 B.R. at 82-83; *see also In re Steinebach v. Tucson Elec. Power Co. (In re Steinebach),* 303 B.R. 634, 641 (Bankr. D. Ariz. 2004) ("Adequate assurance of payment is not, however, absolute assurance . . . . [A]ll § 366(b) requires is that a utility be protected from an unreasonable risk of non-payment.").

43.     Here, the totality of the circumstances indicates the Utility Companies are adequately assured against any risk of nonpayment for future services. The Debtors' Proposed Adequate Assurance includes a cash deposit equivalent to two weeks' worth of Utility Services. Courts construing section 366, as amended, have concluded that a deposit constituting two weeks' worth of utility service constitutes adequate assurance of future payment. *See, e.g., In re NTK Holdings, Inc.*, Ch. 11 Case No. 09-13611 (KJC) (Bankr. D. Del. Nov. 19, 2009) [Docket No. 137]; *In re Source Interlink Cos., Inc.*, Ch. 11 Case No. 09-11424 (KG) (Bankr. D. Del. May 27, 2009) [Docket No. 221] (final order approving adequate assurance equal to the cost of two weeks of utility services); *In re Magna Ent'mt Corp.*, Ch. 11 Case No. 09-10720 (MFW) (Bankr. D. Del. Mar. 27, 2009) [Docket No. 187] (same); *In re Aleris Int'l, Inc.*, Ch. 11 Case No. 09-10478 (BLS) (Bankr. D. Del. Mar. 16, 2009) [Docket No. 291] (same); *In re Recycled Paper Greetings, Inc.*, Ch. 11 Case. No. 09-10002 (KG) (Bankr. D. Del. Jan. 23, 2009) [Docket No. 140] (same); *In re Key Plastics LLC*, Ch. 11 Case No. 08-13324 (MFW) (Bankr. D. Del. Jan. 6, 2009) [Docket No. 99] (same); *In re Vertis Holdings, Inc.*, Ch. 11 Case No. 08-11460 (CSS) (Bankr. D. Del. Aug. 13, 2008) [Docket No. 162] (same); *In re Semcrude, L.P.*, Ch. 11 Case No. 08-11525 (BLS) (Bankr. D. Del. Aug. 18, 2008) [Docket No. 813] (same); *In re Landsource Comtys. Dev. LLC*, Ch. 11 Case No. 08-11111 (KJC) (Bankr. D. Del. July 1, 2008) [Docket No. 147] (same).

44.     In addition to the Adequate Assurance Deposit, however, the Debtors' ability to pay for future Utility Services in the ordinary course of business with their cash generated from operations and/or their postpetition financing and the nature and short duration of these prepackaged chapter 11 cases – where the Debtors expect to be able to pay postpetition the prepetition claims of the Utility Companies in the ordinary course of business – further support

approval of the Debtors' Proposed Adequate Assurance. Accordingly, the Court should approve the Debtors' Proposed Adequate Assurance because it satisfies the requirements of section 366 of the Bankruptcy Code.

> **B.** The Debtors' Proposed Adequate Assurance Procedures Should be Approved Because the Procedures Fairly Balance the Rights and Interests of the Debtors and the Utility Companies in Accordance with the Purposes of Section 366 of the Bankruptcy Code

45. The Court should also approve the Debtors' proposed Adequate Assurance Procedures because it provides the Utility Companies with a fair and orderly process for seeking modification of the Proposed Adequate Assurance while protecting the Debtors from being forced to address numerous Additional Assurance Requests in a disorganized manner and at a time when the Debtors' efforts could be more productively focused on the seamless continuation of their operations in chapter 11.

46. In fact, the Adequate Assurance Procedures are merely a practical manifestation of the policy goal embodied in section 366 of the Bankruptcy Code. Congress enacted section 366 to protect a debtor from utility service cutoffs upon a bankruptcy filing while, at the same time, providing utility companies with adequate assurance that the debtor will pay for postpetition services. See H.R. Rep. No. 95-595, at 350 (1978) *reprinted in* 1978 U.S.C.C.A.N. 5963, 6306. Thus, section 366 protects a debtor by enjoining utilities from altering, refusing or discontinuing services solely on account of unpaid prepetition amounts for a period of thirty (30) days after the bankruptcy filing, and it protects utility companies by permitting them to alter, refuse or discontinue service after thirty (30) days if the debtors have not furnished "adequate assurance" of payment.

47. Here, notwithstanding a determination that the Debtors' Proposed Adequate Assurance constitutes sufficient adequate assurance, any rights the Utility Companies

believe they have under sections 366(b) and (c)(2) are wholly preserved under the Adequate

Assurance Procedures. *See In re Circuit City Stores, Inc.*, No. 08-35653, 2009 WL 484553, at

*5-6 (Bankr. E.D. Va. Jan. 14, 2009) (adopting similar adequate assurance procedures and

holding that "notwithstanding [a] determination on an interim basis that the adequate assurance

proposed by the [d]ebtors constitute[d] sufficient adequate assurance under 366(b), [the] utility

companies … [could still] exercise their rights under 366(c)(2) in accordance with the

[p]rocedures established by the [c]ourt"). The Utility Companies still may choose, in accordance

with the established Adequate Assurance Procedures, to request modification of the Proposed

Adequate Assurance. *See id.* at *6. On the other hand, the Adequate Assurance Procedures

avoid a haphazard and chaotic process whereby each Utility Company could make an

extortionate, last-minute demand for adequate assurance which the Debtors would be pressured

to pay under the threat of losing critical Utility Services. *See id.*

48.     In short, the Adequate Assurance Procedures ensure all parties act in good

faith when exercising their rights under section 366. Therefore, because the Adequate Assurance

Procedures are reasonable and in accord with the purposes of section 366, the Court should grant

the relief requested here. Similar procedures have been approved by courts in other cases. *See

id.; see also, e.g., In re NTK Holdings, Inc.*, Ch. 11 Case No. 09-13611 (KJC) (Bankr. D. Del.

