To the extent the Required Lenders or all the Lenders, as applicable, waive the provisions of this <u>Section 6.05</u> with respect to the sale of any Collateral, or any Collateral is sold as permitted by this <u>Section 6.05</u>, such Collateral (unless sold to a Company) shall be sold free and clear of the Security Documents, the Orders, and the Pre-Petition Loan Documents, and, so long as Borrower shall have provided the Agents such certifications or documents as any Agent shall reasonably request in order to demonstrate compliance with this <u>Section 6.05</u>, the Agents shall take all actions they deem appropriate in order to effect the foregoing.

**SECTION 6.06** <u>Asset Sales</u>. Effect any Asset Sale, or agree to effect any Asset Sale, except that the following shall be permitted:

(a)     Asset Sales; *provided* that the aggregate consideration received in respect of all Asset Sales pursuant to this clause (a) shall not exceed $250,000 at any time;

(b)     mergers and consolidations in compliance with <u>Section 6.05</u>;

(c)     Investments in compliance with <u>Section 6.04</u>; and

(d)     supply chain finance programs (as defined, described or otherwise identified in the Budget) and factoring of accounts receivable by Foreign Subsidiaries of Holdings, in each case, in the ordinary course of business as set forth in <u>Schedule 6.06</u>.

To the extent the Required Lenders or all the Lenders, as applicable, waive the provisions of this <u>Section 6.06</u> with respect to the sale of any Collateral, or any Collateral is sold as permitted by this <u>Section 6.06</u>, such Collateral (unless sold to a Company) shall be sold free and clear of the Liens created by the Security Documents and the Orders, and the Pre-Petition Loan Documents and, so long as Borrower shall have provided the Agents an Officers' Certificate demonstrating compliance with this <u>Section 6.06</u>, the Agents shall take all actions they deem appropriate in order to effect the foregoing.

**SECTION 6.07** <u>Acquisitions</u>. Purchase or otherwise acquire (in one or a series of related transactions) any part of the property (whether tangible or intangible) of any person (or agree to do any of the foregoing at any future time), except that the following shall be permitted:

(a)     Capital Expenditures by Borrower and the Subsidiaries shall be permitted to the extent permitted in the Budget;

(b)     purchases and other acquisitions of inventory, materials, equipment and intangible property in the ordinary course of business and licenses of Intellectual Property in the ordinary course of business;

(c)     Investments in compliance with <u>Section 6.04</u>;

(d)     leases of real or personal property in the ordinary course of business and in accordance with the applicable Security Documents;

(e)     the Transactions as contemplated by the Transaction Documents; and

(f)     mergers and consolidations in compliance with Section 6.05.

*provided* that the Lien on and security interest in such property granted or to be granted in favor of the Collateral Agent under the Security Documents and the Orders shall be maintained or created in accordance with the provisions of Section 5.11 or Section 5.12, as applicable.

**SECTION 6.08     Dividends**. Authorize, declare or pay, directly or indirectly, any Dividends with respect to any Company, except that the following shall be permitted:

(a)     Dividends by any Company to Holdings, Borrower or any Subsidiary; *provided* that such Dividends are made ratably to the applicable equity holders;

(b)     (A) payments by Borrower to or on behalf of Holdings in an amount sufficient to pay franchise taxes and other fees required to maintain the legal existence of Holdings and (B) payments by Borrower to or on behalf of Holdings in an amount sufficient to pay reasonable and documented out-of-pocket legal, accounting and filing costs and other expenses in the nature of overhead in the ordinary course of business of Holdings, in the case of clauses (A) and (B) in an aggregate amount not to exceed $500,000 in any fiscal year; and

(c)     Permitted Tax Distributions.

**SECTION 6.09     Transactions with Affiliates**. Enter into, directly or indirectly, any transaction or series of related transactions, whether or not in the ordinary course of business, with any Affiliate of any Company (other than between or among Borrower and one or more Subsidiary Guarantors), other than on terms and conditions at least as favorable to such Company as would reasonably be obtained by such Company at that time in a comparable arm's-length transaction with a person other than an Affiliate, except that the following shall be permitted:

(a)     Dividends permitted by Section 6.08;

(b)     Investments permitted by Section 6.04(e), (f) and (g);

(c)     reasonable and customary director, officer and employee compensation (including bonuses) and other benefits (including retirement, health, stock option and other benefit plans) and indemnification arrangements, in each case approved by the Board of Directors of Borrower;

(d)     transactions with customers, clients, suppliers, joint venture partners or purchasers or sellers of goods and services, in each case in the ordinary course of business and otherwise not prohibited by the Loan Documents;

(e)     [Intentionally Omitted]

(f)     the existence of, and the performance by any Loan Party of its obligations under the terms of, any limited liability company, limited partnership or other Organizational Document or securityholders agreement (including any registration rights

86

agreement or purchase agreement related thereto) to which it is a party on the Closing Date and which has been disclosed to the Lenders as in effect on the Closing Date, and similar agreements that it may enter into thereafter; *provided, however*, that the existence of, or the performance by any Loan Party of obligations under, any amendment to any such existing agreement or any such similar agreement entered into after the Closing Date shall only be permitted by this Section 6.09(f) to the extent not more adverse to the interest of the Lenders in any material respect, when taken as a whole, than any of such documents and agreements as in effect on the Closing Date;

      (g)     [Intentionally Omitted]

      (h)     [Intentionally Omitted]

      (i)     the Transactions as contemplated by the Transaction Documents; and

      (j)     transfer pricing agreements entered into in the ordinary course of business from time to time among any of the Companies.

**SECTION 6.10**    **Financial Covenants**.

      (a)     Minimum Consolidated EBITDA. Permit Consolidated EBITDA for each consecutive three month period ending on the dates set forth below, to be, in each such case, less than the amount set forth opposite each such date in the table below:

| Month Ending | Minimum EBITDA |
|---|---|
| March 31, 2010 | $6,766,000 |
| April 30, 2010 | $7,066,000 |
| May 31, 2010 | $7,413,000 |
| June 30, 2010 | $7,495,000 |

      (b)     Minimum Liquidity. As of the third Business Day following the end of each calendar week (it being understood that "calendar week" shall begin on each Monday and end on the following Sunday) during the period beginning on the Petition Date and ending on the Maturity Date, permit the average Liquidity to be less than $7.5 million.

      (c)     Maximum Budget Variance. (i)With respect to the four-week period (the **"Initial Test Period"**) commencing with and including the week during which the Petition Date occurs, permit (x) Cash Receipts for the Initial Test Period to be less than 85% of Cash Receipts for the corresponding four-week period as set forth in the Budget and (y) Total Cash Outflows for the Initial Test Period to be more than 115% of the Total Cash Outflows for the corresponding four-week period as set forth in Budget;

(ii)    with respect to each week during the subsequent three-week period following the Initial Test Period (the "**Second Test Period**"), permit (x) Cash Receipts for the period commencing on the first day of the Initial Test Period and ending on the last day of such week, to be less than 85% of Cash Receipts for the corresponding period as set forth in the Budget and (y) Total Cash Outflows for the period commencing on the first day of the Initial Test Period and ending on the last day of such week, to be more than 115% of Total Cash Outflows for the corresponding period as set forth in the Budget; and

(iii)    with respect to each week following the Second Test Period until consummation of the Plan of Reorganization (the "**Third Test Period**"), permit (x) Cash Receipts for the period commencing on the first day of the Initial Test Period and ending on the last day of such week, to be less than 90% of Cash Receipts for the corresponding period as set forth in the Budget and (y) Total Cash Outflows for the period commencing on the first day of the Initial Test Period and ending on the last day of such week, to be more than 110% of Total Cash Outflows for the corresponding period as set forth in the Budget.

**SECTION 6.11    Payments of Other Indebtedness; Modifications of Organizational Documents and Other Documents, etc.** Directly or indirectly:

(a)    make (or give any notice in respect thereof) any voluntary or optional payment or prepayment on or redemption or acquisition for value of, or any prepayment or redemption as a result of any asset sale, change of control or similar event of, any Indebtedness outstanding under any Subordinated Indebtedness, except as otherwise permitted by this Agreement;

(b)    make any payments or transfer, or agree to any setoff or recoupment, with respect to any Pre-Petition claim, Pre-Petition Lien or Pre-Petition Indebtedness of any Loan Parties, except (i) to the extent authorized by any First Day Order or the Orders, or (ii) as otherwise permitted by applicable law or order of the Bankruptcy Court;

(c)    amend or modify, or permit the amendment or modification of, any provision of any Loan Document, the Orders or the First Day Orders without the consent of the Administrative Agent, the Arrangers and the Required Lenders;

(d)    terminate, amend or modify any of its Organizational Documents (including (x) by the filing or modification of any certificate of designation and (y) any election to treat any Pledged Securities (as defined in the Security Agreement) as a "security" under Section 8-103 of the UCC other than concurrently with the delivery of certificates representing such Pledged Securities to the Collateral Agent) or any agreement to which it is a party with respect to its Equity Interests (including any stockholders' agreement), or enter into any new agreement with respect to its Equity Interests, other than any such amendments or modifications or such new agreements which are not adverse in any material respect to the interests of the Lenders; *provided* that Holdings may issue such Equity Interests, so long as such issuance is not prohibited by any provision of this Agreement, and may amend or modify its Organizational Documents to authorize any such Equity Interests; or

88

(e)   incur, create, assume, suffer to exist or permit any super-priority administrative claim which is pari passu with or senior to the super-priority claims under the Loan Documents, except as set forth in this Agreement or the other Loan Documents and the Orders.

**SECTION 6.12    Limitation on Certain Restrictions on Subsidiaries.** Directly or indirectly, create or otherwise cause or suffer to exist or become effective any encumbrance or restriction on the ability of any Subsidiary to (a) pay dividends or make any other distributions on its capital stock or any other interest or participation in its profits owned by Borrower or any Subsidiary, or pay any Indebtedness owed to Borrower or a Subsidiary, (b) make loans or advances to Borrower or any Subsidiary or (c) transfer any of its properties to Borrower or any Subsidiary, except for such encumbrances or restrictions existing under or by reason of:

(i)     applicable Requirements of Law;

(ii)    this Agreement and the other Loan Documents;

(iii)   the Pre-Petition Loan Documents;

(iv)    customary provisions restricting subletting or assignment of any lease governing a leasehold interest of a Subsidiary;

(v)     customary provisions restricting assignment of any agreement entered into by a Subsidiary in the ordinary course of business;

(vi)    any holder of a Lien permitted by Section 6.02 restricting the transfer of the property subject thereto;

(vii)   customary restrictions and conditions contained in any agreement relating to the sale of any property permitted under Section 6.06 pending the consummation of such sale;

(viii)  any agreement in effect at the time such Subsidiary becomes a Subsidiary of Borrower, so long as such agreement was not entered into in connection with or in contemplation of such person becoming a Subsidiary of Borrower;

(ix)    without affecting the Loan Parties' obligations under Section 5.11, customary provisions in partnership agreements, limited liability company organizational governance documents, asset sale and stock sale agreements and other similar agreements entered into in the ordinary course of business that restrict the transfer of ownership interests in such partnership, limited liability company or similar person;

(x)     restrictions on cash or other deposits or net worth imposed by suppliers or landlords under contracts entered into in the ordinary course of business;

(xi)    [Intentionally Omitted]

89

(xii)  in the case of any joint venture which is not a Loan Party in respect of any matters referred to in clauses (b) and (c) above, restrictions in such person's Organizational Documents or pursuant to any joint venture agreement or stockholders agreements solely to the extent of the Equity Interests of or property held in the subject joint venture or other entity; or

(xiii)  any encumbrances or restrictions imposed by any amendments or refinancings that are otherwise permitted by the Loan Documents of the contracts, instruments or obligations referred to in clauses (iii) or (viii) above; provided that such amendments or refinancings are no more materially restrictive with respect to such encumbrances and restrictions than those prior to such amendment or refinancing.

