**Exhibit B**

**Proposed Interim Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| *In re* | ) | Chapter 11 |
| | ) | |
| **ELECTRICAL COMPONENTS** | ) | **Case No. 10-11054 (KJC)** |
| **INTERNATIONAL, INC.,** *et al.,* | ) | |
| | ) | **(Joint Administration Requested)** |
| Debtors.[1] | ) | |
| | ) | |
| | ) | |

**INTERIM ORDER (I) AUTHORIZING DEBTORS TO
OBTAIN POSTPETITION FINANCING ON A SUPER-PRIORITY AND
PRIMING BASIS PURSUANT TO SECTIONS 105, 361, 362 AND 364 OF
THE BANKRUPTCY CODE, (II) GRANTING PRIMING LIENS AND SUPER-
PRIORITY CLAIMS TO POSTPETITION LENDERS PURSUANT TO SECTION 364(c)
AND (d) OF THE BANKRUPTCY CODE, (III) AUTHORIZING
THE DEBTORS TO USE CASH COLLATERAL PURSUANT TO SECTION 363
OF THE BANKRUPTCY CODE, (IV) GRANTING ADEQUATE PROTECTION
TO PREPETITION SECURED LENDERS PURSUANT TO SECTIONS 361,
362, 363, AND 364 OF THE BANKRUPTCY CODE, (V) MODIFYING THE
AUTOMATIC STAY, AND (VI) PRESCRIBING FORM AND MANNER OF NOTICE
AND SCHEDULING FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001**

Upon the motion, dated March 31, 2010 (the "**Motion**") of Electrical Components

International, Inc. and its debtor affiliates, as debtors and debtors in possession (collectively,

"**ECI**" or the "**Debtors**"), pursuant to sections 105(a), 361, 362, 363, 364, 365 and 507 and 552

of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2002,

4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**")

and the corresponding local rules of this District (the "**Local Rules**"), (a) seeking entry of this

Order (the "**Interim Order**") and the Final Order (as hereinafter defined) that, among other

things: (i) authorizes the Debtors to obtain postpetition financing, cash advances and other

---

[1]     The Debtors in these chapter 11 cases, along with the last four (4) digits of each debtor's federal tax
identification number, are: Electrical Components International, Inc. (4361); FP-ECI Holdings Co. (4246);
ECM Holding Company (7759); Noma O.P., Inc. (5495). The address for each of the Debtors is 1 City Place
Drive, Suite 450, St. Louis, Missouri, 63141.

extensions of credit (collectively, the "**DIP Loans**") in an aggregate principal amount of up to $25.0 million in the form of a delayed draw term loan facility consisting of (A) a $17.0 million commitment (the "**Interim Commitment**") to be made available to the Debtors in one drawing upon the first practicable date following entry of this Interim Order and (B) an additional $8.0 million commitment (the "**Additional Commitment**" and, together with the Interim Commitment, the "**DIP Commitments**") to be made available to the Debtors in one drawing upon or following entry of an order of this Court (the "**Final Order**") granting final authorization of the DIP Loans, pursuant to sections 105(a), 363 and 364 of the Bankruptcy Code, from the Postpetition Lenders (as defined below) by entering into that certain Senior Secured Super-Priority Debtor-In-Possession Credit Agreement on a super-priority and priming basis (as the same may be amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "**Postpetition Credit Agreement**"),[2] substantially in the form annexed to the Motion as **Exhibit A**, among Electrical Components International, Inc. ("**Borrower**"), as borrower, FP-ECI Holdings Company ("**Holdings**") and certain other direct and indirect affiliates of ECI (including all of the Debtors), as guarantors (collectively, the "**Guarantors**" and together with ECI, the "**Postpetition Loan Parties**"), the lenders from time to time parties thereto (the "**Postpetition Lenders**"), and UBS AG, Stamford Branch, as administrative agent and collateral agent (in such capacities and together with its successors, the "**Postpetition Agent**", and together with the Postpetition Lenders and other holders of Secured Obligations, the "**Postpetition Secured Parties**"); (ii) authorizes the Debtors to execute and enter into the Postpetition Credit Agreement and all other agreements, documents, notes or instruments required to be delivered by or in connection with the Postpetition Credit Agreement,

---

[2] Unless otherwise defined herein, all capitalized terms used herein shall have the meanings ascribed to such terms in the Postpetition Credit Agreement.

including, without limitation, the Loan Documents (collectively, the "**Postpetition Financing Documents**"); (iii) authorizes and directs each Debtor to grant, pursuant to sections 364(c) and 364(d) of the Bankruptcy Code, priming liens and super-priority administrative claims to and on behalf of and for the benefit of the Postpetition Agent and the Postpetition Lenders in all DIP Collateral (as defined below) in accordance with the Postpetition Financing Documents, this Interim Order and the Final Order to secure any and all of the Postpetition Obligations (as defined below); (iv) authorizes the Debtors to use "cash collateral," as such term is defined in section 363 of the Bankruptcy Code (the "**Cash Collateral**") and the proceeds of the DIP Loans, subject to the terms and conditions set forth in the Postpetition Credit Agreement, this Interim Order and the Final Order; (v) grants adequate protection to the Debtors' Prepetition Secured Parties (as defined below), whose liens and security interests are being primed by the DIP Loans, as more fully set forth in the Postpetition Financing Documents, this Interim Order and the Final Order; and (vi) modifies and vacates the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Postpetition Financing Documents, this Interim Order and the Final Order and to permit the Postpetition Agent to enforce the Liens securing the Obligations arising under the Postpetition Financing Documents, this Interim Order and the Final Order and to pursue the rights and remedies thereunder; (b) requesting, pursuant to Bankruptcy Rule 4001 and the applicable Local Rules, that an emergency interim hearing (the "**Interim Hearing**") on the Motion be held for the Court (as defined below) to consider entry of this Interim Order which, pending a final hearing on the Motion (the "**Final Hearing**"), authorizes the Debtors to obtain an emergency postpetition DIP Loan in a principal amount not to exceed $17.0 million under the Postpetition Credit Agreement; and (c) requesting, in accordance with Bankruptcy Rule 4001 and the applicable

3

Local Rules, that this Court schedule the Final Hearing to be held before this Court to consider entry of the Final Order as set forth in the Motion and approve notice with respect thereto; and having considered the Motion and the Exhibits attached thereto, including, without limitation, the Postpetition Credit Agreement, the Declaration of David J. Webster in Support of Debtors' Chapter 11 Petitions and Request for First Day Relief, and the evidence submitted at the Interim Hearing; and in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d) and 9014 and all applicable Local Rules, due and proper notice of the Motion and the Interim Hearing having been given; an Interim Hearing having been held and concluded on April __, 2010; upon consideration of all pleadings filed with this Court and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors pending the Final Hearing and otherwise is fair and reasonable and in the best interests of the Debtors, their creditors, their estates and their equity holders, and is essential for the continued operation of the Debtors' business; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THE COURT HEREBY FINDS, DETERMINES, ORDERS AND ADJUDGES AS FOLLOWS:[3]**

A. <u>Commencement of the Cases</u>. On March 30, 2010 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "**Court**") commencing these chapter 11 cases (the "**Cases**"). Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors have retained possession of their property and are authorized thereby, as debtors-in-

---

[3] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as finding of fact, pursuant to Bankruptcy Rule 7052.

possession, to continue the operation and management of their businesses. No statutory committee of unsecured creditors (to the extent such committee is appointed, the **"Committee"**), trustee or examiner has been appointed in the Cases.

B. <u>Jurisdiction and Venue</u>. This Court has core jurisdiction over the Cases, the Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. This is a "core" proceeding within the meaning of 28 U.S.C. § 157(b)(2). The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, 364, 365, 507 and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004 and 9014 and the applicable Local Rules. Venue of the Cases and proceedings on the Motion in this District is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C. <u>Notice</u>. The Debtors have provided notice of the emergency relief requested in the Motion and the Interim Hearing by facsimile, electronic mail, overnight courier or hand delivery to: (i) the Debtors' 30 largest unsecured creditors (on a consolidated basis); (ii) the Office of the United States Trustee for the District of Delaware (the **"U.S. Trustee"**); (iii) counsel to the Prepetition First Lien Agent (as defined below); (iv) counsel to the Prepetition Second Lien Agent (as defined below); (v) counsel to the Postpetition Agent; (vi) the Office of the United States Attorney for the District of Delaware; (vii) all other parties with recorded liens of record on assets of the Debtors as of the Petition Date (other than the Prepetition Secured Lenders) (as defined below); (viii) the Internal Revenue Service; (ix) all financial institutions at which the Debtors maintain deposit accounts; (x) the landlords for non-residential real properties occupied by the Debtors as of the Petition Date; and (xi) all parties signatory to the Plan Support Agreement (as defined below) (collectively, the **"Notice Parties"**). Under the circumstances, such notice of the Motion, the relief requested therein and the Interim Hearing constitutes due

5

and sufficient notice thereof and complies with Bankruptcy Rules 4001(b), (c) and (d) and the Local Bankruptcy Rules, and no further notice of the relief sought at the Interim Hearing and the emergency relief granted herein is necessary or required.

**Debtors' Stipulations Regarding the Prepetition Financing Documents**

D. <u>The Prepetition First Lien Credit Agreement</u>. Without prejudice to the rights of parties in interest to the extent set forth in paragraph 34 below, the Debtors acknowledge, admit, confirm, stipulate and agree as of the Petition Date as follows:

(i) <u>First Lien Credit Agreement</u>. Pursuant to that certain Amended and Restated First Lien Credit Agreement, dated as of September 23, 2008 (as amended, restated, amended and restated, supplemented, or otherwise modified, the "**Prepetition First Lien Credit Agreement**"), by and among Borrower, as borrower, Holdings and the other Guarantors (as defined in the Prepetition First Lien Credit Agreement) party thereto, UBS AG, Stamford Branch, as administrative agent and collateral agent (in such capacities and together with its successors, the "**Prepetition First Lien Agent**"), and the lenders party from time to time thereto (collectively, the "**Prepetition First Lien Lenders**", and together with the Prepetition First Lien Agent and other holders of Secured Obligations (as defined in the Prepetition First Lien Credit Agreement), the "**Prepetition First Lien Secured Parties**"), the Prepetition First Lien Lenders made loans, issued letters of credit and provided other financial accommodations to the Debtors.

(ii) <u>Prepetition First Lien Secured Obligations</u>. As of the Petition Date, the Debtors were truly and justly indebted to the Prepetition First Lien Secured Parties pursuant to the First Lien Financing Documents (as defined below) without defense

6

counterclaim or offset of any kind in the aggregate principal amount of not less than $261,375,000 plus all accrued and unpaid interest thereon and any additional fees, costs, indemnities, expenses (including, without limitation, any attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable or reimbursable under the First Lien Financing Documents) and other amounts constituting Secured Obligations (as defined in the Prepetition First Lien Credit Agreement) now or hereafter due under the First Lien Financing Documents (collectively, the "**Prepetition First Lien Secured Obligations**").

(iii)    <u>First-Priority Prepetition Liens and Prepetition First Lien Collateral</u>. Pursuant to the Security Documents (as defined in the Prepetition First Lien Credit Agreement), including but not limited to that certain First Lien Security Agreement, dated as of May 1, 2006 (as amended, restated, amended and restated, supplemented or otherwise modified, the "**Prepetition First Lien Security Agreement**," and together with the Prepetition First Lien Credit Agreement and all related Loan Documents (as defined therein), the "**First Lien Financing Documents**"), among Borrower, Holdings and the Guarantors (as defined therein) party thereto from time to time (collectively with Holdings and Borrower, the "**Prepetition First Lien Loan Parties**"), and the Prepetition First Lien Agent, the Prepetition First Lien Loan Parties granted to the Prepetition First Lien Agent, for the benefit of itself, the Prepetition First Lien Lenders and the other Prepetition First Lien Secured Parties, to secure the Prepetition First Lien Secured Obligations, valid and perfected first-priority continuing liens on and security interests (the "**First-Priority Prepetition Liens**") in substantially all of the Debtors' assets and property (which for the avoidance of doubt includes Cash Collateral) and all proceeds,

products, accessions, rents and profits thereof or in respect of any of the foregoing, in each case whether then owned or existing or thereafter acquired or arising, all as further described in the Prepetition First Lien Financing Documents. All collateral granted or pledged by the Debtors pursuant to any of the First Lien Financing Documents including, without limitation, the "Collateral" as defined in the Prepetition First Lien Security Agreement shall collectively be referred to herein as the "**Prepetition First Lien Collateral**". As of the Petition Date, the First-Priority Prepetition Liens (i) constitute valid, binding, enforceable and perfected first priority security interests in and liens on all of the Prepetition First Lien Collateral, including the Cash Collateral, (ii) were granted to, or for the benefit of, the Prepetition First Lien Secured Parties for fair consideration and reasonably equivalent value and (iii) are not subject to avoidance, reduction, disallowance, impairment, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law (except for the priming expressly contemplated herein).

(iv)     <u>Prepetition Secured First Lien Obligations are Legal, Valid and Binding Obligations</u>. The Prepetition Secured First Lien Obligations constitute the legal, valid and binding obligations of the Debtors, enforceable in accordance with the terms of the First Lien Financing Documents. The Debtors have no objections, setoffs, recoupments, offsets, defenses, cross-claims or counterclaims of any kind or nature to the Prepetition Secured First Lien Obligations. No portion of the Prepetition Secured First Lien Obligations, or any amounts previously paid to or on behalf of any of the Prepetition First Lien Secured Parties on account thereof or with respect thereto, are subject to avoidance, reduction, disallowance, impairment, recharacterization, recovery, subordination, attack,

8

offset, cross-claim, counterclaim, defense or "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(v)     Release of Claims. Subject to the reservation of rights set forth in paragraph 34 below, each Debtor and its estate shall be deemed to have forever waived, discharged, and released the Prepetition First Lien Secured Parties, together with their respective affiliates, agents, attorneys, financial advisors, consultants, officers, directors, and employees (all of the foregoing, collectively, the "**Prepetition First Lien Secured Party Releasees**") of any and all "claims" (as defined in the Bankruptcy Code), cross-claims, counterclaims, causes of action, defenses, setoffs, recoupments, or other offset rights against any and all of the Prepetition First Lien Secured Party Releasees, whether arising at law or in equity, in connection with the Prepetition Secured First Lien Obligations, the First-Priority Prepetition Liens and any of the First Lien Financing Documents or any transaction contemplated thereby or in connection therewith, including, without limitation, (I) any recharacterization, subordination, avoidance, or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code, or under any other similar provisions of applicable state or federal law, and (II) any right or basis to challenge or object to the amount, validity, or enforceability of the Prepetition Secured First Lien Obligations, or the validity, enforceability, priority, or non-avoidability of the First-Priority Prepetition Liens securing the Prepetition Secured First Lien Obligations.

