## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------------x

| | |
|---|---|
| In re | :    **Chapter 11** |
| **ELECTRICAL COMPONENTS INTERNATIONAL, INC.** *et al.*[1] | :    **Case No. _____ (\_\_\_)** |
| Debtors. | :    **Joint Administration Requested** |

-------------------------------------------------------------------x

## JOINT PREPACKAGED PLAN
## OF REORGANIZATION OF ELECTRICAL COMPONENTS
## INTERNATIONAL, INC. *ET AL.*
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE.

Electrical Components International, Inc. ("ECI"), FP-ECI Holdings Company ("Holdings"), ECM Holding Company ("ECM Holding"), and Noma O.P., Inc. ("Noma", and together with ECI, Holdings and ECM Holding, the "Debtors", and each a "Debtor") propose the following joint prepackaged chapter 11 plan for the Debtors (collectively, the "Prepackaged Plan") pursuant to section 1121(a) of the Bankruptcy Code.

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each debtor's federal tax identification number, are: Electrical Components International, Inc. (4361); FP-ECI Holdings Company (4246) ("**Holdings**"); ECM Holding Company (7759) ("**ECM Holding**"); Noma O.P. Inc. (5495) ("**Noma**").

# TABLE OF CONTENTS

ARTICLE I      DEFINITIONS AND INTERPRETATION ..........................................1

     A. Definitions ........................................................................................1

     B. Rules of Interpretation. ....................................................................13

ARTICLE II      PROVISIONS FOR PAYMENT OF UNCLASSIFIED ADMINISTRATIVE, PROFESSIONAL AND TAX CLAIMS ........14

     2.1      Administrative Expense Claims ................................................14

     2.2      Professional Compensation and Reimbursement Claims. ........14

     2.3      Priority Tax Claims. ...............................................................14

     2.4      DIP Claims. ............................................................................15

ARTICLE III      CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ......15

ARTICLE IV      TREATMENT OF CLAIMS AND EQUITY INTERESTS ..............16

     4.1      Class 1 – Priority Non-Tax Claims ........................................16

     4.2      Class 2 – First Lien Lender Claims ........................................16

     4.3      Class 3 – Second Lien Lender Claims. ....................................18

     4.4      Class 4 – Secured Tax Claims ................................................18

     4.5      Class 5 – Other Secured Claims .............................................18

     4.6      Class 6 – General Unsecured Claims. .....................................19

     4.7      Class 7 – Intercompany Claims ..............................................19

     4.8      Class 8 – Holdings Preferred Equity Interests. .......................20

     4.9      Class 9 – Equity Interests in Subsidiary Debtors ...................20

     4.10      Class 10 – Holdings Common Equity Interests .......................20

ARTICLE V      IDENTIFICATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS IMPAIRED; ACCEPTANCE OR REJECTION OF THIS PLAN OF REORGANIZATION ...........................................21

     5.1      Holders of Claims and Equity Interests Entitled to Vote. .......21

     5.2      Holders of Claims and Equity Interests Not Entitled to Vote. ...............21

     5.3      Nonconsensual Confirmation. .................................................21

ARTICLE VI      MEANS OF IMPLEMENTATION AND POST-EFFECTIVE DATE GOVERNANCE ..................................................................22

     6.1      Consolidation for Distribution Purposes .................................22

6.2    New Money Contributions ...................................................................22

6.3    General Corporate Actions ................................................................22

6.4    Delivery of Exit Facility Documents; Distribution of Exit Facility Tranche B Term Loans ......................................................................24

6.5    Issuance of New Common Stock ......................................................24

6.6    Issuance of Rights .............................................................................25

6.7    Cancellation of Existing Securities and Agreements. ......................25

6.8    Other Transactions ............................................................................25

6.9    Cancellation of Liens. .......................................................................25

6.10   Agreements with Existing Management ..........................................25

6.11   Management Incentive Plan ..............................................................26

ARTICLE VII    PROVISIONS GOVERNING DISTRIBUTIONS ...........................26

7.1    Date of Distributions on Account of Allowed Claims. .....................26

7.2    Sources of Cash for the Prepackaged Plan Distribution ...................26

7.3    Disbursing Agent. .............................................................................26

7.4    Rights and Powers of Disbursing Agent. .........................................26

7.5    Expenses of the Disbursing Agent. ..................................................27

7.6    Record Date for Distribution ............................................................27

7.7    Delivery of Distributions. .................................................................27

7.8    Manner of Payment Under Prepackaged Plan. .................................28

7.9    Fractional Shares. .............................................................................28

7.10   Setoffs and Recoupment. ..................................................................28

7.11   Distributions After Effective Date ....................................................29

7.12   Allocation of Payments under the Prepackaged Plan. ......................29

7.13   No Postpetition Interest on Claims. ..................................................29

ARTICLE VIII    PROCEDURES FOR TREATING DISPUTED CLAIMS UNDER THE PREPACKAGED PLAN .........................................................29

8.1    Disputed Claims. ..............................................................................29

8.2    Objections to Claims. .......................................................................29

8.3    No Distributions Pending Allowance. ..............................................30

ii

| | | |
|---|---|---|
| 8.4 | Distributions After Allowance. | 30 |
| 8.5 | Resolution of Disputed Claims | 30 |
| ARTICLE IX | TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 30 |
| 9.1 | Assumption of Contracts and Leases. | 30 |
| 9.2 | Payments Related to Assumption of Contracts and Leases | 31 |
| 9.3 | Claims Based on Rejection of Executory Contracts or Unexpired Leases. | 31 |
| 9.4 | Compensation and Benefit Plans and Treatment of Retirement Plan. | 31 |
| 9.5 | Insurance Policies. | 32 |
| ARTICLE X | CONDITIONS PRECEDENT TO EFFECTIVE DATE | 32 |
| 10.1 | Conditions Precedent to Effective Date of Prepackaged Plan | 32 |
| 10.2 | Waiver of Conditions Precedent. | 33 |
| 10.3 | Effect of Failure of Conditions. | 33 |
| 10.4 | Reservation of Rights. | 34 |
| 10.5 | Substantial Consummation. | 34 |
| ARTICLE XI | EFFECT OF CONFIRMATION | 34 |
| 11.1 | Vesting of Assets. | 34 |
| 11.2 | Binding Effect. | 34 |
| 11.3 | Discharge of the Debtors. | 35 |
| 11.4 | Exculpation. | 35 |
| 11.5 | Releases by the Debtors. | 36 |
| 11.6 | Releases By Holders of Claims and Equity Interests. | 36 |
| 11.7 | Waiver of Avoidance Actions. | 36 |
| 11.8 | Term of Injunctions or Stays. | 37 |
| 11.9 | Termination of Subordination Rights and Settlement of Related Claims | 37 |
| 11.10 | Indemnification Obligations. | 37 |
| 11.11 | Preservation of Claims. | 38 |
| 11.12 | Waiver of Certain Claims | 39 |
| ARTICLE XII | RETENTION OF JURISDICTION | 39 |

US_ACTIVE:\43215222\19\43562.0006

ARTICLE XIII    MISCELLANEOUS ...........................................................................40

13.1    Payment of Statutory Fees. ..................................................................40

13.2    Filing of Additional Documents. ..........................................................41

13.3    Schedules and Exhibits Incorporated. ...................................................41

13.4    Amendment or Modification of the Prepackaged Plan. ..........................41

13.5    Inconsistency. ......................................................................................41

13.6    Section 1125(e) of the Bankruptcy Code. .............................................41

13.7    Preservation of Rights of Action; Settlement of Litigation Claims. ........42

13.8    Effectuating Documents; Further Transactions. .....................................42

13.9    Compromise of Controversies ..............................................................42

13.10   Exemption from Securities Laws ..........................................................42

13.11   Exemption from Certain Transfer Taxes. ...............................................42

13.12   Injunction from Claiming Worthless Stock Deduction ...........................43

13.13   Compliance with Tax Requirements. .....................................................43

13.14   Determination of Tax Filings and Taxes ...............................................43

13.15   Severability of Provisions in the Prepackaged Plan. ..............................44

13.16   Governing Law. ...................................................................................44

13.17   Notices. ...............................................................................................44

13.18   Dissolution of any Statutory Committees and Cessation of Fee and
        Expense Payment. ................................................................................45

13.19   Registration Rights for Certain Holders of New Common Stock ...........45

US_ACTIVE:\43215222\19\43562.0006

# ARTICLE I

## DEFINITIONS AND INTERPRETATION

**A.    Definitions.**

The following terms used herein shall have the respective meanings set forth below:

*Administrative Expense Claim* means any right to payment constituting a cost or expense of administration of the Chapter 11 Cases Allowed under and in accordance with, as applicable, sections 330, 365, 503(b), 507(a)(2) and 507(b) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses of preserving the Debtors' estates, (b) any actual and necessary costs and expenses of operating the Debtors' businesses, (c) any indebtedness or obligations incurred or assumed by the Debtors during the Chapter 11 Cases and (d) any Expense Claims. Any fees or charges assessed against the estates of the Debtors under section 1930 of chapter 123 of title 28 of the United States Code are excluded from the definition of Administrative Expense Claim and shall be paid in accordance with Section 13.1 (Payment of Statutory Fees) hereof.

*Allowed* means, with reference to any Claim or Equity Interest, (a) any Claim or Equity Interest arising on or before the Effective Date (i) as to which no objection to allowance has been interposed in accordance with Section 8.2 hereof, or (ii) as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder, (b) any Claim or Equity Interest as to which the liability of the Debtors and the amount thereof are determined by Final Order of a court of competent jurisdiction other than the Bankruptcy Court or (c) any Claim or Equity Interest expressly allowed hereunder.

*Bankruptcy Code* means title 11 of the United States Code, as amended from time to time.

*Bankruptcy Court* means the United States Bankruptcy Court for the District of Delaware or any other court of the United States having jurisdiction over the Chapter 11 Cases.

*Bankruptcy Rules* means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time.

*BKC* means BlackRock Kelso Capital Corporation together with its affiliates.

*BKC New Money Equity Contribution* means BKC's new money contribution of $13.1 million in Cash.

*BKC Secondary Equity Contribution* means BKC's secondary new money contribution in an amount between $5,000,000 and $7,500,000, which shall be equal to (i) one-half multiplied by (ii) the amount required to fund the Cash Election.

**Business Day** means any day other than a Saturday, Sunday or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

**Cash** means legal tender of the United States of America.

**Cash Election** has the meaning ascribed to it in Section 4.2(b)(ii) of the Prepackaged Plan.

**Chapter 11 Cases** means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors on [_____], in the Bankruptcy Court and styled [_____].

**Claim** has the meaning set forth in section 101(5) of the Bankruptcy Code.

**Class** means any group of substantially similar Claims or Equity Interests classified by the Prepackaged Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

**Class A-1 Common Stock** shall have the meaning ascribed to it in Section 6.5.

**Class A-2 Common Stock** shall have the meaning ascribed to it in Section 6.5.

**Collateral** means any property or interest in property of the Estates of the Debtors subject to a Lien, charge, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state law.

**Committee** means any official committee appointed in the Chapter 11 Cases, as such committee may be reconstituted from time to time.

**Confirmation Date** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket.

**Confirmation Hearing** means the hearing conducted by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code to consider confirmation of the Prepackaged Plan, as such hearing may be adjourned or continued from time to time.

**Confirmation Order** means the order or orders of the Bankruptcy Court confirming the Prepackaged Plan, each in form and substance reasonably acceptable to the Requisite Consenting Parties, the Debtors, the DIP Lenders, the DIP Agent, the Exit Facility Tranche A Lenders and the Exit Facility Agent.

**Consenting Holders** means (i) the First Lien Lenders and Second Lien Lenders party to the Plan Support Agreement, (ii) FP, (iii) BKC and (iv) Sankaty.

**Cure** means the payment of Cash by the Debtors, or the distribution of other property (as the parties may agree or the Bankruptcy Court may order), as necessary to (i) cure a monetary default by the Debtors in accordance with the terms of an executory contract or unexpired lease of the Debtors and (ii) permit the Debtors to assume such executory contract or unexpired lease under section 365(a) of the Bankruptcy Code.

**Debtor** means each of ECI, Holdings, ECM Holding and Noma in their capacity as a debtor and debtor in possession under sections 1107 and 1108 of the Bankruptcy Code.

**DIP Administrative Parties** means UBS Securities LLC, as sole lead arranger, sole bookrunner, documentation agent and syndication agent, UBS Loan Finance LLC, as swingline lender, and UBS AG, Stamford Branch, as issuing bank and collateral agent.

**DIP Agent** means UBS AG, Stamford Branch, as administrative agent to the DIP Lenders under the DIP Facility.

**DIP Claims** means any Claim or other Obligation (as defined in the DIP Facility) arising under or in connection with the DIP Facility, including, without limitation, the DIP Expense Claims.

**DIP Expense Claims** means all reasonable fees and expenses incurred by the DIP Agent and the DIP Administrative Parties, including without limitation the fees and disbursements of Latham & Watkins LLP, Loughlin & Meghji and Duane Morris LLP related to advising and representing the DIP Agent, in its capacity as such, and the DIP Lenders in their capacities as holders of DIP Claims, without any requirement for providing detailed invoices or the filing of retention applications, fee applications or any other applications in the Chapter 11 Cases, which, in each case, shall be Allowed in full and shall not be subject to any offset, defense, counterclaim, reduction or credit of any kind whatsoever.

