

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------x
                :

**In re**                 :       **Chapter 11**
                :

**ELECTRICAL COMPONENTS**    :       **Case No. 10-11054 (KJC)**
**INTERNATIONAL, INC. et al.,**[1]  :
                :

      **Debtors.**          :       **Jointly Administered**
                :

                :       **Re: Docket Nos. 16, 17, 20, 39, 54,**
                :       **92, 93, 95, 96 and 101**
-------------------------------------------------------------x

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER
## (I) APPROVING THE DEBTORS' (A) DISCLOSURE STATEMENT PURSUANT
## TO SECTIONS 1125 AND 1126(b) OF THE BANKRUPTCY CODE, (B) SOLICITATION
## OF VOTES AND VOTING PROCEDURES, AND (C) FORMS OF BALLOTS, AND
## (II) CONFIRMING THE DEBTORS' JOINT PREPACKAGED PLAN OF
## REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Electrical Components International, Inc. ("**ECI**"), and certain of its affiliates, as

debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the

"**Debtors**"), having jointly proposed and filed (A) the Amended Joint Prepackaged Plan of

Reorganization of Electrical Components International, Inc. *et al.* Under Chapter 11 of the

Bankruptcy Code dated as of April 8, 2010, and filed with the United States Bankruptcy Court

for the District of Delaware (the "**Court**") on April 8, 2010 (the "**Prepackaged Plan**") [Docket

No. 54], annexed hereto as <u>Exhibit A</u>, and that certain supplement to the Prepackaged Plan, dated

and filed with the Court on May 4, 2010 [Docket No. 92] (as the documents contained therein

have been or may be further amended or supplemented, including as amended on May 10, 2010

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each debtor's federal tax identification number, are: Electrical Components International, Inc. (4361); FP-ECI Holdings Company (4246) ("**Holdings**"); ECM Holding Company (7759) ("**ECM Holding**"); Noma O.P. Inc. (5495) ("**Noma**" and together with Holdings and ECM Holding, the "**Affiliate Debtors**"). The address for each of the Debtors is 1 City Place Drive, Suite 450, St. Louis, Missouri, 63141.

[Docket No. 101], the "**Prepackaged Plan Supplement**") and (B) (i) the Disclosure Statement Relating to the Joint Prepackaged Plan of Reorganization of Electrical Components International, Inc. *et al.*, Under Chapter 11 of the Bankruptcy Code, dated March 4, 2010 (the "**Disclosure Statement**") [Docket No. 17], and (ii) appropriate ballots for voting on the Prepackaged Plan, in the forms attached as Exhibits "1" through "3" to the Affidavit of Service and Vote Certification of Epiq Bankruptcy Solutions, LLC (the "**Epiq Affidavit**"), sworn to by Christina F. Pullo of Epiq Bankruptcy Solutions, LLC ("**Epiq**") and filed with the Court on April 1, 2010 (the "**Voting Certification**") [Docket No. 20] having been duly transmitted to holders of Claims[2] and Equity Interests in compliance with the procedures (the "**Solicitation Procedures**") set forth in the Voting Certification; and the Court having entered an order (I) Scheduling a Combined Hearing to Consider (A) Approval of the Disclosure Statement, (B) Approval of Solicitation Procedures and Form of Ballots, and (C) Confirmation of the Prepackaged Plan; (II) Establishing an Objection Deadline to Object to the Disclosure Statement and the Prepackaged Plan; (III) Approving the Form and Manner of Notice Thereof; and (IV) Granting Related Relief (the "**Scheduling Order**") [Docket No. 39], which, among other things, scheduled the hearing to approve the Disclosure Statement for May 11, 2010 (the "**Disclosure Statement Hearing**"), to be immediately followed by a hearing to consider confirmation of the Prepackaged Plan (the "**Confirmation Hearing**," and together with the Disclosure Statement Hearing, the "**May 11 Hearings**"); and due notice of the May 11 Hearings having been given to holders of Claims against and Equity Interests in the Debtors and other parties in interest in compliance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**"), the Scheduling Order, and the Solicitation Procedures, as established by the affidavits of service,

---

[2] Capitalized terms used but not otherwise defined shall have the meanings ascribed to them in the Prepackaged Plan.

mailing, and/or publication filed with the Court, including (1) the Affidavit of Service of Brittany Whalen regarding the Notice of (I) Filing of Bankruptcy Petitions and Related Pleadings and (II) First-Day Hearing thereon, dated March 31, 2010 [Docket No. 43]; (2) the Affidavit of Service of Brittany Whalen regarding the Scheduling Order and related First Day Orders, dated April 8, 2010 [Docket No. 56]; and (3) the Affidavit of Cortney Becker regarding publication in *The Wall Street Journal* of the Notice of Commencement of Cases Under Chapter 11 of the Bankruptcy Code and Summary of Prepackaged Plan of Reorganization and Notice of Hearing to Consider (a) Debtors' Compliance with Disclosure Requirements and (b) Confirmation of Plan of Reorganization, dated April 22, 2010 [Docket No. 67] (the "**Notice Affidavits**"), and such notice being sufficient under the circumstances and no further notice being required; and due notice of the Prepackaged Plan Supplement having been given to holders of Claims against and Equity Interests in the Debtors and other parties in interest in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Solicitation Procedures, as established by the Affidavit of Service of Sena Sengun regarding the Prepackaged Plan Supplement [Docket No. 97]; and such filing and notice thereof being sufficient under the circumstances and no further notice being required; and based upon and after full consideration of the entire record of the May 11 Hearings, including (A) the Disclosure Statement, the Prepackaged Plan (including the Prepackaged Plan Supplement) and the Voting Certification, (B) the Debtors' memorandum of law, dated May 7, 2010, in support of confirmation of the Prepackaged Plan, [Docket No. 96] (C) the Declaration of David J. Webster in Support of Entry of an Order (I) Approving the Debtors' (A) Disclosure Statement Pursuant to Sections 1125 and 1126(b) of the Bankruptcy Code, (B) Solicitation of Votes and Voting Procedures, and (C) Forms of Ballots, and (II) Confirming the Debtors' Joint Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated May 7, 2010 (the "**Webster**

**Declaration**") [Docket No. 93], (D) the Declaration of Homer Parkhill in Support of Entry of an Order (I) Approving the Debtors' (A) Disclosure Statement Pursuant to Sections 1125 and 1126(b) of the Bankruptcy Code, (B) Solicitation of Votes and Voting Procedures, and (C) Forms of Ballots, and (II) Confirming the Debtors' Joint Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "**Parkhill Declaration**" [Docket No. 95], and together with the Webster Declaration, the "**Supporting Declarations**"); and no objections having been filed to the approval of the Disclosure Statement or the Prepackaged Plan and the Court being familiar with the Disclosure Statement and the Prepackaged Plan and other relevant factors affecting the Debtors' Chapter 11 Cases; and the Court being familiar with, and having taken judicial notice of, the entire record of the Debtors' Chapter 11 Cases; and upon the arguments of counsel and the evidence proffered and adduced at the May 11 Hearings; and the Court having found and determined that the Disclosure Statement should be approved and the Prepackaged Plan should be confirmed as reflected by the Court's rulings made herein and at the May 11 Hearings; and after due deliberation and sufficient cause appearing therefore; the Court hereby FINDS, DETERMINES, AND CONCLUDES that:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.      <u>Findings and Conclusions</u>. The findings and conclusions set forth herein and in the record of the May 11 Hearings constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.     <u>Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a))</u>.

The Court has jurisdiction over the Debtors' chapter 11 cases pursuant to 28 U.S.C. § 1334. Approval of the Disclosure Statement and confirmation of the Prepackaged Plan are core proceedings pursuant to 28 U.S.C. § 157(b) and this Court has jurisdiction to enter a final order with respect thereto. The Debtors are eligible debtors under section 109 of the Bankruptcy Code. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The Debtors are proper plan proponents under section 1121(a) of the Bankruptcy Code.

C.     <u>Chapter 11 Petitions</u>. On March 30, 2010 (the "**Commencement Date**"), each Debtor commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed pursuant to section 1104 of the Bankruptcy Code. No statutory committee of unsecured creditors has been appointed pursuant to section 1102 of the Bankruptcy Code. Further, in accordance with an order of this Court, the Debtors' cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

D.     <u>Judicial Notice</u>. The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court, including all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases.