Oct. 21, 2009) [Docket No. 137]; *In re R.H. Donnelley Corp.*, Ch. 11 Case No. 09-11833 (KG)

(Bankr. D. Del. June 25, 2009) [Docket No. 146]; *In re Aleris Int'l*, Ch. 11 Case No. 09-10478

(BLS) (Bankr. D. Del. Mar. 17, 2009) [Docket No. 291]; *In re Smurfit-Stone Container Corp.*,

Ch. 11 Case No. 09-10235 (BLS) (Bankr. D. Del. Feb. 23, 2009) [Docket No. 382]; *In re

Tribune Co.*, Ch. 11 Case No. 08-13141 (KJC) (Bankr. D. Del. Jan. 15, 2009) [Docket No. 234].

C.  The Court Has Authority to Grant the Requested Relief

49.  Congress did not, with BAPCPA, intend to abrogate the bankruptcy court's right to determine the amount of adequate assurance necessary.  Section 366(c)(3) uses language identical as that employed in 366(b) in allowing courts to modify the amount of adequate assurance.  *Compare* 11 U.S.C. § 366(b) ("On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.") *with* 11 U.S.C. § 366(c)(3)(A) ("On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment . . . .").  It follows that section 366(c) gives courts the same discretion in determining the amount of payment necessary for adequate assurance as they previously had under section 366(b) before BAPCPA.  *See In re Circuit City Stores,* 2009 WL 484553, at *4-5.

50.  Further, courts have held that Congress also did not intend to prohibit courts from fashioning reasonable procedures, such as the Adequate Assurance Procedures proposed herein, to implement the protections afforded under section 366.  *In re Circuit City Stores*, 2009 WL 484553, at *3.  *See generally In re Syroco, Inc.*, 374 B.R. 60 (Bankr. D.P.R. 2007).  Hence, the Court has authority to approve both the amount of the Proposed Adequate Assurance and the Adequate Assurance Procedures under section 366 of the Bankruptcy Code.

51.  In addition to its powers to grant the requested relief pursuant to section 366, the Court also has authority under section 105(a) of the Bankruptcy Code to grant the requested relief.  Section 105(a) provides that the Court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  For all the reasons already discussed, the Proposed Adequate Assurance and the Adequate Assurance Procedures are necessary and appropriate to carry out the provisions of the

Bankruptcy Code – in particular, section 366. Accordingly, the Court should exercise its powers under sections 366 and 105 of the Bankruptcy Code and approve both the Proposed Adequate Assurance and the Adequate Assurance Procedures.

## The Relief Requested is Appropriate

52.     The requested relief is further supported by the prepackaged nature of these cases. As set forth above and in greater detail in the Webster Declaration, the Debtors solicited votes on the Prepackaged Plan from all classes of holders of claims entitled to vote to accept or reject the Prepackaged Plan. The votes tabulated and received from these classes demonstrate acceptance of the Prepackaged Plan. The most critical and complex task required to effectuate a successful reorganization – the negotiation and formulation of a chapter 11 plan of reorganization – has already been accomplished. Thus, the Debtors respectfully submit that given the backdrop of these cases, the relief requested herein is appropriate inasmuch as such relief will assist the Debtors to move towards expeditious confirmation of the widely-supported Prepackaged Plan with the least possible disruption or harm to their businesses. Moreover, the relief requested is supported by the Debtors' major creditor groups. Based on the foregoing, the Debtors submit that the relief requested is necessary and appropriate, is in the best interests of their estates and creditors, and should be granted in all respects.

## Notice

53.     No trustee, examiner or statutory creditors' committee has been appointed in these chapter 11 cases. Notice of this Motion shall be provided to: (i) the United States Trustee for the District of Delaware; (ii) the Debtors' thirty (30) largest unsecured creditors (on a consolidated basis); (iii) counsel to the Postpetition Agent and counsel for the Prepetition First Lien Agent, Latham & Watkins, LLP (attn: David S. Heller, Esq. and Roger G. Schwartz, Esq.); (iv) counsel to the Prepetition Second Lien Agent, Goodwin Procter, LLP (attn: Emanuel Grillo,

Esq.); (v) counsel to Sankaty Investors, Ropes & Gray, LLP (attn: Alyson Allen, Esq. and Anne H. Pak, Esq.); (vi) counsel to Francisco Partners, Shearman & Sterling, LLP (attn: Jill Frizzley, Esq. and Danielle Kalish, Esq.); (vii) the Utility Companies; and (viii) those parties who have requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

## No Previous Request

54.     No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE the Debtors respectfully request entry of the Interim Order granting the relief requested herein and such other and further relief as is just and proper.

Dated: March 30, 2010
      Wilmington, Delaware

                                   Mark D. Collins (No. 2981)
                                   Paul N. Heath (No. 3704)
                                   Chun I. Jang (No. 4790)
                                   Travis A. McRoberts (No. 5274)
                                   RICHARDS, LAYTON & FINGER, P.A.
                                   One Rodney Square
                                   920 North King Street
                                   Wilmington, Delaware 19801
                                   Telephone: (302) 651-7700
                                   Facsimile:  (302) 651-7701

                                        – and –

                                   Stephen A. Youngman
                                   WEIL, GOTSHAL & MANGES LLP
                                   200 Crescent Court, Suite 300
                                   Dallas, Texas  75201
                                   Telephone: (214) 746-7700
                                   Facsimile:  (214) 746-7777

                                   Proposed Attorneys for Debtors
                                   and Debtors in Possession