**SECTION 6.13**    **Business.**

(a)  With respect to Holdings, engage in any business activities or have any properties or liabilities, other than (i) its ownership of the Equity Interests of Borrower, (ii) obligations under the Loan Documents and the Pre-Petition Loan Documents and (iii) activities and properties incidental to the foregoing clauses (i) and (ii).

(b)  With respect to Borrower and the Subsidiaries, engage (directly or indirectly) in any business other than those businesses in which Borrower and its Subsidiaries are engaged on the Closing Date as described in the Disclosure Statement (or which are substantially related thereto or are reasonable extensions thereof).

(c)  With respect to each of ECI Russia and ECI India, engage in any business activities or have any properties or liabilities, other than (i) activities incidental to the liquidation of its properties and (ii) properties or liabilities existing at the time its business and operations were discontinued.

**SECTION 6.14**    **Limitation on Accounting Changes.**  Make or permit any material change in accounting policies or reporting practices, without the consent of the Required Lenders, which consent shall not be unreasonably withheld, except changes that are permitted under GAAP.

**SECTION 6.15**    **Fiscal Year.**  Change its fiscal year-end to a date other than December 31.

**SECTION 6.16**    **No Further Negative Pledge.**  Enter into any agreement, instrument, deed or lease which prohibits or limits the ability of any Loan Party to create, incur, assume or suffer to exist any Lien upon any of their respective properties or revenues, whether now owned or hereafter acquired, or which requires the grant of any security for an obligation if security is granted for another obligation, except the following: (1) this Agreement and the other Loan Documents; (2) covenants in documents creating Liens permitted by Section 6.02 prohibiting further Liens on the properties encumbered thereby; (3) the Pre-Petition Loan Documents; (4) any other agreement that does not restrict in any manner (directly or indirectly) Liens created pursuant to the Loan Documents on any Collateral securing the Secured Obligations and does not require the direct or indirect granting of any Lien securing any Indebtedness or other obligation by virtue of the granting of Liens on or pledge of property of any Loan Party to secure the Secured Obligations; and (5) any prohibition or limitation that (a)

90

exists on the Closing Date, (b) exists pursuant to applicable Requirements of Law, (c) consists of customary restrictions and conditions contained in any agreement relating to the sale of any property permitted under Section 6.06 pending the consummation of such sale, (d) restricts subletting or assignment of any lease governing a leasehold interest of Borrower or a Subsidiary, (e) exists in any agreement in effect at the time such Subsidiary becomes a Subsidiary of Borrower, so long as such agreement was not entered into in contemplation of such person becoming a Subsidiary, or (f) is imposed by any amendments or refinancings that are otherwise permitted by the Loan Documents of the contracts, instruments or obligations referred to in clause (3) or (5)(e); *provided* that such amendments and refinancings are no more materially restrictive with respect to such prohibitions and limitations than those prior to such amendment or refinancing.

**SECTION 6.17     Anti-Terrorism Law; Anti-Money Laundering.**

(a)     Directly or indirectly, (i) knowingly conduct any business or engage in making or receiving any contribution of funds, goods or services to or for the benefit of any person such that Borrower would be unable to make the representation set forth in Section 3.22, (ii) knowingly deal in, or otherwise engage in any transaction relating to, any property or interests in property blocked in violation of the Executive Order or any other Anti-Terrorism Law, or (iii) knowingly engage in or conspire to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in any Anti-Terrorism Law (and the Loan Parties shall deliver to the Lenders any certification or other evidence requested from time to time by any Lender in its reasonable discretion, confirming the Loan Parties' material compliance with this Section 6.17).

(b)     Cause or permit any of the funds of such Loan Party that are used to repay the Term Loans to be derived from any unlawful activity with the result that the making of the Term Loans would be a material violation of any Requirement of Law.

**SECTION 6.18     Embargoed Person.** Cause or permit (a) any of the funds or properties of the Loan Parties that are used to repay the Term Loans to constitute property of, or be beneficially owned directly or indirectly by, any person subject to sanctions or trade restrictions under United States law ("**Embargoed Person**" or "**Embargoed Persons**") (b) any Embargoed Person to have any direct or indirect interest, of any nature whatsoever in the Loan Parties, with the result that the investment in the Loan Parties (whether directly or indirectly) is prohibited by a Requirement of Law or the Term Loans materially violate a Requirement of Law, including, without limitation, the provisions of 31 C.F.R. Chapter V or any legal restriction, including legislation, Executive order, or regulation, administered by the U.S. Treasury Department's Office of Foreign Assets Control.

**SECTION 6.19     Chapter 11 Claims.** Except as otherwise allowed pursuant to the Orders, incur, create, assume, suffer to exist or permit any Lien or other super-priority administrative claim which is *pari passu* with or senior to the Liens or claims of the Agents and the Lenders against the Loan Parties, or the adequate protection Liens or claims of the Pre-Petition First Lien Agent and the Pre-Petition First Lien Lenders against the Loan Parties, in each case, subject to the Carve-Out.

NY\1616518.12

**SECTION 6.20      Certain Payments on Account of Pre-Petition Claims.**
The Loan Parties shall not make (i) any payments on account of any creditor's pre-petition
unsecured claims, (ii) payments on account of claims or expenses arising under section 503(b)(9)
of the Bankruptcy Code, or (iii) payments under any management incentive plan or on account of
claims or expenses arising under Section 503(c) of the Bankruptcy Code, except in each case in
amounts and on terms and conditions that (a) are approved by order of the Bankruptcy Court
(which order shall be in form and substance reasonably satisfactory to t he Administrative Agent)
and (b) are in accordance with any approved Budget.

**SECTION 6.21      Pre-Petition Indebtedness.** The Loan Parties shall not
make any adequate protection payments on account of any Pre-Petition Indebtedness, except as
set forth herein or in the Interim Order (or, as applicable, the Final Order) in respect of the
Obligations (as defined in the Pre-Petition First Lien Credit Agreement) or in any other order of
the Bankruptcy Court that is consented to by the Administrative Agent and the Required
Lenders.

**SECTION 6.22      Amendments or Waivers of Post-Petition Material
Documents.** No Loan Party shall agree to any amendment, restatement, supplement or other
modification to, or waiver of, any of its rights under any Post-Petition Material Documents after
the Closing Date in a manner that is materially adverse to the Lenders without in each case
obtaining the prior written consent of the Administrative Agent to such amendment, restatement,
supplement or other modification or waiver.

### ARTICLE VII

### GUARANTEE

**SECTION 7.01      The Guarantee.** The Guarantors hereby jointly and
severally guarantee, as a primary obligor and not as a surety to each Secured Party and their
respective successors and assigns, the prompt payment in full when due (whether at stated
maturity, by required prepayment, declaration, demand, by acceleration or otherwise) of the
principal of and interest (including any interest, fees, costs or charges that would accrue but for
the provisions of the Title 11 of the United States Code after any bankruptcy or insolvency
petition under Title 11 of the United States Code) on the Term Loans made by the Lenders to,
and the Notes, if any, held by each Lender of, Borrower, and all other Secured Obligations from
time to time owing to the Secured Parties by any Loan Party under any Loan Document or any
Hedging Agreement or Treasury Services Agreement entered into with a counterparty that is a
Secured Party, in each case strictly in accordance with the terms thereof (such obligations being
herein collectively called the "**Guaranteed Obligations**"). The Guarantors hereby jointly and
severally agree that if Borrower or other Guarantor(s) shall fail to pay in full when due (whether
at stated maturity, by acceleration or otherwise) any of the Guaranteed Obligations, the
Guarantors will promptly pay the same in cash, without any demand or notice whatsoever, and
that in the case of any extension of time of payment or renewal of any of the Guaranteed
Obligations, the same will be promptly paid in full when due (whether at extended maturity, by
acceleration or otherwise) in accordance with the terms of such extension or renewal.

**SECTION 7.02      Obligations Unconditional.** The obligations of the
Guarantors under Section 7.01 shall constitute a guaranty of payment and to the fullest extent

92

permitted by applicable Requirements of Law, are absolute, irrevocable and unconditional, joint and several, irrespective of the value, genuineness, validity, regularity or enforceability of the Guaranteed Obligations of Borrower under this Agreement, the Notes, if any, or any other agreement or instrument referred to herein or therein, or any substitution, release or exchange of any other guarantee of or security for any of the Guaranteed Obligations, and, irrespective of any other circumstance whatsoever that might otherwise constitute a legal or equitable discharge or defense of a surety or Guarantor (except for payment in full). Without limiting the generality of the foregoing, it is agreed that the occurrence of any one or more of the following shall not alter or impair the liability of the Guarantors hereunder which shall remain absolute, irrevocable and unconditional under any and all circumstances as described above:

      (i)     at any time or from time to time, without notice to the Guarantors, the time for any performance of or compliance with any of the Guaranteed Obligations shall be extended, or such performance or compliance shall be waived;

      (ii)    any of the acts mentioned in any of the provisions of this Agreement or the Notes, if any, or any other agreement or instrument referred to herein or therein shall be done or omitted;

      (iii)   the maturity of any of the Guaranteed Obligations shall be accelerated, or any of the Guaranteed Obligations shall be amended in any respect, or any right under the Loan Documents or any other agreement or instrument referred to herein or therein shall be amended or waived in any respect or any other guarantee of any of the Guaranteed Obligations or any security therefor shall be released or exchanged in whole or in part or otherwise dealt with;

      (iv)   any Lien or security interest granted to, or in favor of, any Lender or Agent as security for any of the Guaranteed Obligations shall fail to be perfected; or

      (v)    the release of any other Guarantor pursuant to Section 7.09.

      The Guarantors hereby expressly waive diligence, presentment, demand of payment, protest and all notices whatsoever, and any requirement that any Secured Party exhaust any right, power or remedy or proceed against Borrower under this Agreement or the Notes, if any, or any other agreement or instrument referred to herein or therein, or against any other person under any other guarantee of, or security for, any of the Guaranteed Obligations. The Guarantors waive any and all notice of the creation, renewal, extension, waiver, termination or accrual of any of the Guaranteed Obligations and notice of or proof of reliance by any Secured Party upon this Guarantee or acceptance of this Guarantee, and the Guaranteed Obligations, and any of them, shall conclusively be deemed to have been created, contracted or incurred in reliance upon this Guarantee, and all dealings between Borrower and the Secured Parties shall likewise be conclusively presumed to have been had or consummated in reliance upon this Guarantee. This Guarantee shall be construed as a continuing, absolute, irrevocable and unconditional guarantee of payment without regard to any right of offset with respect to the Guaranteed Obligations at any time or from time to time held by Secured Parties, and the obligations and liabilities of the Guarantors hereunder shall not be conditioned or contingent upon the pursuit by the Secured Parties or any other person at any time of any right or remedy against Borrower or against any other person which may be or become liable in respect of all or

any part of the Guaranteed Obligations or against any collateral security or guarantee therefor or right of offset with respect thereto. This Guarantee shall remain in full force and effect and be binding in accordance with and to the extent of its terms upon the Guarantors and the successors and assigns thereof, and shall inure to the benefit of the Lenders, and their respective successors and assigns, notwithstanding that from time to time during the term of this Agreement there may be no Guaranteed Obligations outstanding.

SECTION 7.03    **Reinstatement**. The obligations of the Guarantors under this Article VII shall be automatically reinstated if and to the extent that for any reason any payment by or on behalf of Borrower or other Loan Party in respect of the Guaranteed Obligations is rescinded or must be otherwise restored by any holder of any of the Guaranteed Obligations, whether as a result of any proceedings in bankruptcy or reorganization or otherwise.

SECTION 7.04    **Subrogation; Subordination**. Each Guarantor hereby agrees that until the indefeasible payment and satisfaction in full in cash of all Guaranteed Obligations and the expiration and termination of the Commitments of the Lenders under this Agreement it shall waive any claim and shall not exercise any right or remedy, direct or indirect, arising by reason of any performance by it of its guarantee in Section 7.01, whether by subrogation or otherwise, against Borrower or any other Guarantor of any of the Guaranteed Obligations or any security for any of the Guaranteed Obligations. Any Indebtedness of any Loan Party permitted pursuant to Section 6.01(d) shall be subordinated to such Loan Party's Secured Obligations in the manner set forth in the Intercompany Note evidencing such Indebtedness.