E.     Prepetition Second Lien Credit Agreement. Without prejudice to the rights of parties in interest to the extent set forth in paragraph 34 below, the Debtors also acknowledge, admit, confirm, stipulate and agree as of the Petition Date as follows:

(i)     Second Lien Credit Agreement. Pursuant to that certain Amended and Restated Second Lien Credit Agreement, dated as of September 23, 2008 (as amended, restated, amended and restated, supplemented or otherwise modified, the "**Prepetition Second Lien Credit Agreement**"), among Borrower, as borrower, Holdings and the other Guarantors (as defined in the Prepetition Second Lien Credit Agreement) party thereto, the lenders party from time to time thereto, (the "**Prepetition Second Lien Lenders**", and together with the Prepetition First Lien Lenders, the "**Prepetition Lenders**"), NexBank, SSB,[4] as administrative agent and collateral agent to the Prepetition Second Lien Lenders (in such capacities and together with its successors, the "**Prepetition Second Lien Agent**," and together with the Prepetition Second Lien Lenders and other holders of Secured Obligations (as defined in the Prepetition Second Lien Credit Agreement), the "**Prepetition Second Lien Secured Parties**") and other parties thereto, the Prepetition Second Lien Lenders made loans and provided other financial accommodations to the Debtors. For purposes of this Interim Order, (a) the Prepetition First Lien Agent and the Prepetition Second Lien Agent shall be referred to collectively as the "**Prepetition Agents**" and (b) the Prepetition First Lien Secured Parties and the Prepetition Second Lien Secured Parties shall be referred to collectively as the "**Prepetition Secured Parties**".

(ii)     Prepetition Second Lien Secured Obligations. As of the Petition Date, the Debtors were truly and justly indebted to the Prepetition Second Lien Secured Parties pursuant to the Second Lien Financing Documents (as defined below) without defense, counterclaim or offset of any kind in the aggregate principal amount of not less than

---

[4] On or about April 4, 2009, UBS AG Stamford Branch resigned as Prepetition Second Lien Agent (as defined below) and was replaced by NexBank, SSB.

$60,000,000 plus all accrued and unpaid interest thereon and any additional fees, costs, indemnities, expenses (including, without limitation, any attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable or reimbursable under the Second Lien Financing Documents) and other amounts constituting Secured Obligations (as defined in the Prepetition Second Lien Credit Agreement) now or hereafter due under the Second Lien Financing Documents (collectively, the **"Prepetition Second Lien Secured Obligations"**, and together with the Prepetition First Lien Obligations, the **"Prepetition Secured Obligations"**) are due and owing by the Debtors.

(iii)   Second-Priority Prepetition Liens and Second Lien Collateral. Pursuant to the Security Documents (as defined in the Prepetition Second Lien Credit Agreement), including but not limited to that certain Second Lien Security Agreement, dated as of May 1, 2006 (as amended, restated, amended and restated, supplemented, or otherwise modified, the **"Prepetition Second Lien Security Agreement,"** and together with the Prepetition Second Lien Credit Agreement and all related Loan Documents (as defined therein), the **"Second Lien Financing Documents"** and, together with the First Lien Financing Documents, the **"Prepetition Financing Documents"**), among Holdings, the Borrower, and the Guarantors (as defined therein) party thereto from time to time (collectively, with Holdings and Borrower, the **"Prepetition Second Lien Loan Parties"**), and the Prepetition Second Lien Agent, the Prepetition Second Lien Loan Parties granted the Prepetition Second Lien Agent, for the benefit of itself, the Prepetition Second Lien Lenders and the other Prepetition Second Lien Secured Parties to secure the Prepetition Second Lien Secured Obligations, valid and perfected second-priority

11

continuing liens on and security interests in (the "**Second-Priority Prepetition Liens**" and, together with the First-Priority Prepetition Liens, the "**Prepetition Liens**") the Prepetition First Lien Collateral all as further described in the Prepetition Second Lien Financing Documents (collectively, the "**Prepetition Second Lien Collateral**" and together with the Prepetition First Lien Collateral, the "**Prepetition Collateral**). As of the Petition Date, the Second-Priority Prepetition Liens (i) constitute valid, binding, enforceable and perfected second priority security interests in and liens on all of the Prepetition Second Lien Collateral, including the Cash Collateral, (ii) were granted to, or for the benefit of, the Prepetition Second Lien Secured Parties for fair consideration and reasonably equivalent value and (iii) are not subject to avoidance, reduction, disallowance, impairment, recharacterization, recovery or subordination by the Debtors pursuant to the Bankruptcy Code or applicable non-bankruptcy law (except for the priming expressly contemplated herein).

(iv)    <u>Prepetition Secured Second Lien Obligations are Legal, Valid and Binding Obligations</u>. The Prepetition Secured Second Lien Obligations constitute the legal, valid and binding obligations of the Debtors, enforceable in accordance with the terms of the Second Lien Financing Documents. The Debtors have no objections, setoffs, recoupments, offsets, defenses, cross-claims or counterclaims of any kind or nature to the Prepetition Secured Second Lien Obligations. No portion of the Prepetition Secured Second Lien Obligations, or any amounts previously paid to or on behalf of any of the Prepetition Second Lien Secured Parties on account thereof or with respect thereto, are subject to avoidance, reduction, disallowance, impairment, recharacterization, subordination, attack, offset, cross-claim, counterclaim, defense, or "claim" (as defined in

12

the Bankruptcy Code) of any kind  pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(v)     Release of Claims.  Subject to the reservation of rights set forth in paragraph 34 below, each Debtor and its estate shall be deemed to have forever waived, discharged, and released the Prepetition Second Lien Secured Parties, together with their respective affiliates, agents, attorneys, financial advisors, consultants, officers, directors, and employees (all of the foregoing, collectively, the "**Prepetition Second Lien Secured Party Releasees**", and together with the Prepetition First Lien Secured Party Releasees, the **"Prepetition Secured Party Releasees"**) of any and all "claims" (as defined in the Bankruptcy Code), cross-claims, counterclaims, causes of action, defenses, setoff, recoupment, or other offset rights against any and all of the Prepetition Second Lien Secured Party Releasees, whether arising at law or in equity, in connection with the Prepetition Secured Second Lien Obligations, Second-Priority Prepetition Liens and any of the Second Lien Financing Documents or any transaction contemplated thereby or in connection therewith, including, without limitation, (I) any recharacterization, subordination, avoidance, or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code, or under any other similar provisions of applicable state or federal law, and (II) any right or basis to challenge or object to the amount, validity, or enforceability of the Prepetition Secured Second Lien Obligations, or the validity, enforceability, priority, or non-avoidability of the Second-Priority Prepetition Liens securing the Prepetition Secured Second Lien Obligations.

F.      Cash Collateral.  The Debtors stipulate that all of the Debtors' cash, including the cash in their Cash Collection Accounts, wherever located, whether as original collateral or

13

proceeds of other Prepetition Collateral, constitute the Cash Collateral of the Prepetition Agents and the Prepetition Lenders.

G.    Default by the Debtors.  The Debtors acknowledge and stipulate that they are in default of their debts and obligations under the Prepetition Financing Documents.

H.    Purpose and Necessity of Financing.  An immediate and critical need exists for the Debtors to obtain the DIP Loans and use Cash Collateral in order to continue the operation of their businesses, including, without limitation, for working capital and general corporate needs. The Debtors are unable to obtain adequate credit (i)(a) as unsecured credit or debt allowable under section 503(b)(1) of the Bankruptcy Code, (b) in a form other than as an administrative expense pursuant to section 364(a) or (b) of the Bankruptcy Code, (c) as unsecured debt having the priority afforded by section 364(c)(1) of the Bankruptcy Code, or (d) as debt secured only as described in section 364(c)(2) or (3) of the Bankruptcy Code, or (ii) on terms equal to or more favorable than those offered by the Postpetition Lenders under the Postpetition Financing Documents.

I.    DIP Loans; Good Cause.  After considering all of their alternatives, the Debtors, in an exercise of their sound business judgment, have requested that, pursuant to the terms of the Postpetition Financing Documents, the Postpetition Lenders make the DIP Loans to the Debtors, and that the Prepetition Secured Parties consent, or do not object, to (i) the DIP Loans contemplated under the Postpetition Financing Documents, (ii) the use of the Cash Collateral, to be used by the Debtors solely in accordance with the terms of the Postpetition Financing Documents and the Budget (as defined below) and (iii) the granting of the DIP Liens (as defined below) having the priority and status contemplated by this Interim Order. The ability of the Debtors to continue their businesses under chapter 11 of the Bankruptcy Code depends upon the

14

Debtors obtaining the DIP Loans under the Postpetition Financing Documents and using such Cash Collateral. The Postpetition Lenders are willing to make such loans and advances and provide such other financial accommodations only on a super-priority and priming first priority secured basis, as more particularly described herein, pursuant to the terms and conditions of the Postpetition Financing Documents and this Interim Order. Accordingly, the relief requested in the Motion is necessary, essential and appropriate for the continued operation of the Debtors' businesses, the management and preservation of their assets and properties, and is in the best interests of the Debtors, their estates and creditors.

J.     Good Faith Negotiations.  Based upon the record before the Court, (i) the terms of the use of the Cash Collateral as provided in this Interim Order and (ii) the terms of the Postpetition Financing Documents, pursuant to which the DIP Loans will be made or provided to the Debtors by the Postpetition Lenders, have been negotiated by the Prepetition Secured Parties and the Postpetition Secured Parties (as the case may be) at arm's length and in "good faith," as that term is used in section 364(e) of the Bankruptcy Code, and are in the best interests of the Debtors, their estates and creditors. The Postpetition Secured Parties are extending financing under the Postpetition Financing Documents to the Debtors in good faith and the Prepetition Secured Parties are permitting the use of their Cash Collateral, in good faith, and consequently, the Postpetition Secured Parties and the Prepetition Secured Parties are entitled to the protections of the provisions of section 364(e) of the Bankruptcy Code in the event this Interim Order or any other order or any provision hereof or thereof is vacated, reversed, amended or modified, on appeal or otherwise.

K.     No Objection to Priming and Use of Cash Collateral by Prepetition First Lien Lenders.  The Prepetition First Lien Agent and the other Prepetition First Lien Secured Parties

have either consented, or not objected, to (i) the priming of the First-Priority Prepetition Liens by the DIP Liens on the terms and conditions set forth in the Postpetition Financing Documents and this Interim Order and (ii) the Debtors' use of the Cash Collateral. Based upon the Motion and the record presented to the Court at the Interim Hearing, the terms of the adequate protection arrangements, use of Cash Collateral and the DIP Loans contemplated hereby are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration.

L.    Intercreditor Agreement. The Prepetition First Lien Agent, as collateral agent for the First Lien Obligations (as such term is defined in the Intercreditor Agreement), and the Prepetition Second Lien Agent, as collateral agent for the Second Lien Obligations (as such term is defined in the Intercreditor Agreement) are parties to that certain Intercreditor Agreement, dated as of May 1, 2006 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "**Intercreditor Agreement**"). The Intercreditor Agreement constitutes a "subordination agreement" under Section 510(a) of the Bankruptcy Code and is enforceable on its terms.

M.    Budget. The Debtors have represented that the Budget is achievable and will allow the Debtors to operate their Cases as a going concern. The Postpetition Lenders are relying on the Debtors' compliance with the Budget in accordance with the terms of the Postpetition Credit Agreement and this Interim Order in determining to enter into the Postpetition Financing Documents and to authorize the use of Cash Collateral. The Budget is attached as Exhibit A to this Interim Order.

N.    Section 552. In light of the subordination of their Liens and super-priority administrative claims to (i) the Carve-Out (as defined below) in the case of the Postpetition

16

Secured Parties, and (ii) the Carve-Out and the DIP Liens in the case of the Prepetition Secured

Parties, each of the Postpetition Secured Parties and the Prepetition Secured Parties is entitled to

all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the

case" exception shall not apply.

O.  Plan Support Agreement. Pursuant to that certain Plan Support Agreement dated

as of February 12, 2010 (the **"Plan Support Agreement"**), among the Debtors, the Prepetition

First Lien Agent, the Prepetition Second Lien Agent and the Consenting Parties (as defined in

the Plan Support Agreement), among other things, (x) the Debtors agreed to file and use

commercially reasonable efforts to obtain approval and confirmation of, and to consummate, the

Plan (as defined in the Plan Support Agreement), the principal terms of which are described in

the Plan Support Agreement pursuant to the timetable set forth therein, (y) the non-Debtor

parties thereto agreed to vote to accept the Plan, and to support the confirmation and

consummation of the Plan and all transactions contemplated thereby, and (z) certain parties

thereto agreed to provide commitments to provide the Exit Facilities (as defined in the Plan

Support Agreement), to purchase the New Equity Securities (as defined in the Plan Support

Agreement) and to elect the Cash Election (as defined in the Plan Support Agreement), all as

further described in the Plan Support Agreement. In addition, the parties to the Plan Support

Agreement have consented to, and agreed not to directly or indirectly object or oppose, and have

otherwise acknowledged and agreed that the terms and conditions of the Postpetition Credit

Agreement are reasonably satisfactory to such parties. Nothing in this Interim Order shall

modify any parties' rights or obligations under the Plan Support Agreement.