**DIP Facility** means that certain $25,000,000 Debtor-in-Possession Credit Agreement among ECI, the DIP Agent, the DIP Administrative Parties and the other parties thereto dated as of _____, 2010 and approved by the Bankruptcy Court pursuant to sections 105, 361, 362, 363, 364, 503 and 507 of the Bankruptcy Code, and any amendments, modifications or supplements thereof.

**DIP Lender** means a lender under the DIP Facility.

**Disbursing Agent** means ECI or any party designated by ECI, in its sole discretion, and approved by the Bankruptcy Court if other than ECI, to serve as a disbursing agent under Section 7.3 hereof.

**Disclosure Statement** means that certain disclosure statement relating to the Prepackaged Plan, including all exhibits and schedules thereto, in form and substance reasonably acceptable to the Requisite Consenting Parties, as the same may be amended, supplemented or otherwise modified from time to time with the consent of the Debtors and the Requisite Consenting Parties, as approved by the Bankruptcy Court pursuant to sections 1125 and 1126 of the Bankruptcy Code.

***Disputed Claim*** means, with respect to a Claim or Equity Interest, any such Claim or Equity Interest (a) to the extent neither Allowed nor disallowed under the Prepackaged Plan or a Final Order nor deemed Allowed under section 502, 503 or 1111 of the Bankruptcy Code, or (b) for which a proof of claim or interest for payment has been timely filed with the Bankruptcy Court or a written request for payment has been made, to the extent the Debtors or any party in interest has interposed a timely objection or request for estimation prior to the Confirmation Date in accordance with the Prepackaged Plan, or the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order.

***Disputed Equity Interest*** means any Equity Interest that is not an Allowed Equity Interest.

***Distribution Record Date*** means the record date for purposes of making distributions under the Prepackaged Plan on account of Allowed Claims and Allowed Equity Interests, which date shall be three (3) Business Days after the Confirmation Date.

***ECI*** means Electrical Components International, Inc., a Delaware corporation.

***ECM Holding*** means ECM Holding Company, a Delaware corporation.

***Effective Date*** means the first Business Day on which all the conditions precedent to the Effective Date specified in Section 10.1 hereof shall have been satisfied or waived as provided in Section 10.2 hereof; *provided, however*, that if a stay, injunction or similar prohibition of the Confirmation Order is in effect, the Effective Date shall be the first Business Day after such stay, injunction or similar prohibition is no longer in effect.

***Equity Holder Expense Claims*** means all reasonable and documented fees and expenses incurred by Shearman & Sterling LLP solely to the extent related to advising and representing FP, in their capacities as holders of Claims and Equity Interests, without any requirement for providing detailed invoices or the filing of retention applications, fee applications or any other applications in the Chapter 11 Cases, which, in each case, shall be Allowed and not subject to any offset, defense, counterclaim, reduction or credit of any kind whatsoever; provided, however, that Equity Holder Expense Claims shall be Allowed only in an aggregate amount not to exceed $75,000.

***Equity Interest*** means the interest of any holders of equity securities of any of the Debtors represented by issued and outstanding shares of common or preferred stock or other instruments evidencing a present ownership interest in any of the Debtors, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest.

***Equity Interest in Subsidiary Debtors*** means the Equity Interest of any Debtor or non-Debtor subsidiary in any other Debtor or non-Debtor subsidiary.

***Estates*** means the estates of the Debtors as created under section 541 of the Bankruptcy Code.

***Exit Facility*** means (i) the Exit Facility Tranche A Term Loans and (ii) the Exit Facility Tranche B Term Loans.

***Exit Facility Agent*** means General Electric Capital Corporation, as administrative agent and collateral agent to the lenders under the Exit Facility.

***Exit Facility Documents*** means the documents evidencing and memorializing the Exit Facility to be dated as of the Effective Date, by and among the Reorganized Debtors, the holders of the First Lien Lender Claims, the Exit Facility Tranche A Lenders and the Exit Facility Agent, which will be (i) filed as part of the Prepackaged Plan Supplement and (ii) consistent with the terms set forth in the Plan Support Agreement and in form and substance reasonably acceptable to the Requisite Consenting Parties.

***Exit Facility Expense Claims*** means all reasonable and documented fees and expenses incurred by the Exit Facility Agent, the arranger under the Exit Facility and the Exit Facility Tranche A Lenders, including without limitation the fees and disbursements of (i) counsel to Credit Suisse Alternative Capital related to advising and representing Credit Suisse Alternative Capital in its capacity as Exit Facility Tranche A Lender, (ii) counsel to Babson Capital related to advising and representing Babson Capital in its capacity as Exit Facility Tranche A Lender, (iii) Latham & Watkins LLP, Loughlin & Meghji, Environ Corp. and local Delaware counsel, if any, related to advising and representing the Exit Facility Agent and the arranger under the Exit Facilities, in their capacities as such, in each case without any requirement for providing detailed invoices or the filing of retention applications, fee applications or any other applications in the Chapter 11 Cases, which, in each case, shall be Allowed in full and shall not be subject to any offset, defense, counterclaim, reduction or credit of any kind whatsoever.

***Exit Facility Tranche A Lenders*** means (i) Credit Suisse Alternative Capital and its affiliates, (ii) Babson Capital and its affiliates and (iii) such other First Lien Lenders that are lenders under the Exit Facility Tranche A Term Loans.

***Exit Facility Tranche A Term Loans*** means the tranche A term loans in the aggregate principal amount of $32,500,000, to be provided to the Reorganized Debtors as (i) an initial sub-tranche in the aggregate principal amount of $12,500,000 and (ii) an additional sub-tranche in the aggregate principal amount of $20,000,000, each as further described in the Disclosure Statement.

***Exit Facility Tranche B Term Loans*** means the tranche B term loans to be incurred by certain of the Reorganized Debtors in the aggregate principal amount of $145,000,000 pursuant to the Exit Facility, as further described in the Disclosure Statement. The Exit Facility Tranche B Term Loans will be issued by certain of the Reorganized Debtors to holders of the First Lien Lender Claims as set forth in the Prepackaged Plan.

***Expense Claims*** means, collectively, (i) the First Lien Expense Claims, (ii) the Second Lien Expense Claims, (iii) the DIP Expense Claims, (iv) the New Money Expense Claims, (v) the Exit Facility Expense Claims and (vi) the Equity Holder Expense Claims.

***Final Order*** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for *certiorari*, or move for a stay, new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari* or other proceedings for a stay, new trial, reargument or rehearing shall then be pending or (b) if an appeal, writ of *certiorari*, stay, new trial, reargument or rehearing thereof has been sought, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, *certiorari* shall have been denied or a stay, new trial, reargument or rehearing shall have been denied or resulted in no modification of such order and (ii) the time to take any further appeal, petition for *certiorari*, or move for a stay, new trial, reargument or rehearing shall have expired; *provided, however*, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

***First Lien Administrative Agent*** means UBS AG, Stamford Branch, as administrative agent to the First Lien Lenders under the First Lien Credit Agreement.

***First Lien Administrative Parties*** means UBS Securities LLC, as sole lead arranger, sole bookrunner, documentation agent and syndication agent, UBS Loan Finance, as swingline lender, and UBS AG, Stamford Branch, as issuing bank and collateral agent, in each case pursuant to the First Lien Credit Agreement.

***First Lien Credit Agreement*** means that certain Amended and Restated First Lien Credit Agreement, dated September 23, 2008, by and among ECI, Holdings, the subsidiary guarantors party thereto, the First Lien Lenders, the First Lien Administrative Agent and the other Persons party thereto, as amended, restated, amended and restated or otherwise modified from time to time.

***First Lien Expense Claims*** means all reasonable and documented fees and expenses incurred by (i) the First Lien Administrative Agent and the First Lien Administrative Parties, including, without limitation, the reasonable and documented fees and disbursements of Latham & Watkins LLP, Loughlin & Meghji, Environ Corp. and Duane Morris LLP related to advising and representing the First Lien Administrative Agent, in its capacity as such, and the First Lien Administrative Parties, in their capacities as such, and (ii) the First Lien Lenders in their capacities as holders of Claims, without any requirement for providing detailed invoices or the filing of retention applications, fee applications or any other applications in the Chapter 11 Cases, which, in each case, shall be Allowed in full and shall not be subject to any offset, defense, counterclaim, reduction or credit of any kind whatsoever.

***First Lien Lender Claim*** means any Claim or Obligation (as defined in the First Lien Credit Agreement) arising under or in connection with the First Lien Credit Agreement.

***First Lien Lender Loans*** means the loans and financial accommodations, including, without limitation, the term and revolving loans, extended by the First Lien Lenders pursuant to the First Lien Credit Agreement.

***First Lien Lenders*** means the lenders party to the First Lien Credit Agreement.

***FP*** means Francisco Partners Management, LLC, Francisco Partners GP, LLC, Francisco Partners, L.P., Francisco Partners Fund A, L.P. and FP Annual Fund Investors, LLC and any non-Debtor affiliate of any of the foregoing (other than any non-Debtor subsidiary of any Debtor).

***General Unsecured Claim*** means any Claim against any Debtor that (a) is not an Administrative Expense Claim, Priority Non-Tax Claim, First Lien Lender Claim, Second Lien Lender Claim, Secured Tax Claim, Other Secured Claim, Intercompany Claim, DIP Claim or Waived FP Claim or (b) is otherwise determined by the Bankruptcy Court to be a General Unsecured Claim.

***Holdings*** means FP-ECI Holdings Company, a Delaware corporation.

***Holdings Common Equity Interest*** means the interest of any holder in Holdings Common Stock and any warrants, options or other rights to purchase, acquire or receive any Holdings Common Stock.

***Holdings Common Stock*** means the shares of common stock issued by Holdings, par value $0.001 per share, as of the Petition Date and any warrants, options or other rights to purchase, acquire or receive any Holdings Common Stock.

***Holdings Preferred Equity Interest*** means the interest of any holder in Holdings Preferred Stock.

***Holdings Preferred Stock*** means the shares of preferred stock issued by Holdings, par value $0.001 per share, as of the Petition Date.

***Intercompany Claim*** means any Claim held by (i) a Debtor against another Debtor or (ii) a non-Debtor subsidiary against a Debtor.

***Lien*** has the meaning set forth in section 101(37) of the Bankruptcy Code.

***Liquidity Event*** means, in each case, in one transaction or a series of related transactions, (i) a sale of all or substantially all of the common equity interests in Reorganized Holdings or Reorganized ECI (including, without limitation, through a merger or consolidation of Reorganized Holdings or Reorganized ECI), (ii) a sale of all or substantially all of the assets of Reorganized Holdings or Reorganized ECI and their subsidiaries, in each case excluding transfers to Reorganized Holdings, Reorganized ECI or any of their respective subsidiaries or (iii) an initial public offering of Reorganized Holdings or Reorganized ECI (with the value based on the value allocable to the Plan New Common Stock using the price at which the shares are sold by Reorganized Holdings or Reorganized ECI, as applicable, in such initial public offering).

***Local Bankruptcy Rules*** means the Local Bankruptcy Rules for the District of Delaware.

***Management Agreement*** means the advisory agreement dated as of May 1, 2006, between Francisco Partners Management, LLC and Holdings, as may be amended, restated, amended and restated or otherwise modified from time to time.

***Management Incentive Plan*** means the management incentive plan to be adopted by the Reorganized Debtors pursuant to the Prepackaged Plan in form and substance reasonably acceptable to the Requisite Consenting Parties and substantially in the form to be included in the Prepackaged Plan Supplement.

***Management Stock*** means the New Common Stock to be issued by Reorganized Holdings to senior management in accordance with the Management Incentive Plan.

***New Common Stock*** means the authorized shares of common stock of Reorganized Holdings.

***New Money Contribution*** means, collectively, the New Money Equity Contribution and the Secondary Equity Contribution.

***New Money Equity Contribution*** means, in the aggregate, the Sankaty New Money Equity Contribution and the BKC New Money Equity Contribution.

***New Money Expense Claims*** means all reasonable and documented fees and expenses incurred by Goodwin Procter LLP, Ropes & Gray LLP and Pepper Hamilton LLP related to advising and representing the New Money Investors in connection with the New Money Contributions, without any requirement for providing detailed invoices or the filing of retention applications, fee applications or any other applications in the Chapter 11 Cases, which, in each case, shall be Allowed in full and shall not be subject to any offset, defense, counterclaim, reduction or credit of any kind whatsoever.

***New Money Investors*** means, collectively, BKC and Sankaty.

***Noma*** means Noma O.P., Inc., a Delaware corporation.

***Other Secured Claim*** means a Secured Claim other than a First Lien Lender Claim, a Second Lien Lender Claim or a Secured Tax Claim.

***Person*** means an individual, partnership, corporation, limited liability company, cooperative, trust, unincorporated organization, association, joint venture, government or agency or political subdivision thereof or any other form of legal entity.

***Petition Date*** means the date on which each of the respective Debtors files its voluntary petition for reorganization relief under chapter 11 of the Bankruptcy Code.

***Plan Documents*** means the documents to be executed, delivered, assumed and/or performed in conjunction with the consummation of the Prepackaged Plan on the Effective Date, including, but not limited to, the Restated Certificate of Incorporation, the Restated Bylaws, the Exit Facility Documents, the Registration Rights Agreement, the Shareholders Agreement and

the Rights Agreement. The Plan Documents shall contain terms and conditions consistent in all material respects with the Plan Support Agreement, the term sheets attached to the Plan Support Agreement and this Prepackaged Plan (in each case, as amended, supplemented or otherwise modified as provided in the Plan Support Agreement) and shall otherwise be reasonably satisfactory in form and substance to the Requisite Consenting Parties. Each of the Plan Documents to be entered into as of the Effective Date will be filed in draft form in the Prepackaged Plan Supplement in form and substance reasonably acceptable to the Requisite Consenting Parties.