E.     <u>Burden of Proof</u>. The Debtors have the burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence. Each Debtor has met such burden.

F.     Adequacy of Disclosure Statement. The Disclosure Statement (a) contains "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Prepackaged Plan, and the transactions contemplated therein, and (b) is approved in all respects.

G.     Voting. As evidenced by the Voting Certification, votes to accept or reject the Prepackaged Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**") and applicable nonbankruptcy law.

H.     Solicitation. Prior to the Commencement Date, the Prepackaged Plan, the Disclosure Statement, and the Ballots, and, subsequent to the Commencement Date, notice of the May 11 Hearings, were transmitted and served in compliance with the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Rules, and the Scheduling Order. The forms of the Ballots adequately addressed the particular needs of these Chapter 11 Cases and were appropriate for holders of Class 2 (First Lien Lender Claims), Class 3 (Second Lien Lender Claims), and Class 8 (Holdings Preferred Equity Interests) – the Classes of Claims and Equity Interests entitled under the Prepackaged Plan to vote to accept or reject the Prepackaged Plan. The period during which the Debtors solicited acceptances to the Prepackaged Plan was a reasonable period of time for holders to make an informed decision to accept or reject the Prepackaged Plan. The Debtors were not required to solicit votes from the holders of Class 1 (Priority Non-Tax Claims), Class 4 (Secured Tax Claims), Class 5 (Other Secured Claims), Class 6 (General Unsecured Claims), Class 7 (Intercompany Claims), and Class 9 (Equity Interests in Subsidiary Debtors), as each such class is unimpaired under the Prepackaged Plan. The Debtors

also were not required to solicit votes from the holders of Class 10 (Holdings Common Equity Interests), as such Class receives no recovery under the Prepackaged Plan and is deemed to reject the Prepackaged Plan. As described in and as evidenced by the Voting Certification and the Notice Affidavits, the transmittal and service of the Prepackaged Plan, the Disclosure Statement, the Ballots, the notice of the May 11 Hearings, and publication of such notice of the May 11 Hearings (all of the foregoing, the "**Solicitation**") were timely, adequate and sufficient under the circumstances. The Solicitation of votes on the Prepackaged Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, was conducted in good faith, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and any other applicable rules, laws and regulations. The Debtors (including as reorganized), the First Lien Lenders, the First Lien Administrative Agent, the First Lien Administrative Parties, the Second Lien Lenders, the Second Lien Administrative Agent, the Second Lien Administrative Parties, the DIP Lenders, the DIP Agent, the DIP Administrative Parties, the New Money Investors, the lenders, administrative agents, collateral agents, syndication agents and arrangers under the Exit Facility Documents (collectively, the **Exit Facility Loan Parties**"), FP and their respective successors, predecessors, control persons, members, officers, directors, employees and agents and their respective attorneys, financial advisors, investment bankers, accountants, and other professionals retained by such persons, the Reorganized Debtors, and any and all affiliates, members, managers, shareholders, partners, employees, attorneys and advisors of the foregoing are entitled to the protection of section 1125(e) of the Bankruptcy Code.

   I.  <u>Notice</u>. As is evidenced by the Voting Certification and the Notice Affidavits, the transmittal and service of the Prepackaged Plan, the Disclosure Statement, and

Ballots were adequate and sufficient under the circumstances, and all parties required to be given notice of the May 11 Hearings (including the deadline for filing and serving objections to confirmation of the Prepackaged Plan) have been given due, proper, timely, and adequate notice in accordance with the Scheduling Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and applicable nonbankruptcy law and such parties have had an opportunity to appear and be heard with respect thereto. No other or further notice is required.

J.    Prepackaged Plan Supplement. On May 4, 2010, the Debtors filed the Prepackaged Plan Supplement, which includes, among other things, drafts of the following documents: List of Executory Contracts and Unexpired Leases to be Rejected; Exit Facility Documents; the Management Incentive Plan; Restated Bylaws for Holdings; Restated Certificate of Incorporation for Holdings; the Shareholders Agreement; the Registration Rights Agreement; the Rights Agreement and the List of Directors and Officers of Holdings. On May 10, 2010, the Debtors filed the Amendment to the Plan Supplement, which included revised drafts of the Exit Facility Documents and the Rights Agreement.

K.    Modifications of the Prepackaged Plan. Modifications made to the Prepackaged Plan since the Solicitation complied in all respects with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019. Adequate and sufficient notice of such modifications has been given, no further notice is or shall be required and such modifications are approved in full.

## Compliance with the Requirements of Section 1129 of the Bankruptcy Code

L. **Prepackaged Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).** The Prepackaged Plan complies with the applicable provisions of the Bankruptcy Code and, as required by Bankruptcy Rule 3016, the Prepackaged Plan is dated and identifies the Debtors as proponents, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

(a) **Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).** In addition to Administrative Expense Claims, Professional Compensation and Reimbursement Claims, Priority Tax Claims and DIP Claims, which need not be classified, Articles III and IV of the Prepackaged Plan classify ten (10) Classes of Claims and Equity Interests for the Debtors. The Claims and Equity Interests placed in each Class are substantially similar to other Claims and Equity Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Prepackaged Plan, and such Classes do not unfairly discriminate between holders of Claims and Equity Interests. The Prepackaged Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(b) **Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)).** Articles III, IV and V of the Prepackaged Plan specify that Class 1 (Priority Non-Tax Claims), Class 4 (Secured Tax Claims), Class 5 (Other Secured Claims), Class 6 (General Unsecured Claims), Class 7 (Intercompany Claims), and Class 9 (Equity Interests in Subsidiary Debtors), are unimpaired under the Prepackaged Plan within the meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(c) **Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).** Articles III, IV and V of the Prepackaged Plan designate Class 2 (First Lien Lender Claims),

Class 3 (Second Lien Lender Claims), Class 8 (Holdings Preferred Equity Interests), and Class 10 (Holdings Common Equity Interests) as impaired within the meaning of section 1124 of the Bankruptcy Code and specify the treatment of the Claims and Equity Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(d)     No Discrimination (11 U.S.C. § 1123(a)(4)).  The Prepackaged Plan provides for the same treatment by the Debtors for each Claim or Equity Interest in each respective Class unless the holder of a particular Claim or Equity Interest has agreed to or elected a less favorable or different treatment of such Claim or Equity Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(e)     Implementation of the Prepackaged Plan (11 U.S.C. § 1123(a)(5)).  The Prepackaged Plan and the various documents and agreements set forth in the Prepackaged Plan Supplement provide adequate and proper means for the implementation of the Prepackaged Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code, including (i) the substantive consolidation of ECI and the affiliated Debtors for Prepackaged Plan purposes only; (ii) all corporate actions as set forth more fully in Article VI, Section 6.3 of the Prepackaged Plan, including: (v) adoption or assumption, as applicable, of the employment agreements with existing management, (w) the issuance and distribution of the New Common Stock and the Rights, (x) the distribution of the Exit Facility Tranche B Loans, (y) selection of the directors and officers for the Reorganized Debtors, and (z) the adoption of the Management Incentive Plan; (iii) the cancellation of existing securities and agreements and the surrender of existing securities; (iv) entry into the Shareholders Agreement, Rights Agreement, and Registration Rights Agreement; and (v) entry into the Exit Facility.

(f)     <u>Non-Voting Equity Securities / Allocation of Voting Power (11 U.S.C. §</u>
<u>1123(a)(6))</u>. The Restated Certificate of Incorporation of Reorganized Holdings prohibits the
issuance of non-voting equity securities, thereby satisfying section 1123(a)(6) of the Bankruptcy
Code, and authorizes the issuance of two (2) classes of common stock (the New Common
Stock).  Pursuant to the Prepackaged Plan, only the New Common Stock is being issued.  The
issuance of the New Common Stock complies with section 1123(a)(6) of the Bankruptcy Code.
On or before the Effective Date, pursuant to and only to the extent required by section 1123(a)(6)
of the Bankruptcy Code, the certificates of incorporation of the Debtors shall also be amended
(and as to the corporate debtors filed with the Secretary of State of Delaware) as necessary to
satisfy the provisions of the Bankruptcy Code and shall include, among other things, a provision
prohibiting the issuance of non-voting equity securities.  On the Effective Date, the boards of
directors of each Reorganized Debtor shall be deemed to have adopted the restated bylaws for
such Reorganized Debtor.