**Exhibit A**

**Interim Order**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

------------------------------------------------------------------------x
                                          :
**In re**                                 :          **Chapter 11**
                                          :
**ELECTRICAL COMPONENTS**                 :          **Case No. _____ (____)**
**INTERNATIONAL, INC.** *et al.,*[1]      :
                                          :
              **Debtors.**                :          **Joint Administration Requested**
                                          :
------------------------------------------------------------------------x

### INTERIM ORDER PURSUANT TO SECTIONS 105(a) AND 366 OF THE BANKRUPTCY CODE (I) PROHIBITING UTILITIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICE; (II) APPROVING THE DEBTORS' PROPOSED ADEQUATE ASSURANCE; (III) APPROVING PROCEDURES FOR RESOLVING REQUESTS FOR ADDITIONAL ADEQUATE ASSURANCE; AND (IV) SCHEDULING A FINAL HEARING

Upon the motion (the "**Motion**"), dated March 30, 2010, of Electrical

Components International, Inc. and certain of its affiliates, as debtors and debtors in possession

in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to sections

105(a) and 366 of the Bankruptcy Code for (A) an interim order (the "**Interim Order**"),[2]

(i) prohibiting Utility Companies from altering, refusing, or discontinuing services to, or

discriminating against the Debtors on account of prepetition amounts outstanding, or on account

of any perceived inadequacy of the Debtors' proposed adequate assurance pending entry of a

final order; (ii) approving the Debtors' Proposed Adequate Assurance; (iii) approving the

Debtors' proposed procedures for resolving any Additional Assurance Requests; and

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each debtor's federal tax identification number, are: Electrical Components International, Inc. (4361); FP-ECI Holdings Company (4246); ECM Holding Company (7759); Noma O.P., Inc. (5495). The address for each of the Debtors is 1 City Place Drive, Suite 450, St. Louis, Missouri, 63141.

[2] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Motion.

(iv) scheduling a hearing on the Motion to consider granting the relief requested herein on a final

basis (the "**Final Hearing**"); and (B) a final order granting the relief requested herein on a final

basis (the "**Final Order**"), all as more fully described in the Motion; and upon consideration of

the *Declaration of David J. Webster in Support of the Debtors' Chapter 11 Petitions and Request

for First Day Relief* (the "**Webster Declaration**"); and consideration of the Motion and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having

jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C.

§§ 157 and 1334; and due and proper notice of the hearing to consider the relief requested herein

(the "**Interim Hearing**") having been provided to: (i) the United States Trustee for the District

of Delaware; (ii) the Debtors' thirty (30) largest unsecured creditors (on a consolidated basis);

(iii) counsel to the Postpetition Agent and counsel for the Prepetition First Lien Agent, Latham &

Watkins, LLP (attn: David S. Heller, Esq. and Roger G. Schwartz, Esq.); (iv) counsel to the

Prepetition Second Lien Agent, Goodwin Procter, LLP (attn: Emanuel Grillo, Esq.); (v) counsel

to Sankaty Investors, Ropes & Gray, LLP (attn: Alyson Allen, Esq. and Anne H. Pak, Esq.); (vi)

counsel to Francisco Partners, Shearman & Sterling, LLP (attn: Jill Frizzley, Esq. and Danielle

Kalish, Esq.); (vii) the Utility Companies; and (viii) those parties who have requested notice

pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**"), and no further notice

being necessary; and the legal and factual bases set forth in the Motion establishing just and

sufficient cause to grant the relief requested therein, including the express consent of any known

creditors with a lien on, and/or a security interest in, the Adequate Assurance Deposit and/or the

Utility Deposit Account; and the relief granted herein being in the best interests of the Debtors,

their estates, creditors, and all parties in interest; and the Court having held the Interim Hearing

with the appearances of interested parties noted in the record of the Interim Hearing; and notice as ordered herein of a Final Hearing to consider granting the relief requested in the Motion on a final basis and the deadline to respond or object to any such relief (the "**Objection Deadline**") being due and proper, and no further notice of the Final Hearing or Objection Deadline being necessary; and upon all of the proceedings before the Court, the Court hereby ORDERS that:

1. The Motion is granted on an interim basis to the extent set forth herein.

2. Until such time as the Final Order or another order is entered by the Court, all Utility Companies identified on Exhibit 1 annexed hereto (the "**Utility Services List**") are (i) prohibited from altering, refusing, or discontinuing Utility Services to the Debtors on account of any unpaid prepetition charges or (ii) discriminating against the Debtors as a result of the Debtors' bankruptcy filings or any outstanding prepetition invoices except as provided herein.

3. As adequate assurance for the payment of Utility Services, the Debtors shall deposit cash in an amount equal to the Debtors' approximate aggregate cost of Utility Services for a two (2) week period, calculated as an historical average over a twelve-month period (the "**Adequate Assurance Deposit**") into a segregated account (the "**Utility Deposit Account**") with Wells Fargo Bank, N.A. ("**Wells Fargo**") for the benefit of the Utility Companies on a *pro rata* basis, except those Utility Companies that (i) expressly agree in writing (which includes electronic mail) to a lesser amount.

4. Except as the amount may be reduced by application of the provisions of this Order, the Adequate Assurance Deposit in the amount of $52,000 shall be deposited in the Utility Deposit Account within twenty (20) days after the Commencement Date and shall be held for the purpose of providing each Utility Company adequate assurance of payment for its postpetition Utility Services to the Debtors.

5.     Within three (3) business days after the Utility Deposit Account is established, the Debtors shall send each Utility Company a notice which includes the name, address, contact person, and facsimile number of the contact person at Wells Fargo and the account number of the Utility Deposit Account.