SECTION 7.05    **Remedies**. The Guarantors jointly and severally agree that, as between the Guarantors and the Lenders, the obligations of Borrower under this Agreement and the Notes, if any, may be declared to be forthwith due and payable as provided in Section 8.01 (and shall be deemed to have become automatically due and payable in the circumstances provided in Section 8.01) for purposes of Section 7.01, notwithstanding any stay, injunction or other prohibition preventing such declaration (or such obligations from becoming automatically due and payable) as against Borrower and that, in the event of such declaration (or such obligations being deemed to have become automatically due and payable), such obligations (whether or not due and payable by Borrower) shall forthwith become due and payable by the Guarantors for purposes of Section 7.01.

SECTION 7.06    **Instrument for the Payment of Money**. Each Guarantor hereby acknowledges that the guarantee in this Article VII constitutes an instrument for the payment of money, and consents and agrees that any Lender or Agent, at its sole option, in the event of a dispute by such Guarantor in the payment of any moneys due hereunder, shall have the right to bring a motion-action under New York CPLR Section 3213.

SECTION 7.07    **Continuing Guarantee**. The guarantee in this Article VII is a continuing guarantee of payment, and shall apply to all Guaranteed Obligations whenever arising.

SECTION 7.08    **General Limitation on Guarantee Obligations**. In any action or proceeding involving any state corporate limited partnership or limited liability company law, or any applicable state, federal or foreign bankruptcy, insolvency, reorganization

or other law affecting the rights of creditors generally, if the obligations of any Guarantor under Section 7.01 would otherwise be held or determined to be void, voidable, invalid or unenforceable, or subordinated to the claims of any other creditors, on account of the amount of its liability under Section 7.01, then, notwithstanding any other provision to the contrary, the amount of such liability shall, without any further action by such Guarantor, any Loan Party or any other person, be automatically limited and reduced to the highest amount (after giving effect to the right of contribution established in Section 7.10) that is valid and enforceable and not subordinated to the claims of other creditors as determined in such action or proceeding.

SECTION 7.09    **Release of Guarantors**.  If, in compliance with the terms and provisions of the Loan Documents, all or substantially all of the Equity Interests or property of any Guarantor are sold or otherwise transferred (a "**Transferred Guarantor**") to a person or persons, none of which is Borrower or a Subsidiary, such Transferred Guarantor shall, upon the consummation of such sale or transfer, be automatically released from its obligations under this Agreement (including under Section 10.03 hereof) and its obligations to pledge and grant any Collateral owned by it pursuant to any Security Document or the Orders and, in the case of a sale of all or substantially all of the Equity Interests of the Transferred Guarantor, the pledge of such Equity Interests to the Collateral Agent pursuant to the Security Agreements and the Orders shall be automatically released, and, upon delivery of an Officers' Certificate, the Collateral Agent shall take such actions as are necessary to effect each release described in this Section 7.09 in accordance with the relevant provisions of the Security Documents, *provided* that such Guarantor is also released from its obligations under the Pre-Petition Loan Documents on the same terms.

SECTION 7.10    **Right of Contribution**.  Each Subsidiary Guarantor hereby agrees that to the extent that a Subsidiary Guarantor shall have paid more than its proportionate share of any payment made hereunder, such Subsidiary Guarantor shall be entitled to seek and receive contribution from and against any other Subsidiary Guarantor hereunder which has not paid its proportionate share of such payment.  Each Subsidiary Guarantor's right of contribution shall be subject to the terms and conditions of Section 7.04.  The provisions of this Section 7.10 shall in no respect limit the obligations and liabilities of any Subsidiary Guarantor to the Administrative Agent and the Lenders, and each Subsidiary Guarantor shall remain liable to the Administrative Agent and the Lenders for the full amount guaranteed by such Subsidiary Guarantor hereunder.

## ARTICLE VIII

## EVENTS OF DEFAULT

SECTION 8.01    **Events of Default**.  Upon the occurrence and during the continuance of the following events ("**Events of Default**"):

(a)    default shall be made in the payment of any principal of any Term Loan when and as the same shall become due and payable, whether at the due date thereof or at a date fixed for prepayment (whether voluntary or mandatory) thereof or by acceleration thereof or otherwise;

(b)    default shall be made in the payment of any interest on any Term Loan or any Fee or any other amount (other than an amount referred to in paragraph (a) above) due under any Loan Document, when and as the same shall become due and payable, and such default shall continue unremedied for a period of the later of three Business Days and five calendar days;

(c)    any representation or warranty made or deemed made in or in connection with any Loan Document or the borrowings hereunder, or any representation, warranty, statement or information contained in any report, certificate, financial statement or other instrument furnished in connection with or pursuant to any Loan Document, shall prove to have been false or misleading in any material respect when so made, deemed made or furnished;

(d)    default shall be made in the due observance or performance by any Company of any covenant, condition or agreement contained in (i) Sections 5.02, 5.03(a), 5.04(a), 5.08, 5.16, or in Article VI and (ii) Sections 5.01(a), 5.01(b), 5.01(c), 5.15 or 5.17, and such default shall continue unremedied or shall not be waived for a period of three Business Days thereafter;

(e)    default shall be made in the due observance or performance by any Company of any covenant, condition or agreement contained in any Loan Document (other than those specified in paragraphs (a), (b) or (d) immediately above) and such default shall continue unremedied or shall not be waived for a period the earlier of 30 days after (a) written notice thereof from the Administrative Agent or any Lender to Borrower or (b) the Responsible Officer of any Loan Party obtains actual knowledge of such default; *provided*, that with respect to a breach of Section 5.09, no Event of Default shall result if the Borrower has failed to cure a Default thereunder within 30 days but has taken and continues to take steps to cure;

(f)    any Loan Party shall (i) fail to pay any principal or interest, regardless of amount, due in respect of any Post-Petition Indebtedness (other than the Obligations), when and as the same shall become due and payable beyond any applicable grace period, or (ii) fail to observe or perform any other term, covenant, condition or agreement contained in any agreement or instrument evidencing or governing any such Post-Petition Indebtedness if the effect of any failure referred to in this clause (ii) is to cause, or to permit the holder or holders of such Post-Petition Indebtedness or a trustee or other representative on its or their behalf (with or without the giving of notice, the lapse of time or both) to cause, such Post-Petition Indebtedness to become due prior to its stated maturity or become subject to a mandatory offer purchase by the obligor; *provided* that it shall not constitute an Event of Default pursuant to this paragraph (f) unless the aggregate amount of all such Post-Petition Indebtedness referred to in clauses (i) and (ii) exceeds $1,000,000 at any one time (*provided* that, in the case of Hedging Obligations, the amount counted for this purpose shall be the amount payable by all Loan Parties if such Hedging Obligations were terminated at such time);

(g)    except to the extent any such default is expressly waived by the Administrative Agent, an involuntary proceeding shall be commenced or an involuntary petition shall be filed in a court of competent jurisdiction seeking (i) relief in respect of

96

any Foreign Subsidiary (other than ECI Russia and other than ECI India) or of a substantial part of the property of any Foreign Subsidiary (other than ECI Russia and other than ECI India), under Title 11 of the United States Code, as now constituted or hereafter amended, or any other federal, state or foreign bankruptcy, insolvency, receivership or similar law; (ii) the appointment of a receiver, trustee, custodian, sequestrator, conservator or similar official for any Foreign Subsidiary (other than ECI Russia and other than ECI India) or for a substantial part of the property of any Foreign Subsidiary (other than ECI Russia and other than ECI India); or (iii) the winding-up or liquidation of any Foreign Subsidiary (other than ECI Russia and other than ECI India); and such proceeding or petition shall continue undismissed for 30 days or an order or decree approving or ordering any of the foregoing shall be entered;

(h)      except to the extent any such default is expressly waived by the Administrative Agent, any Foreign Subsidiary (other than ECI Russia and other than ECI India) shall (i) voluntarily commence any proceeding or file any petition seeking relief under Title 11 of the United States Code, as now constituted or hereafter amended, or any other federal, state or foreign bankruptcy, insolvency, receivership or similar law; (ii) consent to the institution of, or fail to contest in a timely and appropriate manner, any proceeding or the filing of any petition described in clause (g) above; (iii) apply for or consent to the appointment of a receiver, trustee, custodian, sequestrator, conservator or similar official for any Foreign Subsidiary (other than ECI Russia and other than ECI India) or for a substantial part of the property of any Foreign Subsidiary (other than ECI Russia and other than ECI India); (iv) file an answer admitting the material allegations of a petition filed against it in any such proceeding; (v) make a general assignment for the benefit of creditors; (vi) become unable, admit in writing its inability or fail generally to pay its debts as they become due; (vii) take any action for the purpose of effecting any of the foregoing; or (viii) wind up or liquidate;

(i)      one or more judgments, orders or decrees for the payment of money in an aggregate amount in excess of $2,000,000 (to the extent not adequately covered by insurance in respect of which a solvent and unaffiliated insurance company has acknowledged coverage) shall be rendered against any Company or any combination thereof and the same shall remain undischarged, unvacated or unbonded for a period of 30 consecutive days during which execution shall not be effectively stayed, or any action shall be legally taken by a judgment creditor to levy upon properties of any Company to enforce any such judgment;

(j)      one or more ERISA Events or noncompliance with respect to Foreign Plans shall have occurred that, in the opinion of the Required Lenders, when taken together with all other such ERISA Events and noncompliance with respect to Foreign Plans that have occurred, could reasonably be expected to result in liability of any Company and its ERISA Affiliates in an aggregate amount exceeding $2,000,000 or in the imposition of a Lien on any properties of a Company;

(k)      any security interest and Lien purported to be created by any Security Document or the Orders shall cease to be in full force and effect, or shall cease to give the Collateral Agent, for the benefit of the Secured Parties, the Liens, rights, powers and privileges purported to be created and granted under such Security Document or Order

97

(including a perfected first priority security interest in and Lien on all of the Collateral thereunder (except as otherwise expressly provided in such Security Document, this Agreement or any other Loan Document or Order)) in favor of the Collateral Agent, or shall be asserted by Borrower or any other Loan Party not to be a valid, perfected, first priority (except as otherwise expressly provided in this Agreement, such Security Document, any other Loan Document or the applicable Order) security interest in or Lien on the Collateral covered thereby;

(l)     any Loan Document or any material provisions thereof shall at any time and for any reason be declared by a court of competent jurisdiction to be null and void, or a proceeding shall be commenced by any Loan Party or any other person, or by any Governmental Authority, seeking to establish the invalidity or unenforceability thereof (exclusive of questions of interpretation of any provision thereof), or any Loan Party shall repudiate or deny any portion of its liability or obligation for the Obligations; or

(m)     there shall have occurred a Change in Control;

(n)     <u>The Chapter 11 Cases.</u>

(i)     the bringing of a motion by any Loan Party, or the entry of an order, pleading or ruling (which has not been withdrawn, dismissed or reversed): (A) to obtain additional financing under Section 364(c) or (d) of the Bankruptcy Code which is not otherwise permitted pursuant to this Agreement (unless such financing is proposed to refinance and pay in full in cash the Secured Obligations and the Pre-Petition First Lien Obligations with, in each case, the termination of all related lending commitments thereunder); (B) to grant any Lien other than Permitted Liens upon or affecting any Cash Collateral without the prior written consent of the Administrative Agent and the Required Lenders; (C) except as provided in the Orders, to use Cash Collateral of the Agents or the Pre-Petition First Lien Agent under Section 363(c) of the Bankruptcy Code without the prior written consent of the Administrative Agent and the Required Lenders; (D) to take any other action or actions adverse to the Agents, Lenders, Pre-Petition First Lien Agent or Pre-Petition First Lien Lenders or their respective interests in the Collateral or their respective rights and remedies under the Loan Documents or the Pre-Petition First Lien Loan Documents; or (E) that is not consistent with the Plan Support Agreement, the Plan of Reorganization or the Term Sheets (as defined in the Plan Support Agreement) (in each case with such amendments and modifications as have been agreed to by the ECI Parties (as defined in the Plan Support Agreement) and the applicable Requisite Consenting Parties (as defined in the Plan Support Agreement) and consented to by the Administrative Agent and Required Lenders or the Exit Lenders (as defined in the Plan Support Agreement), as applicable) and such motion has not been withdrawn prior to the earlier of (x) five (5) Business Days after the ECI Parties receive written notice from the applicable Requisite Consenting Parties, the Lenders or the Exit Lenders, as applicable, that such motion is inconsistent with the Plan Support Agreement, the Plan or the Term Sheets, as applicable, and (y) the entry of an order of the Bankruptcy Court approving such motion;