**NOW, THEREFORE,** on the Motion and the record before this Court with respect to

the Motion, and with the consent or deemed consent of the Debtors, the Postpetition Secured

Parties and the Prepetition Secured Parties to the form and entry of this Interim Order, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED:**

1.    Disposition. The Motion is granted in accordance with the terms and conditions set forth in this Interim Order and the Postpetition Financing Documents. Any objections to the relief sought in the Motion that have not been previously resolved, settled or withdrawn, and all reservations of right included therein, are hereby denied and overruled on their merits. This Interim Order shall become effective immediately upon its entry.

## Approval of DIP Loans, Postpetition Financing Documents and Authorization to Use Cash Collateral

2.    Borrowing Authorization. The Debtors are hereby expressly and immediately (i) authorized to enter into the Postpetition Credit Agreement, substantially in the form filed with the Court, with such modifications as permitted by this Interim Order, and the other Postpetition Financing Documents and (ii) authorized to borrow funds, incur debt, reimbursement obligations and other obligations, grant Liens, make deposits, provide guarantees and indemnities and perform their obligations solely in accordance with the terms and conditions of the Postpetition Financing Documents and this Interim Order. The Postpetition Financing Documents may be amended, restated, amended and restated, supplemented or otherwise modified or the provisions thereof waived in accordance with their terms, without further order of this Court; provided, however, that notice of any (i) increase in the aggregate of the DIP Commitments, (ii) increase in the applicable interest rates, other than increases described in the Motion or provided for in the Postpetition Financing Documents as filed with this Court, or (iii) modification of the maturity of the Obligations, financial covenants or financial events of default that are on terms materially

18

more onerous or burdensome to the Debtors, other than modifications described in the Motion or in the Postpetition Financing Documents as filed with this Court, shall be provided to the U.S. Trustee, counsel to the Committee, if any, and counsel to the respective Prepetition Agents, each of which shall have five (5) days from the delivery of such notice within which to object in writing to such amendment, modification or supplement, and upon any such timely written objection, such amendment, modification or supplement shall only be permitted following entry of an order of this Court approving or authorizing such amendment, modification or supplement. For purposes of this Interim Order, all amounts owed to the Postpetition Secured Parties under or in connection with the Postpetition Financing Documents, including, without limitation, all Secured Obligations, loans, advances, and other indebtedness, obligations in respect of indemnity claims, whether contingent or otherwise, and fees and amounts, including, without limitation, any attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable or reimbursable under the Postpetition Financing Documents, owing from time to time under or in connection with the Postpetition Financing Documents, and any and all other obligations at any time incurred by any of the Debtors to any of the Postpetition Secured Parties under the Postpetition Financing Documents, are defined and referred to herein as the "**Postpetition Obligations**."

3. <u>Postpetition Financing Documents Valid, Binding and Enforceable Against the Debtors</u>. Upon execution and delivery of the Postpetition Financing Documents, the Postpetition Financing Documents shall constitute legal, valid and binding obligations of the Debtors, enforceable against the Debtors in accordance with their terms; <u>provided</u>, <u>however</u>, that notwithstanding any other provision of this Interim Order or the Postpetition Financing Documents, the Debtors shall not, prior to entry of the Final Order or such other further orders as

19

this Court may enter, incur Postpetition Obligations in the aggregate principal amount of more than $17.0 million.

4.    <u>Authorization to Use Prepetition Secured Parties' Cash Collateral</u>.  Subject to the terms and conditions set forth in this Interim Order, the Debtors are authorized, pursuant to section 363 of the Bankruptcy Code, to use the Cash Collateral for the period of time from the date hereof until the earliest to occur of: (i) the termination of the DIP Commitments or acceleration of the Postpetition Obligations as set forth in the Postpetition Credit Agreement; (ii) this Interim Order ceases to be in full force and effect; (iii) immediately upon delivery of written notice to the Debtors by the Postpetition Agent of any breach or default by the Debtors of the terms and provisions of this Interim Order, which breach or default has not been cured by the Debtors or waived in a manner consistent with the terms and conditions of the Postpetition Credit Agreement; (iv) immediately upon delivery of written notice to the Debtors by the Postpetition Agent of an Event of Default under the Postpetition Credit Agreement, which Event of Default has not been cured by the Debtors or waived in a manner consistent with the terms and conditions of the Postpetition Credit Agreement; or (v) the conversion of any of the Cases to a chapter 7 case or appointment of a trustee or examiner with expanded powers (each such event described in (i) through (v) above being a **"Cash Collateral Termination Event"**).  The Debtors' authority to use the Cash Collateral shall automatically terminate on a Cash Collateral Termination Event without further order or relief from the Court.

5.    <u>Use of Proceeds of DIP Loans and Cash Collateral</u>.  Subject to the execution and effectiveness of the Postpetition Credit Agreement and at all times subject to the terms and conditions of the Postpetition Credit Agreement, the other Postpetition Financing Documents and this Interim Order, the Debtors are authorized to use Cash Collateral and the proceeds of the DIP

20

Loans made under or in connection with the Postpetition Financing Documents subject to, and used in a manner consistent with, the Budget solely for payment of (i) postpetition and approved prepetition operating expenses and other working capital, general corporate needs and financing requirements of the Debtors, (ii) certain transaction fees, costs and expenses (including any fees payable in connection with the Postpetition Financing Documents), (iii) certain other costs and expenses of administration of the Cases and (iv) certain other amounts otherwise permitted under this Interim Order or the Postpetition Financing Documents. From and after the Petition Date, amounts loaned and advanced under or in connection with the Postpetition Financing Documents and all proceeds of DIP Collateral and Prepetition Collateral including, without limitation, all of the Debtors' existing or future cash and Cash Collateral (collectively, "**Lender Funds**"), shall not, directly or indirectly, be used to pay expenses of the Debtors or otherwise disbursed except for those expenses and/or disbursements that are expressly permitted under the Budget and pursuant to this Interim Order and/or the Postpetition Financing Documents. Except as set forth in this paragraph, the Postpetition Secured Parties have not consented or agreed to the use of Lender Funds.

6.    Limitations on Use of Lender Funds. Notwithstanding anything herein to the contrary, no Lender Funds (including, without limitation, any portion of the Carve-Out) may be used directly or indirectly by any of the Debtors, the Committee, if one is appointed, or any other person or entity to: (a) request authorization to obtain postpetition loans or other financial accommodations pursuant to Bankruptcy Code section 364(c) or (d), or otherwise, other than from the Postpetition Secured Parties pursuant to the Postpetition Financing Documents; (b) seek authorization for any party to use any of the Cash Collateral of the Postpetition Secured Parties or the Prepetition Secured Parties except as set forth in this Interim Order; (c) investigate, assert,

21

join, commence, support or prosecute any action for any claim, counterclaim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief against, or adverse to the interests of, in any capacity, any or all of the Postpetition Secured Parties, the Prepetition Secured Parties and their respective officers, directors, employees, agents, attorneys, affiliates, assigns, or successors, with respect to any transaction, occurrence, omission, action or other matter (including formal discovery proceedings in anticipation or in connection thereof), including, without limitation, (i) any Avoidance Actions (as defined below) or other actions arising under chapter 5 of the Bankruptcy Code, (ii) any so-called "lender liability" claims and causes of action, (iii) any action with respect to the amount, validity, enforceability, perfection, priority, characterization and extent of or asserting any defense, counterclaim or offset to the Postpetition Obligations or the Prepetition Secured Obligations, or the validity, extent, priority, enforceability, perfection and characterization of the DIP Liens or the Prepetition Liens (or the value of any of the DIP Collateral or Prepetition Collateral), (iv) any action seeking to invalidate, set aside, avoid or subordinate, in whole or in part, the DIP Liens, the Prepetition Liens, the Postpetition Obligations or the Prepetition Secured Obligations, (v) except to contest the occurrence and/or continuation of any Event of Default as permitted in paragraph 21 hereof, any action seeking, or having the effect of, preventing, hindering or otherwise delaying any or all of the Postpetition Secured Parties' or Prepetition Secured Parties' assertion, enforcement or realization of remedies with respect to the Cash Collateral, the DIP Collateral or the Prepetition Collateral, as applicable, in accordance with the Postpetition Financing Documents, the Prepetition Financing Documents or this Interim Order, and (vi) any action seeking to modify any of the rights, remedies, priorities, privileges, protections and benefits granted to any or all of the Postpetition Secured

22

Parties or the Prepetition Secured Parties hereunder or under the Postpetition Financing Documents or the Prepetition Financing Documents; provided, however, without prejudice to the rights of parties in interest to the extent set forth in paragraph 34 below, that nothing herein shall limit or otherwise affect the ability of the Committee, if any, or any other party-in-interest to investigate (but not prosecute) the extent, validity and priority of the Prepetition Secured Obligations or Prepetition Liens in any manner; provided, further, however, that the aggregate amount of the Lender Funds used by any Committee and its counsel in investigating the Prepetition Secured Obligations or Prepetition Liens may not exceed $40,000.

7. **Payment of Interest, Fees, Costs and Expenses in Connection with Postpetition Financing Documents.** The Postpetition Obligations shall bear interest at the rates, and be due and payable (and paid), as set forth in, and in accordance with the terms and conditions of, this Interim Order and the Postpetition Financing Documents, in each case without further notice, motion or application to, order of, or hearing before, this Court. Any and all fees, costs and expenses incurred, paid or required to be paid in connection with the Postpetition Financing Documents, including without limitation, all arranging fees, agency fees, facility fees, closing fees, administrative fees, commitment fees, and attorneys', financial advisors', appraisers' and accountants' fees, expenses and disbursements whether incurred, paid or required to be paid prepetition or postpetition, are hereby affirmed, ratified, authorized and payable (and any funds held by the Postpetition Agent and/or its professionals for payment of such fees, costs, expenses and disbursements may be applied for payment) as contemplated in the Motion or contained or referenced in the Postpetition Financing Documents filed with the Court, shall not be subject to further approval of this Court and shall be non-refundable.

**Granting of Priming Liens and Super-priority Administrative Expense Claims**

8. Priming and Other Liens on the DIP Collateral.

23

(a)     Effective immediately upon the entry of this Interim Order, as collateral security for the payment and performance in full of all Postpetition Obligations, the Postpetition Agent (as provided in the Postpetition Financing Documents and for itself and the ratable benefit of the other Postpetition Secured Parties) is hereby granted the following Liens (which shall immediately, and without any further action by any Person, be valid, binding, permanent, perfected, continuing, enforceable and non-avoidable) on all property of the Debtors, now existing or hereinafter acquired, including, without limitation, all Pledged Collateral (as defined in the Postpetition Security Agreement (as defined below)), all Cash Collateral, cash and cash equivalents (whether maintained with the Postpetition Agent or otherwise), and any investment in such cash or cash equivalents, money, inventory, goods, accounts receivable, other rights to payment, intercompany loans and other investments, investment property, contracts, contract rights, properties, plants, equipment, machinery, general intangibles, payment intangibles, accounts, deposit accounts, documents, instruments, chattel paper, documents of title, letters of credit, letter of credit rights, supporting obligations, leases and other interests in leaseholds, real property, fixtures, patents, copyrights, trademarks, trade names, other intellectual property, intellectual property licenses, capital stock of subsidiaries (subject to the restriction set forth below), tax and other refunds, insurance proceeds, commercial tort claims, membership interests and other equity ownership interests, in joint ventures and other non-wholly owned entities affiliated with the Debtors (collectively, the **"Joint Venture Entities"**) (subject to the restrictions set forth below), Avoidance Actions (as defined below and solely upon entry of the Final Order), all other Collateral and all other "property of the estate" (within the meaning of the Bankruptcy Code) of any kind or nature, real or personal, tangible, intangible or mixed, now existing or hereafter acquired or created, and all rents, products, substitutions, accessions, profits,

24

replacements and cash and non-cash proceeds of all of the foregoing (except, in each case, Excluded Property as such term is defined in that certain Debtor-In-Possession Security Agreement by Borrower, as borrower, the Guarantors party thereto and the Postpetition Agent as collateral agent (the "**Postpetition Security Agreement**")); provided, however, that notwithstanding any provision herein or in any Postpetition Financing Documents to the contrary, no Debtor organized under U.S. law shall be required to pledge in excess of 66% of the voting capital stock of its direct foreign subsidiaries if such investment would or could result in an increase in the net income or reduction in the net losses of a United States shareholder of such subsidiary pursuant to Section 951 (or a successor provision) of the Internal Revenue Code of 1986 (as amended from time to time) as reasonably determined by the Debtors (all of the foregoing collateral collectively referred to as the "**DIP Collateral**," and all such Liens granted to the Postpetition Agent as provided in the Postpetition Financing Documents and for the ratable benefit of the Postpetition Secured Parties pursuant to this Interim Order and the Postpetition Financing Documents, the "**DIP Liens**"):

> (I)  pursuant to section 364(c)(2) of the Bankruptcy Code, a perfected, binding, continuing, enforceable, non-avoidable, first priority Lien on all unencumbered DIP Collateral, including, without limitation, but subject to entry of the Final Order, the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code, and any other avoidance or similar action under the Bankruptcy Code or similar federal or state law and the proceeds thereof ("**Avoidance Actions**"), whether received by judgment, settlement or otherwise, provided, however, that the Avoidance Actions shall be the last DIP Collateral used to repay the Postpetition Obligations;

> (II)  pursuant to section 364(c)(3) of the Bankruptcy Code, a perfected, binding, continuing, enforceable, non-avoidable, junior Lien upon all DIP Collateral that is subject to (x) valid, enforceable, non-avoidable and perfected Liens in existence on the Petition Date and which are identified on Schedule 6.02(c) of the Postpetition Credit Agreement, and that after giving effect to any intercreditor or subordination agreement are senior to the Prepetition Liens securing the Debtors' obligations under the Prepetition Financing Documents, and

25

(y) valid, enforceable and non-avoidable Liens in existence on the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code and which are identified on Schedule 6.02(c) of the Postpetition Credit Agreement, and that after giving effect to any intercreditor or subordination agreement are senior to the Prepetition Liens securing the Debtors' obligations under the Prepetition Financing Documents, in each case other than, in the case of clause (II)(x) or (II)(y), Liens which are expressly stated to be primed by the Liens to be granted to the Postpetition Agent described in clause (III) below (subject to such exception, the "**Prepetition Senior Liens**"); and

(III)    pursuant to section 364(d)(1) of the Bankruptcy Code, a perfected, binding, continuing, enforceable, non-avoidable, first priority, senior priming Lien on all DIP Collateral (including, without limitation, Cash Collateral) that is senior and priming to (x) the Prepetition Liens securing the Debtors' obligations under the Prepetition Financing Documents and (y) except for the Prepetition Senior Liens, any other Liens in favor of any other person or entity, including, without limitation, all Liens junior to the Prepetition Liens (the Liens referenced in clauses (x) and (y), collectively, the "**Primed Liens**"), which Primed Liens, together with any Liens granted on or after the Petition Date to provide adequate protection in respect of any Primed Liens, shall be primed by and made subject and subordinate to the perfected first priority senior priming DIP Liens; provided, however, that the Liens described in this clause III shall be subject and subordinate to the Carve-Out and the Prepetition Senior Liens.