*Plan New Common Stock* means the shares of New Common Stock issued pursuant to the Prepackaged Plan on the Effective Date, including any shares issued as in kind distributions with respect to such shares, but excluding any shares of New Common Stock issued as compensatory or incentive options to any employee, officer or director.

*Plan Support Agreement* means the February 12, 2010, plan support agreement between the Debtors, the First Lien Administrative Agent, the Second Lien Administrative Agent, the Consenting Holders, FP and the New Money Investors.

*Prepackaged Plan* means this joint prepackaged plan of reorganization, as the same may be amended, supplemented or otherwise modified from time to time in accordance with the provisions of the Bankruptcy Code, the terms of the Plan Support Agreement and the consent of the Requisite Consenting Parties, including the exhibits and schedules hereto and contained in the Prepackaged Plan Supplement, which shall be in form and substance acceptable to the Requisite Consenting Parties.

*Prepackaged Plan Supplement* means the compilation of documents, including any exhibits to the Prepackaged Plan not included herewith that the Debtors may file with the Bankruptcy Court on or before the date that is five (5) Business Days prior to the Confirmation Hearing, which shall be in form and substance reasonably satisfactory to the Requisite Consenting Parties.

*Priority Non-Tax Claim* means any Claim against any of the Debtors, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment as specified in sections 507(a)(3), (4), (5), (6), (7) or (9) of the Bankruptcy Code.

*Priority Tax Claim* means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

*Registration Rights Agreement* means the agreement between Reorganized Holdings, BKC, Sankaty and any other holder of the issued and outstanding shares of the Plan New Common Stock which shall be in form and substance acceptable to the Requisite Consenting Parties and filed as part of the Prepackaged Plan Supplement and entered into on the Effective Date and shall provide for each such holder of Plan New Common Stock to have the registration rights specified therein.

*Released Parties* means (i) any holder of First Lien Lender Claims; (ii) any holder of Second Lien Lender Claims; (iii) the New Money Investors; *provided, however,* that none of

the foregoing Persons identified in clauses (i) through (iii) shall be a Released Party if such Person as a holder of a Claim objects to the Prepackaged Plan; (iv) FP; *provided, however*, FP shall not be a Released Party if it votes against the Prepackaged Plan or objects to it in any capacity; (v) the First Lien Administrative Agent, (vi) the Second Lien Administrative Agent, (vii) the First Lien Administrative Parties, (viii) the Second Lien Administrative Parties, (ix) the current (as of the Effective Date) and former (as of the Effective Date) directors, officers, and employees of each of the Debtors, (x) the DIP Lenders, (xi) the DIP Agent, (xii) the DIP Administrative Parties, (xiii) the lenders, administrative agents, collateral agents, syndication agents and arrangers under the Exit Facility Documents and their respective successors and assigns, (xiv) the Debtors, (xv) any professional advisors, agents, attorneys, sub-advisors, managers, and managing and executive directors of the parties described in clauses (i) through (xiv) hereof; *provided, however*, that professional advisors and attorneys in clause (xv) shall only include those that provided services related to the transactions contemplated by the First Lien Credit Agreement, the Second Lien Credit Agreement, the DIP Facility, the Exit Facility, this Prepackaged Plan, and/or the Plan Support Agreement, and (xvi) the affiliates and their respective directors, officers, partners, members, representatives and employees of the parties described in clauses (i) through (xv) hereof.

*Reorganized Debtor* means any of the Debtors after the Effective Date.

*Reorganized ECI* means Electrical Components International, Inc., a Delaware corporation, as a post-confirmation entity reorganized under the Prepackaged Plan, which shall be a wholly-owned subsidiary of Reorganized Holdings as of the Effective Date.

*Reorganized Holdings* means Holdings after the Effective Date.

*Requisite Consenting First Lien Lenders* means Consenting First Lien Lenders holding no less than a majority in aggregate principal amount of the First Lien Debt held by the Consenting First Lien Lenders party to the Plan Support Agreement.

*Requisite Consenting Parties* means, collectively, (i) Requisite Consenting First Lien Lenders, (ii) Requisite Consenting Second Lien Lenders and (iii) each New Money Investor.

*Requisite Consenting Second Lien Lenders* means Consenting Second Lien Lenders holding no less than a majority in aggregate principal amount of the Second Lien Debt held by the Consenting Second Lien Lenders party to the Plan Support Agreement.

*Restated Bylaws* means the amended and restated bylaws to be adopted by Reorganized Holdings on the Effective Date, which shall be substantially in the form to be included in the Prepackaged Plan Supplement and in form and substance reasonably acceptable to the Requisite Consenting Parties.

*Restated Certificate of Incorporation* means the amended and restated certificate of incorporation to be adopted by Reorganized Holdings and filed with the Secretary of State of the State of Delaware prior to or on the Effective Date, which shall be substantially in the form

to be filed as part of the Prepackaged Plan Supplement and in form and substance reasonably acceptable to the Requisite Consenting Parties.

*Rights* means the interests issued to the holders of Holdings Preferred Equity Interests on the terms and conditions set forth in the Rights Agreement, which shall provide the holders thereof with (a) the right to receive 5% of any equity value in excess of the Tranche A Hurdle distributed with respect to shares of the Plan New Common Stock upon a Liquidity Event effected on or before the six year anniversary of the Effective Date and (b) the right to receive 5% of any equity value in excess of the Tranche B Hurdle distributed with respect to shares of the Plan New Common Stock upon a Liquidity Event effected on or before the six year anniversary of the Effective Date. The rights to receive payments described in clause (a) and clause (b) above shall be independent, separate and additional. All Rights shall terminate upon the earlier of (i) consummation of a Liquidity Event and (ii) the six year anniversary of the Effective Date.

*Rights Agreement* means a rights agreement to be entered into by Reorganized Holdings and the Equity Holders on the Effective Date, which shall be substantially in the form to be included in the Prepackaged Plan Supplement and in form and substance reasonably acceptable to the Requisite Consenting Parties.

*Sankaty* means Sankaty Advisors, together with its affiliates.

*Sankaty New Money Equity Contribution* means Sankaty's new money contribution of $9.4 million in Cash.

*Sankaty Secondary Equity Contribution* means Sankaty's secondary new money contribution in an amount between $5,000,000 and $7,500,000, which shall be equal to (i) one-half multiplied by (ii) the amount required to fund the Cash Election.

*Second Lien Administrative Agent* means NexBank, SSB, as administrative agent to the Second Lien Lenders under the Second Lien Credit Agreement and UBS AG, Stamford Branch, as the original administrative agent to the Second Lien Lenders under the Second Lien Credit Agreement.

*Second Lien Administrative Parties* means NexBank, SSB, as administrative agent and collateral agent to the Second Lien Lenders under the Second Lien Credit Agreement, UBS Securities LLC as sole lead arranger, sole bookmanager, document agent and syndication agent under the Second Lien Credit Agreement and UBS AG, Stamford Branch as former administrative agent and collateral agent under the Second Lien Credit Agreement.

*Second Lien Credit Agreement* means that certain Amended and Restated Second Lien Credit Agreement, dated September 23, 2008, by and among ECI, Holdings, the subsidiary guarantors party thereto, the Second Lien Lenders, the Second Lien Administrative Agent and the other Persons party thereto from time to time, as amended, restated, amended and restated or otherwise modified from time to time.

***Second Lien Expense Claims*** means all reasonable and documented fees and expenses incurred by (i) the Second Lien Administrative Agent and the Second Lien Administrative Parties, including, without limitation, the reasonable and documented fees and disbursements of Goodwin Procter LLP, Ropes & Gray LLP and Pepper Hamilton LLP related to advising and representing the Second Lien Administrative Agent, in its capacity as such, and the Second Lien Administrative Parties, in their capacities as such, and (ii) the Second Lien Lenders in their capacities as holders of Claims, without any requirement for providing detailed invoices or the filing of retention applications, fee applications or any other applications in the Chapter 11 Cases, which, in each case, shall be Allowed in full and shall not be subject to any offset, defense, counterclaim, reduction or credit of any kind whatsoever.

***Second Lien Lender Claim*** means a Claim or Obligation (as defined in the Second Lien Credit Agreement) arising under or in connection with the Second Lien Credit Agreement.

***Second Lien Lender Loans*** means the loans and financial accommodations, including, without limitation, the term loans extended by the Second Lien Lenders pursuant to the Second Lien Credit Agreement.

***Second Lien Lenders*** means the lenders party to the Second Lien Credit Agreement.

***Secondary Equity Contribution*** means, in the aggregate, the BKC Secondary Equity Contribution and the Sankaty Secondary Equity Contribution.

***Secured Claim*** means, a Claim that is secured by a Lien that is valid, perfected and enforceable, and not avoidable, upon property in which a Debtor has an interest, to the extent of the value, as of the Effective Date, of such interest or Lien as determined by a Final Order of the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code, or as otherwise agreed to in writing by a Debtor or Reorganized Debtors and the holder of such Claim.

***Secured Tax Claims*** means any Secured Claim that, absent its secured status, would be entitled to priority and right of payment under section 507(a)(8) of the Bankruptcy Code.

***Shareholders Agreement*** means that certain agreement, by and among Holdings, Sankaty, BKC and each holder of New Common Stock, to be entered into as of the Effective Date on terms and conditions as set forth in the Disclosure Statement and substantially in the form to be included in the Prepackaged Plan Supplement and in form and substance acceptable to the Requisite Consenting Parties.

***Subsidiary Debtors*** means ECI, ECM Holding and Noma.

***Tranche A Hurdle*** means $250 million, decreased by the amount of any cash dividends, cash redemptions or cash repurchases of equity securities effected with respect to the Plan New Common Stock.

**Tranche B Hurdle** means $325 million, decreased by the amount of any cash dividends, cash redemptions or cash repurchases of equity securities effected with respect to the Plan New Common Stock.

**Waived FP Claim** has the meaning ascribed to it in Section 11.12 of the Prepackaged Plan.

## B. Rules of Interpretation.

For purposes of the Prepackaged Plan: (1) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (2) unless otherwise specified, any reference in the Prepackaged Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (3) unless otherwise specified, any reference in the Prepackaged Plan to an existing document, schedule, or exhibit, whether or not filed with the Bankruptcy Court, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (4) any reference to an entity as a holder of a Claim or Equity Interest includes that entity's successors and assigns; (5) unless otherwise specified, all references in the Prepackaged Plan to articles are references to the articles of the Prepackaged Plan; (6) unless otherwise specified, all references in the Prepackaged Plan to exhibits are references to exhibits contained or included in the Prepackaged Plan Supplement; (7) the words "herein," "hereof," and "hereto" refer to the Prepackaged Plan in its entirety rather than to a particular portion of the Prepackaged Plan; (8) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Prepackaged Plan, the rights and obligations arising pursuant to the Prepackaged Plan shall be governed by, and construed and enforced in accordance with applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (9) captions and headings to articles of the Prepackaged Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Prepackaged Plan; (10) unless otherwise set forth in the Prepackaged Plan, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) any term used in capitalized form in the Prepackaged Plan that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (12) all references to docket numbers of documents filed in the Debtors' Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (13) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, as applicable to the Debtors' Chapter 11 Cases, unless otherwise stated; and (14) any immaterial effectuating provisions may be interpreted by the Reorganized Debtors after the Effective Date in such a manner that is consistent with the overall purpose and intent of the Prepackaged Plan all without further order of the Bankruptcy Court.

In computing any period of time prescribed or allowed by the Prepackaged Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II

## PROVISIONS FOR PAYMENT OF UNCLASSIFIED ADMINISTRATIVE, PROFESSIONAL AND TAX CLAIMS

2.1     *Administrative Expense Claims.*

Each holder of an Allowed Administrative Expense Claim shall receive payment in full in Cash of the unpaid portion of such Allowed Administrative Expense Claim (a) in the case of the Expense Claims, in the ordinary course of business, without the requirement to provide detailed invoices or to file a fee or other application with the Bankruptcy Court, but no later than the Effective Date, (b) in the case of professional fees and expenses for other advisors, as soon as practicable after Bankruptcy Court approval thereof, or, in the case of professionals retained by the Debtors in the ordinary course of their business, if any, on such terms as are customary between the Debtors and such professionals, (c) with respect to all other holders of Allowed Administrative Expense Claims, on the later of (i) the Effective Date and (ii) the date on which such payment would be made in the ordinary course of the Debtor's business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements or regulations governing, instruments evidencing or other documents relating to such transactions, or (d) with respect to any Claim described in clauses (a) through (c) hereof, as otherwise agreed by the holder of such Claim and the Debtors.  Disputed but not yet Allowed Administrative Expense Claims shall receive payment on the later of (i) the date such Disputed Allowed Administrative Expense Claim becomes Allowed and (ii) following the date such Disputed Allowed Administrative Expense Claim becomes Allowed, the date on which such payment would be made in the ordinary course of the Debtor's business, consistent with past practice and in accordance with their terms and subject to the conditions of any agreements or regulations governing, instruments evidencing or other documents relating to such transactions.