(g)     <u>Designation of Directors and Officers (11 U.S.C. § 1123(a)(7))</u>.  The
Prepackaged Plan Supplement and Sections 6.3(c) and (d) of Article VI of the Prepackaged Plan
contain provisions with respect to the manner of selection of directors and officers of the
Reorganized Debtors that are consistent with the interests of creditors, equity security holders,
and public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

(h)     <u>Impairment/Unimpairment of Classes of Claims and Equity Interests (11</u>
<u>U.S.C. § 1123(b)(1))</u>.  Pursuant to Article III, IV, and V of the Prepackaged Plan, (a) Class 1
(Priority Non-Tax Claims), Class 4 (Secured Tax Claims), Class 5 (Other Secured Claims), Class
6 (General Unsecured Claims), Class 7 (Intercompany Claims), and Class 9 (Equity Interests in
Subsidiary Debtors) are unimpaired, as contemplated by section 1123(b)(1) of the Bankruptcy

Code, and (b) Class 2 (First Lien Lender Claims), Class 3 (Second Lien Lender Claims), Class 8 (Holdings Preferred Equity Interests), and Class 10 (Holdings Common Equity Interests) are impaired.

(i)     Assumption and Rejection (11 U.S.C. § 1123(b)(2)). Article IX of the Prepackaged Plan addresses the assumption and rejection of executory contracts and unexpired leases, and meets the requirements of section 365(b) of the Bankruptcy Code. There have been no objections to the Debtors' assumption of executory contracts and unexpired leases pursuant to Article IX of the Prepackaged Plan.

(j)     Additional Plan Provisions (11 U.S.C. § 1123(b)(6)). The provisions of the Prepackaged Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

(k)     Cure of Defaults (11 U.S.C. § 1123(d)). Section 9.2 of the Prepackaged Plan provides for the satisfaction of default claims associated with each executory contract and unexpired lease to be assumed pursuant to the Prepackaged Plan in accordance with section 365(b)(1) of the Bankruptcy Code. All cure amounts will be determined in accordance with the underlying agreements and applicable bankruptcy and nonbankruptcy law. Thus, the Prepackaged Plan complies with section 1123(d) of the Bankruptcy Code.

M.     The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)). The Debtors have complied with the applicable provisions of the Bankruptcy Code. Specifically:

(a)     Each of the Debtors is an eligible debtor under section 109 of the Bankruptcy Code; and

(b)     The Debtors have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court, and in transmitting the Prepackaged Plan, the Prepackaged Plan Supplement, the Disclosure Statement, the Ballots, and related documents and notices and in soliciting and tabulating the votes on the Prepackaged Plan, the Debtors have complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126(b), the Bankruptcy Rules, the Local Rules, applicable nonbankruptcy law, the Scheduling Order, and all other applicable law.

N.     <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>. The Debtors have proposed the Prepackaged Plan (including the Exit Facility contemplated thereunder and all documents necessary to effectuate the Prepackaged Plan) in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. The Debtors' good faith is evident from the facts and record of these Chapter 11 Cases, the Disclosure Statement, and the record of the May 11 Hearings and other proceedings held in these Chapter 11 Cases. The Prepackaged Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' estates and to effectuate a successful reorganization of the Debtors. The Prepackaged Plan (including all documents necessary to effectuate the Prepackaged Plan) was negotiated at arms' length among representatives of the Debtors, the First Lien Lenders, The First Lien Administrative Parties, the Second Lien Lenders, the Second Lien Administrative Parties, the New Money Investors, the Equity Holders, the DIP Lenders, the DIP Administrative Parties, the Exit Facility Loan Parties, and their respective professionals. The individual signatories to the Plan Support Agreement support confirmation of the Prepackaged Plan. Further, the Prepackaged Plan's classification, indemnification, exculpation, release, and injunction provisions have been negotiated in good faith and at arms' length, are consistent with

sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and are each necessary for the Debtors' successful reorganization.

O.    Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).

(a)    Any payment made or to be made by the Debtors for services or for costs and expenses of the Debtors' professionals in connection with their Chapter 11 Cases, or in connection with the Prepackaged Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

(b)    As part of the negotiated terms on which the Debtors, the First Lien Lenders, the First Lien Administrative Parties, the Second Lien Lenders, the Second Lien Administrative Parties, the New Money Investors, the Equity Holders, the DIP Lenders, the DIP Administrative Parties and the Exit Facility Loan Parties agreed to proceed with the consensual, pre-packaged restructuring reflected in the Prepackaged Plan, the Debtors have agreed to pay without any requirement to file any retention or fee applications the reasonable fees and expenses of certain professional advisors.

P.    Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)). The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code. The identity and affiliations of the persons proposed to serve as the initial directors and officers of the Reorganized Debtors after confirmation of the Prepackaged Plan have been fully disclosed to the extent such information is available, and the appointment to, or continuance in, such offices of such persons is consistent with the interests of holders of Claims against and Equity Interests in the Debtors and with public policy. As set forth in the Prepackaged Plan Supplement, on the Effective Date, the new board of directors of ECI shall be initially comprised of seven (7) members, each of

whom is identified in the Prepackaged Plan Supplement. Each such member will serve in accordance with the terms and subject to the conditions of the Restated Certificate of Incorporation, the Restated Bylaws, and other relevant organizational documents, each as applicable. The identity of any insider that will be employed or retained by the Reorganized Debtors and the nature of such insider's compensation have also been disclosed, to the extent necessary.

Q. <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>. The Prepackaged Plan does not provide for rate changes by any of the Reorganized Debtors. Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable in these Chapter 11 Cases.

R. <u>Best Interest of Creditors (11 U.S.C. § 1129(a)(7))</u>. The Prepackaged Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The liquidation analysis provided in the Disclosure Statement and other evidence proffered or adduced at the Confirmation Hearing (i) are persuasive and credible, (ii) have not been controverted by other evidence, and (iii) establish that each holder of an impaired Claim or Equity Interest either has accepted the Prepackaged Plan or will receive or retain under the Prepackaged Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

S. <u>Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))</u>. Class 1 (Priority Non-Tax Claims), Class 4 (Secured Tax Claims), Class 5 (Other Secured Claims), Class 6 (General Unsecured Claims), Class 7 (Intercompany Claims), and Class 9 (Equity Interests in Subsidiary Debtors) are Classes of unimpaired Claims that are conclusively presumed to have accepted the Prepackaged Plan in accordance with section 1126(f) of the Bankruptcy Code.

Class 2 (First Lien Lender Claims) and Class 3 (Second Lien Lender Claims) have voted to accept the Prepackaged Plan in accordance with sections 1126(b) and (c) of the Bankruptcy Code, without regard to the votes of insiders of the Debtors. Class 8 (Holdings Preferred Equity Interests) has voted to accept the Prepackaged Plan in accordance with sections 1126(b) and (c) of the Bankruptcy Code.

T.  Treatment of Administrative Expense Claims, Priority Tax Claims, and Other Priority Claims (11 U.S.C. § 1129(a)(9)). The treatment of Allowed Administrative Expense Claims pursuant to Section 2.1 of the Prepackaged Plan satisfies the requirements of section 1129(a)(9)(A) of the Bankruptcy Code. The treatment of Priority Non-Tax Claims pursuant to Section 4.1 of the Prepackaged Plan satisfies the requirements of section 1129(a)(9)(B) of the Bankruptcy Code. The treatment of Priority Tax Claims pursuant to Section 2.3 of the Prepackaged Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code. Pursuant to the Prepackaged Plan, no holder of an Administrative Expense Claim other than a retained professional of the Debtors is required to file a proof of claim or request for payment of administrative expenses under section 503(b) of the Bankruptcy Code. On and after the Effective Date, all valid Administrative Expense Claims, Priority Tax Claims, and Priority Non-Tax Claims shall be paid in the ordinary course of business of the Reorganized Debtors, subject to parties' ability to dispute such Claims in accordance with Article VIII of the Prepackaged Plan and applicable non-bankruptcy law.