6.     The Adequate Assurance Deposit shall be maintained until the earlier of (i) entry of an order of the Court authorizing the return of the Adequate Assurance Deposit to the Debtors and (ii) the effective date of a plan of reorganization for the Debtors, at which time the Adequate Assurance Deposit shall automatically, without further order of the Court, be returned to the reorganized Debtors.

7.     The following procedures (the "**Adequate Assurance Procedures**") for any Utility Company not satisfied with the Proposed Adequate Assurance to request additional adequate assurance (an "**Additional Assurance Request**") are approved on an interim basis:

(a)     Within three (3) business days after the date of entry of the Interim Order, the Debtors shall mail a copy of the Interim Order to the Utility Companies on the Utility Services List.

(b)     If a Utility Company is not satisfied with the Proposed Adequate Assurance and seeks additional adequate assurance of payment, it must serve an Additional Assurance Request upon (i) ECI, Inc., 1 City Place, Suite 450, St. Louis, Missouri 63141 (Attn: Jason Cattoor); (ii) Weil, Gotshal & Manges LLP, 200 Crescent Court, Suite 300, Dallas, Texas 75201 (Attn: Charles M. Persons, Esq.); and (iii) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn: Mark D. Collins, Esq.) (collectively, the "**Adequate Assurance Notice Parties**") within fourteen (14) days of service of this Interim Order on the Utility Company.

(c)     Each Additional Assurance Request must (i) be in writing; (ii) set forth the type of Utility Services provided to the Debtors and to which of the Debtors' locations; (iii) include a summary of the Debtors' payment history relevant to the affected account(s); (iv) include whether the Utility Company holds a deposit or other security, and, if so, in what amount; and (v) set forth why the Utility Company believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

(d)     Upon the Debtors' timely receipt of an Additional Assurance Request, the Debtors shall have the greater of (i) fourteen (14) days from the receipt of such Additional Assurance Request or (ii) thirty (30) days from the Commencement Date (collectively, the "**Resolution Period**") to negotiate with the requesting Utility Company and resolve its Additional Assurance Request.

(e)     The Debtors may, in their sole discretion and without further order of this Court, resolve any Additional Assurance Request and/or Determination Motion (as defined below) by mutual agreement with the requesting Utility Company. In connection with any such agreement, the Debtors may, without further order of this Court, provide a Utility Company with additional adequate assurance of future payment, including, but not limited to, cash deposits, prepayments, and/or other forms of security; provided, however, that the Debtors shall maintain a summary record of such agreements and their respective terms, and such summary record and the agreements themselves shall be available to any official committee appointed in the cases and/or the Office of the United States Trustee upon demand.

(f)     If the Debtors are unable to reach a resolution with the Utility Company during the Resolution Period, the Debtors shall file a motion with the Court seeking a hearing to determine the adequacy of assurance of payment with respect to a particular Utility Company (the "**Determination Motion**") pursuant to section 366(c)(3) of the Bankruptcy Code.

8.     The Final Hearing, if necessary, on the Motion is scheduled for _____ __, 2010 at __:__ __.m. (Prevailing Eastern Time), and any objections or responses to the Motion (each, an "**Objection**") shall be filed and served upon the Adequate Assurance Notice Parties so that the Objection is actually received by the date that is five (5) business days before the date of the Final Hearing.

9.     If no Objections are filed to the Motion, the Court may enter a Final Order without further notice or hearing.

10.     Any Utility Company that fails to submit an Additional Assurance Request or file a timely Objection shall be deemed to have adequate assurance of payment that is

satisfactory to it within the meaning of section 366 of the Bankruptcy Code and shall be forbidden from altering, refusing, or discontinuing service to the Debtors on account of any prepetition charges, subject to the Utility Company's rights to seek a modification of adequate assurance under 11 U.S.C. § 366(c)(3).

11.     The Debtors are authorized to amend or supplement, as necessary, the Utility Services List by adding or deleting a Utility Company. Such amendment shall be accomplished by filing with this Court a notice and serving same on the affected Utility Company. The affected Utility Company shall have twenty (20) days to object to application of this Order to it. If no such objection is filed, this Order shall apply to the Utility Company. Subject to the foregoing, the relief granted herein shall be binding on all Utility Companies providing services to the Debtors, regardless of when each Utility Company was added to the Utility Services List, provided that if a Utility Company is added to the list, the Debtors may increase the amount of the Adequate Assurance Deposit by an amount equal to the cost of two (2) weeks of Utility Services provided by such additional Utility Company to the Debtors, calculated as an historical average over the past twelve (12) months.

12.     Any Utility Company added to the Utility Services List subsequent to the date of the Motion shall have the right to make an Additional Assurance Request in compliance with the proposed Adequate Assurance Procedures.

13.     The Debtors' service of the Motion upon a company or a company's inclusion on the Utility Services List shall not constitute an admission or concession that any such entity is a utility within the meaning of section 366 of the Bankruptcy Code and shall not prejudice the rights and defenses of the Debtors or the Utility Companies with respect thereto.

14.     Nothing in this Order or the Motion shall be deemed to constitute the postpetition assumption or adoption of any agreement pursuant to section 365 of the Bankruptcy Code.

15.     The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

16.     The Debtors shall serve this Order within three (3) business days of its entry on the parties in interest identified in local Rule 2002-1(b), including the Notice Parties.

17.     Nothing in this Order affects or otherwise modifies the rights of the Utility Companies under 11 U.S.C. § 366(c)(4).

18.     Notwithstanding anything to the contrary herein, any payment to be made hereunder shall be subject to the requirements imposed on the Debtors under any approved debtor-in-possession financing facility, any budget prepared in connection therewith and any order authorizing entry into such debtor-in-possession financing facility or authorizing the use of cash collateral.