(ii)     the filing of any plan of reorganization or disclosure statement attendant thereto, or any direct or indirect amendment to such plan or disclosure

statement, by any Loan Party other than the Plan of Reorganization or the Disclosure Statement;

(iii)    prior to the entry of the Final Order, the Interim Order shall (a) no longer be in full force and effect or (b) be reversed, vacated, stayed, amended, supplemented or otherwise modified, in each case without the consent of the Administrative Agent and the Required Lenders;

(iv)    the entry of an order in the Chapter 11 Cases amending, supplementing, staying, vacating, reversing or otherwise modifying the Final Order without the written consent of the Administrative Agent and the Required Lenders;

(v)    the Final Order is not entered by the Bankruptcy Court on or before the date that is the earlier of (A) 36 days after the Solicitation Completion Date and (B) 30 days after the Petition Date;

(vi)    the entry of an order amending, supplementing, staying, vacating or otherwise modifying the Loan Documents without the written consent of the Administrative Agent, the Arrangers and the Required Lenders;

(vii)    the entry of an order appointing an interim or permanent trustee, a receiver or an examiner in the Chapter 11 Cases with expanded powers to operate or manage the financial affairs, the business, or reorganization of such Loan Party (or any Loan Party seeks or acquiesces in such relief);

(viii)    the sale, without the Administrative Agent's and the Required Lenders' consent, of all or substantially all of the assets of the Loan Parties pursuant to Section 363 of the Bankruptcy Code, through a confirmed plan of reorganization in the Chapter 11 Case, or otherwise that does not provide for payment in full in cash of the Secured Obligations and termination of Lenders' Commitment (or any Loan Party seeks or acquiesces in such relief);

(ix)    the dismissal of the Chapter 11 Cases, or the conversion of the Chapter 11 Cases from cases under Chapter 11 to cases under Chapter 7 of the Bankruptcy Code (except as consented to by the Administrative Agent and the Required Lenders) or any Loan Party shall file a motion or other pleading seeking the dismissal of the Chapter 11 Cases under Section 1112 of the Bankruptcy Code, conversion of the Chapter 11 Cases or otherwise;

(x)    the entry of an order by the Bankruptcy Court granting relief from or modifying the automatic stay of Section 362 of the Bankruptcy Code to allow any creditor to execute upon or enforce a Lien on any Collateral having a value in excess of $1,000,000;

(xi)    other than the Carve-out and except as otherwise provided by the Orders or this Agreement, the entry of an order in the Chapter 11 Cases granting any other super-priority administrative claim or Lien equal or superior to that granted to Administrative Agent, on behalf of itself and/or the Secured Parties pursuant to this Agreement, the Security Documents and the Orders;

99

(xii)  termination of the exclusive period for the Loan Parties to file a plan of reorganization in the Chapter 11 Cases;

(xiii)  the occurrence of a "Termination Event" (as defined in the Plan Support Agreement) (without regard to, and whether or not any related notice has been delivered, any related cure period has expired or the Plan Support Agreement has actually been effectively terminated in accordance with its terms);

(xiv)  any amendment or modification of any term of the Plan Support Agreement, or any waiver of any material right thereunder, without the consent of the Administrative Agent or the Required Lenders;

(xv)  the entry of any order, other than the Orders, by the Bankruptcy Court invalidating, subordinating, disallowing, recharacterizing or limiting in any respect, as applicable, the enforceability, priority, characterization or validity of any of the Liens securing the First Lien Debt (as defined in the Plan Support Agreement) or any of the Claims (as defined in the Plan Support Agreement) arising under the Pre-Petition First Lien Credit Agreement;

(xvi)  the issuance by any Governmental Authority, including any regulatory authority or court of competent jurisdiction of any ruling or order enjoining or otherwise preventing the consummation of a material portion of the Transactions or any of the transactions contemplated by the Plan Support Agreement;

(xvii)  any Collateral becoming subject to surcharge or marshalling;

(xviii) the allowance of any claim or claims under Section 506(c) of the Bankruptcy Code or otherwise against any Agent any Lender or any of the Collateral or against any Pre-Petition First Lien Agent, any Pre-Petition First Lien Lender or any Collateral (as defined in the Pre-Petition First Lien Credit Agreement);

(xix)  any of the Loan Parties' return of goods constituting Collateral pursuant to Section 546(c) of the Bankruptcy Code other than in accordance with any such program (a) approved pursuant to a First Day Order, or (b) otherwise approved by the Bankruptcy Court and consented to by the Administrative Agent and the Required Lenders in writing.

then, and in every such event (other than an event with respect to a Foreign Subsidiary (other than ECI Russia and other than ECI India) described in paragraph (g) or (h) above), and at any time thereafter during the continuance of such event, the Administrative Agent may, and at the request of the Required Lenders shall, notwithstanding the provisions of Section 362 of the Bankruptcy Code, without any application, motion or notice to, hearing before, or order from, the Bankruptcy Court, by notice to Borrower and subject to the terms of the Orders, take any of the following actions, at the same or different times: (i) terminate forthwith the Commitment; (ii) declare the Term Loans then outstanding to be forthwith due and payable in whole or in part, whereupon the principal of the Term Loans so declared to be due and payable, together with accrued interest thereon and any unpaid accrued Fees and all other Obligations of Borrower accrued hereunder and under any other Loan Document, shall become forthwith due and payable, without presentment, demand, protest or any other notice of any kind, all of which are

100

hereby expressly waived by Borrower and the Guarantors, anything contained herein or in any other Loan Document to the contrary notwithstanding and in any event, with respect to a Foreign Subsidiary (other than ECI Russia and other than ECI India) described in paragraph (g) or (h) above, the Commitments shall automatically terminate and the principal of the Loans then outstanding, together with accrued interest thereon and any unpaid accrued fees and all other Obligations of Borrower accrued hereunder and under any other Loan Document, shall automatically become due and payable, without presentment, demand, protest or any other notice of any kind, all of which are hereby expressly waived by Borrower and the Guarantors, anything contained herein or in any other Loan Document to the contrary notwithstanding; (iii) enter onto the premises of any Loan Party in connection with an orderly liquidation of the Collateral; or (iv) exercise any rights and remedies provided to such Agent under this Agreement, the other Loan Documents, the Orders or applicable law, including all remedies provided under the Bankruptcy Code and, pursuant to the Interim Order and the Final Order, the automatic stay of Section 362 of the Bankruptcy Code shall be modified and vacated to permit the Agents and Lenders to exercise their remedies under this Agreement, the Loan Documents and the Orders without further notice, application or motion to, hearing before, or order from, the Bankruptcy Court.

   **SECTION 8.02  <u>Application of Payments and Proceeds Following an Event of Default</u>**. If an Event of Default shall have occurred and be continuing, all payments and prepayments made hereunder (including, without limitation, proceeds received by the Collateral Agent in respect of any sale of, collection from or other realization upon all or any part of the Collateral pursuant to the exercise by the Collateral Agent of its remedies or otherwise) shall be applied *first*, to fees and reimbursable expenses of the Agents then due and payable pursuant to the Loan Documents; *second* to interest and other fees payable hereunder on a *pro rata* basis; *third*, to the principal balance of Term Loans outstanding hereunder until the same shall have been repaid in cash in full; *fourth*, to reduce on a pro rata basis any remaining Commitments; and *fifth* to repay any other outstanding Obligations. In the event that any such proceeds are insufficient to pay in full the items described in this <u>Section 8.02</u>, the Loan Parties shall remain liable, jointly and severally, for any deficiency.

# ARTICLE IX

## THE ADMINISTRATIVE AGENT AND THE COLLATERAL AGENT

   **SECTION 9.01  <u>Appointment and Authority</u>**. Each of the Lenders hereby irrevocably appoints UBS AG, to act on its behalf as the Administrative Agent and the Collateral Agent hereunder and under the other Loan Documents and authorizes such Agents to take such actions on its behalf and to exercise such powers as are delegated to such Agents by the terms hereof or thereof, together with such actions and powers as are reasonably incidental thereto. Upon consent of Borrower, the Administrative Agent shall have the right to appoint a (and replace the existing) documentation agent at any time during the term of this Agreement. The provisions of this Article are solely for the benefit of the Administrative Agent, the Collateral Agent and the Lenders, and neither Borrower nor any other Loan Party shall have rights as a third party beneficiary of any of such provisions. Without limiting the generality of the foregoing, each Lender hereby authorizes the Administrative Agent to consent, on behalf of each Lender, to the Interim Order and the Final Order.

NY\1616518.12

**SECTION 9.02    Rights as a Lender**. Each person serving as an Agent, Arranger, Syndication Agent or Documentation Agent hereunder shall have the same rights and powers in its capacity as a Lender as any other Lender and may exercise the same as though it were not an Agent and the term "Lender" or "Lenders" shall, unless otherwise expressly indicated or unless the context otherwise requires, include each person serving as an Agent hereunder in its individual capacity. Such person and its Affiliates may accept deposits from, lend money to, act as the financial advisor or in any other advisory capacity for and generally engage in any kind of business with Borrower or any Subsidiary or other Affiliate thereof as if such person were not an Agent hereunder and without any duty to account therefor to the Lenders.

**SECTION 9.03    Exculpatory Provisions**. No Agent shall have any duties or obligations except those expressly set forth herein and in the other Loan Documents. Without limiting the generality of the foregoing, no Agent:

(i)    shall be subject to any fiduciary or other implied duties, regardless of whether a Default has occurred and is continuing;

(ii)    shall have any duty to take any discretionary action or exercise any discretionary powers, except discretionary rights and powers expressly contemplated hereby or by the other Loan Documents that such Agent is required to exercise as directed in writing by the Required Lenders (or such other number or percentage of the Lenders as shall be expressly provided for herein or in the other Loan Documents); *provided* that such Agent shall not be required to take any action that, in its judgment or the judgment of its counsel, may expose such Agent to liability or that is contrary to any Loan Document or applicable Requirements of Law; and

(iii)    shall, except as expressly set forth herein and in the other Loan Documents, have any duty to disclose, and shall not be liable for the failure to disclose, any information relating to Borrower or any of its Affiliates that is communicated to or obtained by the person serving as such Agent or any of its Affiliates in any capacity.

No Agent shall be liable for any action taken or not taken by it (x) with the consent or at the request of the Required Lenders (or such other number or percentage of the Lenders as shall be necessary, or as such Agent shall believe in good faith shall be necessary, under the circumstances as provided in Section 10.02) or (y) in the absence of its own gross negligence or willful misconduct. No Agent shall be deemed to have knowledge of any Default unless and until notice describing such Default is given to such Agent by Borrower or a Lender.

No Agent shall be responsible for or have any duty to ascertain or inquire into (i) any statement, warranty or representation made in or in connection with this Agreement or any other Loan Document, (ii) the contents of any certificate, report or other document delivered hereunder or thereunder or in connection herewith or therewith, (iii) the performance or observance of any of the covenants, agreements or other terms or conditions set forth herein or therein or the occurrence of any Default, (iv) the validity, enforceability, effectiveness or genuineness of this Agreement, any other Loan Document or any other agreement, instrument or document or (v) the satisfaction of any condition set forth in Article IV or elsewhere herein, other than to confirm receipt of items expressly required to be delivered to such Agent. Without

102

limiting the generality of the foregoing, the use of the term "agent" in this Agreement with reference to the Administrative Agent or the Collateral Agent is not intended to connote any fiduciary or other implied (or express) obligations arising under agency doctrine of any applicable law. Instead, such term us used merely as a matter of market custom and is intended to create or reflect only an administrative relationship between independent contracting parties.