(b)    Notwithstanding anything to the contrary contained in this Interim Order or the Postpetition Financing Documents, and for the avoidance of doubt, the DIP Liens granted to the Postpetition Administrative Agent for the ratable benefit of the Postpetition Secured Parties shall in each and every case be first priority senior Liens that (i) are subject only to the Prepetition Senior Liens and, to the extent provided in the provisions of this Interim Order and the Postpetition Financing Documents, shall also be subject to the Carve-Out, and (ii) except as provided in clause (i) above, are senior to all other prepetition and postpetition Liens of any other person or entity (including, without limitation, the Primed Liens and the Adequate Protection Liens (as defined below)), except to the extent such other Liens are otherwise expressly permitted to be senior to the DIP Liens pursuant to the Postpetition Credit Agreement. The DIP Liens and the DIP Super-Priority Claims (as defined below) (i) shall not be subject to sections 510, 549, 550 or 551 of the Bankruptcy Code or subject to entry of the Final Order, section

26

506(c) of the Bankruptcy Code, or the "equities of the case" exception of section 552 of the Bankruptcy Code, (ii) shall not be subordinate to, or pari passu with, (x) any Lien that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code, or (y) any intercompany or affiliate Liens of the Debtors, and (iii) shall be valid and enforceable against any trustee or any other estate representative appointed in the Cases, upon the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (each, a **"Successor Case"**), and/or upon the dismissal of any of the Cases. Except as otherwise expressly permitted pursuant to this Interim Order or the Postpetition Credit Agreement, no claim or Lien having a priority superior to or pari passu with those granted by this Interim Order with respect to the Postpetition Obligations shall be granted or allowed until (x) all Postpetition Obligations have been paid in full in cash and (y) all Commitments under the Postpetition Financing Documents have been irrevocably terminated (the conditions described in clauses (x) and (y), collectively, **"Paid in Full"** or **"Payment in Full"**).

(c)     The Postpetition Financing Documents shall constitute and evidence the valid and binding Postpetition Obligations of the applicable Debtors, which Postpetition Obligations shall be enforceable against such Debtors, their estates and any successors thereto (including, without limitation, any trustee or other estate representative in any Successor Case), and their creditors, in accordance with their terms. No obligation, payment, transfer or grant of security under the Postpetition Credit Agreement, the other Postpetition Financing Documents or this Interim Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 544, 547, 548 or 549 of the Bankruptcy Code or under any applicable state Uniform

27

Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual or otherwise) counterclaim, cross-claim, defense or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

9.   Super-priority Administrative Claims for Postpetition Lenders.  In addition to the DIP Liens granted herein, effective immediately upon entry of this Interim Order, all of the Postpetition Obligations shall constitute allowed super-priority administrative expense claims pursuant to section 364(c)(1) of the Bankruptcy Code, which shall have priority, subject only to the payment of the Carve-Out to the extent specifically provided in the Postpetition Financing Documents and this Interim Order, over all administrative expense claims, adequate protection and other diminution claims, including the Adequate Protection Claims, unsecured claims and all other claims against the applicable Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses or other claims of the kinds specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to the entry of the Final Order), 507(a), 507(b), 546, 726, 1113 and 1114 or any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment Lien or other non-consensual Lien, levy or attachment (the "**DIP Super-Priority Claims**").  The DIP Super-Priority Claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, shall be against each other Debtor on a joint and several basis, and shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, including, without limitation and upon entry of the Final Order, all Avoidance

RLF1 3555548v.1

Actions. Other than as expressly provided pursuant to the Postpetition Credit Agreement and

this Interim Order with respect to the Carve-Out, no costs or expenses of administration,

including, without limitation, professional fees allowed and payable under sections 328, 330, and

331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in these

proceedings, or in any Successor Case, and no priority claims are, or will be, senior to, prior to or

on a parity with the DIP Liens and the DIP Super-Priority Claims or the Postpetition Obligations,

or with any other claims of the Postpetition Secured Parties arising hereunder.

10.     <u>Carve-Out Expenses</u>. Subject to the terms and conditions contained in this

paragraph 10, each of the DIP Liens, DIP Super-Priority Claims, Prepetition Liens, Adequate

Protection Liens and Adequate Protection Claims (as defined below) shall be subject and

subordinate to payment of the Carve-Out:

(a)     For purposes of this Interim Order, **"Carve-Out"** means, collectively: (i) all

unpaid fees required to be paid in these Cases to the clerk of the Bankruptcy Court and to the

office of the United States Trustee under 28 U.S.C. §1930(a), whether arising prior to or after the

delivery of the Carve-Out Trigger Notice (as defined below); (ii) (x) all unpaid fees, costs and

disbursements set forth in the Budget incurred by professionals retained by the Debtors or the

Committee in these Cases (collectively, the "**Professionals**") (but excluding the fees and

expenses of professionals retained by the individual members of any Committee), in each case,

that are incurred prior to the delivery by the Postpetition Agent of a Carve-Out Trigger Notice,

are finally allowed by the Court under sections 105(a), 330 and 331 of the Bankruptcy Code, and

that remain unpaid after application of available funds remaining in the Debtors' estates for

payment of such Professionals, and (y) all unpaid fees, costs and disbursements of Professionals

(but excluding the fees and expenses of professionals retained by individual members of any

29

Committee) that are incurred after the delivery of a Carve-Out Trigger Notice, are finally allowed by the Court under sections 105(a), 330 and 331 of the Bankruptcy Code, and that remain unpaid after application of available funds remaining in the Debtors' estates for payment of such Professionals in an aggregate amount not to exceed $1,000,000 (the **"Carve-Out Cap"**). The term **"Carve-Out Trigger Notice"** shall mean a written notice delivered by the Postpetition Agent to the Debtors' lead counsel, lead counsel to the Committee, if any, counsel to the respective Prepetition Agents and the U.S. Trustee, which notice may be delivered at any time following the occurrence and during the continuation of any Event of Default under the Postpetition Financing Documents, expressly stating that the Carve-Out and the Carve-Out Cap is invoked.

(b)      Following delivery of the Carve-Out Trigger Notice, any payments actually made pursuant to Bankruptcy Code sections 327, 328, 330, 331, 503 or 1103 or otherwise, to such Professionals shall (i) not be paid from the proceeds of any Lender Funds, DIP Loans, DIP Collateral, Prepetition Collateral or Cash Collateral until such time as all retainers, if any, held by such Professionals have been reduced to zero (which reduction shall reduce the Carve-Out Cap on a dollar-for-dollar basis), and (ii) in the case of any payments made on account of any fees and expenses described in clause (ii)(y) of the definition of Carve-Out, including payments made from funds remaining in the Debtors' estates for payment of such Professionals, reduce the Carve-Out Cap on a dollar-for-dollar basis.  So long as no Carve-Out Trigger Notice has been delivered, the Debtors shall be permitted to pay compensation and reimbursement of expenses, as applicable, of the Professionals finally allowed and payable under sections 328, 330 and 331 of the Bankruptcy Code and in accordance with the Budget, as the same may be due and payable,

and any such compensation and expenses previously paid, or accrued but unpaid, prior to the delivery of the Carve-Out Trigger Notice shall not reduce the Carve-Out or the Carve-Out Cap.

(c)     Notwithstanding any provision in this paragraph 10 to the contrary, no portion of the Lender Funds, Carve-Out, Cash Collateral, DIP Collateral, Prepetition Collateral or proceeds of the DIP Loans shall be utilized for the payment of professional fees and disbursements to the extent restricted under paragraph 6 hereof.

(d)     Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any of the Debtors, any Committee, any other official or unofficial committee in these Cases, or of any other person or entity, or shall affect the right of any Postpetition Secured Parties or Prepetition Secured Parties to object to the allowance and payment of such fees and expenses.

11.     Waiver of Section 506(c) Claims.  Subject to entry of the Final Order and as a further condition of the Postpetition Credit Agreement and any obligation of the Postpetition Secured Parties to make credit extensions pursuant to the Postpetition Financing Documents (and their consent to the payment of the Carve-Out to the extent provided herein), no costs or expenses of administration of the Cases or any Successor Case shall be charged against or recovered from or against any or all of the Postpetition Secured Parties, the Prepetition Secured Parties, the DIP Collateral, the Prepetition Collateral or the Cash Collateral pursuant to section 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the Postpetition Agent or the respective Prepetition Agents, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence of any or all of the Postpetition Secured Parties or the Prepetition Secured Parties, as applicable, or otherwise.

31

12. **After-Acquired Property.** Except as otherwise provided in this Interim Order, pursuant to section 552(a) of the Bankruptcy Code, all property acquired by the Debtors on or after the Petition Date is not, and shall not be, subject to any Lien of any person or entity resulting from any security agreement entered into by the Debtors prior to the Petition Date including, without limitation, in respect of the Prepetition Financing Documents, except to the extent that such property constitutes proceeds of property of the Debtors that is subject to a valid, enforceable, perfected, and unavoidable Lien as of the Petition Date which is not subject to subordination under the Bankruptcy Code or other provisions or principles of applicable law.

13. **Protection of Postpetition Secured Parties' Rights.**

(a) Unless the Required Lenders under the Postpetition Credit Agreement, or such other Lenders as may be required under the Postpetition Credit Agreement, shall have provided their prior written consent or all Postpetition Obligations have been Paid in Full, there shall not be entered in these Cases, or in any Successor Case, any order which authorizes any of the following: (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other Lien on all or any portion of the DIP Collateral and/or that is entitled to administrative priority status, in each case which is superior to or pari passu with the DIP Liens, DIP Super-Priority Claims and the other priorities, protections and rights granted pursuant to this Interim Order to the Postpetition Secured Parties; or (ii) the use of Cash Collateral for any purpose other than Payment in Full of the Postpetition Obligations or as otherwise permitted by the Budget and pursuant to this Interim Order and/or the Postpetition Financing Documents.

(b) The Debtors (and/or their legal and financial advisors in the case of clauses (ii) through (iv) below, subject to attorney-client privilege and/or attorney work product

privilege) will: (i) maintain books, records and accounts to the extent and as required by the Postpetition Financing Documents; (ii) cooperate, consult with, and provide to the Postpetition Agent and the Prepetition Agents all such information as required or allowed under the Postpetition Financing Documents, the Prepetition Financing Documents and the provisions of this Interim Order, as applicable; (iii) at reasonable times and as often as reasonably requested, permit representatives of the Postpetition Agent and the Prepetition Agents such rights to visit and inspect any of the Debtors' respective properties, to examine and make abstracts or copies from any of their respective books and records, to conduct a collateral audit and analysis of their respective inventory and accounts, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations and accounts with their respective officers, employees and independent public accountants as and to the extent required by the Postpetition Financing Documents and the Prepetition Financing Documents, as applicable; and (iv) permit representatives of the Postpetition Agent and the Prepetition Agents to consult with the Debtors' management and advisors on matters concerning the general status of the Debtors' businesses, financial condition and operations.

14. _Proceeds of Subsequent Financing._ Without limiting the provisions and protections of paragraph 13 above, if at any time prior to the Payment in Full of all Postpetition Obligations (including subsequent to the confirmation of the Plan or any other Chapter 11 plan or plans with respect to any of the Debtors), the Debtors' estates, any trustee, any examiner with enlarged powers or any responsible officer subsequently appointed shall obtain credit or incur debt pursuant to sections 364(b), 364(c), 364(d) or any other provision of the Bankruptcy Code in violation of the Postpetition Financing Documents or the terms and conditions of this Interim

33

Order, then all of the cash proceeds derived from such credit or debt and all Cash Collateral shall immediately be turned over to the Postpetition Agent for application to, and until Payment in Full of, the Postpetition Obligations pursuant to the Postpetition Financing Documents.

15.     Cash Collection. From and after the date of entry of this Interim Order, cash collections (including, but not limited to, payments from customers with respect to accounts receivable) constituting collections and proceeds of any DIP Collateral, Prepetition Collateral or services provided by any Debtor and all Cash Collateral which shall at any time come into the possession, custody or control of any Debtor, or to which any Debtor is now or shall become entitled to any time, shall be directed to lock-box and/or deposit accounts ("**Cash Collection Accounts**") under the sole dominion and control of the Postpetition Agent in accordance with the Postpetition Financing Documents, this Interim Order or otherwise pursuant to a structure satisfactory to the Postpetition Agent. The Pre-Petition Control Agreements (as defined in the Postpetition Credit Agreement) have been amended so as to effectively grant "control" (within the meaning of the Uniform Commercial Code) to the Postpetition Agent for the benefit of the Postpetition Secured Parties over all accounts subject thereto, including but not limited to the Cash Collection Accounts, and so as to perfect the Postpetition Secured Parties' Liens on and interests in such accounts. Subject to the provisions of paragraph 21 of this Interim Order, upon the direction of the Postpetition Agent at any time after the occurrence and during the continuance of an Event of Default, all proceeds in the Cash Collection Accounts shall be remitted to the Postpetition Agent for application to, and until Payment in Full of, the Postpetition Obligations pursuant to the applicable Postpetition Financing Documents, and the Postpetition Agent shall be authorized to take all action that is necessary or appropriate to effectuate the foregoing. Unless otherwise agreed to in writing by the Postpetition Agent, the

34

Debtors shall maintain no accounts except those specifically identified in any order of the Court approving the Debtors' cash management system (the "**Cash Management Order**"). The Debtors and the financial institutions where the Debtors' Cash Collection Accounts are maintained (including those accounts identified in any Cash Management Order), are authorized and directed to remit funds in such Cash Collection Accounts upon receipt of any direction to that effect from the Postpetition Agent.