2.2     *Professional Compensation and Reimbursement Claims.*

Except as provided in Section 2.1 hereof, all Persons seeking awards by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code shall (a) file, on or before the date that is ninety (90) days after the Effective Date, their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred and (b) be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court in accordance with the order relating to or allowing any such Administrative Expense Claim.  The Reorganized Debtors are authorized to pay compensation for professional services rendered and reimbursement of expenses incurred after the Confirmation Date in the ordinary course and without the need for Bankruptcy Court approval.

2.3     *Priority Tax Claims.*

With respect to any Priority Tax Claims not paid pursuant to prior order of the Bankruptcy Court, except to the extent that a holder of an Allowed Priority Tax Claim against a

Debtor agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall, in full satisfaction, release, and discharge of such Allowed Priority Tax Claim: (a) to the extent such Claim is due and owing on the Effective Date, be paid in full, in Cash, on the Effective Date; (b) to the extent such Claim is not due and owing on the Effective Date, be paid in full, in Cash, in accordance with the terms of any agreement between the Debtors and such holder, or as may be due and owing under applicable non-bankruptcy law, or in the ordinary course of business; or (c) be treated on such other terms and conditions as are acceptable to the Debtors and the holder of such Claim.

### 2.4    *DIP Claims.*

On the Effective Date, all DIP Claims, and to the extent not previously paid, all DIP Expense Claims (including, without limitation, any estimated invoices therefor) payable in cash shall be indefeasibly paid in full in Cash from, *inter alia*, the proceeds of the Exit Facility. Upon payment and satisfaction in full of all DIP Claims, the commitments under the DIP Facility shall terminate and all Liens and security interests granted to secure such obligations, whether in the Chapter 11 Cases or otherwise, shall be terminated and of no further force or effect.

## ARTICLE III

## CLASSIFICATION OF CLAIMS
## AND EQUITY INTERESTS

The Prepackaged Plan is premised upon the consolidation of the Debtors for purposes of the Prepackaged Plan only. Accordingly, for purposes of the Prepackaged Plan, the assets and liabilities of the Debtors are deemed the assets and liabilities of a single, consolidated entity.

The following table designates the Classes of Claims against, and Equity Interests in, the Debtors and specifies which of those Classes and Equity Interests are (a) impaired or unimpaired by the Prepackaged Plan, (b) entitled to vote to accept or reject the Prepackaged Plan in accordance with section 1126 of the Bankruptcy Code, and (c) deemed to accept or reject the Prepackaged Plan.

| Class | Designation | Impairment | Entitled to Vote |
| --- | --- | --- | --- |
| Class 1 | Priority Non-Tax Claims | Unimpaired | No (deemed to accept) |
| Class 2 | First Lien Lender Claims | Impaired | Yes |
| Class 3 | Second Lien Lender Claims | Impaired | Yes |
| Class 4 | Secured Tax Claims | Unimpaired | No (deemed to accept) |

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 5 | Other Secured Claims | Unimpaired | No (deemed to accept) |
| Class 6 | General Unsecured Claims | Unimpaired | No (deemed to accept) |
| Class 7 | Intercompany Claims | Unimpaired | No (deemed to accept) |
| Class 8 | Holdings Preferred Equity Interests | Impaired | Yes |
| Class 9 | Equity Interests in Subsidiary Debtors | Unimpaired | No (deemed to accept) |
| Class 10 | Holdings Common Equity Interests | Impaired | No (deemed to reject) |

## ARTICLE IV

## TREATMENT OF CLAIMS AND EQUITY INTERESTS

### 4.1    *Class 1 – Priority Non-Tax Claims.*

(a)    Impairment and Voting.  Class 1 is unimpaired by the Prepackaged Plan.  Each holder of an Allowed Priority Non-Tax Claim is not entitled to vote to accept or reject the Prepackaged Plan and shall be conclusively deemed to have accepted the Prepackaged Plan.

(b)    Distributions.  Except to the extent that a holder of an Allowed Priority Non-Tax Claim against any of the Debtors agrees to a different treatment, each such holder shall receive, in full satisfaction of such Claim, Cash in an amount equal to such Claim, on or as soon as reasonably practicable after the latest of (i) the Effective Date, (ii) the date such Claim becomes Allowed, and (iii) the date for payment provided by any agreement or understanding between the applicable Debtor and the holder of such Claim.

### 4.2    *Class 2 – First Lien Lender Claims.*

(a)    Allowance, Impairment and Voting.  Class 2 is impaired by the Prepackaged Plan.  The First Lien Lender Claims are hereby Allowed in full, and, for the avoidance of doubt, not subject to avoidance, reduction, setoff, offset, recharacterization, subordination (whether equitable, contractual or otherwise), defense, counterclaim, cross-claim, disallowance, impairment, credit, objection or any challenges of any kind whatsoever under any applicable law or regulation by any Person, in the aggregate amount of (i) $261,375,000 plus

(ii) all accrued and unpaid interest thereon at the applicable contract rate under the First Lien Credit Agreement as of the Petition Date, except to the extent such interest is otherwise specifically provided herein or in another order of the Bankruptcy Court to be paid or satisfied, plus (iii) all other Obligations (as defined in the First Lien Credit Agreement), except to the extent that such other Obligations are otherwise provided to be paid or satisfied. Each holder of an Allowed First Lien Lender Claim is entitled to vote to accept or reject the Prepackaged Plan.

(b)     Distributions.

(i)     On the Effective Date or as soon thereafter as is reasonably practicable, except to the extent that a holder of an Allowed First Lien Lender Claim agrees to less favorable treatment, each holder of an Allowed First Lien Lender Claim shall receive, in full satisfaction of such Claim, such holder's *pro rata* share (based upon the principal amount of First Lien Lender Loans held by each holder divided by the aggregate outstanding principal amount of First Lien Lender Loans) of: (x) 50,000,000 shares of the New Common Stock of Reorganized Holdings unless a Cash Election is made with respect to an Allowed First Lien Lender Claim pursuant to Section 4.2(b)(ii) hereof and (y) the Exit Facility Tranche B Term Loans.

(ii)     [In lieu of a distribution of its pro rata share of 50,000,000 shares of the New Common Stock pursuant to Section 4.2(b)(i)(x), each holder of an Allowed First Lien Lender Claim may elect to receive Cash on account of all or a portion of its distribution of New Common Stock in an amount equal to $1.00 per share of New Common Stock (the "Cash Election", and each holder that exercises the Cash Election, an "Electing Lender"); provided; that the aggregate amount of shares of New Common Stock on account of which the Electing Lenders may receive Cash distributions pursuant to the Cash Election shall not exceed 15,000,000 (the "Subscription Limit"). In the event that the Electing Lenders elect to receive Cash on account of shares of New Common Stock in an aggregate number in excess of the Subscription Limit (the number of shares in excess of the Subscription Limit, the "Oversubscribed Election Shares"), then the number of shares of New Common Stock on account of which each Electing Lender shall receive Cash pursuant to the Cash Election shall be reduced on a pro rata basis (based upon the number of shares of New Common Stock on account of which each Electing Lender elected to receive Cash divided by the aggregate number of shares of New Common Stock on account of which all Electing Lenders elected to receive Cash) until the aggregate number of shares on account of which Cash will be distributed pursuant to the Cash Election is equal to the Subscription Limit, and the Electing Lenders shall receive the Oversubscribed Election Shares as if there had been no Cash Election available with respect to such Oversubscribed Election Shares.

Pursuant to the Plan Support Agreement, holders of an aggregate amount of First Lien Lender Loans equal to $231,518,760 shall elect to receive $10,359,764 in Cash for a portion of their Allowed First Lien Lender Claims. Pursuant to Sections 6.2(b) and 6.2(d) of the Prepackaged Plan, BKC and Sankaty shall each acquire half the shares of New Common

Stock otherwise distributable to holders of Allowed First Lien Lender Claims that elect to receive Cash for their shares in accordance with Section 4.2(b)(ii) of the Prepackaged Plan.][2]

### 4.3    *Class 3 – Second Lien Lender Claims.*

(a)    Allowance, Impairment and Voting. Class 3 is impaired by the Prepackaged Plan. The Second Lien Lender Claims are hereby Allowed in full, and, for the avoidance of doubt, not subject to avoidance, reduction, setoff, offset, recharacterization, subordination (whether equitable, contractual or otherwise), defense, counterclaim, cross-claim, disallowance, impairment, credit, objection or any challenges of any kind whatsoever under any applicable law or regulation by any Person, (i) in the aggregate principal amount of $60,000,000 plus (ii) all accrued and unpaid interest thereon at the applicable contract rate under the Second Lien Credit Agreement as of the Petition Date, except to the extent such interest is otherwise specifically provided herein or in another order of the Bankruptcy Court to be paid or satisfied, plus (iii) all other Obligations (as defined in the Second Lien Credit Agreement), except to the extent that such other Obligations are otherwise provided to be paid or satisfied. Each holder of an Allowed Second Lien Lender Claim is entitled to vote to accept or reject the Prepackaged Plan.

(b)    Distribution. On the Effective Date or as soon thereafter as is reasonably practicable, except to the extent that a holder of an Allowed Second Lien Lender Claim agrees to less favorable treatment, each holder of an Allowed Second Lien Lender Claim shall receive, in full satisfaction of such Claim, such holder's *pro rata* share (based upon the principal amount of Second Lien Lender Loans held by each holder divided by the aggregate outstanding principal amount of Second Lien Lender Loans) of $10.0 million in Cash.

### 4.4    *Class 4 – Secured Tax Claims.*

(a)    Impairment and Voting. Class 4 is unimpaired by the Prepackaged Plan. Each holder of an Allowed Secured Tax Claim is not entitled to vote to accept or reject the Prepackaged Plan and shall be conclusively deemed to have accepted the Prepackaged Plan.

(b)    Distributions. Except to the extent that a holder of an Allowed Secured Tax Claim against any of the Debtors agrees to a different treatment, each such holder shall receive, in full satisfaction of such Claim, Cash in an amount equal to such Claim, on or as soon as reasonably practicable after the latest of (i) the Effective Date, (ii) the date such Claim becomes Allowed and (iii) the date for payment provided by any agreement or understanding between the applicable Debtor and the holder of such Claim.

### 4.5    *Class 5 – Other Secured Claims.*

(a)    Impairment and Voting. Class 5 is unimpaired by the Prepackaged Plan. Each holder of an Allowed Other Secured Claim is not entitled to vote to

---

[2] Prior to commencement of the Chapter 11 Cases, Section 4.2(a)(ii) shall be revised to reflect the results of the Cash Election.

accept or reject the Prepackaged Plan and shall be conclusively deemed to have accepted the Prepackaged Plan.

(b)     Distributions.  On the Effective Date, or as soon thereafter as is reasonably practicable, except to the extent that a holder of an Allowed Other Secured Claim agrees to a different treatment, at the sole option of the Reorganized Debtors, each Allowed Other Secured Claim shall (i) be reinstated and rendered unimpaired in accordance with section 1124 of the Bankruptcy Code, notwithstanding any contractual provision or applicable non-bankruptcy law that entitles the holder of an Allowed Other Secured Claim to demand or receive payment of such Claim prior to its stated maturity from and after the occurrence of a default, (ii) receive Cash in an amount equal to such Allowed Other Secured Claim, including any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code or (iii) receive the Collateral securing such Allowed Other Secured Claim and any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code.

4.6     *Class 6 – General Unsecured Claims.*

(a)     Impairment and Voting.  Class 6 is unimpaired by the Prepackaged Plan.  Each holder of an Allowed General Unsecured Claim is not entitled to vote to accept or reject the Prepackaged Plan and shall be conclusively deemed to accept the Prepackaged Plan.

(b)     Distributions.  Except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment of such Allowed General Unsecured Claim, each holder of an Allowed General Unsecured Claim shall, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed General Unsecured Claim, in the sole discretion of the Debtors: (i) to the extent such Allowed General Unsecured Claim is due and owing on the Effective Date, (a) be paid in full in Cash on the later of the Effective Date and the date such claim becomes an Allowed General Unsecured Claim, or, in each case, as soon as practicable thereafter, or (b) otherwise be paid in accordance with the terms of any agreement between the Debtors and such holder; (ii) to the extent such Allowed General Unsecured Claim is not by its terms due and owing on the Effective Date, be paid in full in Cash when and as such Allowed General Unsecured Claim becomes due and owing in the ordinary course of business; or (iii) receive treatment that leaves unaltered the legal, equitable, and contractual rights to which such Allowed General Unsecured Claim entitles the holder of such Claim.

4.7     *Class 7 – Intercompany Claims.*

(a)     Impairment and Voting.  Class 7 is unimpaired by the Prepackaged Plan.  Each holder of an Allowed Intercompany Claim is not entitled to vote to accept or reject the Prepackaged Plan and shall be conclusively deemed to accept the Prepackaged Plan.

(b)     Distribution.  The legal, equitable and contractual rights of the holders of Allowed Intercompany Claims shall be unaltered by the Prepackaged Plan, or such Intercompany Claims shall otherwise be rendered unimpaired pursuant to section 1124 of the Bankruptcy Code.  Any such transaction may be effected on or subsequent to the Effective Date without any further authorization from the Bankruptcy Court or other action by the holders of New Common Stock.