U.  Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)). Class 2 (First Lien Lender Claims), Class 3 (Second Lien Lender Claims), and Class 8 (Holdings Preferred Equity Interests) voted to accept the Prepackaged Plan by the requisite majorities, determined

without including any acceptance of the Prepackaged Plan by any insider, thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

V. Feasibility (11 U.S.C. § 1129(a)(11)). The information in the Disclosure Statement, the Supporting Declarations, and the evidence proffered or adduced at the Confirmation Hearing (i) is persuasive and credible, (ii) has not been controverted by other evidence, and (iii) establishes that the Prepackaged Plan is feasible and that there is a reasonable prospect of the Reorganized Debtors being able to meet their financial obligations under the Prepackaged Plan and their business in the ordinary course and that confirmation of the Prepackaged Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtors, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

W. Payment of Fees (11 U.S.C. § 1129(a)(12)). All fees currently payable under section 1930 of title 28, United States Code, as determined by the Bankruptcy Code, have been or will be paid on or before the Effective Date pursuant to Section 13.1 of the Prepackaged Plan, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

X. Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)). Section 9.4 of the Prepackaged Plan provides that except and to the extent previously assumed by an order of the Bankruptcy Court, on or before the Confirmation Date, all employee compensation and benefit plans of the Debtors, including benefit plans and programs subject to sections 1114 and 1129(a)(13) of the Bankruptcy Code, entered into before or after the Commencement Date and not since terminated, shall be deemed to be, and shall be treated as if they were, executory contracts that are to be assumed under the Prepackaged Plan. The Prepackaged Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code.

Y.     No Domestic Support Obligations (11 U.S.C. § 1129(a)(14)).  The Debtors

are not required by a judicial or administrative order, or by statute, to pay a domestic support

obligation.  Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in these

Chapter 11 Cases.

Z.     Debtors Are Not Individuals (11 U.S.C. § 1129(a)(15)).  The Debtors are

not individuals, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in

these Chapter 11 Cases.

AA.     No Applicable Nonbankruptcy Law Regarding Transfers (11 U.S.C.

§ 1129(a)(16)).  The Debtors are each a moneyed, business, or commercial corporation, and

accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in these Chapter 11

Cases.

BB.     No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)).

Class 10 (Holdings Common Equity Interests) is deemed to have rejected the Prepackaged Plan.

Based upon the evidence proffered, adduced, and presented by the Debtors at the Confirmation

Hearing, the Prepackaged Plan does not discriminate unfairly with respect to and is fair and

equitable with respect the aforementioned Class, as required by sections 1129(b)(1) and (b)(2) of

the Bankruptcy Code, because no holder of any interest that is junior to the Class will receive or

retain any property under the Prepackaged Plan on account of such junior interest, and no holder

of a Claim in a Class senior to such Classes is receiving more than 100% recovery on account of

its Claim.  Thus, the Prepackaged Plan may be confirmed notwithstanding the deemed rejection

of the Prepackaged Plan by this Class.

CC.    Only One Plan (11 U.S.C. § 1129(c)).  The Prepackaged Plan is the only

plan filed in each of these cases, and accordingly, section 1129(c) of the Bankruptcy Code is

inapplicable in these Chapter 11 Cases.

DD.    Principal Purpose of the Prepackaged Plan (11 U.S.C. § 1129(d)).  The

principal purpose of the Prepackaged Plan is not the avoidance of taxes or the avoidance of the

application of section 5 of the United States Securities Act of 1933, as amended (the "**Securities

Act**") and no governmental entity has objected to the confirmation of the Prepackaged Plan on

any such grounds.  The Prepackaged Plan, therefore, satisfies the requirements of section

1129(d) of the Bankruptcy Code.

EE.    Good Faith Solicitation (11 U.S.C. § 1125(e)).  Based on the record before

the Court in these Chapter 11 Cases, including evidence presented at the May 11 Hearings, the

Debtors (including as reorganized), the First Lien Lenders, the First Lien Administrative Agent,

the First Lien Administrative Parties, the Second Lien Lenders, the Second Lien Administrative

Agent, the Second Lien Administrative Parties, the DIP Lenders, the DIP Agent, the DIP

Administrative Parties, the New Money Investors, the Exit Facility Loan Parties, FP, and their

respective successors, predecessors, control persons, members, officers, directors, employees and

agents and their respective attorneys, financial advisors, investment bankers, accountants, and

other professionals retained by such persons (i) have acted in "good faith" within the meaning of

section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the

Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any applicable non-bankruptcy

law, rule, or regulation governing the adequacy of disclosure in connection with all their

respective activities relating to the solicitation of acceptances to the Prepackaged Plan and their

participation in the activities described in section 1125 of the Bankruptcy Code and (ii) shall be

deemed to have participated in good faith and in compliance with the applicable provisions of

the Bankruptcy Code in the offer and issuance of any securities under the Prepackaged Plan, and

therefore are not, and on account of such offer, issuance and solicitation will not be, liable at any

time for the violation of any applicable law, rule or regulation governing the solicitation of

acceptances or rejections of the Prepackaged Plan or the offer and issuance of the securities

under the Prepackaged Plan, and are entitled to the protections afforded by section 1125(e) of the

Bankruptcy Code and, to the extent such parties are listed therein, the exculpation and release

provisions set forth in Article XI of the Prepackaged Plan.

      FF.   <u>Satisfaction of Confirmation Requirements</u>. Based upon the foregoing,

the Prepackaged Plan satisfies the requirements for confirmation set forth in section 1129 of the

Bankruptcy Code.

      GG.   <u>Implementation</u>. All documents necessary to implement the Prepackaged

Plan, including those contained in the Prepackaged Plan Supplement, and all other relevant and

necessary documents have been negotiated in good faith and at arms' length and shall, upon

completion of documentation and execution (including the documentation of the Exit Facility),

be valid, binding, and enforceable agreements and not be in conflict with any federal or state

law.

      HH.   <u>Injunction, Exculpation, and Releases</u>. The Court has jurisdiction under

sections 1334(a) and (b) of title 28 of the United States Code to approve the injunction,

exculpation and releases set forth in Article XI of the Prepackaged Plan. Section 105(a) of the

Bankruptcy Code permits issuance of the injunction and approval of the unopposed releases set

forth in Article XI of the Prepackaged Plan if, as has been established here based upon the record

in the Chapter 11 Cases and the evidence presented at the May 11 Hearings, such provisions (i)

were integral to the agreement among the various parties in interest, including as reflected in the Plan Support Agreement, and are essential to the formulation and implementation of the Prepackaged Plan, as provided in section 1123 of the Bankruptcy Code, (ii) confer substantial benefits on the Debtors' estates, (iii) are fair, equitable and reasonable, and (iv) are in the best interests of the Debtors, their estates, and parties in interest. Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the releases, exculpation, and injunction set forth in the Prepackaged Plan and implemented by this Order are fair, equitable, reasonable, and in the best interests of the Debtors, the Reorganized Debtors and their estates, creditors and equity holders. The releases of non-Debtors under the Prepackaged Plan is fair to holders of Claims and are necessary to the proposed reorganization, thereby satisfying the requirements of *In re Continental Airlines, Inc.,* 203 F.3d 203, 214 (3d Cir. 2000) and other applicable case law. Such releases are given in exchange for and are supported by fair, sufficient, and adequate consideration provided by each and all of the parties providing such releases. The record of the Confirmation Hearing and these Chapter 11 Cases is sufficient to support the releases, exculpation, and injunction provided for in Article XI of the Prepackaged Plan. Accordingly, based upon the record of these Chapter 11 Cases, the representations of the parties, and/or the evidence proffered, adduced, and/or presented at the Confirmation Hearing, this Court finds that the injunction, exculpation, and releases set forth in Article XI of the Prepackaged Plan are consistent with the Bankruptcy Code and applicable law. The failure to implement the injunction, exculpation and releases would seriously impair the Debtors' ability to confirm the Prepackaged Plan.

II.     Settlement. Except as otherwise provided in the Prepackaged Plan and this Order, the Prepackaged Plan represents a settlement between and among the Debtors and

their creditors and equity holders of all Claims, Equity Interests and litigation against the

Debtors, pending or threatened, or that was or could have been commenced against the Debtors

prior to the date of entry of this Order (other than the Reorganized Debtors' ability to prosecute

objections to Claims and other retained causes of action to the extent preserved under the

Prepackaged Plan), including pursuant to Section 11.12 of the Prepackaged Plan.

JJ. Good Faith. The Debtors and the Exit Facility Loan Parties will be acting

in good faith if they proceed to (i) consummate the Prepackaged Plan and the agreements,

settlements, transactions, and transfers contemplated thereby, (ii) take the actions authorized and

directed by this Order and (iii) execute and consummate the Exit Facility.