19.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

20.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

Dated: _____, 2010
          Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

**Exhibit 1**

**Utility Services List**

# Utility Services List[1]

| Utility Provider | Address | Account No. (Last 4 Digits) | Average Monthly Cost |
|---|---|---|---|
| AT&T | PO BOX 5019 CAROL STREAM, IL 60197 | 6185 | $2,493.01 |
| AT&T | PO BOX 5001 AURORA, IL 60197 | 7616 | $1,696.68 |
| AT&T | PO BOX 8100 AURORA, IL 60507 | 1349 | $359.17 |
| AT&T | PO BOX 5001 AURORA, IL 60197 | 3887 | $146.02 |
| AT&T | PO BOX 5017 CAROL STREAM, IL 60197 | 9099 | $2,175.35 |
| AT&T | PO BOX 5019 CAROL STREAM, IL 60197 | 4332 | $8,602.93 |
| AT&T | PO BOX 105414 ATLANTA, GA 30348 | 0125 | $109.80 |
| AT&T Wireless | PO BOX 6463 CAROL STREAM, IL 60197 | 6351 | $1,813.31 |
| AT&T Wireless | PO BOX 6463 CAROL STREAM, IL 60197 | 5467 | $154.66 |
| DirecTV | PO BOX 60036 LOS ANGELES, CA 90060 | 1553 | $143.96 |
| DirecTV | PO BOX 60036 LOS ANGELES, CA 90060 | 6147 | $143.96 |
| El Paso Disposal | PO BOX 20179 EL PASO, TX 79998 | 6441 | $850.00 |

---

[1] The inclusion of any entity on, or omission of any entity from this Exhibit is not an admission by the Debtors that such entity is or is not a utility within the meaning of section 366 of the Bankruptcy Code, and the Debtors reserve all rights with respect thereto.

1

| | | | |
|---|---|---|---|
| FHCC-II Associates | 34975 WEST TWELVE MILE ROAD, SUITE #100 FARMINGTON HILLS, MI 48331 | 110 | $382.69 |
| Intercall | 15272 COLLECTIONS CENTER DRIVE, Chicago, IL 60693 | 6644 | $19,132.09 |
| Intercall | 175A, BENCOOLEN STREET #10-05/11 BURLINGTON SQUARE SINGAPORE 189650 | 6036 | $134.26 |
| Nuvox | PO BOX 580451 CHARLOTTE, NC 28258 | 4179 | $1,004.23 |
| Sprint | PO BOX 4181 CAROL STREAM, IL 60197 | 5819 | $1,355.57 |
| Texas Gas Service | PO BOX 31427 EL PASO, TX 79931-0427 | 8411 | $1,200.00 |
| The Electric Company | PO BOX 20983 EL PASO, TX 79998-0982 | 5970 | $2,000.00 |
| T-Mobile | PO BOX 790047 ST. LOUIS, MO 63179 | 2381 | $26,067.59 |
| TW Telecom | PO BOX 172567 DENVER, CO 80217 | 1290 | $927.27 |
| TW Telecom | PO BOX 172567 DENVER, CO 80217 | 0634 | $5,723.31 |
| Verizon | PO BOX 9688 MISSION HILLS, CA 91346 | 7400 | $167.18 |
| Verizon Business | PO BOX 371873 PITTSBURGH, PA 15250 | 4X26 | $16,344.23 |
| Verizon Business | PO BOX 371392 PITTSBURGH, PA 15250 | 6442 | $4,469.88 |
| Verizon Business | PO BOX 371355 PITTSBURGH, PA 15250 | 5814 | $2,666.97 |

RLF1 3555522v.1

| Verizon Business | PO BOX 371355, PITTSBURGH PA, 15250 | 7253 | $1,011.00 |
|---|---|---|---|
| Verizon Wireless | PO BOX 9622 MISSION HILLS, CA 91346 | 5134-00001 | $2,014.86 |
| Verizon Wireless | PO BOX 9622MISSION HILLS, CA 91346 | 5134-00004 | $93.77 |
| Verizon Wireless | PO BOX 660108 DALLAS, TX 75266 | 7577-00001 | $164.53 |
| Verizon Wireless | PO BOX 25505 LEHIGH VALLEY, PA 18002 | 5184-00001 | $170.63 |

**Exhibit B**

**Final Order**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

-------------------------------------------------------------------x
:
**In re**                                :          **Chapter 11**
:
**ELECTRICAL COMPONENTS**       :          **Case No. _____ (____)**
**INTERNATIONAL, INC.** *et al.*,[1]        :
:
               **Debtors.**          :          **Joint Administration Requested**
:
-------------------------------------------------------------------x

### FINAL ORDER PURSUANT TO SECTIONS 105(a) AND 366 OF THE BANKRUPTCY CODE (I) PROHIBITING UTILITIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICE; (II) APPROVING THE DEBTORS' PROPOSED ADEQUATE ASSURANCE; AND (III) APPROVING PROCEDURES FOR RESOLVING REQUESTS FOR ADDITIONAL ADEQUATE ASSURANCE

Upon the motion (the "**Motion**"), dated March 30, 2010, of Electrical Components

International, Inc. and certain of its affiliates, as debtors and debtors in possession in the above-

captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to sections 105(a) and 366 of

the Bankruptcy Code[2] for a final order (i) prohibiting Utility Companies from altering, refusing,

or discontinuing services to, or discriminating against the Debtors on account of prepetition

amounts outstanding, or on account of any perceived inadequacy of the Debtors' proposed

adequate assurance; (ii) approving the Debtors' Proposed Adequate Assurance; and

(iii) approving the Debtors' proposed procedures for resolving any Adequate Assurance

Requests, all as more fully described in the Motion; and upon consideration of the *Declaration of*

*David J. Webster in Support of the Debtors' Chapter 11 Petitions and Request for First Day*

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each debtor's federal tax identification number, are: Electrical Components International, Inc. (4361); FP-ECI Holdings Company (4246); ECM Holding Company (7759); Noma O.P., Inc. (5495). The address for each of the Debtors is 1 City Place Drive, Suite 450, St. Louis, Missouri, 63141.