    **SECTION 9.04**  **Reliance by Agent**. Each Agent shall be entitled to rely upon, and shall not incur any liability for relying upon, any notice, request, certificate, consent, statement, instrument, document or other writing (including any electronic message, Internet or intranet website posting or other distribution) believed by it to be genuine and to have been signed, sent or otherwise authenticated by the proper person. Each Agent also may rely upon any statement made to it orally or by telephone and believed by it to have been made by the proper person, and shall not incur any liability for relying thereon. In determining compliance with any condition hereunder to the making of a Term Loan, that by its terms must be fulfilled to the satisfaction of a Lender, the Administrative Agent may presume that such condition is satisfactory to such Lender unless the Administrative Agent shall have received notice to the contrary from such Lender prior to the making of such Term Loan. Each Agent may consult with legal counsel (who may be counsel for Borrower), independent accountants and other experts selected by it, and shall not be liable for any action taken or not taken by it in accordance with the advice of any such counsel, accountants or experts.

    **SECTION 9.05**  **Delegation of Duties**. Each Agent may perform any and all of its duties and exercise its rights and powers hereunder or under any other Loan Document by or through, or delegate any and all such rights and powers to, any one or more sub-agents appointed by such Agent. Each Agent and any such sub-agent may perform any and all of its duties and exercise its rights and powers by or through their respective Related Parties. The exculpatory provisions of this Article shall apply to any such sub-agent and to the Related Parties of each Agent and any such sub-agent, and shall apply to their respective activities in connection with the syndication of the credit facilities provided for herein as well as activities as Agent.

    **SECTION 9.06**  **Resignation of Agent**. Each Agent may at any time give notice of its resignation to the Lenders and Borrower. Upon receipt of any such notice of resignation, the Required Lenders shall have the right, in consultation with Borrower, to appoint a successor, which shall be a bank with an office in the United States, or an Affiliate of any such bank with an office in the United States. If no such successor shall have been so appointed by the Required Lenders and shall have accepted such appointment within 30 days after the retiring Agent gives notice of its resignation, then the retiring Agent may on behalf of the Lenders, appoint a successor Agent meeting the qualifications set forth above; *provided* that if the Agent shall notify Borrower and the Lenders that no qualifying person has accepted such appointment, then such resignation shall nonetheless become effective in accordance with such notice and (1) the retiring Agent shall be discharged from its duties and obligations hereunder and under the other Loan Documents (except that in the case of any collateral security held by the Collateral Agent on behalf of the Lenders under any of the Loan Documents, the retiring Collateral Agent shall continue to hold such collateral security as nominee until such time as a successor Collateral Agent is appointed) and (2) all payments, communications and determinations provided to be made by, to or through an Agent shall instead be made by or to each Lender directly, until such time as the Required Lenders appoint a successor Agent as provided for above in this paragraph. Upon the acceptance of a successor's appointment as Agent hereunder,

such successor shall succeed to and become vested with all of the rights, powers, privileges and duties of the retiring (or retired) Agent, and the retiring Agent shall be discharged from all of its duties and obligations hereunder or under the other Loan Documents (if not already discharged therefrom as provided above in this paragraph). The fees payable by Borrower to a successor Agent shall be the same as those payable to its predecessor unless otherwise agreed between Borrower and such successor. After the retiring Agent's resignation hereunder and under the other Loan Documents, the provisions of this Article IX and Section 10.03 shall continue in effect for the benefit of such retiring Agent, its sub-agents and their respective Related Parties in respect of any actions taken or omitted to be taken by any of them while the retiring Agent was acting as Agent.

SECTION 9.07    **Non-Reliance on Agent and Other Lenders**. Each Lender acknowledges that it has, independently and without reliance upon any Agent, Arranger, Syndication Agent, Documentation Agent or any other Lender and based on such documents and information as it has deemed appropriate, made its own credit analysis and decision to enter into this Agreement. Each Lender further represents and warrants that it has reviewed each document made available to it on the Platform in connection with this Agreement and has acknowledged and accepted the terms and conditions applicable to the recipients thereof. Each Lender also acknowledges that it will, independently and without reliance upon any Agent, Arranger, Syndication Agent, Documentation Agent or any other Lender and based on such documents and information as it shall from time to time deem appropriate, continue to make its own decisions in taking or not taking action under or based upon this Agreement, any other Loan Document or any related agreement or any document furnished hereunder or thereunder.

SECTION 9.08    **No Other Duties, etc.** Anything herein to the contrary notwithstanding, none of the Bookrunners, Arrangers, Syndication Agent or Documentation Agent listed on the cover page hereof shall have any powers, duties or responsibilities under this Agreement or any of the other Loan Documents, except in its capacity, as applicable, as the Administrative Agent, the Collateral Agent or a Lender hereunder.

SECTION 9.09    **Actions in Concert**. Anything in this Agreement to the contrary notwithstanding, each Lender hereby agrees with each other Lender that no Lender shall take any action to protect or enforce its rights arising out of this Agreement or the Notes (including exercising any rights of setoff), if any, without first obtaining the prior written consent of the Agents and the Required Lenders, it being the intent of Lenders that any such action to protect or enforce rights under this Agreement and the Notes, if any, shall be taken in concert and at the direction or with the consent of the Agents or the Required Lenders and as provided in Section 8.01.

SECTION 9.10    **Enforcement**. Notwithstanding anything to the contrary contained herein or in any other Loan Document, the authority to enforce rights and remedies hereunder and under the other Loan Documents against the Loan Parties or any of them shall be vested exclusively in, and all actions and proceedings at law in connection with such enforcement shall be instituted and maintained exclusively by, the Administrative Agent or the Collateral Agent upon the instruction of the Administrative Agent, or as the Required Lenders may be permitted to direct the Administrative Agent, for the benefit of all the Lenders; *provided, however*, that neither Section 9.09 nor Section 9.10 shall prohibit (a) the Agents from exercising on its own behalf the rights and remedies that inure to its benefit (solely in its capacity as an

NY\1616518.12

Agent) hereunder and under the other Loan Documents, (b) any Lender from exercising setoff rights in accordance with, and subject to, the terms of this Agreement, or (c) any Lender from filing proofs of claim or appearing and filing pleadings on its own behalf during the pendency of a proceeding relative to any Loan Party under any bankruptcy or insolvency law.

## ARTICLE X

## MISCELLANEOUS

**SECTION 10.01    Notices**.

(a)    _Generally_.  Except in the case of notices and other communications expressly permitted to be given by telephone (and except as provided in paragraph (b) below), all notices and other communications provided for herein shall be in writing and shall be delivered by hand or overnight courier service, mailed by certified or registered mail or sent by telecopier or electronic communications (subject to Section 10.01(b)) as follows:

(i)    if to any Loan Party, to Borrower at:

Electrical Components International, Inc.
One City Place Drive, Suite 450
St. Louis, Missouri 63141
Attention: Mitch Leonard
Telecopier No: (314) 261-7799

With a copy to:

Weil, Gotshal & Manges LLP
200 Crescent Court, Suite 300
Dallas, Texas 75201
Attention: Kelly M. Dybala, Esq.
Telecopy No.: (214) 746-7898

(ii)    if to the Administrative Agent or the Collateral Agent, to it at:

UBS AG, Stamford Branch
677 Washington Boulevard
Stamford, Connecticut 06901
Attention: Lauren Clark
Telecopier No.: (203) 719-4176
Email: lauren.clark@ubs.com

NY\1616518.12

With a copy to:

UBS AG, Stamford Branch
677 Washington Boulevard
Stamford, Connecticut 06901
Attention: Omar Musule
Telecopier No.: (203) 719-4176
Email: omar.musule@ubs.com

; and

      (iii)    if to a Lender, to it at its address (or telecopier number) set forth in its Administrative Questionnaire.

Notices sent by hand or overnight courier service, or mailed by certified or registered mail, shall be deemed to have been given when received; notices sent by telecopier shall be deemed to have been given when sent (except that, if not given during normal business hours for the recipient, shall be deemed to have been given at the opening of business on the next Business Day for the recipient). Notices delivered through electronic communications to the extent provided in paragraph (b) below, shall be effective as provided in said paragraph (b).

      (b)    <u>Electronic Communications</u>. Notices and other communications to the Lenders hereunder may (subject to <u>Section 10.01(d)</u>) be delivered or furnished by electronic communication (including e-mail and Internet or intranet websites) pursuant to procedures approved by the Administrative Agent; *provided* that the foregoing shall not apply to notices to any Lender pursuant to <u>Article II</u> if such Lender has notified the Administrative Agent that it is incapable of receiving notices under such Article by electronic communication. The Administrative Agent, the Collateral Agent or Borrower may, in its discretion, agree to accept notices and other communications to it hereunder by electronic communications pursuant to procedures approved by it (including as set forth in <u>Section 10.01(d)</u>); *provided* that approval of such procedures may be limited to particular notices or communications.

      Unless the Administrative Agent otherwise prescribes, (i) notices and other communications sent to an e-mail address shall be deemed received upon the sender's receipt of an acknowledgement from the intended recipient (such as by the "return receipt requested" function, as available, return e-mail or other written acknowledgement); *provided* that if such notice or other communication is not sent during the normal business hours of the recipient, such notice or communication shall be deemed to have been sent at the opening of business on the next Business Day for the recipient, and (ii) notices or communications posted to an Internet or intranet website shall be deemed received upon the deemed receipt by the intended recipient at its e-mail address as described in the foregoing clause (i) of notification that such notice or communication is available and identifying the website address therefor.

      (c)    <u>Change of Address, etc.</u> Any party hereto may change its address or telecopier number for notices and other communications hereunder by notice to the other parties hereto.

      (d)    <u>Posting</u>. Each Loan Party hereby agrees that it will provide to the Administrative Agent all information, documents and other materials that it is obligated to

NY\1616518.12

A-114

A-22

furnish to the Administrative Agent pursuant to this Agreement and any other Loan Document, including all notices, requests, financial statements, financial and other reports, certificates and other information materials, but excluding any such communication that (i) relates to a request for a new, or a conversion of an existing, Borrowing or other extension of credit (including any election of an interest rate or interest period relating thereto), (ii) relates to the payment of any principal or other amount due under this Agreement prior to the scheduled date therefor, (iii) provides notice of any Default under this Agreement or (iv) is required to be delivered to satisfy any condition precedent to the effectiveness of this Agreement and/or any borrowing or other extension of credit hereunder (all such non-excluded communications, collectively, the "**Communications**"), by transmitting the Communications in an electronic/soft medium in a format reasonably acceptable to the Administrative Agent at lauren.clark@ubs.com or at such other e-mail address(es) provided to Borrower from time to time or in such other form, including hard copy delivery thereof, as the Administrative Agent shall require. In addition, each Loan Party agrees to continue to provide the Communications to the Administrative Agent in the manner specified in this Agreement or any other Loan Document or in such other form, including hard copy delivery thereof, as the Administrative Agent shall require. Nothing in this Section 10.01 shall prejudice the right of the Agents, any Lender or any Loan Party to give any notice or other communication pursuant to this Agreement or any other Loan Document in any other manner specified in this Agreement or any other Loan Document or as any such Agent shall require.

To the extent consented to by the Administrative Agent in writing from time to time, Administrative Agent agrees that receipt of the Communications by the Administrative Agent at its e-mail address(es) set forth above shall constitute effective delivery of the Communications to the Administrative Agent for purposes of the Loan Documents; *provided* that Borrower shall also deliver to the Administrative Agent an executed original of each Compliance Certificate required to be delivered hereunder.