16. <u>Disposition of DIP Collateral</u>. The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral without the prior written consent of the Postpetition Secured Parties in accordance with the Postpetition Financing Documents (and no such consent shall be implied from any other action, inaction or acquiescence by any Postpetition Secured Party or any order of this Court), except (i) as permitted in the Postpetition Financing Documents and this Interim Order and (ii) approved by the Court to the extent required under applicable bankruptcy law. Except to the extent otherwise expressly provided in the Postpetition Financing Documents, all proceeds from the sale, transfer, lease, encumbrance or other disposition of any DIP Collateral shall be remitted to the Postpetition Agent for application to, and until Payment in Full of, the Postpetition Obligations pursuant to the applicable Postpetition Financing Documents.

17. <u>DIP Collateral Rights</u>. In the event that any party who holds a Lien on the DIP Collateral that is junior and/or subordinate to any of the DIP Liens in such DIP Collateral receives or is paid the proceeds of such DIP Collateral, or receives any other payment with respect thereto from any other source, prior to Payment in Full of all Postpetition Obligations under the Postpetition Financing Documents, then, except as otherwise permitted under the Postpetition Financing Documents, such junior or subordinate lienholder shall be deemed to have

35

received, and shall hold, the proceeds of any such DIP Collateral in trust for the Postpetition

Agent and the other Postpetition Secured Parties, and shall immediately turnover such proceeds

to the Postpetition Agent for application to, and until Payment in Full of, the Postpetition

Obligations pursuant to the Postpetition Financing Documents

18.     Reservation of Rights of Prepetition Secured Lenders and Prepetition Agents.

Notwithstanding anything herein to the contrary, this Interim Order is without prejudice to, and

does not constitute a waiver of, expressly or implicitly, the rights of the Prepetition Secured

Lenders and the Prepetition Agents to seek modification of the grant of adequate protection

provided hereby so as to provide different or additional adequate protection at any time,

including prior to a Cash Collateral Termination Event, subject, however, in all respects to the

terms of the Postpetition Financing Documents, the Plan Support Agreement, the Intercreditor

Agreement and this Interim Order, and nothing herein shall affect the rights of any other party or

entity to seek or oppose such modification of the grant of the adequate protection provided

hereby; provided, however, that if any additional adequate protection claims, liens or other rights

are awarded at any time to or for the benefit of any of the Prepetition First Lien Secured Parties

or the Prepetition Second Lien Secured Parties, as applicable, such claims, liens and/or other

rights shall be at all times junior in all respects to the claims and Liens granted to or for the

benefit of the Postpetition Secured Parties and shall not affect the priority, validity, binding

nature, enforceability or perfection of any of such claims and Liens granted to or for the benefit

of the Postpetition Secured Parties; provided, further, however, that the foregoing is without

prejudice to the right of the Debtors or any other party in interest, including the Postpetition

Secured Parties, to challenge any such request.

36

19. <u>Termination of Authority to Borrow Funds</u>. Notwithstanding anything herein or in the other Postpetition Financing Documents, on the Maturity Date of the Postpetition Credit Agreement the Debtors shall no longer, pursuant to this Interim Order, the Postpetition Financing Documents or otherwise, be authorized to borrow funds or incur indebtedness hereunder or under the Postpetition Financing Documents or to use any proceeds of the DIP Loans already received, including Cash Collateral (and any obligations of the Postpetition Lenders to make loans or advances hereunder or under the Postpetition Financing Documents automatically shall be terminated).

20. <u>Survival of Rights, Remedies, Benefits and Protections</u>. Notwithstanding anything herein or the occurrence of the Maturity Date under the Postpetition Credit Agreement, all of the rights, remedies, benefits and protections provided (i) to the Postpetition Secured Parties under this Interim Order and the other Postpetition Financing Documents, and (ii) to the Prepetition Secured Parties under this Interim Order, shall survive the Maturity Date. Upon such Maturity Date, the principal of and all accrued interest and fees and all other Postpetition Obligations shall be immediately due and payable and the Postpetition Secured Parties shall have all other rights and remedies provided in this Interim Order, the Postpetition Financing Documents and applicable law, subject to, solely in the case of exercising enforcement rights or remedies in respect of the DIP Collateral, the notice requirement set forth in paragraph 21 below if applicable.

**Additional General Provisions**

21. <u>Rights and Remedies Upon Event of Default; Automatic Stay Modified</u>. The automatic stay provisions of section 362 of the Bankruptcy Code are hereby vacated and modified, without requiring prior notice to or authorization of this Court, to the extent necessary to permit the Postpetition Secured Parties to exercise, upon the occurrence and during the

continuation of any Event of Default, all rights and remedies provided for in the Postpetition

Financing Documents and this Interim Order, and to take any or all of the following actions:

(a) terminate the Debtors' use of Cash Collateral; (b) declare all Postpetition Obligations to be

immediately due and payable whereupon such amounts shall be immediately due and payable

without presentment, demand, protest or other formalities of any kind, all of which are hereby

expressly waived by the Debtors; (c) terminate the Interim Commitment or the Additional

Commitment and any unfunded DIP Commitments under the Postpetition Credit Agreement and

terminate the Postpetition Financing Documents as to any future liability or obligation of the

Postpetition Secured Parties but without affecting any of the Postpetition Obligations or the DIP

Liens securing the Postpetition Obligations; (d) set off and apply immediately any and all

amounts in Cash Collection Accounts and any other accounts maintained by the Debtors with

any Postpetition Secured Parties against the Postpetition Obligations, and otherwise enforce

rights or remedies against the DIP Collateral in the possession of any of the Postpetition Secured

Parties for application towards the Postpetition Obligations; (e) reduce any claim to judgment;

and (f) take any other actions or exercise any other rights or remedies permitted under this

Interim Order, the Postpetition Financing Documents or applicable law to effect the repayment

and satisfaction of the Postpetition Obligations; provided, however, that the Postpetition Agent

shall provide three (3) business days written notice (by facsimile, telecopy, electronic mail or

otherwise) to the U.S. Trustee, counsel to the Debtors, counsel to the respective Prepetition

Agents, and counsel to the Committee, if any, prior to exercising any enforcement rights or

remedies in respect of the DIP Collateral (other than the rights described in clauses (a), (b) and

(c) above (to the extent they might be deemed remedies in respect of the DIP Collateral) and

other than with respect to freezing any Cash Collection Accounts, other deposit accounts or

38

securities accounts). The Debtors and any other parties in interest may seek within the three (3) business day notice period an expedited hearing before this Court solely for the purpose of contesting whether, in fact, an Event of Default has occurred and is continuing and the Debtors may not invoke section 105 of the Bankruptcy Code in an effort to restrict or preclude any Postpetition Secured Party from exercising any rights or remedies set forth in this Interim Order or the Postpetition Financing Documents. At the expiration of such three (3) business day period, in the absence of a determination by this Court that an Event of Default has not occurred or is not continuing, the automatic stay, as to the Postpetition Secured Parties, shall automatically terminate without further notice or order and the Postpetition Secured Parties shall be entitled to pursue all remedies under the Postpetition Financing Documents and this Interim Order. The rights and remedies of the Postpetition Secured Parties specified herein are cumulative and not exclusive of any rights or remedies that the Postpetition Secured Parties may have under the Postpetition Financing Documents, under applicable law or otherwise. Upon written notice (by facsimile, telecopy, electronic mail or otherwise) to the U.S. Trustee, counsel to the Debtors, counsel to the respective Prepetition Agents, and counsel to the Committee, if any, nothing herein shall preclude the Postpetition Secured Lenders from seeking an order from the Bankruptcy Court authorizing the Postpetition Secured Parties to exercise any enforcement rights or remedies with respect to the DIP Collateral on less than three (3) business days notice.

22.     Exercise of Rights by Postpetition Secured Parties. If the Postpetition Secured Parties shall at any time exercise any of their respective rights and remedies hereunder, under the Postpetition Financing Documents or under applicable law in order to effect payment or satisfaction of the Postpetition Obligations or to receive any amounts or remittances due hereunder or under the Postpetition Financing Documents, including without limitation,

foreclosing upon and selling all or a portion of the DIP Collateral, the Postpetition Secured Parties shall have the right without any further action or approval of this Court to exercise such rights and remedies as to all or such part of the DIP Collateral as the Postpetition Secured Parties shall elect in their sole discretion, subject to the provision by the applicable Postpetition Secured Parties of the written notice as provided in paragraph 21 of this Interim Order. No holder of an Adequate Protection Lien or a lien primed by this Interim Order shall be entitled to object on the basis of the existence of any such lien to the exercise by the Postpetition Secured Parties of their respective rights and remedies hereunder, under the Postpetition Financing Documents or under applicable law to effect satisfaction of the Postpetition Obligations or to receive any amounts or remittances due hereunder or under the Postpetition Financing Documents. The Postpetition Secured Parties shall be entitled to apply the payments or proceeds of the DIP Collateral in accordance with the provisions of this Interim Order and the Postpetition Financing Documents.

23. <u>Right to Enter Property Upon Event of Default</u>. Notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies of the Postpetition Secured Parties contained in this Interim Order, the Postpetition Financing Documents, or otherwise available at law or in equity, upon written notice to the Debtors and others, as specified in paragraph 21 above, and to the landlord, lienholder licensor or other third party owner of any leased or licensed premises or intellectual property that an Event of Default has occurred and is continuing under the Postpetition Credit Agreement, the Postpetition Agent (i) may, unless otherwise provided in any separate agreement by and between the applicable landlord or licensor and the Postpetition Agent, enter upon any leased or licensed premises of the Debtors for the purpose of exercising any remedy with respect to DIP Collateral located thereon and (ii) shall be entitled to all of the Debtors' rights and privileges as lessee or licensee under the

40

applicable lease or license and to use any and all trademarks, trade names, copyrights, licenses, patents or any similar assets of the Debtors which are owned by or subject to a lien of any third party and which are used by the Debtors in their business, without interference from the lienholders or licensors thereunder, subject to such lienholders' or licensors' rights under applicable law; provided, however, that the Postpetition Agent, on behalf of the Postpetition Secured Parties shall only pay rent and additional rent, fees, royalties or other obligations of the Debtors that first arise after provision of the Postpetition Agent's written notice referenced above and that are payable during the period of any occupancy or use by the Postpetition Agent, calculated on a *per diem* basis. Nothing herein shall require the Debtors, the Postpetition Agent or the other Postpetition Secured Parties to assume any lease or license under the Bankruptcy Code as a condition to the rights afforded to the Postpetition Agent and the other Postpetition Secured Parties in this paragraph. For the avoidance of doubt and notwithstanding anything to the contrary herein, subject to entry of the Final Order, any landlord's lien, right of distraint or levy, security interest or other lien or interest that any landlord, warehousemen or landlord's mortgagee may have in any DIP Collateral located on such leased premises is hereby subordinate to the DIP Liens.

24. No Waiver. Neither the failure of the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Interim Order, the Prepetition Financing Documents or otherwise (or any delay in seeking or exercising same), nor the failure of the Postpetition Secured Parties to seek relief or otherwise exercise their respective rights and remedies under this Interim Order, the Postpetition Financing Documents or otherwise (or any delay in seeking or exercising same), shall constitute a waiver of any of such parties' rights hereunder, thereunder, or otherwise. Except as expressly provided herein, nothing contained in

41

this Interim Order (including, without limitation, the authorization of the use of any Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity to any Prepetition Secured Party or any Postpetition Secured Party, including, without limitation, rights of a party to a swap agreement, securities contract, commodity contract, forward contract or repurchase agreement with a Debtor to assert rights of setoff or other rights with respect thereto as permitted by law (or the right of a Debtor to contest such assertion). Except as prohibited by this Interim Order, the Intercreditor Agreement and the Plan Support Agreement, as applicable, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair, the ability of the Prepetition Secured Parties or the Postpetition Secured Parties under the Bankruptcy Code or under non-bankruptcy law to (i) request conversion of the Cases to cases under Chapter 7, dismissal of the Cases, or the appointment of a trustee in the Cases, (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, any Chapter 11 plan or plans with respect to any of the Debtors, or (iii) exercise any of the rights, claims or privileges (whether legal, equitable or otherwise) of the Postpetition Secured Parties or the Prepetition Secured Parties, respectively. Except to the extent otherwise expressly provided in this Interim Order, neither the commencement of the Cases nor the entry of this Interim Order shall limit or otherwise modify the rights and remedies of the Prepetition Secured Parties with respect to non-Debtor entities or their respective assets, whether such rights and remedies arise under the Prepetition Financing Documents, applicable law, or equity.

25.     Prohibition on Granting Other Claims or Liens in the DIP Collateral. Except as expressly permitted in the Postpetition Credit Agreement and this Interim Order, the Debtors shall be enjoined and prohibited at any time during the Cases from granting claims or liens in the

DIP Collateral or any portion thereof to any other parties pursuant to sections 364(d) or 507(b) of the Bankruptcy Code or otherwise; provided, however, no violation of this Interim Order shall occur if (i) solely by operation of law without any further action by the Debtors, any Permitted Lien is created or imposed on all or any portion of the DIP Collateral and (ii) such Permitted Lien is or must be, solely by operation of law and without any further action by the Debtors, senior to the DIP Liens. The Debtors shall be enjoined and prohibited at any time from (i) using the DIP Collateral and Cash Collateral except pursuant to the Budget and otherwise pursuant to the terms and conditions of this Interim Order and the Postpetition Financing Documents and (ii) applying to this Court or any other court for an order authorizing the use of the DIP Collateral and the Cash Collateral except on the terms of this Interim Order and the other Postpetition Financing Documents.