4.8     *Class 8 –Holdings Preferred Equity Interests.*

(a)     Impairment and Voting.  Class 8 is impaired by the Prepackaged Plan.  The Holdings Preferred Equity Interests are hereby Allowed in full, and, for the avoidance of doubt, not subject to avoidance, reduction, setoff, offset, recharacterization, subordination (whether equitable, contractual or otherwise), defense, counterclaim, cross-claim, disallowance, impairment, credit, objection or any challenges of any kind whatsoever under any applicable law or regulation by any Person; provided, however, that no Holdings Preferred Equity Interest shall be Allowed if (A) the holder of such Holdings Preferred Equity Interest (i) votes against the Prepackaged Plan or objects to it in any capacity or (ii) fails to waive the Waived FP Claims or (B) Class 8 fails to vote to accept the Prepackaged Plan (which vote shall not have been changed, withdrawn or revoked); provided, further, that nothing herein shall or shall be deemed to provide for the Allowance of the Waived FP Claims.  Each holder of an Allowed Holdings Preferred Equity Interest is entitled to vote to accept or reject the Prepackaged Plan.

(b)     Distribution.  On the Effective Date or as soon thereafter as is reasonably practicable, all shares of Holdings Preferred Stock shall be cancelled, whether surrendered for cancellation or otherwise, and each holder of Allowed Holdings Preferred Equity Interests shall receive its *pro rata* share (based upon the number of shares of Holdings Preferred Stock held by each holder divided by the aggregate outstanding number of shares of Holdings Preferred Stock) of the Rights.  FP has waived the Waived FP Claim pursuant to Section 11.12 of the Prepackaged Plan.

4.9     *Class 9 –Equity Interests in Subsidiary Debtors.*

(a)     Impairment and Voting.  Class 9 is unimpaired by the Prepackaged Plan.  Each holder of an Allowed Equity Interest in Subsidiary Debtors is not entitled to vote to accept or reject the Prepackaged Plan and shall be conclusively deemed to accept the Prepackaged Plan.

(b)     Distribution.  On the Effective Date, all of the Equity Interests of the Subsidiary Debtors shall be owned by Reorganized Holdings or Reorganized ECI, as applicable.

4.10    *Class 10 – Holdings Common Equity Interests.*

(a)     Impairment and Voting.  Class 10 is impaired by the Prepackaged Plan.  Each holder of an Allowed Holdings Common Equity Interest is deemed to reject the Prepackaged Plan.

(b)    Distribution.  On the Effective Date or as soon thereafter as is reasonably practicable, all shares of Holdings Common Stock shall be cancelled, whether surrendered for cancellation or otherwise, and each holder of Allowed Holdings Common Equity Interests shall not be entitled to, and shall not receive or retain, any property or interest in property on account of such Allowed Holdings Common Equity Interests.

## ARTICLE V

## IDENTIFICATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS IMPAIRED; ACCEPTANCE OR REJECTION OF THIS PLAN OF REORGANIZATION

5.1    ***Holders of Claims and Equity Interests Entitled to Vote.***

Each of Class 2 (First Lien Lender Claims), Class 3 (Second Lien Lender Claims) and Class 8 (Holdings Preferred Equity Interests) is entitled to vote to accept or reject this Prepackaged Plan.

5.2    ***Holders of Claims and Equity Interests Not Entitled to Vote.***

Each of Class 1 (Priority Non-Tax Claims), Class 4 (Secured Tax Claims), Class 5 (Other Secured Claims), Class 6 (General Unsecured Claims) and Class 7 (Intercompany Claims) is unimpaired by the Prepackaged Plan and the holders of Allowed Claims in Classes 1, 4, 5, 6 and 7 are conclusively deemed to have accepted the Prepackaged Plan and are not entitled to vote to accept or reject the Prepackaged Plan.

Class 9 (Equity Interests in Subsidiary Debtors) is unimpaired by the Prepackaged Plan and the holders of claims in Class 9 are presumed to have accepted the Prepackaged Plan by virtue of proposing the Prepackaged Plan.

Class 10 (Holdings Common Equity Interests) is impaired by the Prepackaged Plan and will receive no distribution under the Prepackaged Plan. The holders of Equity Interests in Class 10 are conclusively deemed to have rejected the Prepackaged Plan.

5.3    ***Nonconsensual Confirmation.***

If any impaired Class of Claims or Interests entitled to vote shall not accept the Prepackaged Plan by the requisite statutory majority provided in section 1126(c) or (d) of the Bankruptcy Code, the Debtors, with the consent of the Requisite Consenting Parties, reserve the right to amend the Prepackaged Plan in accordance with Section 13.4 of the Prepackaged Plan or to undertake to have the Bankruptcy Court confirm the Prepackaged Plan under section 1129(b) of the Bankruptcy Code or both.

## ARTICLE VI

## MEANS OF IMPLEMENTATION
## AND POST-EFFECTIVE DATE GOVERNANCE

6.1    *Consolidation for Distribution Purposes.*

The Prepackaged Plan is premised upon the consolidation of the Debtors for purposes of the Prepackaged Plan only. Accordingly, on the Effective Date, all of the Debtors and their Estates shall, for purposes of the Prepackaged Plan only, be deemed merged and (i) all assets and liabilities of the Debtors shall be treated as though they were merged, (ii) all joint obligations of the Debtors and all multiple Claims against such entities on account of such joint obligations, shall be considered a single Claim against the Debtors, and receive a single distribution, and (iii) any Claim filed in the Chapter 11 Cases shall be deemed filed against the consolidated Debtors and a single obligation of the Debtors on a consolidated basis on and after the Effective Date. Such consolidation shall not (other than for voting, treatment, and distribution purposes under the Prepackaged Plan) affect (x) the legal and corporate structures of the Debtors (including the corporate ownership of the Subsidiary Debtors) and (y) any Intercompany Claims.

6.2    *New Money Contributions.*

On the Effective Date, the following transactions shall be effectuated simultaneously:

(a)    BKC shall make the BKC New Money Equity Contribution in exchange for 13,100,000 shares of the New Common Stock;

(b)    BKC shall make the BKC Secondary Equity Contribution in exchange for at least an additional 5,000,000 shares and up to 7,500,000 shares of the New Common Stock;

(c)    Sankaty shall make the Sankaty New Money Equity Contribution in exchange for 9,400,000 shares of the New Common Stock; and

(d)    Sankaty shall make the Sankaty Secondary Equity Contribution in exchange for at least an additional 5,000,000 shares and up to 7,500,000 shares of the New Common Stock.

In respect of Section 6.2(b) and 6.2(d), such shares of New Common Stock issued to BKC and Sankaty, respectively, shall correspondingly reduce the number of shares distributed to the holders of Allowed First Lien Lender Claims as set forth in Section 4.2(b).

6.3    *General Corporate Actions.*

(a)    <u>General</u>. Upon the Effective Date, all actions contemplated by the Prepackaged Plan shall be deemed authorized and approved in all respects, including (i)

adoption or assumption, as applicable, of the agreements with existing management, (ii) the issuance and distribution of the New Common Stock and the Rights, (iii) the distribution of the Exit Facility Tranche B Loans, (iv) selection of the directors and officers for the Reorganized Debtors, (v) the adoption of the Management Incentive Plan, and (vi) all other actions contemplated by the Prepackaged Plan (whether to occur before, on or after the Effective Date). All matters and transactions provided for in the Prepackaged Plan concerning the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Prepackaged Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, the managing member, directors or officers of the Debtors or the Reorganized Debtors. On or (as applicable) prior to the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and directed to issue, execute and deliver the agreements, documents, securities, and instruments contemplated by the Prepackaged Plan (or necessary or desirable to effect the transactions contemplated by the Prepackaged Plan) in the name of and on behalf of the Reorganized Debtors, including, without limitation, (u) the Shareholders Agreement, (v) the Rights Agreement, (x) the Registration Rights Agreement, (y) the Exit Facility Documents and (z) any and all other agreements, documents, securities and instruments related to the foregoing (including, without limitation, security documents). Such authorizations and approvals shall be effective notwithstanding any requirements under non-bankruptcy law.

(b)     Restated Organizational Documents of the Reorganized Debtors. On the Effective Date, Reorganized Holdings shall adopt the Restated Certificate of Incorporation and the Restated Bylaws and shall file the Restated Certificate of Incorporation with the Secretary of State of the State of Delaware. In addition, on or before the Effective Date, pursuant to and only to the extent required by section 1123(a)(6) of the Bankruptcy Code, the Restated Certificate of Incorporation, the Certificate of Incorporation for Debtors that are corporations and the organizational documents for the Debtors that are limited liability companies shall also be amended (and as to the corporate Debtors, filed with the Secretary of State of their respective states of incorporation) as necessary to satisfy the provisions of the Bankruptcy Code and shall include, among other things, (i) a provision prohibiting the issuance of non-voting equity securities and (ii) a provision setting forth an appropriate distribution of voting power among classes of equity securities possessing voting power. On the Effective Date, the managing member or the board of directors of the Reorganized Debtors, as applicable, shall be deemed to have adopted the restated organizational documents for such Reorganized Debtor.

(c)     Boards of Directors of the Reorganized Debtors. On the Effective Date, the operations of Reorganized Holdings shall become the general responsibility of its board of directors, subject to and in accordance with the Restated Certificate of Incorporation and Restated Bylaws, which shall provide that Reorganized Holdings shall continue to operate under the laws of Delaware and in accordance with the Shareholders Agreement. On the Effective Date, the operations of each of the other Reorganized Debtors shall become the general responsibility of its respective board of directors, subject to and in accordance with its restated organizational documents and the Shareholders Agreement. The initial board of directors of Reorganized Holdings shall consist of seven (7) directors, one of

whom shall be the chief executive officer of Reorganized ECI, two of whom shall be designated by BKC, two of whom shall be designated by Sankaty and two of whom shall be independent directors designated by the holders of a majority of the outstanding shares of New Common Stock (other than the shares held by BKC and Sankaty). The initial boards of directors of the Reorganized Debtors shall be disclosed in the Prepackaged Plan Supplement.

(d)     Officers of the Reorganized Debtors. The officers of the respective Reorganized Debtors immediately prior to the Effective Date shall serve as the initial officers of each of the respective Reorganized Debtors on and after the Effective Date and in accordance with any employment agreement with the Reorganized Debtors and applicable non-bankruptcy law. After the Effective Date, the selection of officers of the Reorganized Debtors shall be as provided by their respective organizational documents.

6.4     *Delivery of Exit Facility Documents; Distribution of Exit Facility Tranche B Term Loans.*

On the Effective Date, the Exit Facility Documents shall be executed and delivered, and Reorganized ECI shall be authorized to distribute the Exit Facility Tranche B Term Loans and the Reorganized Debtors shall be authorized to execute, deliver and enter into, *inter alia*, the Exit Facility Documents without the need for any further corporate action and without further action by the holders of Claims or Equity Interests. On the Effective Date, the Exit Facility Tranche B Term Loans shall be issued by Reorganized ECI to holders of Allowed First Lien Lender Claims, as set forth in Section 4.2(b) above. Summaries of the Exit Facility Documents are contained in the Disclosure Statement and copies will be filed as part of the Prepackaged Plan Supplement.

6.5     *Issuance of New Common Stock.*

The New Common Stock shall consist of (i) a class of full-voting common equity (the "*Class A-1 Common Stock*") and (ii) a class of limited-voting common equity (the "*Class A-2 Common Stock*"). The issuance by Reorganized Holdings of 72,500,000 shares of New Common Stock pursuant to the Prepackaged Plan is hereby authorized without further need for any corporate action. On the Effective Date, the New Common Stock shall be (i) contributed by Reorganized Holdings to Reorganized ECI and then distributed to holders of Allowed First Lien Lender Claims and (ii) issued to BKC and Sankaty for their New Money Contributions; provided, that each Person receiving New Common Stock under this Prepackaged Plan shall execute the Shareholders Agreement as a condition to receiving any distribution of New Common Stock. Each First Lien Lender shall have the option to choose to take shares of Class A-1 Common Stock or shares of Class A-2 Common Stock. The economic rights of the Class A-1 Common Stock and Class A-2 Common Stock shall be identical and each share of Class A-2 Common Stock shall be convertible at the option of the holder into one share of Class A-1 Common Stock. The terms of the Class A-1 Common Stock and the Class A-2 Common Stock shall be as described in the Restated Certificate of Incorporation.

6.6    *Issuance of Rights.*

The issuance of the Rights and the issuance of any New Common Stock pursuant to the Rights are hereby authorized without further need for any corporate action. On the Effective Date, the Rights may be distributed to the holders of the Allowed Holdings Preferred Equity Interests; provided, that each Person receiving Rights under this Prepackaged Plan shall execute the Rights Agreement as a condition to receiving any distribution pursuant to the Rights Agreement.

6.7    *Cancellation of Existing Securities and Agreements.*

Except (i) as otherwise expressly provided in the Prepackaged Plan, (ii) with respect to executory contracts or unexpired leases that have been assumed by the Debtors, (iii) for purposes of evidencing a right to distributions under the Prepackaged Plan, or (iv) with respect to any Claim that is reinstated and rendered unimpaired under the Prepackaged Plan, on the Effective Date, all of the agreements and other documents evidencing (a) the Claims or rights of any holder of a Claim against the Debtors, including all credit agreements and notes evidencing such Claims and any security agreements and filings attendant thereto, (b) any Equity Interests in Holdings, (c) any options or warrants to purchase Equity Interests of any of the Debtors, or obligating such Debtors to issue, transfer or sell Equity Interests or any other capital stock of such Debtors, shall be deemed automatically cancelled without further act or action under any applicable agreement, law, regulation, order or rule and the obligations of the Debtors thereunder shall be discharged.

6.8    *Other Transactions.*

On or as of the Effective Date or as soon as practicable thereafter and without the need for any further action, the Reorganized Debtors may, to the extent approved by the Requisite Consenting Parties: (i) cause any or all of the Reorganized Debtors or to be merged into one or more of the Reorganized Debtors, dissolved or otherwise consolidated, (ii) cause the transfer of assets between or among the Reorganized Debtors, or (iii) engage in any other transaction in furtherance of the Prepackaged Plan.