KK. Exit Facility. Upon diligent inquiry, the Debtors have determined that the

Exit Facility is the best alternative available to the Debtors. The Exit Facility has been

negotiated in good faith and on an arms' length basis and each party thereto may rely upon the

provisions of this Order in closing the Exit Facility. The availability of the Exit Facility is

necessary to the consummation of the Prepackaged Plan and the operation of the Reorganized

Debtors. The material documentation for the Exit Facility is set forth in the Prepackaged Plan

Supplement, and the accompanying exit financing fee letters are fair and reasonable, reflect the

Debtors' exercise of prudent business judgment consistent with their fiduciary duties, are

supported by reasonably equivalent value and fair consideration and are in the best interests of

the Debtors' estates and their creditors. The execution, delivery, or performance by the Debtors

of any documents in connection with the Exit Facility, and compliance by the Debtors with the

terms thereof is authorized by, and will not conflict with, the terms of the Prepackaged Plan or

this Order. The financial accommodations to be extended pursuant to the Exit Facility are being

extended in good faith, for legitimate business purposes, are reasonable, and shall not be subject

to recharacterization for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any other applicable nonbankruptcy law.

LL.    Conditions to Effective Date.  The Conditions to the Effective Date set forth in Section 10.1 of the Prepackaged Plan may be waived, in whole or in part, at any time by the Debtors subject to Section 10.2 of the Prepackaged Plan, without notice, leave, or order of the Court.

MM.    Valuation.  Pursuant to the valuation analysis set forth in the Disclosure Statement, the enterprise value of the Debtors is insufficient to support a distribution to holders of Holdings Common Equity Interests under absolute priority principles.

NN.    Retention of Jurisdiction.  The Court may properly, and upon the Effective Date shall, retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases, including the matters set forth in Article XII of the Prepackaged Plan and section 1142 of the Bankruptcy Code.

## ORDER

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

1.    Findings of Fact and Conclusions of Law.  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.  To the extent that any finding of fact shall be determined to be a conclusion of law, it shall be deemed so, and vice versa.

2. <u>Notice of the May 11 Hearings</u>. Notice of the May 11 Hearings complied with the terms of the Scheduling Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

3. <u>Solicitation</u>. The solicitation of votes on the Prepackaged Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and applicable nonbankruptcy law.

4. <u>Ballots</u>. The forms of Ballots annexed to the Voting Certification are in compliance with Bankruptcy Rule 3018(c), conform to Official Form Number 14, and are approved in all respects.

5. <u>Plan Modifications</u>. Modifications made to the Prepackaged Plan following the solicitation of votes thereon satisfied the requirements of section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

6. <u>The Disclosure Statement</u>. The Disclosure Statement (i) contains adequate information of a kind generally consistent with the disclosure requirements of applicable nonbankruptcy law, (ii) contains "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Prepackaged Plan, and the transactions contemplated therein, and (iii) is approved in all respects. To the extent that the Debtors' solicitation of acceptances of the Plan is deemed to constitute an offer of new securities, the Debtors are exempt from the registration requirements of the Securities Act (and of any equivalent state securities or "blue sky" laws) with respect to such solicitation under section 4(2) of the Securities Act and Regulation D promulgated

thereunder. Section 4(2) exempts from registration under the Securities Act all "transactions by an issuer not involving any public offering." 15 U.S.C. § 77d(2). The Debtors have complied with the requirements of section 4(2) of the Securities Act, as the prepetition solicitation of acceptances would constitute a private placement of securities. The solicitation to creditors was made only to those creditors who are "Accredited Investors" as defined in Regulation D under the Securities Act.

7.     <u>Confirmation of the Prepackaged Plan</u>. The Prepackaged Plan and each of their provisions shall be, and hereby are, CONFIRMED under section 1129 of the Bankruptcy Code. The documents contained in the Prepackaged Plan Supplement are authorized and approved. The terms of the Prepackaged Plan, including the Prepackaged Plan Supplement, are incorporated by reference into and are an integral part of this Order.

8.     <u>Objections</u>. All Objections, responses to, and statements and comments, if any, in opposition to, the Prepackaged Plan and/or the Disclosure Statement, respectively, other than those withdrawn with prejudice in their entirety prior to, or on the record at, the May 11 Hearings, shall be, and hereby are, overruled in their entirety for the reasons stated on the record.

9.     <u>No Action</u>. Pursuant to the appropriate provisions of the General Corporation Law of the State of Delaware and section 1142(b) of the Bankruptcy Code, no action of the respective directors or stockholders of the Debtors shall be required to authorize the Debtors to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Prepackaged Plan and any contract, instrument, or other document to be executed, delivered, adopted or amended in connection with the implementation of the Prepackaged Plan, including any documentation executed in connection with the Debtors' Exit Facility.

10. <u>Binding Effect</u>. Pursuant to section 1141 and the other applicable provisions of the Bankruptcy Code, on or after entry of this Order and subject to the occurrence of the Effective Date, the provisions of the Prepackaged Plan (including the exhibits and schedules thereto and all documents and agreements executed pursuant thereto or in connection therewith, including those contained in the Prepackaged Plan Supplement) and this Order shall bind the Debtors, the Reorganized Debtors, all holders of Claims and Equity Interests of the Debtors (irrespective of whether such Claims or Equity Interests are impaired under the Prepackaged Plan or whether the holders of such Claims or Equity Interests accepted or are deemed to have accepted the Prepackaged Plan), each Person receiving, retaining or otherwise acquiring property under the Prepackaged Plan, any and all non-Debtor parties to executory contracts and unexpired leases with any of the Debtors, any Person making an appearance in the Chapter 11 Cases, any other party in interest in the Chapter 11 Cases, and the respective heirs, executors, administrators, successors, or assigns, if any, of any of the foregoing.

11. <u>Claims Arising Under the DIP Facility</u>. On the Effective Date, the DIP Claims shall be indefeasibly paid in full in cash in full satisfaction, settlement, discharge and release of, and in exchange for, such DIP Claims. Upon indefeasible payment and satisfaction in full of all DIP Claims, the DIP Facility and all "Loan Documents" as defined therein, and all Liens and security interests granted to secure the DIP Claims shall be immediately terminated, extinguished and released, without further notice to or order of this Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person, and the DIP Agent shall promptly execute and deliver to the Reorganized Debtor such instruments of termination, release, satisfaction and/or assignment as may be reasonably requested by the Reorganized Debtor. The Debtors shall execute a payoff letter with respect to

the DIP Claims (the "**Payoff Letter**"), in form and substance reasonably satisfactory to the Debtors or Reorganized Debtors and DIP Agent. The Payoff Letter shall be binding, valid and enforceable against the DIP Agent, Debtors and Reorganized Debtors in accordance with its terms. Notwithstanding the above, any provisions contained in the DIP Facility that survive termination, release or satisfaction on their terms, including without limitation any indemnity provisions, shall survive such termination, release and satisfaction in the manner and to the extent set forth therein.

12. <u>Free and Clear</u>. Except as otherwise provided in the Prepackaged Plan or in this Order, from and after the Effective Date, the Reorganized Debtors shall be vested with all property of the estates, free and clear of all Claims, liens, encumbrances, charges and other interests of creditors and equity security holders of the Debtors. Except as otherwise provided in the Prepackaged Plan or in this Order, from and after the Effective Date, the Reorganized Debtors may operate each of their businesses and use, acquire or dispose of assets free of any restrictions imposed by the Bankruptcy Code, the Court, or the United States Trustee for the District of Delaware (the "**U.S. Trustee**") (except for quarterly operating reports and fees associated therewith).

13. <u>Substantive Consolidation</u>. Pursuant to Section 6.1 of the Prepackaged Plan, the Prepackaged Plan is premised upon the substantive consolidation of the Affiliate Debtors for purposes of the Prepackaged Plan only. Accordingly, on the Effective Date, all of ECI and the Affiliate Debtors and their estates shall, for purposes of the Prepackaged Plan only, be deemed merged and (i) all assets and liabilities of ECI and the Affiliate Debtors shall be treated for purposes of the Prepackaged Plan only as though they were merged, (ii) all guarantees of ECI and the Affiliate Debtors of payment, performance, or collection of obligations of any of

ECI or the Affiliate Debtors shall be eliminated and cancelled, (iii) all joint obligations of two or more of ECI and/or the Affiliate Debtors and all multiple Claims against such entities on account of such joint obligations, shall be considered a single Claim against ECI and the Affiliate Debtors, and (iv) any Claim filed in the Chapter 11 Cases of ECI or any of the Affiliate Debtors shall be deemed filed against the consolidated ECI and the Affiliate Debtors and a single obligation of the consolidated ECI and the Affiliate Debtors on and after the Effective Date. Such substantive consolidation shall not (other than for voting, treatment, and distribution purposes under the Prepackaged Plan) affect (x) the legal and corporate structures of ECI and the Affiliate Debtors (including the corporate ownership of the Affiliate Debtors), or (y) any Intercompany Claim.