[2] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Motion.

*Relief* (the "**Webster Declaration**"); and consideration of the Motion and the relief requested

therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before

this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having jurisdiction to consider

the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and

due and proper notice of the Motion and hearing to consider the relief requested herein (the

"**Hearing**") having been provided to: (i) the United States Trustee for the District of Delaware;

(ii) the Debtors' thirty (30) largest unsecured creditors (on a consolidated basis); (iii) counsel to

the Postpetition Agent and counsel for the Prepetition First Lien Agent, Latham & Watkins, LLP

(attn: David S. Heller, Esq. and Roger G. Schwartz, Esq.); (iv) counsel to the Prepetition Second

Lien Agent, Goodwin Procter, LLP (attn: Emanuel Grillo, Esq.); (v) counsel to Sankaty

Investors, Ropes & Gray, LLP (attn: Alyson Allen, Esq. and Anne H. Pak, Esq.); (vi) counsel to

Francisco Partners, Shearman & Sterling, LLP (attn: Jill Frizzley, Esq. and Danielle Kalish,

Esq.); (vii) the Utility Companies; and (viii) those parties who have requested notice pursuant to

Bankruptcy Rule 2002 (collectively, the "**Notice Parties**"), and no further notice being

necessary; and the legal and factual bases set forth in the Motion establishing just and sufficient

cause to grant the relief requested therein, including the express consent of any known creditors

with a lien on, and/or a security interest in, the Adequate Assurance Deposit and/or the Utility

Deposit Account; and the relief granted herein being in the best interests of the Debtors, their

estates, creditors, and all parties in interest; and the Court having held the Hearing with the

appearances of interested parties noted in the record of the Hearing; and upon all of the

proceedings before the Court, the Court hereby ORDERS that:

      1.      The Motion is granted to the extent set forth herein.

2.    Absent compliance with the Adequate Assurance Procedures, all Utility Companies identified on Exhibit 1 annexed hereto (the "**Utility Services List**") are (i) prohibited from altering, refusing, or discontinuing Utility Services to the Debtors on account of any unpaid prepetition charges, (ii) discriminating against the Debtors, or (iii) requiring payment of a deposit or receipt or any other security for continued service as a result of the Debtors' bankruptcy filings or any outstanding prepetition invoices other than the Adequate Assurance Deposit in the amount of $52,000 that the Debtors have placed in the Utility Deposit Account.

3.    If an amount relating to postpetition Utility Services provided by a Utility Company is unpaid beyond any applicable grace period, such Utility Company may request a disbursement from the Utility Deposit Account (a "**Disbursement Request**") by giving notice by facsimile to (i) Jason Cattoor, ECI, Inc., facsimile number 314-261-7799 and (ii) Charles M. Persons, Esq., Weil, Gotshal & Manges LLP, facsimile number (214) 746-7777. A Disbursement Request shall only be honored on the date that is three (3) business days after the date of the Disbursement Request.

4.    The Adequate Assurance Deposit shall be maintained until the earlier of (i) entry of an order of the Court authorizing the return of the Adequate Assurance Deposit to the Debtors and (ii) the effective date of a plan of reorganization for the Debtors, at which time the Adequate Assurance Deposit shall automatically, without further order of the Court, be returned to the reorganized Debtors.

5.    The Debtors shall have authority to reduce the Adequate Assurance Deposit to the extent that it includes an amount on account of a Utility Company that the Debtors subsequently determine, in their sole discretion, should be removed from the Utility Services List.

6.      The Debtors' Proposed Adequate Assurance satisfies the requirements

under section 366 of the Bankruptcy Code.

7.      The following procedures (the "**Adequate Assurance Procedures**") for

any Utility Company not satisfied with the Proposed Adequate Assurance to request additional

adequate assurance (an "**Additional Assurance Request**") are approved:

    (a)    If a Utility Company is not satisfied with the proposed Adequate Assurance and seeks additional adequate assurance of payment, it must serve an Additional Assurance Request upon (i) ECI, Inc., 1 City Place, Suite 450, St. Louis, Missouri 63141 (Attn: Jason Cattoor); (ii) Weil, Gotshal & Manges LLP, 200 Crescent Court, Suite 300, Dallas, Texas 75201 (Attn: Charles M. Persons, Esq.); and (iii) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn: Mark D. Collins, Esq.) (collectively, the "**Adequate Assurance Notice Parties**") within fourteen (14) days of service of the Interim Order on the Utility Company.

    (b)    Each Additional Assurance Request must (i) be in writing; (ii) set forth the type of Utility Services provided to the Debtors and to which of the Debtors' locations; (iii) include a summary of the Debtors' payment history relevant to the affected account(s); (iv) include whether the Utility Company holds a deposit or other security, and, if so, in what amount; and (v) set forth why the Utility Company believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

    (c)    Upon the Debtors' receipt of an Additional Assurance Request, the Debtors shall have the greater of (i) fourteen (14) days from the receipt of such Additional Assurance Request or (ii) thirty (30) days from the Commencement Date (collectively, the "**Resolution Period**") to negotiate with the requesting Utility Company and resolve its Additional Assurance Request.

    (d)    The Debtors may, in their sole discretion and without further order of this Court, resolve any Additional Assurance Request and/or Determination Motion (as defined below) by mutual agreement with the requesting Utility Company. In connection with any such agreement, the Debtors may, without further order of this Court, provide a Utility Company with additional adequate assurance of future payment, including, but not limited to, cash deposits, prepayments, and/or other forms of security; provided, however, that the Debtors shall maintain a summary record of such agreements and their respective terms, and such summary record and the agreements themselves

shall be available to any official committee appointed in the cases and/or the Office of the United States Trustee upon demand.