Each Loan Party further agrees that Administrative Agent may make the Communications available to the Lenders by posting the Communications on Intralinks or a substantially similar electronic transmission system (the "**Platform**"). The Platform is provided "as is" and "as available." The Agents do not warrant the accuracy or completeness of the Communications, or the adequacy of the Platform and expressly disclaim liability for errors or omissions in the communications. No warranty of any kind, express, implied or statutory, including, without limitation, any warranty of merchantability, fitness for a particular purpose, non-infringement of third party rights or freedom from viruses or other code defects, is made by any Agent in connection with the Communications or the Platform. In no event shall the Administrative Agent or any of its Related Parties have any liability to the Loan Parties, any Lender or any other person for damages of any kind, including direct or indirect, special, incidental or consequential damages, losses or expenses (whether in tort, contract or otherwise) arising out of any Loan Party's or the Administrative Agent's transmission of communications through the Internet, except to the extent the liability of such person is found in a final non-appealable judgment by a court of competent jurisdiction to have resulted from such person's gross negligence or willful misconduct.

**SECTION 10.02**     <u>**Waivers; Amendment**</u>.

NY\1616518.12

(a)    Generally.  No failure or delay by any Agent or any Lender in exercising any right or power hereunder or under any other Loan Document shall operate as a waiver thereof, nor shall any single or partial exercise of any such right or power, or any abandonment or discontinuance of steps to enforce such a right or power, preclude any other or further exercise thereof or the exercise of any other right or power.  The rights and remedies of each Agent and the Lenders hereunder and under the other Loan Documents are cumulative and are not exclusive of any rights or remedies that they would otherwise have.  No waiver of any provision of any Loan Document or consent to any departure by any Loan Party therefrom shall in any event be effective unless the same shall be permitted by this Section 10.02, and then such waiver or consent shall be effective only in the specific instance and for the purpose for which given.  Without limiting the generality of the foregoing, the making of a Term Loan shall not be construed as a waiver of any Default, regardless of whether any Agent or any Lender may have had notice or knowledge of such Default at the time.  No notice or demand on Borrower in any case shall entitle Borrower to any other or further notice or demand in similar or other circumstances.

(b)    Required Consents.  Subject to Sections 10.02(c) and (d), neither this Agreement nor any other Loan Document nor any provision hereof or thereof may be waived, amended, supplemented or modified except, in the case of this Agreement, pursuant to an agreement or agreements in writing entered into by Borrower and the Administrative Agent or, in the case of any other Loan Document, pursuant to an agreement or agreements in writing entered into by the Administrative Agent, the Collateral Agent (in the case of any Security Document) and the Loan Party or Loan Parties that are party thereto, in each case with the written consent of the Required Lenders; *provided* that no such agreement shall be effective if the effect thereof would:

(i)    increase the Commitment of any Lender without the written consent of such Lender (it being understood that no amendment, modification, termination, waiver or consent with respect to any condition precedent, covenant or Default shall constitute an increase in the Commitment of any Lender);

(ii)    reduce the principal amount of any Term Loan or reduce the rate of interest thereon (other than interest pursuant to Section 2.06(c)), or reduce any Fees payable hereunder, or change the form or currency of payment of any Obligation, without the written consent of each Lender directly affected thereby (it being understood that any amendment or modification to the financial definitions in this Agreement shall not constitute a reduction in the rate of interest for purposes of this clause (ii));

(iii)    (A) change the scheduled final maturity of any Term Loan, (B) postpone the date for payment of any interest or fees payable hereunder, (C) change the amount of, waive or excuse any such payment (other than waiver of any increase in the interest rate pursuant to Section 2.06(c)), or (D) postpone the scheduled date of expiration of any Commitment beyond the Maturity Date, in any case, without the written consent of each Lender directly affected thereby;

(iv)    increase the maximum duration of Interest Periods hereunder, without the written consent of each Lender directly affected thereby;

NY\1616518.12

(v)     permit the assignment or delegation by Borrower of any of its rights or obligations under any Loan Document, without the written consent of each Lender;

(vi)     release Holdings or all or substantially all of the Subsidiary Guarantors from their Guarantee (except as expressly provided in Article VII), or limit their liability in respect of such Guarantee, without the written consent of each Lender;

(vii)     release all or substantially all of the Collateral from the Liens of the Security Documents and Orders or alter the relative priorities of the Secured Obligations entitled to the Liens of the Security Documents and Orders, in each case without the written consent of each Lender;

(viii)     change Section 2.14(b), (c) or (d) in a manner that would alter the *pro rata* sharing of payments or setoffs required thereby or any other provision in a manner that would alter the *pro rata* allocation among the Lenders of Term Loan disbursements, including the requirements of Section 2.02(a), without the written consent of each Lender directly affected thereby;

(ix)     change any provision of this Section 10.02(b) or Section 10.02(c) or (d), without the written consent of each Lender directly affected thereby;

(x)     change the percentage set forth in the definition of "Required Lenders" or any other provision of any Loan Document (including this Section) specifying the number or percentage of Lenders required to waive, amend or modify any rights thereunder or make any determination or grant any consent thereunder, without the written consent of each Lender, other than to increase such percentage or number or to give any additional Lender or group of Lenders such right to waive, amend or modify or make any such determination or grant any such consent;

(xi)     except as permitted hereunder, expressly subordinate the Obligations to any other obligation without the written consent of each Lender; or

(xii)     change or waive any provision of Article X as the same applies to any Agent, Arranger, Syndication Agent or Documentation Agent or any other provision hereof as the same applies to the rights or obligations of any Agent, Arranger, Syndication Agent or Documentation Agent, in each case without the written consent of such Agent, Arranger, Syndication Agent or Documentation Agent;

*provided, further*, that any waiver, amendment or modification prior to the completion of the primary syndication of the Commitments and Term Loans (as determined by the Arrangers, it being understood that the primary syndication shall be complete by the date that is 5 Business Days after the Closing Date) may not be effected without the written consent of the Arrangers.

Notwithstanding anything to the contrary herein, no Defaulting Lender shall have any right to approve or disapprove any amendment, waiver or consent hereunder, except to the extent the consent of such Lender would be required under clause (i), (ii) or (iii) in the proviso to the first sentence of this Section 10.02(b).

(c)     Collateral.  Without the consent of any other person, the applicable Loan Party or Loan Parties and the Administrative Agent and/or Collateral Agent may (in its or their respective sole discretion, or shall, to the extent required by any Loan Document) enter into any amendment or waiver of any Loan Document, or enter into any new agreement or instrument, to effect the granting, perfection, protection, expansion or enhancement of any security interest in any Collateral or additional property to become Collateral for the benefit of the Secured Parties, or as required by local law to give effect to, or protect any security interest for the benefit of the Secured Parties, in any property or so that the security interests therein comply with applicable Requirements of Law.

### SECTION 10.03     Expenses, Indemnity, Damage Waiver.

(a)     Costs and Expenses.  Borrower shall pay (i) all reasonable documented (but without any requirement for detailed invoices) out-of-pocket expenses incurred by each Arranger, the Administrative Agent and the Collateral Agent (including the reasonable fees, charges and disbursements of counsel for the Administrative Agent and/or the Collateral Agent, limited to such fees, charges and disbursements of not more than one firm counsel selected by the Administrative Agent for the Arrangers, the Administrative Agent and the Collateral Agent and one alternative firm of counsel in the event of any actual or potential conflict of interest and, in each case, one local counsel for each applicable jurisdiction) in connection with the syndication of the credit facilities provided for herein (including the obtaining and maintaining of CUSIP numbers for the Term Loans), the preparation, negotiation, execution, delivery and administration of this Agreement and the other Loan Documents or any amendment, amendment and restatement, modification or waiver of the provisions hereof or thereof (whether or not the transactions contemplated hereby or thereby shall be consummated) (including proposed amendments, amendments and restatements, waivers or modifications), including in connection with post-closing searches to confirm that security filings and recordations have been properly made, in connection with the Orders (ii) all reasonable documented (but without any requirement for detailed invoices) out-of-pocket expenses incurred by the Administrative Agent, the Collateral Agent or any Lender (including the reasonable fees, charges and disbursements of any counsel for the Administrative Agent, the Collateral Agent, any Lender, limited to such fees, charges and disbursements of not more than one firm counsel selected by the Administrative Agent for the Administrative Agent, the Collateral Agent and the Lenders and one alternative firm of counsel in the event of any actual or potential conflict of interest and, in each case, one local counsel for each applicable jurisdiction), in connection with the enforcement or protection of its rights (A) in connection with this Agreement and the other Loan Documents, including its rights under this Section 10.03, or (B) in connection with the Term Loans made hereunder, including all such out-of-pocket expenses incurred during any workout, restructuring or negotiations in respect of such Term Loans, and (iii) all documentary and similar taxes and charges in respect of the Loan Documents.

(b)     Indemnification by Borrower.  Subject to the provisions of Section 2.12 and Section 2.15 (which shall provide the only source of indemnification for the matters covered therein), Borrower shall indemnify the Administrative Agent (and any sub-agent thereof), the Collateral Agent (and any sub-agent thereof), each Lender, each Arranger, the Syndication Agent, the Documentation Agent and each Related Party of any of the foregoing persons (each such person being called an "**Indemnitee**") against, and hold each Indemnitee harmless from, any and all reasonable documented (but without any requirement for detailed invoices) losses,

NY\1616518.12

claims, damages, liabilities and related expenses (including the reasonable fees, charges and disbursements of any counsel for any Indemnitee, limited to such fees, charges and disbursements of not more than one firm counsel selected by the Administrative Agent for the Arrangers, the Administrative Agent, the Collateral Agent, the Syndication Agent and the Documentation Agent and one alternative firm of counsel in the event of any actual or potential conflict of interest and, in each case, one local counsel for each applicable jurisdiction) incurred by any Indemnitee or asserted against any Indemnitee by any third party or by Borrower or any other Loan Party arising out of, in connection with, or as a result of (i) the execution or delivery of this Agreement, any other Loan Document, or any amendment, amendment and restatement, modification or waiver of the provisions hereof or thereof (including any proposed amendment, amendment and restatement, modification or waiver), or any agreement or instrument contemplated hereby or thereby, the performance by the parties hereto of their respective obligations hereunder or thereunder or the consummation of the transactions contemplated hereby or thereby, (ii) any Term Loan or the use or proposed use of the proceeds therefrom, (iii) any actual or alleged presence, Release or threatened Release of Hazardous Materials on, at, under or from any property owned, leased or operated by any Company at any time, or any Environmental Claim related in any way to any Company or any Real Property, or (iv) any actual or prospective claim, litigation, investigation or proceeding relating to any of the foregoing, whether based on contract, tort or any other theory, whether brought by a third party or by Borrower or any other Loan Party, and regardless of whether any Indemnitee is a party thereto; *provided*, that nothing in the foregoing shall exclude indemnification of legal fees and expenses of such other counsel for any Indemnitee as may be necessary or appropriate in the event of any actual or potential conflict of interest between or among any Indemnitee; *provided further* that such indemnity shall not, as to any Indemnitee, be available to the extent that such losses, claims, damages, liabilities or related expenses (x) are determined by a court of competent jurisdiction by final and nonappealable judgment to have resulted from the gross negligence or willful misconduct of such Indemnitee or (y) result from a claim brought by Borrower or any other Loan Party against an Indemnitee for breach in bad faith of such Indemnitee's obligations hereunder or under any other Loan Document, if Borrower or such Loan Party has obtained a final and nonappealable judgment in its favor on such claim as determined by a court of competent jurisdiction.