26.     _Automatic Postpetition Perfection of Liens._ This Interim Order shall be sufficient and conclusive evidence of the validity, enforceability, perfection and priority of the DIP Liens and the Adequate Protection Liens without the necessity of (a) filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or (b) taking any other action (including, without limitation, executing and delivering any control agreements) to validate or perfect the DIP Liens and the Adequate Protection Liens or to entitle the DIP Liens and the Adequate Protection Liens to the priorities granted herein. Notwithstanding the foregoing, each of the Postpetition Agent and the respective Prepetition Agents (in the latter case, solely with respect to the Adequate Protection Liens) may, in their sole discretion, file financing statements, mortgages, security agreements, notices of Liens and other similar documents, and are hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing

43

statements, security agreements, notices and other agreements or documents shall be deemed to have been filed or recorded at the time and on the Petition Date. The applicable Debtors shall execute and deliver to the Postpetition Agent and/or the respective Prepetition Agents, as applicable, all such financing statements, notices and other documents as such parties may reasonably request to evidence and confirm the contemplated priority of, the DIP Liens and the Adequate Protection Liens, as applicable, granted pursuant hereto. Without limiting the foregoing, each of the Postpetition Agent and the respective Prepetition Agents, each in its discretion, may file a photocopy of this Interim Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property, and in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Interim Order. Subject to the entry of the Final Order, any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, or other instrument or agreement that requires the payment of any fees or obligations to any governmental entity or non-governmental entity in order for the Debtors to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other DIP Collateral, is and shall be deemed to be inconsistent with the provisions of the Bankruptcy Code, and shall have no force or effect with respect to the Liens on such fee or leasehold interests or other applicable DIP Collateral or the proceeds of any assignment and/or sale thereof by any Debtor, in favor of the Postpetition Secured Parties in accordance with the terms of the Postpetition Financing Documents and this Interim Order. To the extent that any Prepetition Agent is the secured party under any account control agreements, listed as loss payee under any of the Debtors' insurance policies or is the secured party under any Prepetition

44

Financing Documents, the Postpetition Agent shall also be deemed to be the secured party under such account control agreements, loss payee under the Debtors' insurance policies and the secured party under each such Prepetition Financing Documents, shall have all rights and powers attendant to that position (including, without limitation, rights of enforcement) and shall act in that capacity and distribute any proceeds recovered or received first, for the benefit of the Postpetition Secured Parties in accordance with the Postpetition Financing Documents and second, subsequent to Payment in Full of all Postpetition Obligations, for the benefit of the Prepetition Secured Parties (subject to the relative rights and priorities established among the Prepetition Secured Parties pursuant to the Prepetition Financing Documents, the Intercreditor Agreement and this Interim Order). To the extent necessary or applicable, the Prepetition Agents, as applicable, shall serve as agent for the Postpetition Agent for purposes of perfecting their respective DIP Liens on all DIP Collateral that is of a type such that perfection of a Lien therein may be accomplished only by possession or control by a secured party. On the closing date of the DIP Loans, the Debtors are authorized and directed to amend the deposit account control agreements, securities account control agreements and any other control agreements related to the Cash Collection Accounts, as the case may be, entered into in connection with the Prepetition Financing Documents in a manner satisfactory to the Postpetition Agent to give the Postpetition Agent control over such accounts or if such agreements cannot be amended to the satisfaction of the Postpetition Agent, the Debtors are further authorized and directed to enter into any additional agreements providing for the establishment of lock boxes, blocked accounts or similar arrangements for purposes of facilitating cash collections from the Debtors in accordance with and subject to the terms of the Postpetition Financing Documents and this Interim Order.

27.     Binding Nature of Agreement.  Subject to paragraph 34 hereof, the provisions of this Interim Order, including all findings herein, and the Postpetition Financing Documents shall be binding upon and inure to the benefit of all parties in interest in these Cases, including, without limitation, the Postpetition Secured Parties, the Prepetition Secured Parties, the Debtors and any Committee and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary or responsible person appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors), whether in any of the Cases, in any Successor Cases, or upon dismissal of any such Case or Successor Case; provided, however, that the Postpetition Secured Parties and the Prepetition Secured Parties shall have no obligation to permit the use of Cash Collateral or to extend any financing to any chapter 7 or chapter 11 trustee or other responsible person appointed for the estates of the Debtors in any Case or Successor Case.

28.     No Non-Consensual Modification or Extension of Interim Order.  Unless all Postpetition Obligations shall have been Paid in Full, the Debtors shall not seek, and it shall constitute an Event of Default (resulting, among other things, in the termination of the Debtors' right to use Cash Collateral), if there is entered (i) an order amending, supplementing, extending or otherwise modifying this Interim Order or (ii) an order converting or dismissing any of the Cases, in each case, without the prior written consent of the Postpetition Agent and the Required Lenders under the Postpetition Credit Agreement or such other Lenders as required under the Postpetition Credit Agreement, and no such consent shall be implied by any other action, inaction or acquiescence

46

29.     <u>Subsequent Reversal or Modification</u>.  Based upon the findings set forth in this Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the Interim Commitment and the DIP Loans contemplated by this Interim Order, in the event that any or all of the provisions of this Interim Order or any other Postpetition Financing Documents are hereafter reversed, modified, amended, stayed or vacated by a subsequent order of this Court or any other court, the Postpetition Secured Parties shall be entitled to the protections provided in section 364(e) of the Bankruptcy Code and no such reversal, modification, amendment, stay or vacatur shall affect the validity, enforceability or priority of any and all rights, remedies, priorities, benefits, protections, Liens and claims and the adequate protection granted to the Prepetition Secured Parties authorized or created hereby or thereby or any Postpetition Obligations incurred hereunder or thereunder.  Notwithstanding any such modification, amendment, reversal, vacatur or stay, any use of Cash Collateral, Postpetition Obligations or adequate protection incurred or granted to the Postpetition Secured Parties or the Prepetition Secured Parties, as applicable, hereunder or under the other Postpetition Financing Documents, arising prior to the effective date of such modification, amendment, reversal, vacatur or stay shall be governed in all respects by the original provisions of this Interim Order and the Postpetition Financing Documents, and the Postpetition Secured Parties and the Prepetition Secured Parties, as applicable, shall be entitled, pursuant to section 364(e) of the Bankruptcy Code, to all of the rights, remedies, privileges and benefits, including the Liens and priorities granted herein and therein, with respect to all uses of Cash Collateral and all Postpetition Obligations, Prepetition Secured Obligations and adequate protection granted herein.

30.     <u>Survival of Interim Order</u>.  The provisions of this Interim Order and the Postpetition Financing Documents, any actions taken pursuant hereto or thereto, and all of the

47

rights, remedies, DIP Liens, adequate protection, priorities, privileges, protections and benefits granted to any or all of the Postpetition Secured Parties or the Prepetition Secured Parties, as applicable, shall survive, and shall not be modified, impaired or discharged by, the entry of any order confirming any plan of reorganization in any Case (the Debtors having waived such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code), converting any Case to a case under chapter 7, dismissing any of the Cases, withdrawing of the reference of any of the Cases or any Successor Case or providing for abstention from handling or retaining of jurisdiction of any of the Cases in this Court, or terminating the joint administration of these Cases or by any other act or omission. The terms and provisions of this Interim Order, including all of the rights, remedies, DIP Liens, adequate protection, priorities, privileges, protections and benefits granted to any or all of the Postpetition Secured Parties and the Prepetition Secured Parties shall continue in full force and effect notwithstanding the entry of any such order, and such rights, remedies, DIP Liens, adequate protection, priorities, privileges, protections and benefits shall continue in these proceedings and in any Successor Case, and shall maintain their respective priorities as provided by this Interim Order.

31.    Authority to Execute Necessary Documents and Indemnity.

(a)    The Debtors are expressly and immediately authorized and directed, and the automatic stay imposed by section 362 of the Bankruptcy Code is hereby lifted to the extent necessary, to execute, deliver and perform under the Postpetition Financing Documents and to incur the Postpetition Obligations in accordance with, and subject to, the terms of this Interim Order and the Postpetition Financing Documents and to do and perform all acts, to make, execute and deliver and perform under all instruments, certificates, agreements and documents (including, without limitation, the execution of additional security agreements, pledge

48

agreements, control agreements, mortgages and financing statements), and pay all fees, costs, indemnities and expenses that may be required or necessary for the Debtors' performance under the Postpetition Financing Documents, and the creation and perfection of the DIP Liens described in, and provided for, by this Interim Order and the Postpetition Financing Documents. The Debtors are hereby authorized, and upon execution of the Postpetition Financing Documents, directed to do and perform all acts and pay the principal, interest, fees, indemnities, expenses and other amounts described in the Postpetition Financing Documents as such become due pursuant to the Postpetition Financing Documents and this Interim Order, including, without limitation, all closing fees, administrative fees, arranging fees, agent fees, lender fees, commitment fees, and underwriting fees and attorneys', financial advisers' and accountants' and appraisers' fees and disbursements and fees in respect of internal auditors, all as provided for in and subject to the Postpetition Financing Documents, and the payment of any such fees, disbursements and other expenses shall not be subject to Court approval or U.S. Trustee guidelines, shall be non-refundable and no recipient of any payment by the Debtors of such fees and expenses shall be required to file with respect thereto any interim or final fee application with the Court; provided, however, that notice of payment of the fees and expenses of the Lender Professionals (as defined below) shall be subject to the provisions of paragraph 32 hereof.

(b)     In accordance with the Postpetition Financing Documents and this Interim Order, the Debtors are hereby authorized and directed to indemnify the Postpetition Secured Parties against any liability arising in connection with the Postpetition Financing Documents to the extent provided in and subject to the Postpetition Financing Documents. All such fees, expenses and indemnities of the Postpetition Secured Parties shall constitute Postpetition Obligations and shall be secured by the DIP Liens and the DIP Super-Priority Claims and

49

afforded all of the priorities and protections afforded to the Postpetition Obligations under this Interim Order and the Postpetition Financing Documents.

32. <u>Notice of Professional Fees</u>. As provided in the Postpetition Financing Documents and this Interim Order, the Debtors will pay all fees and expenses of legal counsel and other professionals retained by the Postpetition Agent, the Prepetition First Lien Agent and the Prepetition Second Lien Agent, as applicable, that are chargeable or reimbursable under the Postpetition Financing Documents, the First Lien Financing Documents, the Second Lien Financing Documents and/or are otherwise permitted under this Interim Order. Payment of such fees and expenses shall not be subject to Court approval or U.S. Trustee guidelines, and no recipient of any payment by the Debtors of such fees and expenses shall be required to file with respect thereto any interim or final fee application with the Court. Professionals for the Postpetition Agent, the Prepetition First Lien Agent and the Prepetition Second Lien Agent (collectively, the "**Lender Professionals**") shall submit copies of their professional fee invoices in summary form to counsel for the Debtors, counsel for the U.S. Trustee, and counsel for the Committee, if any, at least five (5) days in advance of payment by the Debtors of any such invoice. The U.S. Trustee and the Committee, if any, may object to the reasonableness of the fees, costs and expenses included in any professional fee invoice submitted by any of the Lender Professionals provided that any such objection shall be forever waived and barred unless (i) it is filed with the Court and served on the applicable Lender Professionals no later than ten (10) days after delivery of the applicable professional fee invoice to the objecting party and (ii) it describes with particularity the items or categories of fees, costs and expenses that are the subject of the objection and provides the specific basis for the objection to each such item or category of fees, costs and expenses. Any hearing on an objection to payment of any fees, costs and expenses of

50

the Lender Professionals set forth in a professional fee invoice shall be limited to the reasonableness or necessity of the particular items of categories of the fees, costs and expenses which are the subject of such objection. The Debtors shall timely pay in accordance with the terms and conditions of this Interim Order the undisputed fees, costs and expenses reflected on any invoice to which a fee objection has been filed.

**Adequate Protection**

33.     Subject in all respects to the Postpetition Obligations and the DIP Liens (which shall at all times rank senior and prior to the Prepetition Secured Obligations, the Prepetition Liens, the Adequate Protection Liens, the Adequate Protection Claims and the rights of the Prepetition Secured Parties under this Interim Order), the Prepetition Secured Parties are hereby provided with the following forms of adequate protection:

(a)     As adequate protection of the respective interests of the Prepetition First Lien Secured Parties in the Prepetition First Lien Collateral, to the extent of any diminution in the value of the Prepetition First Lien Collateral (including Cash Collateral) from and after the Petition Date, whether as a result of the imposition of the automatic stay, priming of the First-Priority Prepetition Liens, use of the Prepetition First Lien Secured Parties' Cash Collateral or otherwise, the Prepetition First Lien Agent, for its benefit and the benefit of the other Prepetition First Lien Secured Parties, shall be granted, pursuant to sections 361, 363 and 364 of the Bankruptcy Code, replacement Liens upon all the DIP Collateral (the "**First Lien Adequate Protection Liens**") subject and subordinate only to the DIP Liens, the Carve-Out and the Prepetition Senior Liens on all DIP Collateral.

(b)     Subject to the Carve-Out and the DIP Super-Priority Claims, as additional adequate protection of the interests of the Prepetition First Lien Secured Parties in the Prepetition First Lien Collateral, the Prepetition First Lien Secured Parties shall be entitled to allowed

51

administrative priority claims pursuant to section 507(b) of the Bankruptcy Code (the "**First Lien Adequate Protection Claims**") for any diminution in value of the Prepetition First Lien Collateral (including Cash Collateral) from and after the Petition Date, whether as a result of the imposition of the automatic stay, priming of the First-Priority Prepetition Liens, use of the Prepetition First Lien Secured Parties' Cash Collateral or otherwise. The First Lien Adequate Protection Claims shall have priority over all administrative expenses of the kind specified in, or ordered pursuant to, any provision of the Bankruptcy Code, including, without limitation, those specified in, or ordered pursuant to, sections 105, 326, 327, 328, 330, 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1113 and 1114 of the Bankruptcy Code, or otherwise (whether incurred in the Cases or any Successor Cases or any other proceeding related hereto or thereto), provided that (x) the Second Lien Adequate Protection Claims (as defined below) shall be subject to and subordinate in all respects in right of payment and otherwise, to the First Lien Adequate Protection Claims and (y) the First Lien Adequate Protection Claims shall be subject to and subordinate in all respects in right of payment and otherwise, to the Carve-Out, the DIP Super-Priority Claims and Payment in Full of the Postpetition Obligations.