6.9    *Cancellation of Liens.*

Except as otherwise specifically provided herein with respect to Classes 4 and 5 as may be applicable, upon the occurrence of the Effective Date, any Lien securing any Secured Claim shall be deemed released, and the holder of such Secured Claim shall be authorized and directed to release any Collateral or other property of the Debtors (including any Cash collateral) held by such holder and to take such actions as may be requested by the Reorganized Debtors, to evidence the release of such Lien, including the execution, delivery and filing or recording of such releases as may be requested by the Reorganized Debtors.

6.10    *Agreements with Existing Management.*

On the Effective Date, the Reorganized Debtors shall either enter into new employment agreements in form and substance acceptable to the Requisite Consenting Parties

with existing members of management who are currently subject to written employment agreements with the Debtors, or assume such agreements.

### 6.11 *Management Incentive Plan.*

As of the Effective Date, the Reorganized Debtors shall establish the Management Incentive Plan, which shall be in form and substance reasonably acceptable to the Requisite Consenting Parties and provide for 10% of the fully-diluted New Common Stock (which shall dilute the New Common Stock distributed and/or issued, as applicable, to the First Lien Lenders, BKC and Sankaty on the Effective Date and the New Common Stock that may be issued pursuant to the Rights) to be available for issuance to the officers and key employees of the Reorganized Debtors and their affiliates as determined by the board of directors of Reorganized Holdings after the Effective Date.

## ARTICLE VII

## PROVISIONS GOVERNING DISTRIBUTIONS

### 7.1 *Date of Distributions on Account of Allowed Claims.*

Except as otherwise specifically provided herein, any distributions and deliveries to be made under the Prepackaged Plan shall be made on the Effective Date or as soon as practicable thereafter. In the event that any payment or act under the Prepackaged Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### 7.2 *Sources of Cash for the Prepackaged Plan Distribution.*

Except as otherwise specifically provided herein or in the Confirmation Order, all Cash required for the payments to be made hereunder shall be obtained from the Debtors' and the Reorganized Debtors' operations and cash on hand, the New Money Contribution and the Exit Facility.

### 7.3 *Disbursing Agent.*

All distributions under the Prepackaged Plan shall be made by Reorganized ECI as the Disbursing Agent or such other Person designated by Reorganized ECI as a Disbursing Agent in the Prepackaged Plan Supplement. A Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

### 7.4 *Rights and Powers of Disbursing Agent.*

The Disbursing Agent shall be empowered to (a) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Prepackaged Plan, (b) make all distributions contemplated hereby, (c) employ professionals to

represent it with respect to its responsibilities and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Prepackaged Plan or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

### 7.5   *Expenses of the Disbursing Agent.*

Except as otherwise ordered by the Bankruptcy Court, any reasonable and documented fees and expenses incurred by the Disbursing Agent (including taxes and reasonable attorneys' fees and expenses) on or after the Effective Date shall be paid in Cash by the Reorganized Debtors in the ordinary course of business.

### 7.6   *Record Date for Distribution.*

The record date for distributions shall be the Distribution Record Date.

### 7.7   *Delivery of Distributions.*

(a)   Last Known Address. Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim shall be made at the address of such holder as set forth in the books and records of the Debtors, unless the applicable Debtor has been notified in writing of a change of address, including, without limitation, by the filing of a proof of claim or interest by such holder that contains an address for such holder different from the address reflected on such schedules for such holder. In the event that any distribution to any holder is returned as undeliverable, the Disbursing Agent shall use reasonable efforts to determine the current address of such holder, but no distribution to such holder shall be made unless and until the Disbursing Agent has determined the then current address of such holder, at which time such distribution shall be made to such holder without interest; *provided, however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date. After such date, all unclaimed property or interest in property shall revert to the Reorganized Debtor, and the Claim of any other holder to such property or interest in property shall be discharged and forever barred, notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary.

(b)   Distributions by First Lien Administrative Agent. The First Lien Administrative Agent shall be the Disbursing Agent for the Allowed First Lien Lender Claims. Distributions under the Prepackaged Plan to holders of such Allowed First Lien Lender Claims shall be made by the Reorganized Debtors to the First Lien Administrative Agent, which, in turn, shall make the distributions to the holders of such Allowed Claims. The First Lien Administrative Agent shall not be required to give any bond, surety or other security for the performance of its duties with respect to its administration of distributions. Upon delivery by the Reorganized Debtors of the distributions in conformity with Sections 4.2 of the Prepackaged Plan to the First Lien Administrative Agent, the Reorganized Debtors shall be released of all liability with respect to the delivery of such distributions.

(c)   Distributions by the Second Lien Administrative Agent. The Second Lien Administrative Agent shall be the Disbursing Agent for the Allowed Second Lien

Lender Claims. Distributions under the Prepackaged Plan to holders of Allowed Second Lien Lender Claims shall be made by the Reorganized Debtors to the Second Lien Administrative Agent which, in turn, shall make the distributions to the holders of such Allowed Second Lien Lender Claims. The Second Lien Administrative Agent shall not be required to give any bond, surety or other security for the performance of its duties with respect to its administration of any distributions. Upon delivery by the Reorganized Debtors of the distributions in conformity with Section 4.3 of the Prepackaged Plan to the Second Lien Administrative Agent, the Reorganized Debtors shall be released of all liability with respect to the delivery of such distributions.

### 7.8 *Manner of Payment Under Prepackaged Plan.*

(a) All distributions of the New Common Stock, the Rights and the Exit Facility Tranche B Term Loans to the holders of Claims and Equity Interests under the Prepackaged Plan shall be made by the Disbursing Agent on behalf of the applicable Debtors.

(b) All distributions of the New Common Stock to BKC and Sankaty under the Prepackaged Plan shall be made by the Disbursing Agent on behalf of Holdings.

(c) All distributions of Cash under the Prepackaged Plan shall be made by the Disbursing Agent on behalf of the applicable Debtor.

(d) At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements.

### 7.9 *Fractional Shares.*

No fractional shares of New Common Stock shall be distributed and no Cash shall be distributed in lieu of such fractional shares. When any distribution pursuant to the Prepackaged Plan would otherwise result in the issuance of a number of shares of New Common Stock that is not a whole number, the actual distribution of shares of New Common Stock shall be rounded as follows: (a) fractions of one-half (½) or greater shall be rounded to the next higher whole number and (b) fractions of less than one-half (½) shall be rounded to the next lower whole number with no further payment therefor. The total number of authorized shares of New Common Stock to be distributed pursuant to the Prepackaged Plan shall be adjusted as necessary to account for the foregoing rounding.

### 7.10 *Setoffs and Recoupment.*

Except as otherwise specifically provided for herein, the Debtors may, but shall not be required to, setoff against or recoup from any Claim any claims of any nature whatsoever that the Debtors may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such claim they may have against such claimant.

7.11　*Distributions After Effective Date.*

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

7.12　*Allocation of Payments under the Prepackaged Plan.*

In the case of distributions with respect to holders of Claims pursuant to the Prepackaged Plan, the amount of any Cash and the fair market value of any other consideration received by the holder of such Claim shall be allocable first to the principal amount of such Claim (as determined for federal income tax purposes) and then, to the extent of any excess, the remainder of the Claim.

7.13　*No Postpetition Interest on Claims.*

Except as otherwise specifically provided for herein, in the Confirmation Order or in any other order of the Bankruptcy Court, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.

## ARTICLE VIII

## PROCEDURES FOR TREATING
## DISPUTED CLAIMS UNDER THE PREPACKAGED PLAN

8.1　*Disputed Claims.*

On and after the Effective Date, except as otherwise specifically provided herein (including pursuant to Section 8.2 hereof), all Claims shall be paid in the ordinary course of business of the Reorganized Debtors. If the Debtors dispute any Claim, such dispute shall be determined, resolved or adjudicated, as the case may be, in a manner as if the Chapter 11 Cases had not been commenced and shall survive the Effective Date as if the Chapter 11 Cases had not been commenced. Notwithstanding section 502(a) of the Bankruptcy Code, and considering the unimpaired treatment of all holders of General Unsecured Claims and holders of Other Secured Claims subject to Section 4.5(b) hereof under this Prepackaged Plan, all proofs of claim filed in these Chapter 11 Cases shall be considered objected to and disputed without further action by the Debtors. Upon the Effective Date, all proofs of claim filed against the Debtors, regardless of the time of filing, and including claims filed after the Effective Date, shall be deemed withdrawn. The deemed withdrawal of all proofs of claim is without prejudice to each claimant's rights under this Section 8.1 of the Prepackaged Plan to assert their claims in any proper forum as though the Chapter 11 Cases had not been commenced.

8.2　*Objections to Claims.*

Except insofar as a Claim is Allowed under the Prepackaged Plan, the Debtors, the Reorganized Debtors or any other party in interest shall be entitled to object to Claims. Any

objections to Claims shall be served and filed (i) on or before the ninetieth (90th) day following the later of (x) the Effective Date and (y) the date that a proof of Claim is filed or amended or the Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim, or (ii) such later date as ordered by the Bankruptcy Court.

### 8.3 *No Distributions Pending Allowance.*

If the Debtors object to any Claim, no payment or distribution provided under the Prepackaged Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

### 8.4 *Distributions After Allowance.*

To the extent that a Disputed Claim or Disputed Equity Interest ultimately becomes an Allowed Claim or Allowed Equity Interest, respectively, distributions (if any) shall be made to the holder of such Allowed Claim or Allowed Equity Interest, respectively, in accordance with the provisions of the Prepackaged Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Disputed Equity Interest becomes a Final Order, the Disbursing Agent shall provide to the holder of such Claim or Equity Interest the distribution (if any) to which such holder is entitled under the Prepackaged Plan as of the Effective Date, without any interest to be paid on account of such Claim or Equity Interest unless required under applicable bankruptcy law.

### 8.5 *Resolution of Disputed Claims*

Notwithstanding any prior order of the Bankruptcy Court, on and after the Effective Date, the Reorganized Debtors shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections to Disputed Claims and to compromise, settle, or otherwise resolve any Disputed Claims without approval of the Bankruptcy Court, other than with respect to Administrative Expense Claims relating to compensation of professionals.

## ARTICLE IX

## TREATMENT OF EXECUTORY
## CONTRACTS AND UNEXPIRED LEASES

### 9.1 *Assumption of Contracts and Leases.*

Except as otherwise specifically provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Prepackaged Plan, as of the Effective Date, the Debtors shall be deemed to have assumed each executory contract and unexpired lease to which it is a party, unless such contract or lease (i) was previously assumed or rejected by the Debtors, (ii) was previously expired or terminated pursuant to its own terms, (iii) is the subject of a motion to reject filed by the Debtors on or before the Confirmation Date, or (iv) is set forth in a schedule, as an executory contract or unexpired lease to be rejected, filed as part of the Prepackaged Plan Supplement. The Confirmation Order shall constitute an order of the Bankruptcy Court under sections 365 and

1123(b) of the Bankruptcy Code approving the contract and lease assumptions or rejections described above, as of the Effective Date.

Each executory contract and unexpired lease that is assumed and relates to the use, ability to acquire, or occupancy of real property shall include (a) all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease and (b) all executory contracts or unexpired leases appurtenant to the premises, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements, vaults, tunnel or bridge agreements or franchises, and any other interests in real estate or rights in rem related to such premises, unless any of the foregoing agreements has been rejected pursuant to an order of the Bankruptcy Court.

Unless otherwise specified, each executory contract and unexpired lease shall include any and all modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed on such schedule.

### 9.2 *Payments Related to Assumption of Contracts and Leases.*

Any monetary amounts by which any executory contract and unexpired lease to be assumed hereunder are in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by the Debtors upon assumption thereof. If there is a dispute regarding (i) the nature or amount of any Cure; (ii) the ability of the Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed; or (iii) any other matter pertaining to assumption, Cure shall occur following the entry of a Final Order of the Bankruptcy Court resolving the dispute and approving the assumption or assumption and assignment, as the case may be.

### 9.3 *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

All Claims arising out of the rejection of executory contracts and unexpired leases must be served upon the applicable Debtor and its counsel within 30 days after the earlier of (i) the date of entry of an order of the Bankruptcy Court approving such rejection or (ii) the Confirmation Date. Any Claims not filed within such time shall be forever barred from assertion against the Debtors, their Estates and their property.

### 9.4 *Compensation and Benefit Plans and Treatment of Retirement Plan.*

Except and to the extent previously assumed by an order of the Bankruptcy Court, on or before the Confirmation Date, all employee compensation and employee benefit plans of the Debtors, including employee benefit plans and programs subject to sections 1114 and 1129(a)(13) of the Bankruptcy Code, entered into before or after the Petition Date and not since terminated, shall be deemed to be, and shall be treated as if they were, executory contracts that are to be assumed under the Prepackaged Plan. The Debtors' obligations under such plans and

programs shall survive confirmation of the Prepackaged Plan, except for (i) executory contracts or benefit plans specifically rejected pursuant to the Prepackaged Plan (to the extent such rejection does not violate sections 1114 and 1129(a)(13) of the Bankruptcy Code) and (ii) such executory contracts or employee benefit plans as have previously been rejected, are the subject of a motion to reject as of the Confirmation Date, or have been specifically waived by the beneficiaries of any employee benefit plan or contract.