14.     Implementation of the Prepackaged Plan. The Debtors and the Reorganized Debtors shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements, including those contained in the Prepackaged Plan Supplement, and take such other actions as may be necessary to effectuate, implement, and further evidence the terms and conditions of the Prepackaged Plan, including all such actions delineated in Section 6.3 of the Prepackaged Plan. On the Effective Date, the appropriate officers or representatives of the Reorganized Debtors and members of the boards of directors of the same are authorized and empowered to issue, execute, file and deliver or record such documents, contracts, instruments, releases and other agreements contemplated by the Prepackaged Plan, including those contained in the Prepackaged Plan Supplement, in the name of and on behalf of the Reorganized Debtors.

15.     Exit Financing Approved. The Exit Facility is hereby approved. Pursuant to section 1142(b) of the Bankruptcy Code, on the Effective Date, the Reorganized Debtors shall

be authorized and directed to execute and deliver the Exit Facility Documents, as well as execute, deliver, file, record and issue any notes, documents (including UCC financing statements), instruments or agreements in connection therewith, and perform their obligations under such documents, in each case without further notice to or order of this Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of the shareholders, directors, members or partners of any of the Reorganized Debtors or any other Person (other than as expressly required by any applicable Exit Facility Document). The Liens and security interests to be granted by the Reorganized Debtor pursuant to the terms of the Exit Facility Documents shall be deemed perfected on the Effective Date. Without in any way limiting the foregoing, in the event that any Person that has filed financing statements, mortgages, *lis pendens* or other documents or agreements evidencing interests with respect to the Debtors or their assets shall not have delivered to the Debtors on or before the Effective Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction or releases of all liens, claims or interests that such Person may have with respect to the Debtors or their assets or otherwise, then (a) each of the Debtors or Reorganized Debtors is hereby authorized to execute and file such statements, instruments and other documents on behalf of such Person with respect to the Reorganized Debtors' assets and (b) the Exit Facility Agent is hereby authorized on behalf of such Person to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of release of all liens, claims and interests in, upon, or against the Reorganized Debtors' assets.

16.     <u>Issuance of New Common Stock and the Rights</u>. On the Effective Date, the Reorganized Debtors shall be authorized to issue the New Common Stock and the Rights.

The New Common Stock and the Rights shall be, upon execution and delivery, legal, valid, and binding obligations of the Reorganized Debtors and enforceable against the Reorganized Debtors in accordance with their terms.

17.     Compliance with Section 1123(a)(6) of the Bankruptcy Code.  The Restated Certificate of Incorporation of Reorganized Holdings, and the terms governing the issuance of the New Common Stock and the Rights, comply in all respects with section 1123(a)(6) of the Bankruptcy Code, and are hereby approved.  The adoption and filing by Reorganized Holdings of the Restated Certificate of Incorporation is hereby authorized, ratified, and approved.  The Debtors have complied in all respects, to the extent necessary, with section 1123(a)(6) of the Bankruptcy Code.

18.     Exemption from Securities Law.  The issuance of the New Common Stock to certain of the First Lien Lenders, and the issuance of the Rights to the holders of Holdings Preferred Equity Interests, and any subsequent sales, resales or transfers, or other distributions of any such securities shall be exempt from any federal or state securities laws registration requirements, including section 5 of the Securities Act, to the fullest extent permitted by section 1145 of the Bankruptcy Code.

19.     Cancellation of Existing Securities and Agreements.  On the Effective Date, all of the agreements and other documents evidencing (a) the Claims or rights of any holder of a Claim against the Debtors, including all credit agreements and notes evidencing such Claims and any security agreements and filings attendant thereto, (b) any Equity Interests in Holdings, and (c) any options or warrants to purchase Equity Interests of any of the Debtors, or obligating such Debtors to issue, transfer or sell Equity Interests or any other capital stock of such Debtors, shall be deemed automatically cancelled without further act or action under any

applicable agreement, law, regulation, order or rule and the obligations of the Debtors thereunder shall be discharged.

20. <u>Cancellation of Liens</u>. Upon the occurrence of the Effective Date, any Lien securing any First Lien Lender Claim, Second Lien Lender Claim, Secured Tax Claim, or Other Secured Claim shall be deemed released, and the holder of such claim shall be authorized and directed to release any Collateral or other property of the Debtors (including any Cash collateral) held by such holder and to take such actions as may be reasonably requested by the Reorganized Debtors, to evidence the release of such Lien, including the execution, delivery and filing or recording of such releases as may be reasonably requested by the Reorganized Debtors.

21. <u>Subordination</u>. Except as otherwise expressly provided in the Prepackaged Plan, this Order or a separate order of this Court, the classification and manner of satisfying all Claims and Equity Interests under the Prepackaged Plan takes into consideration all subordination rights, whether arising by contract or under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise. All subordination rights that a holder of a Claim or Equity Interest may have with respect to any distribution to be made under the Prepackaged Plan shall be discharged and terminated and all actions related to the enforcement of such subordination rights shall be enjoined permanently. Accordingly, the distributions under the Prepackaged Plan to the holders of Allowed Claims and Equity Interests will not be subject to payment of a beneficiary of such subordination rights, or to levy, garnishment, attachment or other legal process by a beneficiary of such terminated subordination rights.

22.     Agreements with Existing Management.  The Debtors are hereby authorized to, and shall on the Effective Date, assume existing employment agreements with members of management.

23.     Management Incentive Plan.  As of the Effective Date, the Management Incentive Plan of the Reorganized Debtors is hereby approved.  The Management Incentive Plan shall be in form and substance reasonably acceptable to the Requisite Consenting Parties and provide for 10% of the fully-diluted New Common Stock (which shall dilute the New Common Stock distributed and/or issued, as applicable, to the First Lien Lenders, BKC and Sankaty on the Effective Date and the New Common Stock that may be issued pursuant to the Rights) to be available for issuance to the officers, employees, directors and other key persons of the Reorganized Debtors and their affiliates as determined by the board of directors of Reorganized Holdings after the Effective Date.

24.     Compromise of Controversies.  In consideration for the distributions and other benefits, including releases, provided under the Prepackaged Plan, the provisions of the Prepackaged Plan constitute a good faith compromise and settlement of all Claims, Equity Interests and controversies resolved under the Prepackaged Plan, and the entry of this Order constitutes approval of such compromise and settlement under Bankruptcy Rule 9019, subject to Section 11.11 of the Prepackaged Plan

25.     Plan Distributions.

(i)     On and after the Effective Date, all distributions under the Prepackaged Plan shall be effectuated in accordance with the Prepackaged Plan, including Article IV thereof.

(ii)    After the expiration of one year from the Effective Date, all unclaimed property or interests in property distributable under the Prepackaged Plan shall revert to the Reorganized Debtors automatically and without need for a further Order by the Court (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary), and

the Claim of any Person to such property or Equity Interest in property shall be discharged and forever barred.

(iii)    The provisions of Article VIII of the Prepackaged Plan, including, without limitation, the provisions governing procedures for resolving Disputed Claims, are fair and reasonable and are approved.

26.    <u>Assumption or Rejection of Contracts and Leases</u>.  Pursuant to Section 9.1 of the Prepackaged Plan, except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Prepackaged Plan, as of the Effective Date, each Debtor shall be deemed to have assumed each executory contract and unexpired lease to which it is a party, pursuant to section 365 of the Bankruptcy Code, unless such contract or lease (i) was previously assumed or rejected by the Debtors, (ii) previously expired or terminated pursuant to its own terms, or (iii) is the subject of a motion to reject filed by the Debtors on or before the Confirmation Date.  The Order shall constitute an order of the Bankruptcy Court under sections 365 and 1123(b) of the Bankruptcy Code approving the contract and lease assumptions or rejections described above, as of the Effective Date.

27.    <u>Conditions to Effective Date</u>.  The Prepackaged Plan shall not become effective unless and until the conditions set forth in Section 10.1 of the Prepackaged Plan have been satisfied or waived pursuant to Section 10.2 of the Prepackaged Plan.