(e)     If the Debtors are unable to reach a resolution with the Utility Company during the Resolution Period, the Debtors shall file a motion with the Court seeking a hearing to determine the adequacy of assurance of payment with respect to a particular Utility Company (the "**Determination Motion**") pursuant to section 366(c)(3) of the Bankruptcy Code.

8.      Any Utility Company that fails to submit an Additional Assurance Request or file a timely Objection shall be deemed to have adequate assurance of payment that is satisfactory to it within the meaning of section 366 of the Bankruptcy Code and shall be forbidden from altering, refusing, or discontinuing service to the Debtors on account of any prepetition charges, subject to the Utility Company's rights to seek a modification of adequate assurance under 11 U.S.C. § 366(c)(3).

9.      The Debtors are authorized to amend or supplement, as necessary, the Utility Services List by adding or deleting a Utility Company. Such amendment shall be accomplished by filing with this Court a notice and serving same on the affected Utility Company. The affected Utility Company shall have twenty (20) days to object to application of this Order to it. If no such objection is filed, this Order shall apply to the Utility Company. Subject to the foregoing, the relief granted herein shall be binding on all Utility Companies providing services to the Debtors, regardless of when each Utility Company was added to the Utility Services List, provided that if a Utility Company is added to the list, the Debtors may increase the amount of the Adequate Assurance Deposit by an amount equal to the cost of two (2) weeks of Utility Services provided by such additional Utility Company to the Debtors, calculated as an historical average over the past twelve (12) months.

10. Any Utility Company added to the Utility Services List subsequent to the date of the Motion shall have the right to make an Additional Assurance Request in compliance with the proposed Adequate Assurance Procedures.

11. The Debtors' service of the Motion, the Interim Order, or this Final Order upon a company or a company's inclusion on the Utility Services List shall not constitute an admission or concession that any such entity is a utility within the meaning of section 366 of the Bankruptcy Code and shall not prejudice the rights and defenses of the Debtors or the Utility Companies with respect thereto.

12. Nothing in this Order or the Motion shall be deemed to constitute the postpetition assumption or adoption of any agreement pursuant to section 365 of the Bankruptcy Code.

13. The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

14. The Debtors shall serve this Order within three (3) business days of its entry on the parties in interest identified in local Rule 2002-1(b), including the Notice Parties.

15. Nothing in this Order affects or otherwise modifies the rights of the Utility Companies under 11 U.S.C. § 366(c)(4).

16. Notwithstanding anything to the contrary herein, any payment to be made hereunder shall be subject to the requirements imposed on the Debtors under any approved debtor-in-possession financing facility, any budget prepared in connection therewith and any order authorizing entry into such debtor-in-possession financing facility or authorizing the use of cash collateral.

17. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

18. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

Dated: _____ ___, 2010
       Wilmington, Delaware

                   _____
                   UNITED STATES BANKRUPTCY JUDGE

# Exhibit 1

## Utility Services List

# Utility Services List[1]

| Utility Provider | Address | Account No. (Last 4 Digits) | Average Monthly Cost |
|---|---|---|---|
| AT&T | PO BOX 5019 CAROL STREAM, IL 60197 | 6185 | $2,493.01 |
| AT&T | PO BOX 5001 AURORA, IL 60197 | 7616 | $1,696.68 |
| AT&T | PO BOX 8100 AURORA, IL 60507 | 1349 | $359.17 |
| AT&T | PO BOX 5001 AURORA, IL 60197 | 3887 | $146.02 |
| AT&T | PO BOX 5017 CAROL STREAM, IL 60197 | 9099 | $2,175.35 |
| AT&T | PO BOX 5019 CAROL STREAM, IL 60197 | 4332 | $8,602.93 |
| AT&T | PO BOX 105414 ATLANTA, GA 30348 | 0125 | $109.80 |
| AT&T Wireless | PO BOX 6463 CAROL STREAM, IL 60197 | 6351 | $1,813.31 |
| AT&T Wireless | PO BOX 6463 CAROL STREAM, IL 60197 | 5467 | $154.66 |
| DirecTV | PO BOX 60036 LOS ANGELES, CA 90060 | 1553 | $143.96 |
| DirecTV | PO BOX 60036 LOS ANGELES, CA 90060 | 6147 | $143.96 |
| El Paso Disposal | PO BOX 20179 EL PASO, TX 79998 | 6441 | $850.00 |

---

[1] The inclusion of any entity on, or omission of any entity from this Exhibit is not an admission by the Debtors that such entity is or is not a utility within the meaning of section 366 of the Bankruptcy Code, and the Debtors reserve all rights with respect thereto.

1

| | | | |
|---|---|---|---|
| FHCC-II Associates | 34975 WEST TWELVE MILE ROAD, SUITE #100 FARMINGTON HILLS, MI 48331 | 110 | $382.69 |
| Intercall | 15272 COLLECTIONS CENTER DRIVE, Chicago, IL 60693 | 6644 | $19,132.09 |
| Intercall | 175A, BENCOOLEN STREET #10-05/11 BURLINGTON SQUARE SINGAPORE 189650 | 6036 | $134.26 |
| Nuvox | PO BOX 580451 CHARLOTTE, NC 28258 | 4179 | $1,004.23 |
| Sprint | PO BOX 4181 CAROL STREAM, IL 60197 | 5819 | $1,355.57 |
| Texas Gas Service | PO BOX 31427 EL PASO, TX 79931-0427 | 8411 | $1,200.00 |
| The Electric Company | PO BOX 20983 EL PASO, TX 79998-0982 | 5970 | $2,000.00 |
| T-Mobile | PO BOX 790047 ST. LOUIS, MO 63179 | 2381 | $26,067.59 |
| TW Telecom | PO BOX 172567 DENVER, CO 80217 | 1290 | $927.27 |
| TW Telecom | PO BOX 172567 DENVER, CO 80217 | 0634 | $5,723.31 |
| Verizon | PO BOX 9688 MISSION HILLS, CA 91346 | 7400 | $167.18 |
| Verizon Business | PO BOX 371873 PITTSBURGH, PA 15250 | 4X26 | $16,344.23 |
| Verizon Business | PO BOX 371392 PITTSBURGH, PA 15250 | 6442 | $4,469.88 |
| Verizon Business | PO BOX 371355 PITTSBURGH, PA 15250 | 5814 | $2,666.97 |