(c)     <u>Reimbursement by Lenders</u>.  To the extent that Borrower for any reason fails to pay any amount required under paragraph (a) or (b) of this <u>Section 10.03</u> to be paid by it to the Administrative Agent (or any sub-agent thereof), the Collateral Agent, each Arranger, the Syndication Agent, the Documentation Agent or any Related Party of any of the foregoing, each Lender severally agrees to pay to the Administrative Agent (or any such sub-agent), the Collateral Agent (or any sub-agent thereof), each Arranger, the Syndication Agent, the Documentation Agent or such Related Party, as the case may be, such Lender's pro rata share (determined as of the time that the applicable unreimbursed expense or indemnity payment is sought) of such unpaid amount; provided that the unreimbursed expense or indemnified loss, claim, damage, liability or related expense, as the case may be, was incurred by or asserted against the Arrangers, the Syndication Agent, the Documentation Agent, the Administrative Agent (or any such sub-agent), the Collateral Agent (or any sub-agent thereof), or against any Related Party of any of the foregoing acting for the Administrative Agent (or any such sub-agent), the Collateral Agent (or any sub-agent thereof), or the Arrangers, the Syndication Agent or the Documentation Agent in connection with such capacity.  The obligations of the Lenders under this paragraph (c) are subject to the provisions of <u>Section 2.14</u>.  For purposes hereof, a

NY\1616518.12

Lender's "*pro rata* share" shall be determined based upon its share of the sum of the outstanding Term Loans and unused Commitments at the time.

(d)     Waiver of Consequential Damages, etc.  To the fullest extent permitted by applicable Requirements of Law, no Loan Party shall assert, and each Loan Party hereby waives, any claim against any Indemnitee, on any theory of liability, for special, indirect, consequential or punitive damages (as opposed to direct or actual damages) arising out of, in connection with, or as a result of, this Agreement, any other Loan Document or any agreement or instrument contemplated hereby, the transactions contemplated hereby or thereby, any Term Loan or the use of the proceeds thereof.  No Indemnitee referred to in paragraph (b) above shall be liable for any damages arising from the use by unintended recipients of any information or other materials distributed by it through telecommunications, electronic or other information transmission systems in connection with this Agreement or the other Loan Documents or the transactions contemplated hereby or thereby.

(e)     Payments.  All amounts due under this Section shall be payable not later than 3 Business Days after demand therefor accompanied by appropriate invoices or other evidence of amounts owed.

### SECTION 10.04     Successors and Assigns.

(a)     Successors and Assigns Generally.  The provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns permitted hereby, except that Borrower may not assign or otherwise transfer any of its rights or obligations hereunder without the prior written consent of the Administrative Agent, the Collateral Agent and each Lender and no Lender may assign or otherwise transfer any of its rights or obligations hereunder except (i) to an Eligible Assignee in accordance with the provisions of paragraph (b) of this Section 10.04, (ii) by way of participation in accordance with the provisions of paragraph (d) of this Section 10.04 or (iii) by way of pledge or assignment of a security interest subject to the restrictions of paragraph (f) of this Section (and any other attempted assignment or transfer by Borrower or any Lender shall be null and void).  Nothing in this Agreement, expressed or implied, shall be construed to confer upon any person (other than the parties hereto, their respective successors and assigns permitted hereby, Participants to the extent provided in paragraph (d) of this Section and, to the extent expressly contemplated hereby, the other Indemnitees) any legal or equitable right, remedy or claim under or by reason of this Agreement.

(b)     Assignments by Lenders.  Any Lender may at any time assign to one or more Eligible Assignees all or a portion of its rights and obligations under this Agreement (including all or a portion of its Commitment and the Term Loans at the time owing to it); *provided* that:

(i)     except in the case of an assignment of the entire remaining amount of the assigning Lender's Commitment and the Term Loans at the time owing to it or in the case of an assignment to a Lender or an Affiliate of a Lender or an Approved Fund with respect to a Lender, the aggregate amount of the Commitment (which for this purpose includes Term Loans outstanding thereunder) or, if the applicable Commitment is not then in effect, the principal outstanding balance of the Term Loans of the assigning

112

Lender subject to each such assignment (determined as of the date the Assignment and Assumption with respect to such assignment is delivered to the Administrative Agent or, if "Trade Date" is specified in the Assignment and Assumption, as of the Trade Date) shall not be less than the lesser of $1.0 million and the remaining amount of such Lender's Term Loans and/or Commitments, unless each of the Administrative Agent and, so long as no Default has occurred and is continuing, Borrower otherwise consent (each such consent not to be unreasonably withheld or delayed);

(ii) each partial assignment shall be made as an assignment of a proportionate part of all the assigning Lender's rights and obligations under this Agreement with respect to the Term Loan or the Commitment assigned; and

(iii) the parties to each assignment shall execute and deliver to the Administrative Agent an Assignment and Assumption, together with a processing and recordation fee of $3,500, and the Eligible Assignee, if it shall not be a Lender, shall deliver to the Administrative Agent an Administrative Questionnaire.

Subject to acceptance and recording thereof by the Administrative Agent pursuant to paragraph (c) of this Section 10.04, from and after the effective date specified in each Assignment and Assumption, the Eligible Assignee thereunder shall be a party to this Agreement and, to the extent of the interest assigned by such Assignment and Assumption, have the rights and obligations of a Lender under this Agreement, and the assigning Lender thereunder shall, to the extent of the interest assigned by such Assignment and Assumption, be released from its obligations under this Agreement (and, in the case of an Assignment and Assumption covering all of the assigning Lender's rights and obligations under this Agreement, such Lender shall cease to be a party hereto) but shall continue to be entitled to the benefits of Sections 2.12, 2.13, 2.15 and 10.03 with respect to facts and circumstances occurring prior to the effective date of such assignment. Any assignment or transfer by a Lender of rights or obligations under this Agreement that does not comply with this paragraph shall be treated for purposes of this Agreement as a sale by such Lender of a participation in such rights and obligations in accordance with paragraph (d) of this Section 10.04.

(c)     Register. The Administrative Agent, acting solely for this purpose as an agent of Borrower, shall maintain at one of its offices in Stamford, Connecticut a copy of each Assignment and Assumption delivered to it and a register for the recordation of the names and addresses of the Lenders, and the Commitments of, and principal amounts of the Term Loans owing to, each Lender pursuant to the terms hereof from time to time (the "**Register**"). The entries in the Register shall be conclusive in the absence of manifest error, and Borrower, the Administrative Agent and the Lenders shall treat each person whose name is recorded in the Register pursuant to the terms hereof as a Lender hereunder for all purposes of this Agreement, notwithstanding notice to the contrary. The Register shall be available for inspection by Borrower, the Collateral Agent and any Lender (with respect to its own interest only), at any reasonable time and from time to time upon reasonable prior notice.

(d)     Participations. Any Lender may at any time, without the consent of, or notice to, Borrower or the Administrative Agent sell participations to any person (other than a natural person or Borrower or any of Borrower's Affiliates or Subsidiaries) (each, a "**Participant**") in all or a portion of such Lender's rights and/or obligations under this

Agreement (including all or a portion of its Commitment and/or the Term Loans owing to it); *provided* that (i) such Lender's obligations under this Agreement shall remain unchanged, (ii) such Lender shall remain solely responsible to the other parties hereto for the performance of such obligations and (iii) Borrower, the Administrative Agent and the Lenders shall continue to deal solely and directly with such Lender in connection with such Lender's rights and obligations under this Agreement.

Any agreement or instrument pursuant to which a Lender sells such a participation shall provide that such Lender shall retain the sole right to enforce the Loan Documents and to approve any amendment, modification or waiver of any provision of the Loan Documents; *provided* that such agreement or instrument may provide that such Lender will not, without the consent of the Participant, agree to any amendment, modification or waiver described in clause (i), (ii) or (iii) of the first proviso to Section 10.02(b) that affects such Participant. Acting solely for this purpose as an agent of Borrower, a Lender selling such a participation shall maintain at one of its offices a copy of each agreement or instrument effecting such a sale and record such sale and the participation so transferred on a register substantially similar to the Register (the "Participant Register"). The entries in the Participant Register shall be conclusive in the absence of manifest error, and the participating Lender shall treat each Person whose name is recorded in the Participant Register as the owner of a Term Loan or other obligation hereunder as the owner thereof for all purposes of this Agreement and the other Loan Documents, notwithstanding any notice to the contrary. Any such Participant Register shall be available for inspection by Borrower, Administrative Agent, the Collateral Agent and any Lender at any reasonable time and from time to time upon reasonable prior notice.

Subject to paragraph (e) of this Section, Borrower agrees that each Participant shall be entitled to the benefits of Sections 2.12, 2.13 and 2.15 (subject to the requirements of those Sections) to the same extent as if it were a Lender and had acquired its interest by assignment pursuant to paragraph (b) of this Section.

(e)     Limitations on Participant Rights. A Participant shall not be entitled to receive any greater payment under Sections 2.12, 2.13 and 2.15 than the applicable Lender would have been entitled to receive with respect to the participation sold to such Participant, unless the sale of the participation to such Participant is made with Borrower's prior written consent. A Participant shall not be entitled to the benefits of Section 2.15 unless Borrowers are notified of the participation sold to such Participant and such Participant agrees, for the benefit of Borrowers, to comply with Section 2.14(e) as though it were a Lender.

(f)     Certain Pledges. Any Lender may at any time pledge or assign a security interest in all or any portion of its rights under this Agreement to secure obligations of such Lender, including any pledge or assignment to secure obligations to a Federal Reserve Bank; *provided* that no such pledge or assignment shall release such Lender from any of its obligations hereunder or substitute any such pledgee or assignee for such Lender as a party hereto. In the case of any Lender that is a fund that invests in bank loans, such Lender may, without the consent of Borrower or the Administrative Agent, collaterally assign or pledge all or any portion of its rights under this Agreement, including the Term Loans and Notes, if any, or any other instrument evidencing its rights as a Lender under this Agreement, to any holder of, trustee for, or any other representative of holders of, obligations owed or securities issued, by such fund, as security for such obligations or securities.

114

(g)    Electronic Execution of Assignments. The words "execution," "signed," "signature," and words of like import in any Assignment and Assumption shall be deemed to include electronic signatures or the keeping of records in electronic form, each of which shall be of the same legal effect, validity or enforceability as a manually executed signature or the use of a paper-based recordkeeping system, as the case may be, to the extent and as provided for in any applicable Requirement of Law, including the Federal Electronic Signatures in Global and National Commerce Act, the New York State Electronic Signatures and Records Act, or any other similar state laws based on the Uniform Electronic Transactions Act.

SECTION 10.05    Survival of Agreement. All covenants, agreements, representations and warranties made by the Loan Parties in the Loan Documents and in the certificates or other instruments delivered in connection with or pursuant to this Agreement or any other Loan Document shall be considered to have been relied upon by the other parties hereto and shall survive the execution and delivery of the Loan Documents and the making of any Term Loans, regardless of any investigation made by any such other party or on its behalf and notwithstanding that the Agents or any Lender may have had notice or knowledge of any Default or incorrect representation or warranty at the time any credit is extended hereunder, and shall continue in full force and effect as long as the principal of or any accrued interest on any Term Loan or any fee or any other amount payable under this Agreement is outstanding and so long as the Commitments have not expired or terminated. The provisions of Sections 2.12, 2.14, 2.15 and Article X (other than Section 10.12) shall survive and remain in full force and effect regardless of the consummation of the transactions contemplated hereby, the repayment of the Term Loans, the expiration or termination of the Commitments or the termination of this Agreement or any provision hereof. The obligations of the Borrower under this Agreement and the other Loan Documents shall be automatically reinstated if and to the extent that for any reason any payment by or on behalf of Borrower or any other Loan Party in respect of the Obligations is rescinded or must be otherwise restored by any holder of any of the Obligations, whether as a result of any proceedings in bankruptcy or reorganization or otherwise.

SECTION 10.06    Counterparts; Integration; Effectiveness. This Agreement may be executed in counterparts (and by different parties hereto in different counterparts), each of which shall constitute an original, but all of which when taken together shall constitute a single contract. This Agreement and the other Loan Documents, and any separate letter agreements with respect to fees payable to the Administrative Agent, constitute the entire contract among the parties relating to the subject matter hereof and supersede any and all previous agreements and understandings, oral or written, relating to the subject matter hereof. Except as provided in Section 4.01, this Agreement shall become effective when it shall have been executed by the Administrative Agent and when the Administrative Agent shall have received counterparts hereof that, when taken together, bear the signatures of each of the other parties hereto. Delivery of an executed counterpart of a signature page of this Agreement by telecopier shall be effective as delivery of a manually executed counterpart of this Agreement.