(c) As further adequate protection of the respective interests of Prepetition First Lien Secured Parties, the Debtors shall, upon entry of this Interim Order, on a calendar monthly basis thereafter during the term of this Interim Order and in accordance with the terms of paragraph 32 of this Interim Order, promptly pay in cash all accrued but unpaid reasonable costs and expenses of the Prepetition First Lien Agent, including, without limitation, reasonable documented, out-of-pocket fees and expenses of legal counsel and other professionals selected by the Prepetition First Lien Agent, one alternative firm of legal counsel selected by Prepetition First Lien Agent in the event of any actual or potential conflict of interest, and, in each case, one local counsel

52

selected by the Prepetition First Lien Agent for each applicable jurisdiction regardless of whether such amounts accrued prior to the Petition Date and all without further motion, fee application or order of the Court.

(d)     As adequate protection of the respective interests of the Prepetition Second Lien Secured Parties in the Prepetition Second Lien Collateral, to the extent of any diminution in the value of the Prepetition Second Lien Collateral (including Cash Collateral) from and after the Petition Date, whether as a result of the imposition of the automatic stay, priming of the Second-Priority Prepetition Liens, use of the Prepetition Second Lien Secured Parties' Cash Collateral or otherwise, the Prepetition Second Lien Agent, for its benefit and the benefit of the other Prepetition Second Lien Secured Parties, shall be entitled to replacement liens (the "**Second Lien Adequate Protection Liens**" and, together with the First Lien Adequate Protection Liens, the "**Adequate Protection Liens**") subject and subordinate only to the DIP Liens, the First-Priority Prepetition Liens, the First Lien Adequate Protection Liens, the Carve-Out and the Prepetition Senior Liens, on all DIP Collateral.

(e)     Subject to the Carve-Out, the DIP Super-Priority Claims and the First Lien Adequate Protection Claims, as additional adequate protection of the interests of the Prepetition Second Lien Secured Parties in the Prepetition Second Lien Collateral, the Prepetition Second Lien Secured Parties shall be entitled to allowed administrative expense priority claims under section 507(b) of the Bankruptcy Code (the "**Second Lien Adequate Protection Claims**", and together with the First Lien Adequate Protective Claims, the "**Adequate Protection Claims**") for any diminution in value of the Prepetition Second Lien Collateral (including Cash Collateral) from and after the Petition Date, whether as a result of the imposition of the automatic stay, priming of the Second-Priority Prepetition Liens, use of the Prepetition Second Lien Secured

RLF1 3555548v.1

Parties' Cash Collateral or otherwise. The Second Lien Adequate Protection Claims shall have priority over all administrative expenses of the kind specified in, or ordered pursuant to, any provision of the Bankruptcy Code, including, without limitation, those specified in, or ordered pursuant to, sections 105, 326, 327, 328, 330, 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1113 and 1114 of the Bankruptcy Code, or otherwise (whether incurred in the chapter 11 cases or any conversion thereof to a case under chapter 7 of the Bankruptcy Code or any other proceeding related hereto or thereto), provided that the Second Lien Adequate Protection Claims shall be subject to and subordinate in all respects in right of payment and otherwise, to the Carve-Out, the DIP Super-Priority Claims, the First Lien Adequate Protection Claims and the Payment in Full of the Postpetition Obligations.

(f) As further adequate protection of the respective interests of Prepetition Second Lien Secured Parties, the Debtors shall, upon entry of this Interim Order, on a calendar monthly basis thereafter during the term of this Interim Order and in accordance with the terms of paragraph 32 of this Interim Order, promptly pay in cash all accrued but unpaid reasonable costs and expenses of the Prepetition Second Lien Agent, including, without limitation, reasonable documented, out-of-pocket fees and expenses of legal counsel and other professionals selected by the Prepetition Second Lien Agent, one alternative firm of legal counsel selected by the Prepetition Second Lien Agent in the event of any actual or potential conflict of interest, and, in each case, one local counsel selected by the Prepetition Second Lien Agent for each applicable jurisdiction regardless of whether such amounts accrued prior to the Petition Date and all without further motion, fee application or order of the Court.

(g) In accordance with paragraph 26 of this Interim Order, the Adequate Protection Liens shall be deemed to be perfected automatically upon entry of this Interim Order, without the

necessity of the filing of any UCC-1 financing statement, state or federal notice, mortgage or other similar instrument or document in any state or public record or office and without the necessity of taking possession or "control" (within the meaning of the Uniform Commercial Code) of any DIP Collateral.

(h)     In determining the relative priorities and rights of the Prepetition Agents and other Prepetition Secured Parties (including, without limitation, the relative priorities and rights of the Prepetition Agents and other Prepetition Secured Parties with respect to the Adequate Protection Liens and the Adequate Protection Claims), pursuant to Section 510(a) of the Bankruptcy Code, such priorities and rights shall continue to be governed by the Intercreditor Agreement, and nothing in this Interim Order or the Postpetition Financing Documents shall impair, diminish or otherwise affect the terms of the Intercreditor Agreement.

**Reservation of Certain Third Party Rights; Bar of Challenges and Claims; Release**

34.     (a)     The Debtors' stipulations and agreements in paragraphs D through G of this Interim Order shall be binding upon the Debtors in all circumstances. With a full reservation and no waiver of any rights of the Committee (as representative of the Debtors' estates or otherwise) or any other party in interest as provided in subparagraph (b) below, each Debtor in its individual capacity hereby forever releases, waives and discharges each of the Prepetition Agents and the other Prepetition Secured Parties (whether in their respective prepetition or postpetition capacities), together with their respective officers, directors, employees, agents, attorneys, professionals, affiliates, parents, subsidiaries, partners, principals, assigns and/or successors (collectively, and together with the Prepetition Secured Party Releasees, the "**Released Parties**"), from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, any of the Prepetition Financing Documents, any aspect of the prepetition relationship between any Debtor relating to any of the Prepetition Financing Documents or any

transaction contemplated thereby, on the one hand, and any or all of the Released Parties, on the

other hand, or any other acts or omissions by any or all of the Released Parties in connection

with any of the Prepetition Financing Documents or their prepetition relationship with any

Debtor or any affiliate thereof relating to any of the Prepetition Financing Documents or any

transaction contemplated thereby, including, without limitation, any claims or defenses as to the

extent, validity, priority or perfection of the Prepetition Financing Documents, the Prepetition

Liens or the Prepetition Secured Obligations, "lender liability" claims and causes of action, any

Avoidance Actions or any other claims and causes of action and any resulting subordination or

recharacterization of any payments made to the Prepetition Agents and the other Prepetition

Secured Parties pursuant to this Interim Order (all such claims, defenses and other actions

described in this paragraph are collectively defined as the "**Claims and Defenses**"). Nothing

contained in this subparagraph shall affect the rights of any Committee, if any, or any other party

in interest to undertake any action with respect to, including, without limitation, any

investigation or prosecution of, Claims and Defenses that is permitted in the other subparagraphs

of this paragraph. For the avoidance of doubt, the release by the Debtors approved in this

paragraph shall not constitute a defense by any Prepetition Agent or any other Prepetition

Secured Party to any action commenced by any party other than the Debtors consistent with this

paragraph 32, even if such party is prosecuting a Claim and Defense that was the property of any

Debtor at the time of the giving of such release or such party is prosecuting such claim or cause

of action in the name of the Debtor or as a representative of the estate of any Debtor.

(b)     Notwithstanding anything contained herein to the contrary, the extent, validity,

priority, perfection, characterization and enforceability of the Prepetition Secured Obligations,

the Prepetition Liens, the Prepetition Collateral and all acknowledgments, admissions and

confirmations of the Debtors in paragraphs D through G of this Interim Order, are for all

purposes subject to the rights of any party-in-interest (including the Committee as representative

of the Debtors' estates), other than any Debtor, to file a complaint pursuant to Bankruptcy Rule

7001 seeking to invalidate, avoid, subordinate or otherwise challenge the Prepetition Secured

Obligations, the Prepetition Collateral and the Prepetition Liens; provided, however, that any

such complaint must be filed in this Court no later than the earlier of (i) forty-five (45) days from

the Petition Date, (ii) thirty (30) days from the date of the appointment of such Committee and

(iii) the date of confirmation of any plan of reorganization (including, without limitation, the

Plan) (the "**Challenge Period**"); provided, however, that the Challenge Period may be extended

either (i) by the Court pursuant to an order after a hearing and for cause shown, or (ii) as may be

agreed to in writing by (a) the Prepetition First Lien Agent with respect to the time to file any

such complaint relating to the liens and claims arising under the First Lien Financing Documents

or (b) the Prepetition Second Lien Agent with respect to the time to file any such complaint

relating to the liens and claims arising under the Second Lien Financing Documents. If no such

complaint is filed within such time period, then any and all Claims and Defenses against any of

the Released Parties shall be, without further notice to or order of the Court, deemed to have

been forever relinquished, released and waived as to such Committee and other person or entity,

and if such complaint is timely filed on or before such date, any and all Claims and Defenses

against any of the Released Parties shall be deemed, immediately and without further action, to

have been forever relinquished, released and waived as to such Committee and other person or

entity except with respect to Claims and Defenses that are expressly asserted in such complaint.

     (c)     Except to the extent that any such complaint as to any of the First Lien Financing

Documents, the First-Priority Prepetition Liens, the Prepetition Secured First Lien Obligations,

the Second Lien Financing Documents, the Second-Priority Prepetition Liens, the Prepetition

Secured Second Lien Obligations respectively, or the Released Parties has been filed within such

time period, then, without the requirement or need to file any proof of claim with respect thereto,

(i) the Prepetition Secured First Lien Obligations and the Prepetition Secured Second Lien

Obligations shall each constitute allowed, secured claims for all purposes in the Cases and any

Successor Case, (ii) the First-Priority Prepetition Liens and the Second-Priority Prepetition Liens

shall be deemed legal, valid, binding, enforceable, perfected, not subject to subordination (except

for the subordination thereof to the DIP Liens and as otherwise specified in this Interim Order,

the other Postpetition Financing Documents, the First Lien Financing Documents, the Second

Lien Financing Documents and the Intercreditor Agreement, as applicable), recharacterization or

avoidance for all purposes in the Cases and any Successor Case, (iii) the release of the Claims

and Defenses against the Released Parties shall be binding on the Committee and all parties-in-

interest in the Cases and any Successor Case, and (iv) the Prepetition Secured First Lien

Obligations, the First-Priority Prepetition Liens, the Prepetition Secured Second Lien

Obligations, the Second-Priority Prepetition Liens, releases of the Claims and Defenses against

the Released Parties, and any and all prior payments on account of or with respect to the

Prepetition Secured First Lien Obligations as to any of the First Lien Financing Documents and

the Prepetition Secured Second Lien Obligations as to any of the Second Lien Financing

Documents, respectively, not subject to any such complaint shall not be subject to any other or

further claims, causes of action, objections, contests, setoffs, defenses or challenges by any party

in interest for any reason, including, without limitation, by any successor to or estate

representative of any Debtor. Nothing in this Order shall confer or deny standing upon the

Committee or any other person or entity to bring, assert, commence, continue, prosecute or

litigate the Claims and Defenses against any Released Party or to limit the rights of any person, including, without limitation, the Debtors, the First Lien Agent and the Second Lien Agent, to object to the standing of the Committee or any other person.

35.     Proofs of Claim. The Prepetition First Lien Agent shall be authorized (but not required) to file a master proof of claim against the Debtors (the "**Master Proof of Claim**") on behalf of itself and the other Prepetition First Lien Secured Parties on account of their prepetition claims arising under the First Lien Financing Documents, and the Prepetition First Lien Agent shall not be required to file a verified statement pursuant to Bankruptcy Rule 2019. The Prepetition Second Lien Agent shall also be authorized (but not required) to file a Master Proof of Claim on behalf of itself and the Prepetition Second Lien Secured Parties on account of their prepetition claims arising under the Second Lien Financing Documents, and the Prepetition Second Lien Agent also shall not be required to file a verified statement pursuant to Bankruptcy Rule 2019. If the Prepetition First Lien Agent or the Prepetition Second Lien Agent, as applicable, so files a Master Proof of Claim against the Debtors, the Prepetition First Lien Agent and each Prepetition First Lien Secured Party, or the Prepetition Second Lien Agent and each Prepetition Second Lien Secured Party, as the case may be, and each of their respective successors and assigns, shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims against the Debtors arising under the First Lien Financing Documents or the Second Lien Financing Documents, and the claims of the Prepetition First Lien Agent and each Prepetition First Lien Secured Party, or the Prepetition Second Lien Agent and each Prepetition Second Lien Secured Party, as the case may be, and each of their respective successors and assigns, named in the Master Proof of Claim shall be allowed or disallowed as if such entity had filed a separate proof of claim in each Case in the

amount set forth opposite each name listed in the Master Proof of Claim. The Prepetition First Lien Agent and the Prepetition Second Lien Agent shall further be authorized to amend their respective Master Proof of Claim from time to time to, among other things, reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from any transfer of such claims. The provisions set forth in this paragraph 35 and any Master Proof of Claim filed pursuant to the terms hereof are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party in interest or their respective successors in interest, including, without limitation, the rights of the Prepetition First Lien Agent, each Prepetition First Lien Secured Party, the Prepetition Second Lien Agent, and each Prepetition Second Lien Secured Party as the holder of a claim against the Debtors under applicable law, and the numerosity requirements set forth in section 1126 of the Bankruptcy Code.