9.5 *Insurance Policies.*

Notwithstanding anything contained in the Prepackaged Plan to the contrary, unless specifically rejected by order of the Bankruptcy Court, all of the Debtors' insurance policies and any agreements, documents or instruments relating thereto, shall be continued. Nothing contained in this Section shall constitute or be deemed a waiver of any cause of action that the Debtors may hold against any entity, including, without limitation, the insurer, under any of the Debtors' insurance policies.

## ARTICLE X

## CONDITIONS PRECEDENT
## TO EFFECTIVE DATE

10.1 *Conditions Precedent to Effective Date of Prepackaged Plan.*

The occurrence of the Effective Date of the Prepackaged Plan is subject to satisfaction of the following conditions precedent:

(a) <u>Confirmation Order</u>. The Clerk of the Bankruptcy Court shall have entered the Confirmation Order in the Chapter 11 Cases and there shall not be a stay or injunction (or similar prohibition) in effect with respect thereto.

(b) <u>Execution and Delivery of Other Documents</u>. All other actions and all agreements, instruments or other documents necessary to implement the terms and provisions of the Prepackaged Plan shall have been effectuated, including the documents comprising the Prepackaged Plan Supplement and, in each case, (i) shall have been approved, (ii) all conditions to their effectiveness shall have been satisfied or waived and (iii) shall be consistent in all material respects with the Plan Support Agreement, the term sheets attached to the Plan Support Agreement and this Prepackaged Plan (in each case, as amended, supplemented or otherwise modified as provided in the Plan Support Agreement) and shall otherwise be reasonably satisfactory in form and substance to the Requisite Consenting Parties.

(c) <u>Regulatory Approvals</u>. The Debtors shall have received all authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions or documents that are necessary to implement the Prepackaged Plan and that are required by law, regulations or order.

(d)    Consents. All authorizations, consents and approvals determined by the Debtors to be necessary to implement the terms of the Prepackaged Plan shall have been obtained.

(e)    Corporate Formalities. The Restated Certificate of Incorporation of Reorganized Holdings shall be filed with the Secretary of State for Delaware contemporaneously with the Effective Date.

(f)    Cash Contributions. Proceeds of the New Money Contribution and the Exit Facility shall be made available to the Reorganized Debtors.

(g)    Other Acts. Any other actions the Debtors and the Requisite Consenting Parties reasonably determine are necessary to implement the terms of the Prepackaged Plan shall have been taken.

(h)    Expense Claims. All Expense Claims (including, without limitation, any estimated invoices therefor), shall have been paid in full in Cash.

### 10.2   *Waiver of Conditions Precedent.*

Each of the conditions precedent in Section 10.1(a) through (g) hereof may be waived, in whole or in part, by the Debtors without notice or order of the Bankruptcy Court, provided that the Requisite Consenting Parties give their prior written consent to any such waiver. The condition precedent in Section 10.1(h) hereof may be waived, in whole or in part, by the Debtors without notice or order of the Bankruptcy Court, provided that (i) the DIP Agent and DIP Lenders holding a majority in principal amount of the DIP Claims give their prior written consent to any such waiver if the DIP Expense Claims have not been paid in full in Cash, (ii) the First Lien Administrative Agent and Requisite Consenting First Lien Lenders give their prior written consent to any such waiver if the First Lien Expense Claims have not been paid in full in Cash, (iii) the Second Lien Administrative Agent and Requisite Consenting Second Lien Lenders give their prior written consent to any such waiver if the Second Lien Expense Claims have not been paid in full in Cash, (iv) the New Money Investors give their prior written consent to any such waiver if the New Money Expense Claims have not been paid in full in Cash, (v) the Exit Facility Tranche A Lenders and the Exit Facility Agent have given their prior written consent to any such waiver if the Exit Facility Expense Claims have not been paid in full in Cash and (vi) FP gives its prior written consent to any such waiver if the Equity Holder Expense Claims have not been paid in full in Cash up to an aggregate amount of $75,000.

### 10.3   *Effect of Failure of Conditions.*

If the conditions specified in Section 10.1 hereof have not been satisfied or waived in the manner provided in Section 10.2 hereof by the date specified in Section 4(a)(i)(H) of the Plan Support Agreement (unless otherwise waived by the Debtors with the prior written consent of the Requisite Consenting Parties), then: (i) the Confirmation Order shall be of no further force or effect; (ii) no distributions under the Prepackaged Plan shall be made; (iii) the Debtors and all holders of Claims and Equity Interests in the Debtors shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the

Confirmation Date had never occurred; and (iv) all of the Debtors' obligations with respect to the Claims and Equity Interests shall remain unaffected by the Prepackaged Plan and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors and the Prepackaged Plan shall be deemed withdrawn.

### 10.4   *Reservation of Rights.*

The Prepackaged Plan shall have no force or effect unless and until the Effective Date occurs. Prior to the Effective Date, none of the filing of the Prepackaged Plan, any statement or provision contained in the Prepackaged Plan, or action taken by the Debtors with respect to the Prepackaged Plan shall be, or shall be deemed to be, an admission or waiver of any rights of any Debtors or any other party with respect to any Claims or Equity Interests or any other matter.

### 10.5   *Substantial Consummation.*

Substantial consummation of the Prepackaged Plan under section 1101(2) of the Bankruptcy Code shall be deemed to occur on the Effective Date.

## ARTICLE XI

## **EFFECT OF CONFIRMATION**

### 11.1   *Vesting of Assets.*

Except as otherwise provided in the Prepackaged Plan, each of the Debtors, as Reorganized Debtors, shall continue to exist on and after the Effective Date as a separate Person with all of the powers available to such legal entity under applicable law, without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) in accordance with such applicable law. The property of the Debtors' Estates, together with any property of the Debtors that is not property of their Estates and that is not specifically disposed of pursuant to the Prepackaged Plan, shall vest in the applicable Reorganized Debtor on the Effective Date. Thereafter, the Reorganized Debtors may operate their businesses and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Court. As of the Effective Date, all property of the Reorganized Debtors shall be free and clear of all Claims, encumbrances, Equity Interests, charges, and Liens except as specifically provided in the Prepackaged Plan or the Confirmation Order. Without limiting the generality of the foregoing, the Reorganized Debtors may, without application to or approval by the Bankruptcy Court, pay professional fees and expenses incurred after the Effective Date.

### 11.2   *Binding Effect.*

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Prepackaged Plan shall bind any holder of a Claim against, or Equity Interest

in, the Debtors and such holder's respective successors and assigns, whether or not the Claim or Equity Interest of such holder is impaired under the Prepackaged Plan and whether or not such holder has accepted the Prepackaged Plan.

### 11.3 *Discharge of the Debtors.*

Except as otherwise specifically provided herein, the treatment of all Claims against or Equity Interests in the Debtors under the Prepackaged Plan shall be in exchange for and in complete satisfaction, discharge and release of, all Claims against or Equity Interests in the Debtors of any nature whatsoever, known or unknown, including any interest accrued or expenses incurred thereon, from and after the Petition Date, or against their Estate or properties or interests in property. Except as otherwise provided in the Prepackaged Plan, upon the Effective Date, all Claims against and Equity Interests in the Debtors shall be satisfied, discharged and released in full in exchange for the consideration provided under the Prepackaged Plan. Except as otherwise provided in the Prepackaged Plan, all Persons shall be precluded from asserting against the Debtors, the Reorganized Debtors, or their respective properties or interests in property, any other Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

### 11.4 *Exculpation.*

To the extent permitted by applicable law and approved by the Bankruptcy Court, the Debtors (including as reorganized), the First Lien Lenders, the First Lien Administrative Agent, the First Lien Administrative Parties, the Second Lien Lenders, the Second Lien Administrative Agent, the Second Lien Administrative Parties, the DIP Lenders, the DIP Agent, the DIP Administrative Parties, the New Money Investors, the lenders, administrative agents, collateral agents, syndication agents and arrangers under the Exit Facility Documents, FP, and their respective successors, predecessors, control persons, members, officers, affiliates, directors, employees, agents, professionals and representatives (including any attorneys, financial advisors, investment bankers, accountants, and other professionals retained by such persons) shall not have any liability to any holder of a Claim or Equity Interest for any act or omission in connection with, or arising out of, the negotiation of the Plan Support Agreement, the negotiation and the pursuit of approval of the Disclosure Statement, the Prepackaged Plan, the Prepackaged Plan Supplement or the solicitation of votes for, or confirmation of, the Prepackaged Plan, the funding of the Prepackaged Plan, the consummation of the Prepackaged Plan, or the administration of the Prepackaged Plan or the property to be distributed under the Prepackaged Plan, except for willful misconduct or gross negligence as determined by a Final Order of the Bankruptcy Court and, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Prepackaged Plan. Notwithstanding the foregoing, (i) this exculpation shall have no force and effect with respect to FP and its affiliates if FP or any of its affiliates, as a holder of any Equity Interest for which it is entitled to vote, votes against the Prepackaged Plan or objects to it and (ii) this exculpation shall have no force and effect with respect to any First Lien Lender or Second Lien Lender if such Person, as a holder of a Claim, objects to the Prepackaged Plan.

11.5    *Releases by the Debtors.*

*Except for the right to enforce the Prepackaged Plan, the Debtors shall, effective upon the occurrence of the Effective Date, be deemed to forever release, waive and discharge the Released Parties of and from any and all Claims, demands, causes of action and the like, relating to the Debtors and/or their affiliates, advisors, officers, directors and holders of Equity Interests, existing as of the Effective Date or thereafter arising from any act, omission, event, or other occurrence that occurred on or prior to the Effective Date, whether direct or derivative, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, known or unknown, foreseen or unforeseen, in law, equity or otherwise. Notwithstanding the foregoing, such release, waiver and discharge shall not operate as a release, waiver or discharge of (i) any Released Party in respect of any contractual obligations of any Released Party pursuant to the contracts, instruments, releases, and other agreements or documents delivered under or in connection with the Prepackaged Plan or assumed by the Debtors pursuant to the Prepackaged Plan or a final order of the Bankruptcy Court or (ii) any causes of action unknown to the Debtors as of the Petition Date arising out of willful misconduct or gross negligence of any such Released Party as determined by a Final Order of the Bankruptcy Court.*

11.6    *Releases By Holders of Claims and Equity Interests.*

*Except for the right to enforce the Prepackaged Plan, each Person who votes to accept the Prepackaged Plan, or who, directly or indirectly, is entitled to receive a distribution under the Prepackaged Plan, including Persons entitled to receive a distribution via an attorney, agent or securities intermediary, shall be deemed to forever release, waive and discharge the Released Parties of and from any and all Claims, demands, causes of action and the like, relating to the Debtors or their affiliates, advisors, officers, directors and holders of Equity Interests, existing as of the Effective Date or thereafter arising from any act, omission, event, or other occurrence that occurred on or prior to the Effective Date, whether direct or derivative, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, known or unknown, foreseen or unforeseen, in law, equity or otherwise. Notwithstanding the foregoing, such release, waiver and discharge shall not operate as a release, waiver or discharge of (i) any Released Party in respect of any contractual obligations of any Released Party pursuant to the contracts, instruments, releases, and other agreements or documents delivered under or in connection with the Prepackaged Plan or assumed by the Debtors pursuant to the Prepackaged Plan or a final order of the Bankruptcy Court or (ii) any causes of action unknown to such Persons as of the Petition Date arising out of willful misconduct or gross negligence of any such Released Party as determined by a Final Order of the Bankruptcy Court.*

11.7    *Waiver of Avoidance Actions.*

To the extent not already otherwise waived pursuant to another order of the Bankruptcy Court, effective as of the Effective Date, the Debtors shall be deemed to have waived the right to prosecute, and to have settled and released for fair value, any avoidance or recovery actions under sections 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code or

other applicable law that belong to the Debtors and/or which the Debtors could have prosecuted as debtors or debtors in possession against the Released Parties relating to distributions made on account of interest or other obligations under and relating to the First Lien Credit Agreement or Second Lien Credit Agreement.

11.8 *Term of Injunctions or Stays.*

(a) *Except as otherwise specifically provided herein, all Persons who have held, hold, or may hold Claims against or Equity Interests in any Debtor are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Equity Interest against any Reorganized Debtor or Released Party, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any Reorganized Debtor or Released Party with respect to any such Claim or Equity Interest, (iii) creating, perfecting or enforcing any encumbrance of any kind against any Reorganized Debtor or Released Party, or against the property or interests in property of any Reorganized Debtor or Released Party, as applicable with respect to any such Claim or Equity Interest, (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from any Reorganized Debtor or Released Party, or against the property or interests in property of any Reorganized Debtor or Released Party with respect to any such Claim or Equity Interest, and (v) pursuing any Claim released pursuant to Section 11.5 or 11.6 of the Prepackaged Plan.*

(b) *Unless otherwise provided, all injunctions or stays arising under or entered during the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.*

11.9 *Termination of Subordination Rights and Settlement of Related Claims.*

The classification and manner of satisfying all Claims and Equity Interests under the Prepackaged Plan takes into consideration all subordination rights, whether arising by contract or under general principles of equitable subordination, section 510(b) or 510(c) of the Bankruptcy Code, or otherwise. All subordination rights that a holder of a Claim or Equity Interest may have with respect to any distribution to be made under the Prepackaged Plan shall be discharged and terminated, and all actions related to the enforcement of such subordination rights shall be enjoined permanently. Accordingly, distributions under the Prepackaged Plan to holders of Allowed Claims shall not be subject to payment of a beneficiary of such terminated subordination rights, or to levy, garnishment, attachment or other legal process by a beneficiary of such terminated subordination rights.