28.    <u>Professional Compensation</u>.  Except as provided in Section 2.1 of the Prepackaged Plan, all entities seeking awards by the Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code shall (a) file, on or before the date that is ninety (90) days after the Effective Date, their respective applications for final allowances of compensation for services rendered and reimbursement of

expenses incurred (a "**Final Fee Application**") and (b) be paid in full, in Cash, in such amounts as are Allowed by the Court in accordance with the order relating to or Allowing any such Administrative Expense Claim. Notice of a hearing (the "**Final Fee Hearing**") on the Final Fee Applications shall be provided in accordance with the Bankruptcy Rules and Local Rules. The Reorganized Debtors are authorized to pay compensation for professional services rendered and reimbursement of expenses incurred after the Confirmation Date in the ordinary course and without the need for Court approval.

29.     Retention of Foreign Counsel. The Debtors are authorized to retain counsel in certain non-U.S. jurisdictions and pay the reasonable fees and reasonable out-of-pocket expenses of such counsel in the ordinary course to the extent necessary to effectuate consummation of the transaction contemplated by the Exit Credit Facility or Prepackaged Plan.

30.     Objections to Final Fee Applications. All objections to any Final Fee Applications shall be filed with the Court, together with proof of service thereof, and served upon the applicant and the Notice Parties, so as to be received not later than 4:00 p.m. prevailing Eastern Time on the date that is five (5) Business Days prior to the Final Fee Hearing.

31.     Discharge. To the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, as of the Effective Date, the confirmation of the Prepackaged Plan shall (i) pursuant to Section 11.3 of the Prepackaged Plan and except as otherwise provided in the Prepackaged Plan or herein, discharge and release all Claims against or Equity Interests in the Debtors of any nature whatsoever, known or unknown, including any interest accrued or expenses incurred thereon from and after the Commencement Date, or against their estates or properties or interests in property, and (ii) except as provided otherwise in the Prepackaged Plan or herein, upon the Effective Date, all Claims against and Equity Interests in

the Debtors shall be satisfied, discharged and released in full in exchange for the consideration provided under the Prepackaged Plan. Except as otherwise provided in the Prepackaged Plan or herein, all Persons shall be precluded from asserting against the Debtors, the Reorganized Debtors, or their respective properties or interests in property, any other Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

32. <u>Releases by the Debtors</u>. Except for the right to enforce the Prepackaged Plan, the Debtors shall, effective upon the occurrence of the Effective Date, be deemed to forever release, waive and discharge the Released Parties of and from any and all Claims, demands, causes of action and the like, relating to the Debtors and/or, in connection therewith, their affiliates, advisors, officers, directors and holders of Equity Interests, existing as of the Effective Date or thereafter arising from any act, omission, event, or other occurrence that occurred on or prior to the Effective Date, whether direct or derivative, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, known or unknown, foreseen or unforeseen, in law, equity or otherwise. Notwithstanding the foregoing, such release, waiver and discharge shall not operate as a release, waiver or discharge of (i) any Released Party in respect of any contractual obligations of any Released Party pursuant to the contracts, instruments, releases, and other agreements or documents delivered under or in connection with the Prepackaged Plan or assumed by the Debtors pursuant to the Prepackaged Plan or a final order of this Court or (ii) any causes of action unknown to the Debtors as of the Petition Date arising out of willful misconduct or gross negligence of any such Released Party as determined by a Final Order of this Court.

33.     Releases by Holders of Claims and Equity Interests.  Except for the right

to enforce the Prepackaged Plan, each Person who votes to accept the Prepackaged Plan, or who,

directly or indirectly, is entitled to receive a distribution under the Prepackaged Plan, including

Persons entitled to receive a distribution via an attorney, agent or securities intermediary, shall be

deemed to forever release, waive and discharge the Released Parties of and from any and all

Claims, demands, causes of action and the like, relating to the Debtors or, in connection

therewith, their affiliates, advisors, officers, directors and holders of Equity Interests, existing as

of the Effective Date or thereafter arising from any act, omission, event, or other occurrence that

occurred on or prior to the Effective Date, whether direct or derivative, liquidated or

unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, known or

unknown, foreseen or unforeseen, in law, equity or otherwise.  Notwithstanding the foregoing,

such release, waiver and discharge shall not operate as a release, waiver or discharge of (i) any

Released Party in respect of any contractual obligations of any Released Party pursuant to the

contracts, instruments, releases, and other agreements or documents delivered under or in

connection with the Prepackaged Plan or assumed by the Debtors pursuant to the Prepackaged

Plan or a final order of this Court or (ii) any causes of action unknown to such Persons as of the

Petition Date arising out of willful misconduct or gross negligence of any such Released Party as

determined by a Final Order of this Court.

34.     Release and Exculpation Provisions.  All release and exculpation

provisions embodied in the Prepackaged Plan, including but not limited to those contained in

Sections 11.4, 11.5 and 11.6 of the Prepackaged Plan, are (i) integral parts of the Prepackaged

Plan, (ii) fair, equitable and reasonable, (iii) given for valuable consideration and (iv) are in the

best interest of the Debtors and all parties in interest, and such provisions are approved and shall be effective and binding on all persons and entities, to the extent provided herein.

35.     Waiver of Avoidance Actions.  Pursuant to Section 11.7 of the Prepackaged Plan, effective as of the Effective Date, the Debtors shall be deemed to have waived the right to prosecute, and to have settled and released for fair value, any avoidance or recovery actions under sections 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code or other applicable law that belong to the Debtors and/or which the Debtors could have prosecuted as debtors or debtors in possession against the Released Parties relating to distributions made on account of Claims, interest or other obligations under and relating to the First Lien Credit Agreement or Second Lien Credit Agreement.

36.     Term of Injunctions or Stays.  The injunctions contained in the Prepackaged Plan, including, but not limited to, those provided in Article XI of the Prepackaged Plan, are hereby authorized, approved and binding on all Persons described therein.  Pursuant to Section 11.8(a) of the Prepackaged Plan, this Order shall, except as otherwise expressly provided herein or in the Prepackaged Plan, constitute an injunction from and after the Effective Date, permanently enjoining all Persons who have held, hold or may hold Claims against or Equity Interests in any Debtor from (i) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Equity Interest against any Reorganized Debtor or Released Party, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any Reorganized Debtor or Released Party with respect to any such Claim or Equity Interest, (iii) creating, perfecting or enforcing any encumbrance of any kind against any Reorganized Debtor or Released Party, or against the property or interests in property of any Reorganized Debtor or Released Party, as applicable with

respect to any such Claim or Equity Interest, (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from any Reorganized Debtor or Released Party, or against the property or interests in property of any Reorganized Debtor or Released Party with respect to any such Claim or Equity Interest, and (v) pursuing any Claim released pursuant to Section 11.5 or 11.6 of the Prepackaged Plan; provided, however, that nothing contained herein shall preclude such Persons from exercising their rights pursuant to and consistent with the terms of the Prepackaged Plan, this Order or in any document, instrument, release, or other agreement entered into in connection with the Prepackaged Plan or approved by order of this Court, including, without limitation, the Exit Facility. Pursuant to Section 11.8(b) of the Prepackaged Plan, unless otherwise provided in the Prepackaged Plan, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

37.     Indemnification Obligations.

(a)     Pursuant to Section 11.10 of the Prepackaged Plan, subject to the occurrence of the Effective Date, the obligations of the Debtors as provided in the Debtors' respective certificates of incorporation, bylaws, applicable law or other applicable agreement as of the Commencement Date to indemnify, defend, reimburse, exculpate, advance fees and expenses to, or limit the liability of directors or officers who were directors or officers of such Debtors at any time prior to the Effective Date, respectively, against any claims or causes of action whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, shall survive confirmation of the Prepackaged Plan, remain unaffected thereby after

the Effective Date and not be discharged, irrespective of whether such indemnification, defense, advancement, reimbursement, exculpation or limitation is owed in connection with an event occurring before or after the Commencement Date. Any Claim based on the Debtors' obligations herein shall not be a Disputed Claim or subject to any objection in either case by reason of section 502(e)(1)(B) of the Bankruptcy Code.