| | | | |
|---|---|---|---|
| Verizon Business | PO BOX 371355, PITTSBURGH PA, 15250 | 7253 | $1,011.00 |
| Verizon Wireless | PO BOX 9622 MISSION HILLS, CA 91346 | 5134-00001 | $2,014.86 |
| Verizon Wireless | PO BOX 9622MISSION HILLS, CA 91346 | 5134-00004 | $93.77 |
| Verizon Wireless | PO BOX 660108 DALLAS, TX 75266 | 7577-00001 | $164.53 |
| Verizon Wireless | PO BOX 25505 LEHIGH VALLEY, PA 18002 | 5184-00001 | $170.63 |

RLF1 3555522v.1

**Exhibit C**

**Utility Services List**

## Utility Services List[1]

| Utility Provider | Address | Account No. (Last 4 Digits) | Average Monthly Cost |
|---|---|---|---|
| | | | |
| AT&T | PO BOX 5019 CAROL STREAM, IL 60197 | 6185 | $2,493.01 |
| AT&T | PO BOX 5001 AURORA, IL 60197 | 7616 | $1,696.68 |
| AT&T | PO BOX 8100 AURORA, IL 60507 | 1349 | $359.17 |
| AT&T | PO BOX 5001 AURORA, IL 60197 | 3887 | $146.02 |
| AT&T | PO BOX 5017 CAROL STREAM, IL 60197 | 9099 | $2,175.35 |
| AT&T | PO BOX 5019 CAROL STREAM, IL 60197 | 4332 | $8,602.93 |
| AT&T | PO BOX 105414 ATLANTA, GA 30348 | 0125 | $109.80 |
| AT&T Wireless | PO BOX 6463 CAROL STREAM, IL 60197 | 6351 | $1,813.31 |
| AT&T Wireless | PO BOX 6463 CAROL STREAM, IL 60197 | 5467 | $154.66 |
| DirecTV | PO BOX 60036 LOS ANGELES, CA 90060 | 1553 | $143.96 |
| DirecTV | PO BOX 60036 LOS ANGELES, CA 90060 | 6147 | $143.96 |
| El Paso Disposal | PO BOX 20179 EL PASO, TX 79998 | 6441 | $850.00 |

---

[1] The inclusion of any entity on, or omission of any entity from this Exhibit is not an admission by the Debtors that such entity is or is not a utility within the meaning of section 366 of the Bankruptcy Code, and the Debtors reserve all rights with respect thereto.

1

| FHCC-II Associates | 34975 WEST TWELVE MILE ROAD, SUITE #100 FARMINGTON HILLS, MI 48331 | 110 | $382.69 |
|---|---|---|---|
| Intercall | 15272 COLLECTIONS CENTER DRIVE, Chicago, IL 60693 | 6644 | $19,132.09 |
| Intercall | 175A, BENCOOLEN STREET #10-05/11 BURLINGTON SQUARE SINGAPORE 189650 | 6036 | $134.26 |
| Nuvox | PO BOX 580451 CHARLOTTE, NC 28258 | 4179 | $1,004.23 |
| Sprint | PO BOX 4181 CAROL STREAM, IL 60197 | 5819 | $1,355.57 |
| Texas Gas Service | PO BOX 31427 EL PASO, TX 79931-0427 | 8411 | $1,200.00 |
| The Electric Company | PO BOX 20983 EL PASO, TX 79998-0982 | 5970 | $2,000.00 |
| T-Mobile | PO BOX 790047 ST. LOUIS, MO 63179 | 2381 | $26,067.59 |
| TW Telecom | PO BOX 172567 DENVER, CO 80217 | 1290 | $927.27 |
| TW Telecom | PO BOX 172567 DENVER, CO 80217 | 0634 | $5,723.31 |
| Verizon | PO BOX 9688 MISSION HILLS, CA 91346 | 7400 | $167.18 |
| Verizon Business | PO BOX 371873 PITTSBURGH, PA 15250 | 4X26 | $16,344.23 |
| Verizon Business | PO BOX 371392 PITTSBURGH, PA 15250 | 6442 | $4,469.88 |
| Verizon Business | PO BOX 371355 PITTSBURGH, PA 15250 | 5814 | $2,666.97 |

RLF1 3555522v.1

| Verizon Business | PO BOX 371355, PITTSBURGH PA, 15250 | 7253 | $1,011.00 |
|---|---|---|---|
| Verizon Wireless | PO BOX 9622 MISSION HILLS, CA 91346 | 5134-00001 | $2,014.86 |
| Verizon Wireless | PO BOX 9622MISSION HILLS, CA 91346 | 5134-00004 | $93.77 |
| Verizon Wireless | PO BOX 660108 DALLAS, TX 75266 | 7577-00001 | $164.53 |
| Verizon Wireless | PO BOX 25505 LEHIGH VALLEY, PA 18002 | 5184-00001 | $170.63 |

RLF1 3555522v.1