SECTION 10.07    Severability. Any provision of this Agreement held to be invalid, illegal or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such invalidity, illegality or unenforceability without affecting the validity, legality and enforceability of the remaining provisions hereof; and the invalidity of a particular provision in a particular jurisdiction shall not invalidate such provision in any other jurisdiction.

115

**SECTION 10.08     Right of Setoff**.  If an Event of Default shall have occurred and be continuing, each Lender and each of their respective Affiliates is hereby authorized at any time and from time to time, to the fullest extent permitted by applicable Requirements of Law, to set off and apply any and all deposits (general or special, time or demand, provisional or final, in whatever currency) at any time held and other obligations (in whatever currency) at any time owing by such Lender, or any such Affiliate to or for the credit or the account of Borrower or any other Loan Party against any and all of the obligations of Borrower or such Loan Party now or hereafter existing under this Agreement or any other Loan Document to such Lender, irrespective of whether or not such Lender shall have made any demand under this Agreement or any other Loan Document and although such obligations of Borrower or such Loan Party may be contingent or unmatured or are owed to a branch or office of such Lender different from the branch or office holding such deposit or obligated on such indebtedness.  The rights of each Lender and its Affiliates under this Section are in addition to other rights and remedies (including other rights of setoff) that such Lender or its Affiliates may have.  Each Lender agrees to notify Borrower and the Administrative Agent promptly after any such setoff and application; *provided* that the failure to give such notice shall not affect the validity of such setoff and application.

**SECTION 10.09     Governing Law; Jurisdiction; Consent to Service of Process**.

(a)     Governing Law.  This Agreement shall be construed in accordance with and governed by the law of the State of New York, without regard to conflicts of law principles that would require the application of the laws of another jurisdiction and, to the extent applicable, the Bankruptcy Code.

(b)     Submission to Jurisdiction.  Each Loan Party hereby irrevocably and unconditionally submits, for itself and its property, to the exclusive jurisdiction and venue of the Bankruptcy Court, or in the event the Bankruptcy Court does not have or does not exercise jurisdiction, then to the Supreme Court of the State of New York sitting in New York County and of the United States District Court of the Southern District of New York.  Subject to the immediately preceding sentence and clause (d) below, all judicial proceedings brought against any party arising out of or relating to any Loan Document or any of the Obligations, or for recognition or enforcement of any judgment, shall be brought in the Supreme Court of the State of New York sitting in New York County and of the United States District Court of the Southern District of New York, and each of the parties hereto hereby irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding may be heard and determined in such New York State court or, to the fullest extent permitted by applicable law, in such Federal court.  Each of the parties hereto agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.  Nothing in this Agreement or any other Loan Document shall affect any right that the Administrative Agent or any Lender may otherwise have to bring any action or proceeding relating to this Agreement or any other Loan Document against any Loan Party or its properties in the courts of any jurisdiction.

(c)     Waiver of Venue.  Each Loan Party hereby irrevocably and unconditionally waives, to the fullest extent permitted by applicable Requirements of Law, any objection which it may now or hereafter have to the laying of venue of any suit, action or

116

proceeding arising out of or relating to this Agreement or any other Loan Document in any court referred to in Section 10.09(b). Each of the parties hereto hereby irrevocably waives, to the fullest extent permitted by applicable Requirements of Law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

(d) Service of Process. Each party hereto irrevocably consents to service of process in any action or proceeding arising out of or relating to any Loan Document, in the manner provided for notices (other than telecopier) in Section 10.01. Nothing in this Agreement or any other Loan Document will affect the right of any party hereto to serve process in any other manner permitted by applicable Requirements of Law.

**SECTION 10.10    Waiver of Jury Trial**. Each Loan Party hereby waives, to the fullest extent permitted by applicable Requirements of Law, any right it may have to a trial by jury in any legal proceeding directly or indirectly arising out of or relating to this Agreement, any other Loan Document or the transactions contemplated hereby (whether based on contract, tort or any other theory). Each party hereto (a) certifies that no representative, agent or attorney of any other party has represented, expressly or otherwise, that such other party would not, in the event of litigation, seek to enforce the foregoing waiver and (b) acknowledges that it and the other parties hereto have been induced to enter into this Agreement by, among other things, the mutual waivers and certifications in this Section.

**SECTION 10.11    Headings**. Article and Section headings and the Table of Contents used herein are for convenience of reference only, are not part of this Agreement and shall not affect the construction of, or be taken into consideration in interpreting, this Agreement.

**SECTION 10.12    Treatment of Certain Information; Confidentiality**. Each of the Administrative Agent and the Lenders agrees to maintain the confidentiality of the Information (as defined below), except that Information may be disclosed (a) to its Affiliates and to its and its Affiliates' respective partners, directors, officers, employees, agents, advisors and other representatives (it being understood that the persons to whom such disclosure is made will be informed of the confidential nature of such Information and instructed to keep such Information confidential), (b) to the extent requested by any Governmental Authority or regulatory authority (including any self-regulatory authority, such as the National Association of Insurance Commissioners), (c) to the extent required by applicable Requirements of Law or by any subpoena or similar legal process, (d) to any other party hereto, (e) in connection with the exercise of any remedies hereunder or under any other Loan Document or any action or proceeding relating to this Agreement or any other Loan Document or the enforcement of rights hereunder or thereunder, (f) subject to an agreement containing provisions substantially the same as those of this Section 10.12, to (i) any assignee of or Participant in, or any prospective assignee of or Participant in, any of its rights or obligations under this Agreement, (ii) any actual or prospective counterparty (or its advisors) to any swap or derivative transaction relating to Borrower and its obligations or (iii) any rating agency for the purpose of obtaining a credit rating applicable to any Lender, (g) with the consent of Borrower or (h) to the extent such Information (x) becomes publicly available other than as a result of a breach of this Section or (y) becomes available to the Administrative Agent, any Lender or any of their respective Affiliates on a nonconfidential basis from a source other than Borrower. For purposes of this Section, **"Information"** means all information received from Borrower or any of its Subsidiaries relating to Borrower or any of its Subsidiaries or any of their respective businesses, other than any such

117

information that is available to the Administrative Agent or any Lender on a nonconfidential basis prior to disclosure by Borrower or any of its Subsidiaries. Any person required to maintain the confidentiality of Information as provided in this Section shall be considered to have complied with its obligation to do so if such person has exercised the same degree of care to maintain the confidentiality of such Information as such person would accord to its own confidential information.

SECTION 10.13    **USA PATRIOT Act Notice**. Each Lender that is subject to the Act (as hereinafter defined) and the Administrative Agent (for itself and not on behalf of any Lender) hereby notifies Borrower that pursuant to the requirements of the USA PATRIOT Act (Title III of Pub. L. 107-56 (signed into law October 26, 2001)) (the "**Act**"), it is required to obtain, verify and record information that identifies Borrower, which information includes the name, address and tax identification number of Borrower and other information regarding Borrower that will allow such Lender or the Administrative Agent, as applicable, to identify Borrower in accordance with the Act. This notice is given in accordance with the requirements of the Act and is effective as to the Lenders and the Administrative Agent.

SECTION 10.14    **Interest Rate Limitation**. Notwithstanding anything herein to the contrary, if at any time the interest rate applicable to any Term Loan, together with all fees, charges and other amounts which are treated as interest on such Term Loan under applicable Requirements of Law (collectively, the "**Charges**"), shall exceed the maximum lawful rate (the "**Maximum Rate**") which may be contracted for, charged, taken, received or reserved by the Lender holding such Term Loan in accordance with applicable Requirements of Law, the rate of interest payable in respect of such Term Loan hereunder, together with all Charges payable in respect thereof, shall be limited to the Maximum Rate and, to the extent lawful, the interest and Charges that would have been payable in respect of such Term Loan but were not payable as a result of the operation of this Section shall be cumulated and the interest and Charges payable to such Lender in respect of other Term Loans or periods shall be increased (but not above the Maximum Rate therefor) until such cumulated amount, together with interest thereon at the Federal Funds Effective Rate to the date of repayment, shall have been received by such Lender.

SECTION 10.15    **Lender Addendum**. Each Lender to become a party to this Agreement on the date hereof shall do so by delivering to the Administrative Agent a Lender Addendum duly executed by such Lender, Borrower and the Administrative Agent.

SECTION 10.16    **Obligations Absolute**. To the fullest extent permitted by applicable Requirements of Law, all obligations of the Loan Parties hereunder shall be absolute and unconditional irrespective of:

(a)    any bankruptcy, insolvency, reorganization, arrangement, readjustment, composition, liquidation or the like of any Loan Party;

(b)    any lack of validity or enforceability of any Loan Document or any other agreement or instrument relating thereto against any Loan Party;

(c)    any change in the time, manner or place of payment of, or in any other term of, all or any of the Obligations, or any other amendment or waiver of or any

118

consent to any departure from any Loan Document or any other agreement or instrument relating thereto;

      (d)     any exchange, release or non-perfection of any other Collateral, or any release or amendment or waiver of or consent to any departure from any guarantee, for all or any of the Obligations;

      (e)     any exercise or non-exercise, or any waiver of any right, remedy, power or privilege under or in respect hereof or any Loan Document; or

      (f)     any other circumstances which might otherwise constitute a defense available to, or a discharge of, the Loan Parties.

**SECTION 10.17    Parties Including Trustees; Bankruptcy Court Proceedings**. Upon entry of the Interim Order (or when applicable, the Final Order), this Agreement, the other Loan Documents, and all Liens and other rights and privileges created hereby or pursuant hereto or to any other Loan Document shall be binding upon each Loan Party, the bankruptcy estate of each Loan Party, and any trustee, other bankruptcy estate representative or any successor in interest of any Loan Party in the Chapter 11 Cases or any subsequent case commenced under Chapter 7 of the Bankruptcy Code, and shall not be subject to Section 365 of the Bankruptcy Code. This Agreement and the other Loan Documents shall be binding upon, and inure to the benefit of, the successors of the Agents and the Lenders and their respective assigns, transferees and endorsers. The Liens created by this Agreement and the other Loan Documents shall be and remain valid and perfected in the event of the substantive consolidation or conversion of any of the Chapter 11 Cases or any other bankruptcy case of any Loan Party to a case under Chapter 7 of the Bankruptcy Code or in the event of dismissal of any of the Chapter 11 Cases or the release of any Collateral from the jurisdiction of the Bankruptcy Court for any reason, without the necessity that any Agent files financing statements or otherwise perfect its Liens under applicable law. No Loan Party may assign, transfer, hypothecate or otherwise convey its rights, benefits, obligations or duties hereunder or under any of the other Loan Documents without the prior express written consent of the Agents and each Lender. Any such purported assignment, transfer, hypothecation or other conveyance by any Loan Party without the prior express written consent of the Agents and each Lender shall be void. The terms and provisions of this Agreement are for the purpose of defining the relative rights and obligations of each Loan Party, the Agents and each Lender with respect to the transactions contemplated hereby and no Person shall be a third party beneficiary of any of the terms and provisions of this Agreement or any of the other Loan Documents.

[Signature Pages Follow]

NY\1616518.12

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their respective authorized officers as of the day and year first above written.

ELECTRICAL COMPONENTS INTERNATIONAL, INC.

By: _____
    Name:
    Title:

FP-ECI HOLDINGS COMPANY

By: _____
    Name:
    Title:

ECM HOLDING COMPANY

By: _____
    Name:
    Title:

NOMA O.P., INC.

By: _____
    Name:
    Title:

UBS SECURITIES LLC,
    as Arranger

By:     _____
      Name:
      Title:

By:     _____
      Name:
      Title:


UBS AG, STAMFORD BRANCH, as
    Administrative Agent and Collateral Agent

By:     _____
      Name:
      Title:

By:     _____
      Name:
      Title:

GE CAPITAL MARKETS, INC.,
as Arranger

By: _____
Name:
Title:

NY\1616518.12