36.     No Liability to Third Parties. In making decisions to advance the DIP Loans to the Debtors, in administering any of the DIP Loans, in permitting the Debtors to use Cash Collateral, in approving the Budget or in taking any actions permitted by this Interim Order or the Postpetition Financing Documents, as applicable, the Postpetition Secured Parties shall not (i) be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute), or (ii) owe any fiduciary duty to any Debtor, its respective creditors or its respective estate, and their relationship with each Debtor shall not constitute or be deemed to constitute a joint venture or partnership with such Debtor.

60

37.     Insurance Policies.  Upon entry of this Interim Order, the Postpetition Agent and
Postpetition Lenders shall be, and shall be deemed to be, without any further action or notice,
named as additional insureds and loss payees on each insurance policy maintained by the
Debtors which in any way relates to the DIP Collateral of the Debtors.  Any insurance proceeds
or other receipts from any source (excluding other than authorized payments provided for herein)
paid to any of the Prepetition Agents or the Prepetition Lenders shall be immediately delivered to
the Debtors and subject to the DIP Liens and the provisions of the Postpetition Financing
Documents.

38.     Scheduling of Final Hearing.  The Debtors shall, on or before April __, 2010,
serve by United States mail, first class postage prepaid, copies of the Motion, this Interim Order
and a notice of the Final Hearing (the "**Final Hearing Notice**") to be held on _____,
2010 at __:_0 a.m. to consider entry of the Final Order on the Notice Parties.  Copies of the
Motion, this Interim Order and the Final Hearing Notice also shall be served upon all persons
requesting service of papers pursuant to Bankruptcy Rule 2002 by United States mail, first class
postage prepaid, within the later of one business day following the receipt of such request.  The
Final Hearing Notice shall state that any party in interest objecting to the entry of the Final Order
shall file written objections with the Clerk of the Court no later than __:_ _.m. on _____,
2010, which objections shall be served so that the same are received on or before such date and
time by: (i) counsel to the Debtors, Weil, Gotshal & Manges LLP, 200 Crescent Court, Suite
300, Dallas, Texas 75201, Attn: Stephen A. Youngman, Esq. and Richards, Layton & Finger,
P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801, Attn: Mark D.
Collins, Esq.; (ii) counsel to the Postpetition Agent and the Prepetition First Lien Agent, Latham
& Watkins LLP, 885 Third Avenue, New York, New York 10022, Attn: David S. Heller, Esq.

61

and Roger G. Schwartz, Esq. and Duane Morris LLP, Suite 1200, 1100 North Market Street, Wilmington, DE 19801-1246, Attn: Richard W. Riley, Esq.; (iv) counsel to the Prepetition Second Lien Agent, Goodwin Procter LLP, The New York Times Building, 620 Eighth Avenue, New York, New York 10018, Attn: Emanuel Grillo, Esq. and Pepper Hamilton LLP, Hercules Plaza, Suite 5100, 1313 Market Street, P.O. Box 1709, Wilmington, Delaware 19899-1709, Attn: David M. Fournier, Esq.; (v) counsel to Sankaty Advisors, Ropes & Gray LLP, One International Place, Boston, Massachusetts 02110, Attn: Alyson Allen, Esq.; (vi) counsel to the Committee, if one shall have been appointed; and (vii) the Office of the United States Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801.

39. <u>Enforceability; Order Effective Immediately Upon Entry</u>. This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this Interim Order.

40. <u>No Marshaling</u>. Neither the Postpetition Secured Parties nor the Prepetition Secured Parties shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral, as applicable.

41. <u>Headings</u>. Paragraph and section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

RLF1 3555548v.1

42.    Inconsistency.  In the event of any inconsistency or conflict between the terms and conditions of this Interim Order and the Postpetition Financing Documents, the terms and conditions of this Interim Order shall govern.

43.    Retention of Jurisdiction.  The Bankruptcy Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

Wilmington, Delaware
Date: _____, 2010

_____
United States Bankruptcy Judge

# EXHIBIT A

## (Budget)

EGT Cash Forecast ($000s)

| | Week 1 Actual 1/03/10 | Week 2 Actual 1/10/10 | Week 3 Actual 1/17/10 | Week 4 Actual 1/24/10 | Week 5 Actual 1/31/10 | Week 6 Actual 2/7/10 | Week 7 Actual 2/14/10 | Week 8 Actual 2/21/10 | Week 9 Actual 2/28/10 | Week 10 Actual 3/7/10 | Week 11 Actual 3/14/10 | Week 12 Actual 3/21/10 | Week 13 Forecast 3/28/10 | Week 14 Forecast 4/4/10 | Week 15 Forecast 4/11/10 | Week 16 Forecast 4/18/10 | Week 17 Forecast 4/25/10 | Week 18 Forecast 5/2/10 | Week 19 Forecast 5/9/10 | Week 20 Forecast 5/16/10 | Week 21 Forecast 5/23/10 | Week 22 Forecast 5/30/10 | Week 23 Forecast 6/6/10 | Week 24 Forecast 6/13/10 | Week 25 Forecast 6/20/10 | Week 26 Forecast 6/27/10 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash | 6,425 | 11,713 | 7,028 | 8,295 | 8,580 | 8,478 | 7,660 | 7,680 | 8,043 | 8,277 | 8,641 | 9,563 | 7,623 | 9,930 | 9,338 | 7,966 | 7,618 | 6,687 | 6,537 | 4,037 | 3,567 | 8,975 | 7,470 | 8,036 | 6,035 | 6,500 |
| | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Cash Receipts (A/R collections) | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Total Cash Inflows | 11,343 | 4,828 | 9,687 | 9,238 | 7,156 | 7,227 | 7,622 | 7,680 | 7,690 | 8,016 | 11,608 | 8,945 | 6,500 | 8,500 | 8,500 | 8,500 | 8,500 | 8,500 | 8,500 | 8,500 | 8,500 | 8,500 | 8,500 | 8,500 | 8,500 | 8,500 |
| | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Cash Payments (A/P, Trans3) | (5,819) | (4,619) | (5,259) | (6,060) | (5,506) | (5,560) | (4,609) | (4,614) | (4,789) | (5,583) | (5,248) | (5,316) | (5,250) | (5,250) | (5,250) | (5,250) | (5,250) | (5,250) | (5,250) | (5,250) | (5,250) | (5,250) | (5,250) | (5,250) | (5,250) | (5,250) |
| Supplier Contraction | | | | (373) | (340) | | | | (516) | (394) | | | | | (400) | (400) | (400) | (400) | (400) | | (400) | | (400) | (400) | | (400) |
| Payroll G3.1.1 | (560) | (560) | (292) | (167) | (236) | | (209) | (234) | (276) | (375) | (202) | (400) | (400) | (400) | (400) | (400) | (400) | (600) | (600) | (600) | (600) | (600) | (600) | (600) | (600) | (400) |
| Capital expenditures | (250) | (250) | (299) | (916) | (1,759) | | (917) | (893) | (1,069) | (2,442) | (1,436) | (1,990) | (1,066) | (1,520) | (1,400) | (1,400) | (1,400) | (1,400) | (1,040) | (960) | (900) | | (400) | (1,640) | (960) | (1,120) |
| Pease settlements | (955) | (2,527) | (1,760) | (918) | (1,071) | | | | | | | | (1,400) | | | | | | | | (2,800) | | | | | |
| Pass roll ontime | | (520) | | (418) | | | (127) | (150) | | (241) | (511) | (672) | (600) | (500) | (550) | (550) | (550) | (550) | (550) | (550) | | | | | | |
| Restructuring and professional fees | (7,068) | (5,106) | (7,250) | (7,953) | (7,848) | | (5,173) | (5,517) | (6,232) | (8,594) | (6,519) | (9,155) | (20,966) | (7,843) | (9,125) | (8,103) | (9,000) | (7,505) | (7,570) | (7,160) | (7,570) | (8,650) | (6,999) | (7,730) | (8,010) | (7,170) |
| | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Canada | (1,000) | (1,000) | (1,000) | (1,000) | 835 | | | (1,500) | (1,500) | (1,000) | (1,000) | | (1,000) | | (1,250) | (1,250) | (1,250) | (1,250) | (1,250) | (1,250) | (1,250) | (1,250) | (1,250) | (1,250) | (1,250) | (1,250) |
| India | | | | | | | | | | | | | | | | | | | | (250) | | | | | | |
| China | (1,000) | (1,400) | (1,000) | (1,000) | (1,000) | | (200) | (1,500) | (1,000) | (2,000) | (2,000) | (500) | (1,250) | (1,250) | (1,250) | (1,250) | (1,250) | (1,250) | (1,250) | (1,250) | (1,250) | (1,250) | (1,250) | (1,250) | (1,250) | (1,250) |
| Europe | | | | | | (200) | (200) | | (1,500) | (1,050) | (500) | (500) | | | (1,750) | | | | | (250) | | | | | | |
| Total intercompany | (1,000) | (1,400) | (1,000) | (1,000) | (165) | (200) | (200) | (1,500) | (1,050) | (2,500) | (2,600) | (1,760) | (1,250) | (1,250) | (1,250) | (1,250) | (1,250) | (1,250) | (1,250) | (1,750) | (1,250) | (1,250) | (1,250) | (1,250) | (1,250) | (1,250) |
| | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Interest | | | | | | | | | | | | | (20) | | | | | (14) | | | (15) | | | | | (1,278) |
| Day Fonts | | | | | | | | | | | | | (600) | | | | | (370) | | | (17,000) | | | | | |
| Day Funding | | | | | | | | | | | | | 17,000 | | | | | | | | (120) | | | | | |
| Day Interest | | | | | | | | | | | | | (65) | | | | | (125) | | | (600) | | | | | |
| Exit Financing Fees | | | | | | | | | | | | | | | | | | (42) | | | (423) | | | | | (42) |
| Debt payments | | | | | | | | | | | | | (42) | | | | | | | | 12,500 | | | | | |
| Issuance of stock | | | | | | | | | | | | | | | | | | | | | 12,500 | | | | | |
| Tracker & Loan Facility | | | | | | | | | | | | | | | | | | (161) | | | 6,936 | | | | | |
| Total Financing | | | | | | | | | | | | | 16,023 | | | | | | | | 8,528 | | | | (1,320) |
| | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Other | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Ending Cash | 11,713 | 7,035 | 8,295 | 8,580 | 8,478 | 7,660 | 5,277 | 9,043 | 8,277 | 8,641 | 9,563 | 7,623 | 9,930 | 9,338 | 7,966 | 7,618 | 6,687 | 6,537 | 4,037 | 3,567 | 8,975 | 7,470 | 8,036 | 6,035 | 7,099 | 4,450 |
| | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Location Bank Balance | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Canada | 501 | 1,136 | 1,205 | 1,298 | 367 | 335 | 300 | 300 | 255 | 300 | 895 | 766 | 648 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 |
| Mobile | 338 | 143 | 743 | 620 | 1,389 | 1,389 | 905 | 920 | 855 | 549 | 766 | 724 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Europe | 1,029 | 1,072 | 1,332 | 813 | 1,795 | 1,795 | 1,009 | 1,009 | 952 | 952 | 756 | 1,500 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| China | 345 | 845 | 65 | 65 | 153 | 153 | 648 | 650 | 745 | 42 | 43 | 241 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 |
| India | 45 | 56 | 45 | 45 | 65 | 65 | 50 | 50 | 55 | 44 | 43 | 241 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 |
| Total Ending Cash | 11,713 | 10,259 | 12,614 | 12,650 | 12,261 | 12,161 | 13,153 | 13,578 | 12,559 | 11,789 | 13,021 | 10,673 | 13,400 | 12,568 | 13,116 | 11,100 | 10,048 | 10,046 | 10,006 | 7,247 | 13,425 | 15,026 | 11,960 | 10,500 | 11,340 | 10,000 |
| | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Beginning Balance | 1,500 | 1,500 | 5,000 | 5,000 | 3,000 | 3,500 | 2,500 | 2,506 | 4,045 | 3,792 | 4,549 | 2,915 | 2,932 | 2,932 | 2,932 | 2,932 | 2,932 | 2,932 | 2,932 | 2,932 | 2,932 | 2,932 | 2,932 | 2,932 | 2,932 | 2,932 |
| Additional borrowing | 7,678 | 5,699 | 4,987 | 3,500 | 3,700 | 3,112 | 3,000 | 5,611 | 5,967 | 7,663 | 4,378 | 2,915 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 |
| Less: Funded | (7,678) | (2,699) | (6,387) | (3,267) | (4,172) | (3,503) | (3,559) | (5,350) | (7,117) | (6,871) | (6,747) | 2,915 | (5,500) | (5,500) | (5,500) | (5,500) | (5,500) | (5,500) | (5,500) | (5,500) | (5,500) | (5,500) | (5,500) | (5,500) | (5,500) | (5,500) |
| Supply Chain Finance Programs | 1,500 | 3,000 | 5,000 | 3,500 | 3,500 | 3,000 | 2,500 | 2,500 | 4,045 | 2,932 | 4,500 | 2,915 | 2,932 | 2,932 | 2,932 | 2,932 | 2,932 | 2,932 | 2,932 | 2,932 | 2,932 | 2,932 | 2,932 | 2,932 | 2,932 | 2,932 |
| Total Usable | 15,462 | 15,269 | 16,814 | 15,650 | 15,761 | 14,851 | 15,774 | 15,564 | 16,300 | 16,107 | 15,066 | 15,007 | 16,412 | 16,620 | 14,420 | 14,100 | 13,178 | 13,178 | 10,519 | 10,519 | 16,357 | 13,962 | 14,972 | 13,532 | 14,172 | 12,932 |

Note: Based on filing last week of March. Exit late May.
Cases $5M from 1/1 to 6/30.
Restructuring expense of $1.5M for insura closures.
Net Issuance of stock is $22.5M less impact of second lien tenders of $10M.
Assumes $25M ABL is in place at exit.
Financing Fees of $10M.