11.10 *Indemnification Obligations.*

Notwithstanding anything to the contrary herein, subject to the occurrence of the Effective Date, the obligations of the Debtors as provided in the Debtors' certificate of formation, certificate of incorporation, bylaws, or other organizational documents, applicable law

or other applicable agreement as of the Petition Date to indemnify, defend, reimburse, exculpate, advance fees and expenses to, or limit the liability of members, managers, directors, or officers who were members, managers, directors or officers of the Debtors at any time prior to the Effective Date, respectively, against any claims or causes of action whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, shall survive confirmation of the Prepackaged Plan, remain unaffected thereby after the Effective Date and not be discharged, irrespective of whether such indemnification, defense, advancement, reimbursement, exculpation, or limitation is owed in connection with an event occurring before or after the Petition Date. Any Claim based on the Debtors' obligations herein shall not be a Disputed Claim or subject to any objection in either case by reason of section 502(e)(1)(B) of the Bankruptcy Code.

As of the Effective Date, each Debtors' respective organizational documents shall provide for the indemnification, defense, reimbursement, exculpation, and/or limitation of liability of, and advancement of fees and expenses to, members, managers, directors, and officers who were members, managers, directors, or officers of such Debtor at any time prior to the Effective Date at least to the same extent as those in effect on the Petition Date, against any claims or causes of action whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, and the Reorganized Debtors shall not amend and/or restate such organizational documents before or after the Effective Date to terminate or materially adversely affect any of the Reorganized Debtors' obligations or such members', managers', directors', or officers' rights under this Section 11.10.

In addition, after the Effective Date, the Reorganized Debtors shall not terminate or otherwise reduce the coverage under any directors' and officers' insurance policies (including any "tail policy") in effect on the Petition Date, and all members, managers, directors and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such members, managers, directors, and/or officers remain in such positions after the Effective Date.

## 11.11  *Preservation of Claims.*

Except as otherwise specifically provided herein, including Sections 11.5, 11.6 and 11.7, as of the Effective Date, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, any action, cause of action, liability, obligation, right, suit, debt, sum of money, damage, judgment, claim, and demand whatsoever, whether known or unknown, in law, equity, or otherwise (collectively, "Causes of Action") accruing to the Debtors shall become assets of the Reorganized Debtors, and the Reorganized Debtors shall have the authority to commence and prosecute such Causes of Action for the benefit of the Estates of the Debtors. After the Effective Date, the Reorganized Debtors shall have the authority to compromise and settle, otherwise resolve, discontinue, abandon, or dismiss all such Causes of Action without approval of the Bankruptcy Court.

11.12 *Waiver of Certain Claims*.

Any and all Claims asserted or otherwise existing against any of the Debtors or any direct or indirect subsidiaries of the Debtors by FP or any directors appointed by FP for management fees or otherwise (including rejection damages arising out of the rejection of any agreement among such parties, including but not limited to the Management Agreement) shall be irrevocably waived, extinguished and/or disallowed in their entirety and not entitled to any distributions under this Prepackaged Plan (each, a "Waived FP Claim" and collectively, the "Waived FP Claims"); provided; however, that the Equity Holder Expense Claims shall not constitute Waived FP Claims. The Management Agreement shall be deemed and treated as an executory contract pursuant to this Prepackaged Plan and shall be rejected by the Debtors and any Claim arising from, related to, or in connection with such rejection shall constitute a Waived FP Claim.

## ARTICLE XII

## RETENTION OF JURISDICTION

The Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, or related to, the Chapter 11 Cases and the Prepackaged Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a) To hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom;

(b) To determine any and all adversary proceedings, applications, and contested matters in the Chapter 11 Cases and grant or deny any application involving the Debtors that may be pending on the Effective Date;

(c) To ensure that distributions to holders of Allowed Claims and Allowed Equity Interests are accomplished as provided in the Prepackaged Plan;

(d) To hear and determine any timely objections to Administrative Expense Claims or to proofs of claim and equity interests, including any objections to the classification of any Claim or Equity Interest, and to allow or disallow any Disputed Claim or Disputed Equity Interest, in whole or in part;

(e) To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(f) To issue such orders in aid of execution of the Prepackaged Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(g)     To consider any amendments to or modifications of the Prepackaged Plan, or to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(h)     To hear and determine all applications of retained professionals under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Confirmation Date;

(i)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Prepackaged Plan, the Confirmation Order, the documents comprising the Prepackaged Plan Supplement, any transactions or payments contemplated by the Plan Support Agreement including the Prepackaged Plan or any agreement, instrument, or other document governing or relating to any of the foregoing;

(j)     To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including the expedited determination of taxes under section 505(b) of the Bankruptcy Code);

(k)     To hear any other matter not inconsistent with the Bankruptcy Code;

(l)     To hear and determine all disputes involving the existence, scope, and nature of the discharges granted under Section 11.3 of the Prepackaged Plan;

(m)     To hear and determine all disputes involving or in any manner implicating the exculpation provisions granted under Section 11.4 of the Prepackaged Plan;

(n)     To issue injunctions and effect any other actions that may be necessary or desirable to restrain interference by any entity with the consummation or implementation of the Prepackaged Plan; and

(o)     To enter a final decree(s) closing the Chapter 11 Cases.

## ARTICLE XIII

## MISCELLANEOUS

### 13.1   *Payment of Statutory Fees.*

All fees payable under section 1930, chapter 123, title 28, United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on the Effective Date.

### 13.2 *Filing of Additional Documents.*

The Debtors or the Reorganized Debtors, as applicable, may file such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Prepackaged Plan.

### 13.3 *Schedules and Exhibits Incorporated.*

All exhibits and schedules to this Prepackaged Plan, including the Prepackaged Plan Supplement, are incorporated into and are a part of the Prepackaged Plan as if fully set forth herein.

### 13.4 *Amendment or Modification of the Prepackaged Plan.*

Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, alterations, amendments or modifications of the Prepackaged Plan may be proposed in writing by the Debtors with the prior written consent of the Requisite Consenting Parties at any time prior to or after the Confirmation Date. Holders of Claims that have accepted the Prepackaged Plan shall be deemed to have accepted the Prepackaged Plan, as altered, amended, or modified, *provided* that the Requisite Consenting Parties have consented in writing to the proposed alteration, amendment, or modification and such alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder; and *provided, further, however*, that any holders of Claims who were deemed to accept the Prepackaged Plan because such Claims were unimpaired shall continue to be deemed to accept the Prepackaged Plan only if, after giving effect to such amendment or modification, such Claims continue to be unimpaired.

### 13.5 *Inconsistency.*

In the event of any inconsistency among the Prepackaged Plan, the Disclosure Statement, any exhibit or schedule to the Disclosure Statement, the provisions of the Prepackaged Plan shall govern. In the event of any inconsistency between the Prepackaged Plan and the Confirmation Order, the Confirmation Order shall govern.

### 13.6 *Section 1125(e) of the Bankruptcy Code.*

As of the Confirmation Date, the Debtors shall be deemed to have solicited acceptances of the Prepackaged Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code. The Debtors (and each of their respective successors, predecessors, control persons, members, affiliates, agents, directors, officers, employees, investment bankers, financial advisors, accountants, attorneys and other professionals) have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of the securities under the Prepackaged Plan. Accordingly, such entities and individuals shall not be liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Prepackaged Plan or the offer and issuance of the securities under the Prepackaged Plan.

13.7    *Preservation of Rights of Action; Settlement of Litigation Claims.*

Except as otherwise specifically provided herein, or in any contract, instrument, release or other agreement entered into in connection with the Prepackaged Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all claims, rights or causes of action, suits, and proceedings, whether in law or in equity, whether known or unknown, that the Debtors or their Estates may hold against any Person or entity without the approval of the Bankruptcy Court. The Reorganized Debtors or their successor(s) may pursue such retained claims, rights or causes of action, suits, or proceedings as appropriate, in accordance with the best interests of the Reorganized Debtors or their successor(s) who hold such rights.

13.8    *Effectuating Documents; Further Transactions.*

The chairman of the board of directors, president, chief financial officer, any executive vice-president or senior vice-president, or any other appropriate officer of each Debtor shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions, as may be necessary or appropriate, to effectuate and further evidence the terms and conditions of the Prepackaged Plan. The secretary or assistant secretary of the appropriate Debtor shall be authorized to certify or attest to any of the foregoing actions.

13.9    *Compromise of Controversies.*

In consideration for the distributions and other benefits provided under the Prepackaged Plan, the provisions of the Prepackaged Plan constitute a good faith compromise and settlement of all Claims and controversies resolved under the Prepackaged Plan, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under Bankruptcy Rule 9019.

13.10    *Exemption from Securities Laws.*

To the maximum extent provided by section 1145 of the Bankruptcy Code and applicable non-bankruptcy law, the issuance under the Prepackaged Plan of the New Common Stock to the First Lien Lenders and the Rights to the holders of Equity Interests will be exempt from registration under the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder and the Reorganized Debtors will not, as of the Effective Date, be subject to the reporting requirements of the Securities Exchange Act of 1934.

13.11    *Exemption from Certain Transfer Taxes.*

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under or in connection with the Prepackaged Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Prepackaged Plan, including any merger

agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Prepackaged Plan shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax. All sale transactions consummated by the Debtors and approved by the Bankruptcy Court on and after the Petition Date through and including the Effective Date, including the transfers effectuated under the Prepackaged Plan, the sale by the Debtors of owned property pursuant to section 363(b) of the Bankruptcy Code, and the assumption, assignment, and sale by the Debtors of unexpired leases of non-residential real property pursuant to section 365(a) of the Bankruptcy Code, shall be deemed to have been made under, in furtherance of, or in connection with the Prepackaged Plan and, thus, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

### 13.12 *Injunction from Claiming Worthless Stock Deduction*

Unless otherwise ordered by the Bankruptcy Court, on or after the Confirmation Date, any person or group of persons constituting a "fifty percent shareholder" of Holdings within the meaning of section 382(g)(4)(D) of the Internal Revenue Code of 1986, as amended shall be enjoined from claiming a worthless stock deduction with respect to any Equity Interests in Holdings held by such person(s) (or otherwise treating such Equity Interests as worthless for U.S. federal income tax purposes) for any taxable year of such person(s) ending prior to the Effective Date.

### 13.13 *Compliance with Tax Requirements.*

In connection with the Prepackaged Plan and all instruments issued in connection herewith and distributed hereunder, any party issuing any instruments or making any distribution under the Prepackaged Plan, including any party described in Sections 6.5 and 7.3 hereof, shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions under the Prepackaged Plan shall be subject to any withholding or reporting requirements. Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Prepackaged Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution. Any party issuing any instruments or making any distribution under the Prepackaged Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or distributing party for payment of any such tax obligations.

### 13.14 *Determination of Tax Filings and Taxes*

The Reorganized Debtors shall have the right to request an expedited determination of their tax liability, if any, under section 505(b) of the Bankruptcy Code with respect to any tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

13.15 *Severability of Provisions in the Prepackaged Plan.*

If, prior to Confirmation, any term or provision of the Prepackaged Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors (to which request the Requisite Consenting Parties shall have consented), shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Prepackaged Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Prepackaged Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

13.16 *Governing Law.*

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit to the Prepackaged Plan or Prepackaged Plan Supplement provides otherwise (in which case the governing law specified therein shall be applicable to such exhibit), the rights, duties and obligations arising under the Prepackaged Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without giving effect to the principles of conflict of laws that would require application of the laws of another jurisdiction.

13.17 *Notices.*

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly specifically provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

ELECTRICAL COMPONENTS INTERNATIONAL, INC.
1 City Place Drive, Suite 450
St. Louis, MO 63141
Attn: David J. Webster, Chief Executive Officer
Telephone: (314) 261-7780
Fax: (314) 261-7799


with copies to:

WEIL, GOTSHAL & MANGES LLP
200 Crescent Court, Suite 300
Dallas, Texas 75201
Attn: Stephen A. Youngman

Telephone: (214) 746-7700
Facsimile: (214) 746-7777

and

RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Attn:
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

13.18 *Dissolution of any Statutory Committees and Cessation of Fee and Expense Payment.*

Any Committee appointed in the Chapter 11 Cases shall be dissolved on the Effective Date. The Reorganized Debtors shall no longer be responsible for paying any fees and expenses incurred by the advisors to any Committee after the Effective Date.

13.19 *Registration Rights for Certain Holders of New Common Stock.*

Any holder receiving distributions of Plan New Common Stock issued on the Effective Date shall be entitled to become a party to the Registration Rights Agreement.

Dated: [_____], 2010

Respectfully submitted,

**ELECTRICAL COMPONENTS
INTERNATIONAL, INC.**

By:_____
    Name:  David J. Webster
    Title:  Chief Executive Officer

**FP-ECI HOLDINGS COMPANY**

By:_____
    Name:  David J. Webster
    Title:  Chief Executive Officer

**ECM HOLDING COMPANY**

By:_____
    Name:  David J. Webster
    Title:  Chief Executive Officer

**NOMA O.P., INC.**

By:_____
    Name:  David J. Webster
    Title:  Chief Executive Officer

COUNSEL:

---

Mark D. Collins
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19081
(302) 651-7700

and

Stephen A. Youngman
Weil, Gotshal & Manges LLP
200 Crescent Court, Suite 300
Dallas, Texas 75201
(214) 746-7700

ATTORNEYS FOR THE DEBTORS