(b)     As of the Effective Date, each Debtors' respective organizational documents shall provide for the indemnification, defense, reimbursement, exculpation and/or limitation of liability of, and advancement of fees and expenses to, directors and officers who were directors or officers of such Debtor at any time prior to the Effective Date at least to the same extent as those in effect on the Commencement Date, against any claims or causes of action whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, and the Reorganized Debtors shall not amend and/or restate such organizational documents before or after the Effective Date to terminate or materially adversely affect any of the Reorganized Debtors' obligations or such members', managers', directors' or officers' rights under Section 11.10 of the Prepackaged Plan.

(c)     After the Effective Date, the Reorganized Debtors shall not terminate or otherwise reduce the coverage under any directors' and officers' insurance policies (including any "tail policy") in effect on the Commencement Date, and all directors and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such directors and/or officers remain in such positions after the Effective Date.

38. <u>Payment of Statutory Fees</u>. All fees payable pursuant to section 1930 of title 28 of the United States Code, shall be paid as and when due or otherwise pursuant to an agreement between the Reorganized Debtors and the United States Department of Justice, Office of the United States Trustee, until such time as a chapter 11 case for a Debtor shall be closed and each Debtor shall pay any such fees as if no substantive consolidation has occurred for purposes of the Prepackaged Plan.

39. <u>Compliance with Tax Requirements</u>. In connection with the Prepackaged Plan and all instruments issued in connection therewith and distributed thereunder, any party issuing any instruments or making any distribution under the Prepackaged Plan, including any party described in Sections 6.5 and 7.3 thereof, shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Prepackaged Plan shall be subject to any withholding or reporting requirements. Notwithstanding the above, each holder of an Allowed Claim or Allowed Equity Interest that is to receive a distribution under the Prepackaged Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution. Any party issuing any instruments or making any distribution under the Prepackaged Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or distributing party for payment of any such tax obligations.

40. <u>Exemption from Transfer Taxes</u>. Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under or in connection with the Prepackaged Plan, the creation of any mortgage, deed of trust or other

security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Prepackaged Plan, including any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Prepackaged Plan shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax. All sale transactions consummated by the Debtors and approved by the Court on and after the Commencement Date through and including the Effective Date, including the transfers effectuated under the Prepackaged Plan, the sale by the Debtors of owned property pursuant to section 363(b) of the Bankruptcy Code, and the assumption, assignment, and sale by the Debtors of unexpired leases of non-residential real property pursuant to section 365(a) of the Bankruptcy Code, if any, shall be deemed to have been made under, in furtherance of, or in connection with the Prepackaged Plan and, thus, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

41.    Environmental Claims.  For the avoidance of doubt, equitable remedies under environmental law are not discharged, released or impaired as Claims hereunder, and nothing in the Prepackaged Plan releases, discharges or nullifies any liability of any entity as the owner or operator of property after the Confirmation Date.  For the avoidance of doubt, nothing in the Prepackaged Plan discharges or releases any Debtor from any environmental claim, liability or cause of action or impairs the ability of any governmental entity to exert its police and regulatory authority over any Debtor, Reorganized Debtor or non-debtor.

42.    Exit Facility.  In the event that (i) the DIP Claims have been indefeasibly paid in full in cash and (ii) the Exit Facility is consummated, and this Order is thereafter reversed, revoked, modified or otherwise upset on appeal and the effect of such reversal,

revocation, or modification is to compel the Debtors to return to chapter 11 (such event being a

"**Reversal**"), then

(a) Any credit extended under the Exit Facility shall be deemed to have been extended in good faith (as that term is used in section 364(e) of the Bankruptcy Code).

(b) The agent for the Exit Facility and the lenders thereunder shall be entitled to all rights, priorities and protections afforded to the lenders under the Final DIP Order [Docket No. 85], including without limitation (i) valid and perfected first priority security interests and liens, superior to all other liens, claims or security interests that any creditors of the Debtors' estates may have in and upon the "Collateral," as defined in the Final DIP Order, but subject to such exceptions described in the Final DIP Order [Docket No. 85] and (ii) an allowed superpriority administrative claim pursuant to Bankruptcy Code section 364(c)(1) with respect to all claims under the Exit Facility. In the event of any conflict between the terms of this Order and the Final DIP Order, the terms of this Order shall control.

(c) In no event shall any fees paid in connection with the Exit Facility be subject to recovery from the parties to the Exit Facility documents.

(d) The Exit Facility documents shall constitute legal, valid, binding and authorized obligations of the Debtors or the Reorganized Debtors, as applicable, enforceable in accordance with their terms, and shall create the security interests, liens and mortgages purported to be created thereby. The agent under the Exit Facility (the "**Exit Facility Agent**") shall be authorized to file or record at any time and from time to time such financing statements or other security documents naming the Exit Facility Agent as secured party for the benefit of the secured parties under the Exit Facility documents.

43. <u>Documents, Mortgages, and Instruments</u>. Each federal, state,

commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any

and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement

or consummate the transactions contemplated by the Prepackaged Plan and this Order.

44. <u>Reversal/Stay/Modification/Vacatur of Order</u>. Except as otherwise

provided in this Order, if any or all of the provisions of this Order are hereafter reversed,

modified, vacated, or stayed by subsequent order of this Court, or any other court, such reversal,

stay, modification or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Debtors or the Reorganized Debtors, as applicable, prior to the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any such reversal, stay, modification, or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Order and the Prepackaged Plan or any amendments or modifications thereto.

45. <u>Retention of Jurisdiction</u>. Notwithstanding the entry of this Order or the occurrence of the Effective Date, pursuant to sections 105 and 1142 of the Bankruptcy Code, this Court, except as otherwise provided in the Prepackaged Plan or herein, shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases to the fullest extent as is legally permissible, including, but not limited to, jurisdiction over the matters set forth in Article XII of the Prepackaged Plan.

46. <u>Modifications</u>. Without need for further order or authorization of the Court, the Debtors or the Reorganized Debtors, subject to the written consent of the Requisite Consenting Parties, as defined in the Prepackaged Plan, are authorized and empowered to make any and all modifications to the Prepackaged Plan, any and all documents included as part of the Prepackaged Plan Supplement, and any other document that is necessary to effectuate the Prepackaged Plan, that do not materially and adversely change the treatment of a holder of a Claim who has not consented to or deemed to consent to such modification.

47. <u>Provisions of Prepackaged Plan and Order Nonseverable and Mutually Dependent</u>. The provisions of the Prepackaged Plan and this Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

48. <u>Governing Law</u>. Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an Exhibit to the Prepackaged Plan or Prepackaged Plan Supplement (including the Exit Facility documents) provides otherwise (in which case the governing law specified therein shall be applicable to such Exhibit), the rights, duties and obligations arising under the Prepackaged Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without giving effect to the principles of conflict of laws.

49. <u>Applicable Nonbankruptcy Law</u>. Pursuant to section 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Order, the Prepackaged Plan and related documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

50. <u>Waiver of Filings</u>. Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtors to file any list, schedule, or statement with the Court or the Office of the U.S. Trustee (except for monthly operating reports or any other post-confirmation reporting obligation to the U.S. Trustee), is hereby waived as to any such list, schedule, or statement not filed as of the Confirmation Date.

51. <u>Governmental Approvals Not Required</u>. This Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Prepackaged Plan and Disclosure Statement, any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Prepackaged Plan and the Disclosure Statement.

52. <u>Notice of Order</u>. In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the Effective Date, the Debtors shall serve notice of the entry of this Order, substantially in the form annexed hereto as <u>Exhibit B</u>, to all parties who hold a Claim or Equity Interest in these cases and the U.S. Trustee. Such notice is hereby approved in all respects and shall be deemed good and sufficient notice of entry of this Order.

53. <u>Substantial Consummation</u>. On the Effective Date, the Prepackaged Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

54. <u>Waiver of Stay</u>. The stay of this Order provided by any Bankruptcy Rule (including Bankruptcy Rule 3020(e)), whether for fourteen (14) days or otherwise, is hereby waived, and this Order shall be effective and enforceable immediately upon its entry by the Court.

55. <u>Inconsistency</u>. To the extent of any inconsistency between this Order and the Prepackaged Plan, this Order shall govern.

56. <u>No Waiver</u>. The failure to specifically include any particular provision of the Prepackaged Plan in this Order will not diminish the effectiveness of such provision nor constitute a waiver thereof, it being the intent of this Court that the Prepackaged Plan is confirmed in its entirety and incorporated herein by this reference.

Dated: May 11, 2010
Wilmington, Delaware

THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE